**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re: | ) <br> ) <br> ) Chapter 11 <br> ) <br> ) Case No. 05-60200 (BRL) <br> ) Jointly Administered <br> ) |
| Calpine Corporation, <u>et al.</u> | |
| Debtors. | |

**INTERIM ORDER AUTHORIZING THE DEBTORS TO (I) CONTINUE TO HONOR PREPETITION TRADING CONTRACTS; (II) ENTER INTO NEW POSTPETITION TRADING CONTRACTS; (III) PLEDGE COLLATERAL UNDER PREPETITION AND POSTPETITION TRADING CONTRACTS AND SETTING A FINAL HEARING**

Upon consideration of the motion (A) for entry of interim and final orders authorizing the Debtors to (i) continue to honor prepetition trading contracts; (ii) enter into new postpetition trading contracts and (iii) pledge collateral under prepetition and postpetition trading contracts; (B) for a final order authorizing the assumption of prepetition trading contracts; and (C) for an ex parte order authorizing interim relief pending the "first day" hearing (the "Motion")[1], filed by the debtors and debtors in possession (the "Debtors") in the above-captioned Chapter 11 Cases; and it appearing that the relief requested is in the best interests of the Debtors' estates, their creditors and other parties in interest; and it appearing that this Court has jurisdiction over this Motion pursuant to 28 U.S.C. §§ 157 and 1334; and it appearing that this is a core proceeding pursuant to 28 U.S.C. § 157(b)(2); and notice of this Motion and the opportunity for a hearing on this Motion was appropriate under the particular circumstances and that no other or further notice need be given; and after due deliberation and sufficient cause appearing therefore;

**THE COURT HEREBY FINDS THAT:**

---

[1] Capitalized terms used but not otherwise defined herein shall have the meanings set forth in the Motion.

A. On the Petition Date, the Debtors filed voluntary petitions for relief under Chapter 11 of the Bankruptcy Code. The Debtors are authorized to continue to operate their businesses and to manage their affairs as debtors in possession under Bankruptcy Code sections 1107 and 1108. No official committee of unsecured creditors has yet been appointed in these cases.

B. These Chapter 11 Cases are consolidated for procedural purposes only and are being jointly administered. No trustee or examiner has been appointed in the Chapter 11 Cases nor has a request for the appointment of a trustee or examiner been made.

C. The Court has jurisdiction over the Chapter 11 Cases under 28 U.S.C. §§ 157(b) and 1334. Consideration of this Interim Order constitutes a core proceeding as defined in 28 U.S.C. § 157(b)(2). The statutory predicates for the relief requested herein are Bankruptcy Code sections 105, 362, 363, 364, 555, 556, 559, 560 and 561 and Bankruptcy Rules 4001(b), (c) and (d).

D. In connection with the operation of the Debtors' core businesses, the Debtors have historically engaged in the Trading Activities. As a result of the Debtors' historic Trading Activities, the Debtors maintain the Existing Positions, which include a portfolio consisting of active physical commodities and financial products trading positions. The Debtors' portfolio represents a valuable and substantial asset of the estates.

E. To preserve and maximize the value of the Debtors' estates, the Debtors must maintain their Existing Positions and engage in prospective Trading Activities consistent with prior practice. If the Debtors are not able to maintain the Existing Positions and engage in future Trading Activities consistent with prior practice, the Debtors' estates and assets will suffer immediate and irreparable harm and degradation in value.

F. Prior to the Petition Date, in connection with the Trading Activities, the Debtors utilized and entered into with their Counterparties the Prepetition Trading Contracts, which

2

include various industry standard trading contracts, including, but not limited to, ISDA, EEI, WSPP, GISB and/or NAESB master agreements, and various other master agreements, "long-form confirmations," netting agreements, master netting agreements, collateral agreements and/or credit support agreements or annexes relating thereto (including all related schedules, exhibits, annexes and confirmations) and any transactions thereunder, as may have been amended, restated or supplemented from time to time.  Utilization of Prepetition Trading Contracts, and the conducting of business pursuant to the terms of the Prepetition Trading Contracts, is necessary and critical to the Debtors' ability to engage in Trading Activities.

G. The Debtors acknowledge and this Court provisionally finds that the Protected Counterparties are "forward contract merchants," "commodities brokers," and/or "swap participants" as such terms are used in sections 556 and/or 560 of the Bankruptcy Code.

H. The Debtors further acknowledge and this Court provisionally finds that the Prepetition Trading Contracts by and between the Debtors and the Protected Parties are "forward contracts," "commodity contracts," "swap agreements," and/or "master netting agreements," as the case may be, as such terms are defined in sections 101 or 761 of the Bankruptcy Code and, as such, are therefore "safe harbor" contracts.  As safe harbor contracts, the right of forward contract merchants, commodity brokers, swap participants and/or master netting agreement participants to cause the liquidation and/or termination of the Prepetition Trading Contracts because of a condition of the kind specified in section 365(e)(1) of the Bankruptcy Code is not and cannot be stayed, avoided or otherwise limited by operation of any provision of the Bankruptcy Code or order of this Court.

I. The Debtors further acknowledge and this Court provisionally finds that the Prepetition Trading Contracts by and between the Debtors and the Protected Parties are "executory contracts" as such term is used in section 365 of the Bankruptcy Code.

J. Prior to the Petition Date, the Debtors and certain Counterparties to the Prepetition Trading Contracts entered into the Prepetition Assurance Agreements for the purpose of, among other things, limiting the risks and uncertainties that may arise with respect to the Prepetition Trading Contracts after the Petition Date.

K. The Prepetition Assurance Agreements provide, among other things, the parameters under which the Assured Counterparties will agree to continue their relationships with the Debtors under the Prepetition Trading Contracts. The Prepetition Assurance Agreements further indicate the Debtors' desire and intent to conduct postpetition trading activity in the ordinary course of business and grant appropriate credit support.

L. The Debtors were willing to enter into the Prepetition Assurance Agreements and grant certain protections to the Assured Counterparties because their relationships with the Assured Counterparties are integral to the on-going and future success of the Debtors' operations and maintaining the value of the Debtors' estates. The ability of the Debtors to continue their trading operations depends upon the continuation of their Prepetition Trading Contracts with the Assured Counterparties.

M. Some of the Counterparties to Prepetition Trading Contracts have not entered into Prepetition Assurance Agreements but have indicated a willingness to continue the Prepetition Trading Contracts upon entry of this Interim Order and the protections herein provided, provided that the Debtors are able to obtain entry of this Interim Order immediately upon commencement of these Chapter 11 Cases. Absent immediate entry of this Interim Order, such Counterparties,

consistent with industry practice, are likely to exercise their contractual rights to liquidate or terminate the Prepetition Trading Contracts pursuant to sections 556, 559, 560 and/or 561 of the Bankruptcy Code, as the case may be. The Debtors will seek to have such Counterparties enter into Postpetition Assurance Agreements immediately following entry of this Interim Order. The Postpetition Assurance Agreement sets forth the rights and obligations of the parties with respect to Existing Positions and prospective Trading Activities.

N.  Prior to the Petition Date and consistent with the terms of the Prepetition Trading Contracts (as may have been amended by a Prepetition Assurance Agreement) and industry standards, the Debtors were required to provide to certain Counterparties with Prepetition Collateral to secure obligations owing to the Counterparties in connection with the Trading Activities.

O.  Counterparties generally will not agree to maintain Existing Positions, continue Trading Activities, or engage in new Trading Activities solely on the basis of an unsecured debt allowable under Section 503(b)(l) of the Bankruptcy Code as an administrative expense pursuant to Section 364(a) or (b) of the Bankruptcy Code.

P.  Accordingly, the circumstances of these cases require the Debtors to provide to Protected Counterparties (i) collateral pursuant to section 364(c)(2) of the Bankruptcy Code and consistent with the terms of the Prepetition Trading Contracts and the Prepetition Assurance Agreements to secure the Debtors' obligations arising from postpetition market movements of Existing Positions, liquidated damages for failure to make or receive postpetition deliveries and/or payments and postpetition Trading Activities, and (ii) superpriority administrative claims under Bankruptcy Code section 364(c)( 1) on account of the Debtors' obligations arising from

5

postpetition market movements of Existing Positions and postpetition Trading Activities to protect the Counterparties from the risk of the Debtors' nonperformance.

Q. The transactions contemplated by the Prepetition Trading Contracts (as may have been amended by a Prepetition Assurance Agreement) are necessary, not only to preserve and maximize the Debtors' assets, but to assist in the stabilization of the energy industry as a whole.

R. Debtors represent, and for purpose of this order, the Court accepts that the terms of both the Prepetition Assurance Agreements and Postpetition Assurance Agreements are fair, reasonable, and adequate given that the Debtors are in Chapter 11.

S. Engaging in Trading Activities pursuant to the Prepetition Trading Agreements and entering into new trading contracts after the Petition Date is within the Debtors' ordinary course of business.

T. Based upon the record presented to the Court by the Debtors, the relief requested in the Motion is necessary, essential and appropriate for the continuation of the Debtors' trading operations as a going concern. The preservation and maintenance of the going concern value of the Debtors' trading operations as a going concern is integral to a successful reorganization and in the best interest of the Debtors' estates and stakeholders.

U. Based upon the record presented to the Court by the Debtors, it appears that each of the Prepetition Assurance Agreements were negotiated in good faith and at arm's length between the Debtors and the Counterparties, and any credit extended pursuant to the Prepetition Assurance Agreements by the Counterparties is deemed to have been extended or made in good faith within the meaning of section 364(e) of the Bankruptcy Code.

V. The relief granted by this Court pursuant to this Interim Order is necessary to avoid immediate and irreparable harm and injury to the Debtors' estates and creditors.

W. Debtors have represented, and the Court accepts, that at or before the Interim Hearing, the Debtors effectuated service of the Motion whether by telephone, email, telecopy, overnight delivery or by hand delivery on: (a) the United States Trustee for the Southern District of New York; (b) the Debtors' [80] largest unsecured creditors on a consolidated basis, as identified in their Chapter 11 petitions; (c) counsel to the administrative agents for the Debtors' prepetition secured lenders; (d) counsel to the Ad Hoc Committees; (e) the indenture trustees pursuant to the Debtors' secured indentures; (f) counsel to the Debtors' proposed postpetition lenders; (g) the Securities and Exchange Commission; (h) the Internal Revenue Service; and (i) the United States Department of Justice. Expedited service was necessary to avoid immediate and irreparable harm to the Debtors' estates pending a final hearing with respect to the Motion and constitutes adequate notice of the hearing.

X. Good, adequate and sufficient cause has been shown to justify the granting of the interim relief herein, and the immediate entry of this Interim Order.

It is now therefore

**ORDERED, ADJUDGED AND DECREED:**

1. The Motion is granted in its entirety.

2. The Debtors are authorized and empowered to take all actions necessary to effectuate the relief granted pursuant to this Order in accordance with the Motion.

3. The terms and conditions of this Order shall be immediately effective and enforceable upon its entry.

4. The Debtors are hereby authorized (and each Counterparty shall be entitled to rely upon such authorization) to:

    a. engage in Trading Activities in the ordinary course of business without further order of the Court, including but not limited to engaging in Trading

Activities pursuant to the terms of the Prepetition Trading Contracts (as may have been amended by a Prepetition Assurance Agreement or Postpetition Assurance Agreement) both in connection with Existing Positions and by entering into new transactions, including but not limited to any and all terms relating to offsetting, netting and/or cross-netting;

b. enter into new ISDA, EEI, WSPP, GISB and/or NAESB master agreements, and various other master agreements, "long-form confirmations", netting agreements, master netting agreements, collateral agreements and/or credit support agreements or annexes relating thereto (including all related schedules, exhibits, annexes and confirmations) and any transactions thereunder, as may be amended, restated or supplemented from time to time, with existing or new Counterparties after the Petition Date in the ordinary course of business without further order of the Court and to engage in Trading Activities pursuant thereto; and

c. enter into Master Netting Agreements (as such term is defined in section 101 of the Bankruptcy Code).

5. With respect to each Counterparty, the Debtor are hereby authorized to:

a. pending assumption or rejection of the Prepetition Trading Contracts, perform all obligations arising under Prepetition Trading Contracts, including, but not limited to, the (i) making of all payments when due, including without limitation, payments due for prepetition deliveries, postpetition deliveries on account of Existing Positions, postpetition deliveries on account of postpetition Trading Activities, financial product payments, or liquidated damages for failure to make or receive delivery and/or payments, (ii) providing of collateral or initial, maintenance or variation margin in connection with the Prepetition Trading Contracts, including, without limitation, postpetition market movements in respect of Prepetition Trading Contracts, and (iii) providing of collateral or initial, maintenance or variation margin or payments in advance in connection with postpetition Trading Activities; and

b. perform all obligations arising under Postpetition Trading Contracts, including, but not limited to, the (i) making of all payments when due, including without limitation, payments due for postpetition deliveries on account of postpetition Trading Activities, financial product payments, or liquidated damages for failure to make or receive delivery and/or payments, and (ii) providing of collateral or initial, maintenance or variation margin or payments in advance in connection with postpetition Trading Activities.

6. As security and assurance of the Debtor's obligations arising under Prepetition Trading Contracts and Postpetition Trading Contracts:

a. Counterparties are each hereby granted, for their own benefit, effective as of the Petition Date and without the necessity of the execution by the Debtor, or filing, of security agreements, pledge agreements, mortgages, financing statements or otherwise, pursuant to Bankruptcy Code section 364(c)(2) enforceable first-priority liens and security interests on any collateral, including, without limitation, initial, maintenance or variation margin or payments in advance and whether in the form of cash, letters of credit or otherwise provided to such Counterparty whether prior hereto, on or after the date of this Order;

b. the obligations, liabilities and indebtedness of the Debtor arising from postpetition market movements in respect of Existing Positions and postpetition Trading Activities pursuant to, or performance obligations arising under the Prepetition Trading Contracts or Postpetition Trading Contracts shall have the status of a superpriority administrative expense, in accordance with Bankruptcy Code section 364(c)(1), subject only to superpriority administrative claims granted in respect of any debtor in possession financing facility and any professional fee carve-out in respect thereof and fees due to the Office of the United States Trustee under 28 U.S.C. § 1930, and shall be paid at the prices set forth in the Prepetition Trading Contracts or Postpetition Trading Contracts;

c. Counterparties may net amounts and obligations under Prepetition Trading Contracts against amounts and obligations under other Prepetition Trading Contracts and Postpetition Trading Contracts with the Debtor and vice versa. In this regard, there shall be no distinction between transactions entered into prepetition and postpetition.

d. The Debtors and the Counterparties shall be authorized and permitted to apply any and all collateral that may have been posted prepetition to any obligations arising postpetition, regardless of whether such obligations arise under existing Prepetition Trading Contracts or new Postpetition Trading Contracts.

7. The security interests and superpriority administrative status provided by this Interim Order shall not be altered or otherwise affected by any amendment, modification, supplement, extension, renewal, restatement or refinancing of any pre or postpetition indebtedness, any rejection of a Prepetition Trading Contract nor by any action or inaction taken by any parties in respect of the collateral subject to the liens of the Counterparties.

8. If any or all of the provisions of this Interim Order are stayed, modified in a manner adverse to a Counterparty or vacated, or this Interim Order otherwise terminates, such stay,

modification, vacation or termination will not affect (a) the validity of any indebtedness, obligation or liability incurred by the Debtors to each of the Counterparties before the receipt of written notice by the Counterparties of the effective date of such stay, modification or vacation, (b) the validity or enforceability of the security interests, superpriority claims and netting and termination rights authorized or created hereby or pursuant to the Prepetition Trading Contracts, Postpetition Trading Contracts or any related documents, and (c) the rights of the Protected Counterparties to exercise remedies as set forth in the Prepetition Trading Contracts or the Postpetition Trading Contracts, as the case may be, and each Counterparty shall be entitled to the benefits of the provisions of section 364(e) of the Bankruptcy Code.

9. To the extent that the value of Prepetition Collateral (including, with respect to letters of credit, the face amount of the letter of credit) held by a Counterparty exceeds the aggregate amount of obligations owing by a Debtor to such Counterparty on account of Existing Positions (including amounts owing on account of postpetition market movements), such excess value may be used to secure all obligations owing by the Debtor to such Counterparty on account of the Debtor's prepetition or postpetition Trading Activities pursuant to the terms of the Prepetition Trading Contracts or the Postpetition Trading Contracts, provided that any further excess shall be returned to the Debtors under the terms of the relevant contract. To the extent that the Prepetition Collateral is insufficient to secure a Debtor's obligations to any one or more Counterparties under the Prepetition Trading Contracts, and/or a Debtor is required to post collateral under a Postpetition Trading Contract, the Debtors individually and/or collectively are authorized to provide additional collateral to secure such obligations, whether arising prepetition or postpetition, to all Counterparties without further order of the Court.

10. Any bank that has issued a letter of credit prior to the Petition Date may extend or replace such letter of credit in its discretion; provided, however, that such extension or replacement shall not change, alter, or otherwise modify the priority or characterization of such bank's claim against the Debtors arising in connection with the letter of credit and any and all claims arising under an extended or replacement letter of credit shall have the priority and character as if the extended or replacement letter of credit was issued prior to the Petition Date.

11. Except as may otherwise be set forth in a Prepetition Assurance Agreement or a Postpetition Assurance Agreement:

    a.    any Counterparty entering into new transactions postpetition under Prepetition Trading Contracts or Postpetition Trading Contracts knowingly with a Debtor on or after the second business day following written notice of the entry of this Interim Order shall be deemed to have accepted the benefits and protections of this Interim Order, and, upon actual notice and delivery of a signed copy of the Interim Order, such Counterparties shall be deemed to have waived the contractual right to cause the liquidation, termination or acceleration of a commodity contract or forward contract as such terms as used in section 556 of the Bankruptcy Code, or liquidation, termination or acceleration of a swap agreement as such terms are used in section 560 of the Bankruptcy Code, or termination, liquidation, acceleration or offset under a master netting agreement as such terms are used in section 561 of the Bankruptcy Code, each because of a condition of the kind specified in section 365(e)(1) of the Bankruptcy Code; provided, however, that such waiver as it relates to such Counterparty shall be deemed null and void and without further effect in the event that (i) a Debtor delivers written notice to a Counterparty of the Debtors' intent to reject a Prepetition Trading Contract pursuant to section 365 of the Bankruptcy Code, (ii) the Debtors fail to meet any margin or collateral requirements or otherwise fail to make any payments pursuant to the terms of any Prepetition Trading Contract or Postpetition Trading Contract, or (iii) the Interim Order is stayed, modified in a manner adverse to a Counterparty or vacated, or otherwise terminates. Each of the events listed in clauses (i), (ii) and (iii) immediately above shall be deemed to be a condition of the kind specified in section 365(e)(1) of the Bankruptcy Code;

    b.    with respect to any Counterparty, service by fax, by-hand delivery or overnight courier of a signed copy of this Interim Order shall be deemed good and sufficient written notice of the entry of this Interim Order.

11

12. In the event that a Debtor delivers a Rejection Notice to a Counterparty, solely with respect to such Counterparty on and after receipt by the Counterparty of the Rejection Notice, the Debtor shall not be required to (a) make any additional payments in respect of prepetition deliveries or Existing Positions, and/or (b) provide any additional collateral or initial, maintenance or variation margin; provided that nothing in this paragraph limits the Counterparty's rights as a result of the Debtor's failure to make such payment or provide such collateral or margin. With respect to any Counterparty, service by fax, by-hand delivery or overnight courier of a Rejection Notice shall be deemed good and sufficient written notice of the Rejection Notice.

13. Notwithstanding anything to the contrary, in the event that a Debtor delivers a Rejection Notice to a Counterparty or this Court otherwise enters an order authorizing the rejection of a Prepetition Trading Contract pursuant to section 365 of the Bankruptcy Code, the determination of any settlement payments or termination payments owing under such Prepetition Trading Contract shall be made pursuant to the terms of the Prepetition Trading Contract and measured as of the date such contract is actually terminated.

14. Solely with respect to Protected Counterparties, the automatic stay provisions of section 362 of the Bankruptcy Code are hereby vacated and modified to the extent necessary to allow immediate and unconditional enforcement of remedies by any Protected Counterparty upon the occurrence of any default under the Prepetition Trading Contracts or Postpetition Trading Contracts (as may be modified by the Prepetition Assurance Agreements or Postpetition Assurance Agreements as the case may be) by the Debtors, and the Counterparties' rights thereunder shall not be modified, stayed, avoided or otherwise limited by order of the Bankruptcy Court or any court proceeding under the Bankruptcy Code. The Debtors waive the

right and shall not seek relief, including without limitation under section 105(a) of the Bankruptcy Code, to the extent that any such relief would in any way restrict or impair the rights of any Protected Counterparty under the Prepetition Trading Contracts (as amended by a Prepetition Assurance Agreement or Postpetition Assurance Agreement), Postpetition Trading Contracts or this Order; provided that such waiver shall not preclude the Debtors from contesting whether a default has occurred under any Prepetition Trading Contract or Postpetition Trading Contract.

15. To the extent that a Counterparty causes the liquidation or termination of a Prepetition Trading Contract and/or Postpetition Trading Contract pursuant to the terms hereof, any margin or collateral held by the Counterparty shall be applied first to satisfy the Debtor's prepetition obligations owing under such contracts and second to satisfy the Debtor's postpetition obligations owing under such contracts.

16. Nothing shall preclude a Counterparty from executing a Postpetition Assurance Agreement at any time, in which case the Postpetition Assurance Agreement shall control and such Counterparty shall be deemed to be a Protected Counterparty.

17. The Prepetition Assurance Agreements, the Postpetition Assurance Agreements and the provisions of this Interim Order shall be binding upon the Debtors, the Counterparties and their respective successors and assigns (including any trustees appointed for the Debtors' estates) and inure to the benefit of the Counterparties and Debtors (including, without limitation, any trustees hereafter appointed for the Debtors' estates in a proceeding under Chapters 11 or 7 of the Bankruptcy Code) and their respective successors and assigns.

18. Notwithstanding any other provisions in this Order, the benefits and protections of this Interim Order shall be extended to all Existing Positions and future Trading Activities,

regardless of whether the transaction matures after the expiration of this Interim Order or termination or liquidation of any Prepetition Trading Contract or Postpetition Trading Contract.

19. The provisions of this Interim Order shall remain in effect for 55 days after the entry of this Interim Order and without prejudice to any other party to seek relief from this Interim Order.

20. Nothing in this Interim Order shall be construed as authorizing or approving the Debtors' assumption of any executory contracts.

21. Nothing contained herein shall affect the enforceability of, and the Debtors' obligations to abide by and comply with, any and all bylaws, rules and regulations of any exchange on which the Debtors engage in Trading Activities, all of which remain in full force and effect with respect to the Debtors, the Counterparties, the Trading Activities, the Existing Positions, the Prepetition Trading Contracts, the Postpetition Trading Contracts, the Prepetition Assurance Agreements, the Prepetition Collateral, and the Postpetition Assurance Agreements. In enforcing such bylaws, rules and regulations, each exchange may avail itself of any and all remedies provided to such exchange by such bylaws, rules and regulations. The automatic stay of section 362 of the Bankruptcy Code is hereby modified to the extent necessary to effectuate the provisions of this paragraph.

22. Nothing contained herein shall constitute a representation, warranty, or other endorsement of the Debtors' financial solvency or ability to consummate or fulfill any Prepetition Trading Contracts or Postpetition Trading Contracts by any exchange on which the Debtors engage in Trading Activities, all of which representations, warranties and endorsements are specifically disavowed. No such exchange shall be held liable to any Counterparty for

14

damages as a result of the Debtors' breach of, or inability to consummate or fulfill, any Prepetition Trading Contracts or Postpetition Trading Contracts.

23. The Court has scheduled a Final Hearing on January 25, 2006 at 10:00 a.m., to consider the entry of a final order authorizing the relief requested by the Motion.

24. The Debtors shall, within three business days following the entry of this Interim Order, mail copies of this Interim Order and a notice of the final hearing on the Motion, to (a) the United States Trustee for the Southern District of New York; (b) the Debtors' [80] largest unsecured creditors on a consolidated basis, as identified in their Chapter 11 petitions; (c) counsel to the administrative agents for the Debtors' prepetition secured lenders; (d) counsel to the Ad Hoc Committees; (e) the indenture trustees pursuant to the Debtors' secured indentures; (f) counsel to the Debtors' proposed postpetition lenders; (g) the Securities and Exchange Commission; (h) the Internal Revenue Service; (i) the United States Department of Justice; (j) the Counterparties, (k) any exchange on which the Debtors execute trades, and (l) all parties who appeared or otherwise responded to the relief requested herein. The notice of the entry of this Interim Order shall state that any party in interest objecting to the relief granted in this Interim Order being entered as a final order shall file written objections with the United States Bankruptcy Court for the Southern District of New York no later than seven (7) Business Days before the date set for the Final Hearing on this matter, which objections shall be served so that the same are received on or before 4:00 p.m. (Prevailing Eastern Time) of such date by: (x) counsel to the Debtors, Kirkland & Ellis LLP, Citigroup Center, 153 East 53rd Street, New York, NY 10022-4611, Attn: Robert G. Burns, (y) Calpine, 4160 Dublin Blvd., Dublin, CA 94568-7755; Attn: Nancy L. Murray and (z) the Office of the United States Trustee for the Southern District of New York.

25. The relief granted herein shall continue to apply to any of the Debtors' affiliates and their respective estates that subsequently commence Chapter 11 cases without the need for any further requests or motions.

Dated: December 21, 2005
       New York, New York

                                            /s/Burton R. Lifland
                                            United States Bankruptcy Judge