UNITED STATES BANKRUPTCY COURT

SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| In re<br><br>CALPINE CORPORATION, et al.,<br><br>Debtors. | Chapter 11<br><br>Case No. 05-60200(BRL)<br>Jointly Administered |

**INTERIM ORDER (I) AUTHORIZING DEBTORS TO OBTAIN POST-PETITION FINANCING PURSUANT TO 11 U.S.C. §§105, 361, 362, 364(c)(1), 364(c)(2), 364(c)(3), AND 364(e) AND (II) SCHEDULING FINAL HEARING PURSUANT TO BANKRUPTCY RULES 4001(B) AND (C)**

Upon the motion (the "**Motion**"), filed upon date of the commencement of these cases (the "**Petition Date**"), of Calpine Corporation, a Delaware corporation (the "**Borrower**"), and each of the direct and indirect domestic subsidiaries of the Borrower[1] (the "**Guarantors**" and each a "**Guarantor**"), each a debtor and debtor-in-possession (together with the Borrower, the "**Debtors**" and individually a "**Debtor**"), in the above-captioned cases (the "**Cases**") pursuant to sections 105, 361, 362, 363(c)(2), 364(c)(1), 364(c)(2), 364(c)(3) and 364(e) of title 11 of the United States Code, 11 U.S.C. §§101, et seq. (the "**Bankruptcy Code**"), and Rules 2002, 4001 and 9014 of the Federal Rules of Bankruptcy Procedure (the "**Bankruptcy Rules**"), seeking, among other things:

(1) authorization for the Debtors to obtain post petition financing (the "**Financing**"), on a joint and several basis, up to the aggregate principal amount of $2,000,000,000 (the actual available principal amount at any time being subject to those conditions set forth in the DIP Documents (as defined below)), pursuant

---

[1] The Guarantors are all Debtor subsidiaries of the Borrower.

022537-0132-08741-NY03.2487650.6

to a credit facility from, Credit Suisse ("**CS**") and Deutsche Bank Securities, Inc. ("**DBSI**") as joint lead arrangers, joint book-runners, joint syndication agents, and as joint documentation agents, Deutsche Bank Trust Company Americas ("**DB**"), as administrative agent for the First Priority Lenders (as defined in the DIP Documents), (in such capacity and including any successors, the "**First Priority Agent**"), CS, as administrative agent for the Second Priority Term Lenders (as defined in the DIP Documents) (in such capacity and including any successors, the "**Second Priority Agent**" and together with the First Priority Agent, the "**Agents**"), a syndicate of financial institutions (together with CS and DB and including the fronting and issuing banks for the letters of credit, the "**DIP Lenders**") and DB as Collateral Agent ("**Collateral Agent**") for the DIP Lenders.

(2)  authorization for the Debtors to execute and enter into the DIP Documents and to perform such other and further acts as may be required in connection with the DIP Documents;

(3)  the granting of certain superpriority claims to the DIP Lenders payable from, and having recourse to, all pre-petition and post-petition property of the Debtors' estates and all proceeds thereof (including, upon entry of a Final Order (as defined below), any proceeds of Avoidance Actions (as defined below)) ((which is an "**Extraordinary Provision**") under General Order No. M-274 of the United States Bankruptcy Court for the Southern District of New York (the "**General Order**")), in each case subject to the Carve Out (as defined below);

2

(4)  the limitation (effective upon entry of a Final Order) of the Debtors' right to surcharge against collateral pursuant to section 506(c) of the Bankruptcy Code, which is an Extraordinary Provision under the General Order;

(5)  pursuant to Bankruptcy Rule 4001, that an interim hearing (the "**Interim Hearing**") on the Motion be held before this Court to consider entry of the proposed interim order annexed to the Motion (the "**Interim Order**") authorizing the Borrower, on an interim basis, to forthwith borrow or obtain letters of credit from the DIP Lenders under the DIP Documents up to an aggregate principal or face amount not to exceed $500,000,000 (subject to any limitations of borrowings under the DIP Documents); and

(7)  that this Court schedule a final hearing (the "**Final Hearing**") to be held within 30 days of the entry of the Interim Order to consider entry of a final order (the "**Final Order**") authorizing the balance of the borrowings and letter of credit issuances under the DIP Documents on a final basis, as set forth in the Motion and the DIP Documents filed with this Court.

Due and appropriate notice of the Motion, the relief requested therein and the Interim Hearing having been served by the Debtors on the eighty largest unsecured creditors of each of the Debtors, on the Agents, the Collateral Agent, the DIP Lenders, and on the United States Trustee for the Southern District of New York.

The Interim Hearing having been held by this Court on December 21, 2005.

Upon the record made by the Debtors at the Interim Hearing and after due deliberation and consideration and sufficient cause appearing therefor;

IT IS FOUND, DETERMINED, ORDERED AND ADJUDGED, that:

3

1.      *Jurisdiction*.  This Court has core jurisdiction over the Cases, this Motion, and the parties and property affected hereby pursuant to 28 U.S.C. §§157(b) and 1334.  Venue is proper before this Court pursuant to 28 U.S.C. §§ 1408 and 1409.

2.      *Notice*.  Under the circumstances, the notice given by the Debtors of the Motion and the Interim Hearing constitutes due and sufficient notice thereof and complies with Bankruptcy Rules 4001(b) and (c).

3.      *Findings Regarding the Financing.*

   (a)   Good cause has been shown for the entry of this Interim Order.

   (b)   The Debtors have an immediate need to obtain the Financing in order to permit, among other things, the orderly continuation of the operation of their businesses, to maintain business relationships with vendors, suppliers, carriers and customers, to make payroll, to make capital expenditures and to satisfy other working capital and operational needs.  The ability of the Debtors to obtain sufficient working capital and liquidity through the incurrence of new indebtedness for borrowed money and other financial accommodations is vital to the preservation and maintenance of the going concern values of the Debtors and to a successful reorganization of the Debtors.

   (c)   The Debtors are unable to obtain financing from sources other than the DIP Lenders on more favorable terms than under the DIP Documents and are unable to obtain adequate unsecured credit allowable under section 503(b)(1) of the Bankruptcy Code as an administrative expense.  The Debtors are also unable to obtain secured credit allowable under sections 364(c)(1), 364(c)(2) and 364(c)(3) of the Bankruptcy Code without the Debtors granting to the Collateral Agent, the Agents and the DIP Lenders, subject to the Carve Out as provided

4

for herein, the DIP Liens and the Superpriority Claims (as defined below) under the terms and conditions set forth in this Order and in the DIP Documents.

(d)  The terms of the Financing are fair and reasonable, reflect the Debtors' exercise of prudent business judgment consistent with their fiduciary duties and are supported by reasonably equivalent value and fair consideration.

(e)  The Financing has been negotiated in good faith and at arm's length between the Debtors, the Collateral Agent, the Agents and the DIP Lenders, and all of the Debtors' obligations and indebtedness arising under, in respect of or in connection with the Financing and the DIP Documents, including without limitation, (i) all loans made to, and all letters of credit issued for the account of, the Borrower and the other Debtors pursuant to the Credit Agreement substantially in the form attached as Exhibit A to the Motion (the "**DIP Credit Agreement**"), and (ii) any "**Obligations**" (as defined in the DIP Credit Agreement), including credit extended in respect of overdrafts and related liabilities and other depository, treasury, cash management services and other services (including, without limitation, automated clearing house transfer of funds services), any hedging obligations of the Debtors permitted under the DIP Credit Agreement (including pursuant to any Swap Agreement (as defined in the DIP Credit Agreement)) in each case provided by either Agent any DIP Lender or its of their respective affiliates (all of the foregoing in clauses (i) and (ii) collectively, the "**DIP Obligations**"), shall be deemed to have been extended by the Agents and the DIP Lenders and their affiliates in good faith, as that term is used in section 364(e) of the Bankruptcy Code and in express reliance upon the protections offered by section 364(e) of the Bankruptcy Code, and shall be entitled to the full protection of section 364(e) of the Bankruptcy Code in the event that this Order or any provision hereof is vacated, reversed or modified, on appeal or otherwise.

5

(f)     The Debtors have requested entry of this Order pursuant to Bankruptcy Rules 4001(b)(2) and 4001(c)(2).  Absent granting the relief sought by this Order, the Debtors' estates will be immediately and irreparably harmed.  Consummation of the Financing in accordance with this Order and the DIP Documents is therefore in the best interest of the Debtors' estates.

4.     *Authorization of the Financing and the DIP Documents.*

(a)     The Debtors are hereby authorized to enter into the DIP Documents.  The Debtors are hereby authorized to borrow and obtain letters of credit pursuant to the DIP Credit Agreement up to an aggregate principal or face amount of $500,000,000 (plus interest, fees and other expenses provided for in the DIP Documents), in accordance with the terms of this Order and the DIP Documents, which shall be used for all purposes permitted under the DIP Documents, including, without limitation, to provide working capital for the Debtors and for other general corporate purposes, and to pay interest, fees and expenses in accordance with this Order and the DIP Documents.  In addition to such amounts and obligations, the Debtors are authorized to incur overdrafts and related liabilities arising from, treasury, depository and cash management services or in connection with any automated clearing house fund transfers provided to or for the benefit of the Debtors by DB, CS or any of its or their affiliates, and hedging obligations (including pursuant to Swap Agreements) permitted pursuant to the terms of the DIP Credit Agreement; *provided, however*, that nothing herein shall require CS, DB or any other party to incur overdrafts or to provide any such services or functions to the Debtors or to enter into any Swap Agreements with the Debtors.

(b)     In furtherance of the foregoing and without further approval of this Court, each Debtor is authorized, directed and obligated in accordance with the terms of the DIP

6

Documents to do and perform all acts, to make, execute and deliver all instruments and documents (including, without limitation, the execution or recordation of security agreements, mortgages and financing statements), and to pay all fees, that may be reasonably required or necessary for the Debtors' performance of their obligations under Financing, including, without limitation:

(i) the execution, delivery and performance of the Loan Documents (as defined in the DIP Credit Agreement) and any exhibits attached thereto, including, without limitation, the DIP Credit Agreement and the Security and Pledge Agreement (as defined in the DIP Credit Agreement) (collectively, and together with the letter agreement referred to in clause (ii) below, the "**DIP Documents**"),

(ii) the execution, delivery and performance of one or more amendments to the DIP Credit Agreement for, among other things, the purpose of adding additional financial institutions as DIP Lenders and reallocating the commitments for the Financing among the DIP Lenders, in each case in such form as the Debtors, the Agents and the DIP Lenders may agree (it being understood that no further approval of the Court shall be required for amendments to the DIP Credit Agreement that do not shorten the maturity of the extensions of credit thereunder or increase the commitments, the rate of interest or the letter of credit fees payable thereunder). Notwithstanding any other provision hereof, without further approval of this Court, amendments to the DIP Documents may be made as contemplated by the letter agreement between the Borrower, the Agents, DBSI, CS and DB (permitting modifications to the DIP Credit Agreement necessary or advisable to ensure successful syndication, including, without limitation, increasing the interest rate, or fees to market),

7

(iii) the non refundable payment to the Agents, the Collateral Agent, CS and DBSI as the case may be, of the fees referred to in the DIP Credit Agreement (and in the separate letter agreements between them and the Borrower in connection with the Financing) and reasonable costs and expenses as may be due from time to time, including, without limitation, reasonable fees and expenses of the professionals retained as provided for in the DIP Documents, and

(iv) the performance of all other acts required under or in connection with the DIP Documents.

(c) Upon execution and delivery of the DIP Documents, the DIP Documents shall constitute valid and binding obligations of the Debtors, enforceable against each Debtor party thereto in accordance with the terms of the DIP Documents. No obligation, payment, transfer or grant of security under the DIP Documents or this Order shall be stayed, restrained, voidable, or recoverable under the Bankruptcy Code or under any applicable law (including without limitation, under section 502(d) of the Bankruptcy Code), or subject to any defense, reduction, recoupment, setoff or counterclaim.

5. *Superpriority Claims.*

(a) Pursuant to section 364(c)(1) of the Bankruptcy Code, all of the DIP Obligations shall constitute allowed claims against the Debtors with priority over any and all administrative expenses, diminution claims and all other claims against the Debtors, now existing or hereafter arising, of any kind whatsoever, including, without limitation, all administrative expenses of the kind specified in sections 503(b) and 507(b) of the Bankruptcy Code, and over any and all administrative expenses or other claims arising under sections 105, 326, 328, 330, 331, 503(b), 506(c), 507(a), 507(b), 726, 1113 or 1114 of the Bankruptcy Code

8

(the "**Superpriority Claims**"), which allowed claims shall be payable from and have recourse to all pre- and post-petition property of the Debtors and all proceeds thereof (including, upon entry of a Final Order, proceeds of Avoidance Actions), subject only to the payment of the Carve Out to the extent specifically provided for herein.

(b)  For purposes hereof, the "**Carve Out**" means an amount which shall be used to pay (i) unpaid fees and expenses of professionals retained by the Debtors or any official committee (each a "**Committee**") appointed in accordance with section 1102 of the Bankruptcy Code that are (a) incurred prior to the occurrence and continuance of an Event of Default (as defined in the DIP Credit Agreement) and (b) allowed by the Bankruptcy Court, at any time, under sections 105(a), 330 and 331 of the Bankruptcy Code or otherwise, (ii) unpaid fees and expenses of professionals retained by the Debtors or any Committee up to an amount not to exceed $25,000,000 that (a) are incurred after the occurrence and during the continuance of an Event of Default and (b) allowed by the Bankruptcy Court, at any time, under sections 105(a), 330 and 331 of the Bankruptcy Code or otherwise, (iii) in the event of a conversion of the Cases, the reasonable fees and expenses of a chapter 7 trustee under section 726(b) of the Bankruptcy Code in an amount not exceeding $2,000,000, and (iv) fees required to be paid to the Clerk of the Bankruptcy Court and to the Office of the United States Trustee under section 1930 (a), Title 28, United States Code, *provided* however that the Carve Out shall not include any fees or expenses incurred in challenging the DIP Liens or claims of the Collateral Agent, the Agents or the DIP Lenders (it being understood that, in the event of a liquidation of the Borrower's and the other Debtor's estates an amount equal to the Carve-Out shall be reserved from the proceeds of such liquidation, or from cash held in the estates at such time, and held in a segregated account prior to the making of the distributions).  For clarity, the Agents and DIP Lenders agree that so long

9

as no Event of Default shall have occurred and be continuing, the Debtors shall be permitted to pay compensation and reimbursement of fees and expenses allowed and payable under 11 U.S.C. §§ 105(a), 330, and 331, as the same may be due and payable, and neither such amounts nor any retainers paid to the professionals retained by the Debtors or any Committee, nor any fees, expenses, indemnities or other amounts paid to the Collateral Agent, any Agents, any DIP Lender or their respective attorneys and agents under the DIP Credit Agreement, shall reduce the Carve-Out, *provided,* that nothing herein shall be construed to impair the ability of any party to object to any of the fees, expenses, reimbursement or compensation described in clauses (ii) and (iii) above, and *provided, further*, that cash or other amounts on deposit in the L/C Cash Collateral Account shall not be subject to the Carve Out.

6. *DIP Liens*. As security for the DIP Obligations, effective and perfected upon the Petition Date and without the necessity of the execution, recordation of filings by the Debtors of mortgages, security agreements, control agreements, pledge agreements, financing statements or other similar documents, the following security interests and liens are hereby granted to the Collateral Agent for its own benefit and the benefit of the Agents and DIP Lenders (all property identified in clauses (a), (b) and (c) below being collectively referred to as the "**Collateral**"), subject, only in the event of the occurrence and during the continuance of an Event of Default or a Default, to the payment of the Carve Out (all such liens and security interests granted to the Collateral Agent, for its benefit and for the benefit of the Agents and DIP Lenders, pursuant to this Order and the DIP Documents, the "**DIP Liens**"):

(a) <u>First Lien on Cash Balances and Unencumbered Property</u>. Pursuant to section 364(c)(2) of the Bankruptcy Code, the Collateral Agent is hereby granted (for the benefit of itself, the Agents and the DIP Lenders) a valid, binding, continuing, enforceable, fully-

10

perfected first priority senior security interest in and lien upon all pre- and post-petition property of the Debtors, whether existing on the Petition Date or thereafter acquired, that, on or as of the Petition Date is not subject to valid, perfected and non-avoidable liens (collectively, "**Unencumbered Property**"), including without limitation, all cash and cash collateral of the Debtors (whether maintained with the Collateral Agent an Agent or otherwise and including without limitation all cash in the Concentration Account (as defined in the DIP Credit Agreement) and any investment of such cash and cash collateral, inventory, accounts receivable (including, without limitation, any receivables payable to Calpine Energy Services L.P.), other rights to payment whether arising before or after the Petition Date, contracts, properties, plants, equipment, general intangibles, documents, instruments, interests in leaseholds, real properties, patents, copyrights, trademarks, trade names, other intellectual property, capital stock of subsidiaries, all property purportedly assigned or pledged as collateral by any Debtor to secure any intercompany obligations to the extent any such assignment or pledge shall not have been duly perfected as of the Petition Date and the proceeds of all the foregoing *provided that* no Debtor shall be required to pledge to the Collateral Agent (i) in excess of 65% of the voting capital stock of its direct foreign subsidiaries or any of the capital stock or interests of its indirect foreign subsidiaries if adverse tax consequences would result to the Borrower from such pledge, or (ii) its assets including capital stock of a Subsidiary of such Debtor (including without limitation, the limited liability company interests of Geysers Power Company LLC and the capital stock of Silverado Geothermal Resources, Inc.) to the extent that such pledge is prohibited by the Leveraged Lease Documents (as defined in the DIP Credit Agreement) in effect on the date hereof.  Prior to the entry of a Final Order, Unencumbered Property shall exclude the Debtors' claims and causes of action under sections 502(d), 544, 545, 547, 548, 549

11

and 550 of the Bankruptcy Code, or any other avoidance actions under the Bankruptcy Code (collectively, "**Avoidance Actions**"), but, upon entry of a Final Order, shall include any proceeds or property recovered, unencumbered or otherwise the subject of successful Avoidance Actions.

(b)    Liens Junior to Certain Other Liens.  Pursuant to section 364(c)(3) of the Bankruptcy Code, the Collateral Agent (for the benefit of itself the Agents and the DIP Lenders) is hereby granted valid, binding, continuing, enforceable, fully-perfected security interests in and liens upon all pre and post petition property of the Debtors (other than the property described in clauses (a) or (b) of this paragraph 6, as to which the liens and security interests in favor of the Collateral Agent will be as described in such clauses), whether now existing or hereafter acquired, that is subject to valid, perfected and unavoidable liens in existence immediately prior to the Petition Date or to valid and unavoidable liens in existence immediately prior to the Petition Date that are perfected subsequent to the Petition Date as permitted by section 546(b) of the Bankruptcy Code or to Permitted Liens (as defined in the DIP Credit Agreement), which security interests and liens in favor of the Collateral Agent are junior to such valid, perfected and unavoidable liens.

(c)    Liens Senior to Certain Other Liens.  The DIP Liens shall not be subject or subordinate to (i) any lien or security interest that is avoided and preserved for the benefit of the Debtors and their estates under section 551 of the Bankruptcy Code or (ii) any liens arising after the Petition Date.

7.    *Protection of DIP Lenders' Rights.*  The automatic stay provisions of section 362 of the Bankruptcy Code are vacated and modified to the extent necessary (i) to permit the Collateral Agent, the Agents and the DIP Lenders to exercise, upon the occurrence of an Event

12

of Default[2], all rights and remedies under the DIP Documents other than those rights and remedies against the Collateral and (ii) to permit the Collateral Agent, the Agents and the DIP Lenders to exercise, upon the occurrence and during the continuance of an Event of Default and the giving of five business days prior written notice to the Debtors, the United States Trustee for the Southern District of New York and any Committee appointed in the Cases, all rights and remedies against the Collateral provided for in the DIP Documents (including, without limitation, the right to setoff monies of the Debtors in accounts maintained with the Collateral Agent, any Agent or any DIP Lender). In any hearing regarding any exercise of rights or remedies, the only issue that may be raised by any party in opposition thereto shall be whether, in fact, an Event of Default has occurred and is continuing, and the Debtors hereby waive their right to seek relief, including, without limitation, under section 105 of the Bankruptcy Code, to the extent such relief would in any way impair or restrict the rights and remedies of the Collateral Agent, the Agents or the DIP Lenders set forth in this Order or the DIP Documents, provided that the Debtors may seek an emergency hearing before the Bankruptcy Court to determine only if an Event of Default has occurred and is continuing. In no event shall the Collateral Agent, the Agents or the DIP Lenders be subject to the equitable doctrine of "marshaling" or any similar doctrine with respect to the Collateral except as may be expressly set forth in the DIP Documents.

        8.     *Perfection of DIP Liens*.

---

[2] Events of Default include (a) a Change of Control (as such term is defined in the DIP Credit Agreement) and (b) the entry of an order or orders granting relief from the automatic stay applicable under section 362 of the Bankruptcy Code to the holder or holders of any security interest to permit foreclosure (or the granting of a deed in lieu of foreclosure or the like) or proceed against any assets of any Global Entity (as such term is defined in the DIP Credit Agreement) which have a value in excess of $2 million in the aggregate, which are both Extraordinary Provisions under the General Order.

022537-0132-08741-NY03.2487650.6

(a)     The Collateral Agent and the DIP Lenders are hereby authorized, but not required, to file or record Uniform Commercial Code financing statements, trademark filings, copyright filings, mortgages, notices of lien or similar instruments in any jurisdiction or take any other action in order to validate and perfect the liens and security interests granted to them hereunder.  Whether or not the Collateral Agent on behalf of the DIP Lenders shall, in its sole discretion, choose to file such financing statements, trademark filings, copyright filings, mortgages, notices of lien or similar instruments or otherwise confirm perfection of the liens and security interests granted to them hereunder, such liens and security interests shall be deemed valid, perfected, allowed, enforceable, non-avoidable and not subject to challenge dispute or subordination, as of the Petition Date.  Upon the request of the Collateral Agent, each of the Debtors, without any further consent of any party, is authorized to take, execute and deliver such instruments to enable the Collateral Agent to further validate, perfect, preserve and enforce DIP Liens.

(b)     A certified copy of this Order may, in the discretion of the Collateral Agent, be filed with or recorded in filing or recording offices in addition to or in lieu of such financing statements, mortgages, notices of lien or similar instruments, and all filing offices are hereby authorized to accept such certified copy of this Order for filing and recording.

(c)     Any provision of any lease or other license, contract or other agreement that requires (i) the consent or approval of one or more lessors or other parties or (ii) the payment of any fees or obligations to any governmental entity, in order for any Debtor to pledge, grant, sell, assign, or otherwise transfer any such leasehold interest, or the proceeds thereof, or other post-petition collateral related thereto, is hereby deemed to be inconsistent with the applicable provisions of the Bankruptcy Code.  Any such provision shall have no force and effect with

14

respect to the transactions granting post-petition liens, in such leasehold interest or the proceeds of any assignment and/or sale thereof by any Debtor, in favor of the DIP Lenders in accordance with the terms of the DIP Credit Agreement or this Order.

(d)    Upon the request of the Collateral Agent, each of the Borrower and the Guarantors shall enter into separate fee and leasehold mortgages in recordable form with respect to the Collateral, as applicable, on terms reasonably satisfactory to the Collateral Agent.

9.    *Preservation of Rights Granted Under the Order*.

(a)    No claim or lien having a priority superior to or *pari passu* with those granted by this Order to the Collateral Agent, the Agents and the DIP Lenders shall be granted or allowed while any portion of the Financing (or any refinancing thereof) or the Commitments thereunder or the DIP Obligations remain outstanding, and the DIP Liens shall not be (i) subject or junior to any lien or security interest that is avoided and preserved for the benefit of the Debtors' estates under section 551 of the Bankruptcy Code or (ii) subordinated to or made pari passu with any other lien or security interest, whether under section 364(d) of the Bankruptcy Code or otherwise.

(b)    Unless all DIP Obligations shall have been paid in full (and, with respect to outstanding letters of credit issued pursuant to the DIP Credit Agreement, cash collateralized in accordance with the provisions of the DIP Credit Agreement), the Debtors shall not seek, and it shall constitute an Event of Default if any of the Debtors seek, or if there is entered, (i) any modifications or extensions of this Order without the prior written consent of each Agent, and no such consent shall be implied by any other action, inaction or acquiescence by either or both Agents, (ii) an order converting any of the Cases to a case under chapter 7 of the Bankruptcy

15

Code or (iii) an order dismissing any of the Cases.  If an order dismissing any of the Cases under section 1112 of the Bankruptcy Code or otherwise is at any time entered, such order shall provide (in accordance with sections 105 and 349 of the Bankruptcy Code), to the fullest extent permitted by law, that (x) the Superpriority Claims, priming liens, security interests and replacement security interests granted to the Collateral Agent, the Agents and the DIP Lenders pursuant to this Order shall continue in full force and effect and shall maintain their priorities as provided in this Order until all DIP Obligations shall have been paid and satisfied in full in cash (and that such Superpriority Claims, priming liens and replacement security interests, shall, notwithstanding such dismissal, remain binding on all parties in interest) and (y) this Court shall retain jurisdiction, notwithstanding such dismissal, for the purposes of enforcing the claims, liens and security interests referred to in (x) above.

(c) If any or all of the provisions of this Order are hereafter reversed, modified, vacated or stayed, such reversal, stay, modification or vacation shall not affect (i) the validity of any DIP Obligations incurred prior to the actual receipt of written notice by each Agent of the effective date of such reversal, stay, modification or vacation or (ii) the validity or enforceability of any lien or priority authorized or created hereby or pursuant to the DIP Credit Agreement with respect to any DIP Obligations.  Notwithstanding any such reversal, stay, modification or vacation, any DIP Obligations incurred by the Debtors to the Agents or the DIP Lenders, prior to the actual receipt of written notice by each Agent of the effective date of such reversal, stay, modification or vacation shall be governed in all respects by the original provisions of this Order, and the Agents and DIP Lenders shall be entitled to all the rights, remedies, privileges and benefits granted in section 364(e) of the Bankruptcy Code, this Order and pursuant to the DIP Documents with respect to all DIP Obligations.

16

(d) Except as expressly provided in this Order or in the DIP Documents, the DIP Liens, the Superpriority Claims and all other rights and remedies of the Collateral Agent, the Agents and the DIP Lenders granted by the provisions of this Order and the DIP Documents shall survive, and shall not be modified, impaired or discharged by (i) the entry of an order converting any of the Cases to a case under chapter 7, dismissing any of the Cases, terminating the joint administration of these Cases or by any other act or omission, or (ii) the entry of an order confirming a plan of reorganization in any of the Cases and, pursuant to section 1141(d)(4) of the Bankruptcy Code, the Debtors have waived any discharge as to any remaining DIP Obligations and such waiver is hereby approved.  The terms and provisions of this Order and the DIP Documents shall continue in these Cases, in any successor cases if these Cases cease to be jointly administered, or in any superceding chapter 7 cases under the Bankruptcy Code, and the DIP Liens, the Superpriority Claims and all other rights and remedies of the Collateral Agent, the Agents and the DIP Lenders granted by the provisions of this Order and the DIP Documents shall continue in full force and effect until the DIP Obligations are indefeasibly paid in full.

10. *Limitation on Use of Financing Proceeds and Collateral*.  Notwithstanding anything herein or in any other order by this Court to the contrary, no borrowings, letters of credit, Collateral or the Carve Out may be used to (a) object, contest or raise any defense to, the validity, perfection, priority, extent or enforceability of any amount due under the DIP Documents, or the liens or claims granted under this Order or the DIP Documents, (b) assert any Claims or Defenses or causes of action against the Collateral Agent, any Agent or the DIP Lenders or their respective agents, affiliates, representatives, attorneys or advisors, (c) prevent, hinder or otherwise delay the Collateral Agent's assertion, enforcement or realization on the Collateral in accordance with the DIP Documents or this Order, (d) seek to modify any of the

17

rights granted to the Collateral Agent, the Agents or the DIP Lenders hereunder or under the DIP Documents, in each of the foregoing cases without such parties' prior written consent, (e) pay any professional fees and disbursements incurred in connection with any of the actions described in the foregoing clauses (a) through (d) and (f) pay any amount on account of any claims arising prior to the Petition Date unless such payments are (i) approved by an Order of this Court and (ii) in accordance with the Budget (as defined in the DIP Credit Agreement) as approved by the Agents in their sole discretion.

11. *New Debtors.* The DIP Liens, Superpriority Claims, rights, benefits and privileges of the Collateral Agent, the Agents and the DIP Lenders granted pursuant to this Order and as more fully set forth herein shall attach and be enforceable against the bankruptcy estate of any Debtor's direct or indirect subsidiary which hereafter becomes a debtor in these procedurally consolidated cases automatically and without further court order on an interim basis and, subject to entry of a final order on notice, on a final basis. Except as may be provided in such final order, such subsidiary shall be deemed a "Debtor" hereunder effective as of the date such subsidiary files a petition and becomes a debtor in these cases.

12. *Order Governs.* In the event of any inconsistency between the provisions of this Order and the DIP Documents, the provisions of this Order shall govern.

13. *Binding Effect; Successors and Assigns.* The DIP Documents and the provisions of this Order, including all findings herein, shall be binding upon all parties in interest in these Cases, including, without limitation, the Collateral Agent, the Agents, the DIP Lenders, any Committee appointed in these Cases, and the Debtors and their respective successors and assigns (including any estate representative or any chapter 7 or chapter 11 trustee hereinafter appointed or elected for the estate of any of the Debtors) and shall inure to the benefit of the Collateral

Agent, the Agents, the DIP Lenders, and the Debtors and their respective successors and assigns *provided*, *however*, that the Agent and the DIP Lenders shall have no obligation to extend any financing to any chapter 7 trustee or similar responsible person appointed for the estates of the Debtors.  In determining to make any loan under the DIP Credit Agreement or in exercising any rights or remedies as and when permitted pursuant to this Order or the DIP Documents, the Collateral Agent, the Agents and the DIP Lenders shall not be deemed to be in control of the operations of the Debtors or to be acting as a "responsible person" or "owner or operator" with respect to the operation or management of the Debtors (as such terms, or any similar terms, are used in the United States Comprehensive Environmental Response, Compensation and Liability Act, 29 U.S.C. §§ 9601 et seq. as amended, or any similar federal or state statute).

14.     *Notice of Intent to Seek Waiver of Claims Under 11 U.S.C. § 506(c)*.  Notice is hereby given that at the Final Hearing the Debtors shall seek a waiver of all claims under section 506(c) of the Bankruptcy Code such that, except to the extent of the Carve Out, no expenses of administration of the Cases or any future proceeding or case that may result therefrom, including liquidation in bankruptcy or any other proceedings under the Bankruptcy Code, shall be charged against or recovered from the Collateral pursuant to section 506(c) of the Bankruptcy Code or any similar principle of law, without the prior written consent of the Collateral Agent and no such consent shall be implied from any other action, inaction, or acquiescence by the Collateral Agent or the DIP Lenders.

15.     *Notice of Intent to Seek Liens on and Superpriority Claims to Avoidance Actions*. Notice is hereby given that at the Final Hearing the Debtors shall seek to grant to the Collateral Agent on behalf of the DIP Lenders a superpriority claim to (pursuant to section 364(c)(1) of the Bankruptcy Code) and a first priority senior security interest in and lien upon (pursuant to

19

section 364(c)(2) of the Bankruptcy Code) the proceeds of any Avoidance Actions, including, without limitation, any property that is subject to an asserted pre-petition lien that is thereafter avoided by the Debtors or any other party in interest.

16.     *Final Hearing*.  The Final Hearing is scheduled for January 25, 2006 at 10:00 a.m. before this Court.

The Debtors shall promptly mail copies of this Order to the parties having been given notice of the Interim Hearing, and to any other party that has filed a request for notices with this Court and to any Committee after the same has been appointed, or Committee counsel, if the same shall have been appointed.  Any party in interest objecting to the relief sought at the Final Hearing shall serve and file written objections; which objections shall be served upon (a) Kirkland Ellis LLP, Attn: Mathew Cantor, Esq., and Edward Sassower, Esq., attorneys for the Debtors; (b) Simpson Thacher & Bartlett LLP, Attn: Peter Pantaleo, Esq. and David Mack, Esq., attorneys for DB and CS as Agents, (c) the Office of the United States Trustee for the Southern District of New York, and (d) counsel to any Committee appointed in these Chapter 11 cases, and shall be filed with the Clerk of the United States Bankruptcy Court, Southern District of New York, in each case to allow actual receipt by the foregoing no later than January 19, 2006 at 4:00 p.m., prevailing Eastern time.

Dated:  December 21, 2005
       New York, New York

                                             /s/Burton R. Lifland_____
                                             UNITED STATES BANKRUPTCY JUDGE