**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| ) | |
| In re: ) | |
| ) | Chapter 11 |
| Calpine Corporation., <u>et al.</u>, ) | |
| ) | Case No. 05-60200 (BRL) |
| Debtors. ) | Jointly Administered |
| ) | |

## INTERIM ORDER AUTHORIZING USE OF CASH COLLATERAL

This matter comes on for an interim hearing (the "Interim Hearing") pursuant to that certain motion filed by the above-captioned debtors (collectively, the "Debtors") seeking, in part, entry of (I) an interim order (a) authorizing the Debtors to obtain postpetition financing pursuant to 11 U.S.C. §§ 105, 361, 362, 364(c)(1), 364(c)(2), 364(c)(3) and 364(e), and (b) scheduling a final hearing pursuant to Federal Rules of Bankruptcy Procedure 4001(b) and (c); (II) an interim order (a) authorizing the Debtors to (1) utilize cash collateral of certain prepetition lenders pursuant to 11 U.S.C. §§ 361, 362 and 363, and (2) provide adequate protection, and (b) scheduling a final hearing pursuant to Federal Rules of Bankruptcy Procedure 4001(b) and (c); (III) a final order, substantially in the form of the Interim DIP Order with the requisite conforming changes authorizing the Debtors to (a) obtain postpetition financing pursuant to 11 U.S.C. §§ 105, 361, 362, 364(c)(1), 364(c)(2), 364(c)(3) and 364(e), and (b) assume the Option Agreement pursuant to 11 U.S.C. §§ 365(a) and consummate the transactions contemplated thereby pursuant to § 363(b) and (c) assume the Agnews Lease Documents pursuant to 11 U.S.C. § 365(a); and (IV) a final order authorizing the Debtors to (a) utilize cash collateral of certain prepetition lenders pursuant to 11 U.S.C. §§ 361, 362 and 363, and (b) provide adequate protection (the "Motion"). Based upon the information presented to this Court at the Interim Hearing on the Motion, and upon review of the Motion itself, it appears as follows:

1.      The Debtors' first lien debt is comprised of the $785,000,000 9.625% First Priority Senior Secured Notes due 2014, issued by Calpine Corporation ("Calpine") pursuant to that certain Indenture (the "Calpine First Lien Indenture"), dated as of September 30, 2004, between Calpine and Wilmington Trust Company (the "First Lien Trustee"), as Trustee (the "Calpine First Lien Indenture," and the holders thereof, the "Calpine First Lien Holders").

2.      The Calpine First Lien Indenture is collaterally secured by first priority liens upon and security interests in (i) substantially all of the properties and assets owned by Calpine directly (the "Calpine Corp. Collateral"), including: (a) the stock and equity interests of Calpine's first-tier domestic subsidiaries including, without limitation, Calpine International Holdings, Inc., Calpine Operations Management Company, Inc., Calpine Fuels Corporation, Calpine Power Company, Calpine Finance Company, Calpine Administrative Services, Inc. Calpine Energy Holdings, Inc., Calpine Northbrook Corporation of Maine, Inc. and Androscoggin Energy, Inc., (b) certain oil and gas reserves and natural gas assets located in the United States (most of which has been sold in accordance with the Calpine First Lien Indenture) and certain power plant assets and (c) certain intercompany notes issued by Calpine to its subsidiaries, but excluding in each case the Excluded Assets (as defined in the Calpine First Lien Indenture) and (ii) 65% of the stock of Calpine Canada Energy Ltd. ("CCEC").   Other than CCEC, the Calpine Corp. Collateral does not include equity interests of any indirect subsidiary of Calpine, including, without limitation, the equity interests of Thermal Power Company, Geysers Power I Company and Geysers Power Company II, LLC.   In addition, all of the cash and cash equivalents owned by Calpine (other than cash held in deposit accounts up to $50.0 million in the aggregate, the "Calpine Corp. Cash Collateral") are "cash collateral" of the Calpine First Lien Holders as defined in section 363(a) of the Bankruptcy Code.

3.     Calpine's second lien debt is comprised of (i) the $500,000,000 Second Priority Senior Secured Floating Rate Notes Due 2007, (ii) the $1,150,000,000 8.50% Second Priority Senior Secured Notes due 2010, (iii) the $900,000,000 Second Priority 8.75% Senior Secured Notes due 2013, in each case issued by Calpine pursuant to certain indentures, dated as of July 16, 2003, between Calpine and Wilmington Trust Company, as Trustee, (iv) the $400,000,000 9.875% Second Priority Senior Secured Notes due 2011, issued by Calpine pursuant to certain Indenture, dated as of November 18, 2003, between Calpine and Wilmington Trust Company, as Trustee and (v) the $750,000,000 Senior Secured Term Loans due 2007, issued pursuant to that certain Credit Agreement, dated as of July 16, 2003, among Calpine, as borrower, Goldman Sachs Credit Partners, L.P., as sole lead arranger, sole bookrunner and administrative agent and the various co-arrangers, managing agents and lenders named therein (collectively, the "Calpine Second Lien Debt," and the holders thereof, the "Calpine Second Lien Holders," and the Calpine Second Lien Holders, collectively with the Calpine First Lien Holders, the "Calpine Corp. Lienholders").

4.     The Calpine Second Lien Debt is secured by second priority liens on and security interests in the Calpine Corp. Collateral.  In addition, the Calpine Second Lien Holders have a second priority lien on the Calpine Corp. Cash Collateral, including the approximately $400 million (the "Designated Asset Sale Proceeds") currently on deposit in a segregated cash collateral account (the "Control Account") at Union Bank of California, N.A. pursuant to the Designated Asset Sale Proceeds Agreement, dated as of July 16, 2003, among Calpine Corporation, Union Bank of California, N.A. (the "Depositary Agent") and the Bank of New York.

3

5.      Calpine Generating Company, LLC; KIAC Partners; Nissequogue Cogen Partners; Bethpage Energy Center 3, LLC; Calpine Monterey Cogeneration, Inc.; Calpine Greenleaf, Inc.; Calpine Gilroy Cogen, L.P.; Geysers Power Company, LLC; O.L.S. Energy-Agnews, Inc.; Tiverton Power Associates Limited Partnership; MEP Pleasant Hill, LLC; South Point Energy Center, LLC; Broad River Energy LLC and RockGen Energy LLC, collectively with the affiliates that comprise the project groups of each of the foregoing, in each case that are Debtors in the Chapter 11 Cases, shall henceforth be referred to as the "Project Debtors," and each individually as a "Project Debtor."

6.      As is customary in project financings, the agreements evidencing indebtedness of the Project Debtors (such agreements, collectively with all related security, depositary and other agreements, the "Project Loan Documents") to project lenders (collectively, the "Project Lenders") impose restrictions on the Project Debtors' use of project revenues (such restrictions, the "Cash Waterfall Provisions").   Generally, the Cash Waterfall Provisions require that project revenues be allocated in a specified order of priority to various purposes including, without limitation, to fund (a) operations and maintenance, (b) payment of principal and interest under the Project Loan Documents and (c) various reserve accounts, in each case prior to becoming available to dividend to parent entities or for other allocation (all cash other than the cash available to dividend or other allocation after compliance with the Cash Waterfall Provisions, the "Restricted Cash," and the cash available to dividend or other allocation, the "Unrestricted Cash").

7.      Under certain of the Project Loan Documents, upon the occurrence of an event of default, a Project Debtor may be required to allocate all revenues to repayment of outstanding indebtedness or may lose the right to allocate revenues in accordance with the Cash

Waterfall Provisions or otherwise without the prior consent of the Project Lenders.  In such a circumstance, the Project Debtor may lose the ability to fund operations and maintenance and make other critical payments necessary to its continue its operations.  In addition, under certain of the Project Loan Documents, upon the occurrence of an event of default, including an event of default triggered by the bankruptcy filing of the Project Debtor or an affiliate of the Project Debtor, a Project Debtor may lose the right to dividend Unrestricted Cash up to its parent entities.  Moreover, under certain of the Project Loan Documents, upon the occurrence of an event of default, the right of the Project Debtor to make payments to its affiliates for goods or services (typically operations and maintenance fees and services, but sometimes also payments for power or gas) may be restricted or eliminated entirely.

8.     Good cause has been shown for the entry of this Interim Order, as an immediate and critical need exists for the Debtors to be permitted access to funds to continue to operate their businesses.  Without such funds, the Debtors will not be able to, among other things, (i) permit the orderly continuation of the operation of their businesses, (ii) maintain business relationships with vendors, suppliers and customers, (iii) make payroll, (iv) make capital expenditures and (v) satisfy other working capital and operational needs. The Calpine Corp. Cash Collateral use arrangement authorized hereunder is vital to avoid immediate and irreparable harm to the Debtors' estates.  Absent the use of the Calpine Corp. Cash Collateral, the Debtors' estates would not have necessary funds to satisfy their respective obligations.

9.     In addition, in order to continue their operations and preserve liquidity, the Project Debtors need to be able to (a) allocate the Restricted Cash in accordance with any applicable Cash Waterfall Provisions and (b) dividend or otherwise allocate the Unrestricted

Cash, in each case notwithstanding the existence of an event of default under the Project Loan Documents triggered by the commencement of these chapter 11 cases.

10.    The use of the Calpine Corp. Cash Collateral, the Restricted Cash in accordance with applicable Cash Waterfall Provisions, the Unrestricted Cash and the adequate protection arrangements authorized hereunder are fair and reasonable under the circumstances, reflect the Debtors' exercise of prudent business judgment and are supported by reasonably equivalent value and fair consideration.

11.    Due and appropriate notice of the Motion, the relief requested therein and the Interim Hearing has been served by the Debtors.

12.    The Debtors have requested immediate entry of this Interim Order pursuant to rule 4001 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"). The Court concludes that entry of this Interim Order allowing the Debtors the use of the (i) Calpine Corp. Cash Collateral, (ii) the Restricted Cash in accordance with applicable Cash Waterfall Provisions and (iii) the Unrestricted Cash is in the best interests of the Debtors and their estates and creditors as its implementation will, among other things, allow for the continued operation of the Debtors' existing businesses.

**ACCORDINGLY, IT IS HEREBY ORDERED, ADJUDGED, DECREED AND, AS APPLICABLE, STIPULATED:[1]**

13.    Subject to the terms and conditions of this Interim Order, the Debtors are hereby authorized as of the date of the entry of this Interim Order and until the occurrence of a Termination Event (as defined below) to (i) use the Calpine Corp. Cash Collateral (except that

---

[1]    Findings of fact shall be construed as conclusions of law, and conclusions of law shall be construed as findings of fact, pursuant to Bankruptcy Rule 7052.

the Designated Asset Sale Proceeds shall not be used as provided in Section 14(b) hereof) (a) to

pay the Debtors' ordinary and necessary business expenses, (b) to pay expenses related to the

administration of the Debtors' estates and their chapter 11 cases and (c) as otherwise authorized

and approved by this Court, (ii) use the Restricted Cash in accordance with any applicable Cash

Waterfall Provisions (notwithstanding the existence of any event of default triggered under the

Project Loan Documents by the commencement of these chapter 11 cases by, or the insolvency

of, the Project Debtors or any affiliates of the Project Debtors) and (iii) to allow the Project

Debtors to dividend Unrestricted Cash to their parent entities or otherwise allocate

(notwithstanding the existence of any event of default triggered under the Project Loan

Documents by the commencement of these chapter 11 cases by, or the insolvency of, the Project

Debtors or any affiliates of the Project Debtors).

14.    As adequate protection, which this Court finds is reasonable and necessary

(i) to protect the Calpine First Lien Holders' interest in the Calpine Corp. Collateral during these

Chapter 11 Cases, including the use of the Calpine Corp. Cash Collateral, pursuant to sections

361 and 363(e) of the Bankruptcy Code, (ii) for any diminution in value, from the use of the

Calpine Corp. Collateral and (iii) for the imposition of the automatic stay pursuant to section 362

of the Bankruptcy Code, the Court approves the following:

(a)    The Calpine First Lien Holders are hereby granted valid, binding and

enforceable first priority replacement security interests in and replacement liens on the Calpine

Corp. Collateral (exclusive of any avoidance actions available to the bankruptcy estates of the

Debtors pursuant to sections 544, 545, 547, 548, 549, 550, 553(b) or 724(a) of the Bankruptcy

Code or the proceeds thereof), and such replacement liens and replacement security interests

(collectively, the "First Replacement Liens") shall be equal to the extent of the aggregate

diminution in value, if any, after the commencement of the Debtors' chapter 11 cases (the "Petition Date"), of the Calpine Corp. Collateral, including the Calpine Corp. Cash Collateral, whether by use thereof or the imposition of the automatic stay pursuant to section 362 of the Bankruptcy Code; provided, however, that nothing contained herein shall constitute a waiver of any right of the First Lien Trustee to argue at the Final Hearing that it is entitled to adequate protection due to the diminution in value of its security interests and liens in the pledged stock in the first tier Calpine subsidiaries listed above which are included in the Calpine Corp. Collateral through the grant of liens in the assets of direct and indirect Calpine subsidiaries as security for the DIP Facility or of the Debtors' right to contest such argument.

(b)    The Designated Asset Sale Proceeds in the Control Account will remain in the Control Account up to and until the Final Hearing.  Prior to the Final Hearing and the Court's entry of the Final Order, the Debtors shall not be authorized to use the Designated Asset Sale Proceeds.   Notice is hereby given that at the Final Hearing, the Debtors shall seek authority pursuant to the Final Order to apply the Designated Asset Sale Proceeds to repay $400 million in principal of the Calpine First Lien Indenture; provided, however, that (i) the Debtors and the First Lien Trustee, respectively, shall reserve for a latter date all rights, arguments and objections with respect to the Calpine First Lien Holders' entitlement to receive any makewhole payment under the Calpine First Lien Indenture as a result of the payment of $400 million in principal and (ii) the First Lien Trustee reserves all claims with respect to the order entered on December 16, 2005, by the Delaware Supreme Court directing restoration of $312 million in sale proceeds to the Control  Account and the Debtors reserve their rights to oppose (or to take any other action with respect to) any such actions or claims of the First Lien Trustee.

(c)     The Debtors shall pay to the First Lien Trustee, for the benefit of the Calpine First Lien Holders, current payment of all accrued but unpaid interest (whether prepetition or postpetition) on the Calpine First Lien Indenture at the non-default contract rate set forth in the Calpine First Lien Indenture on the dates when due thereunder and all fees and disbursements (whether prepetition or postpetition) owed to the First Lien Trustee as set forth in the Calpine First Lien Indenture on the dates when due thereunder.

(d)     The Debtors shall pay all reasonable fees and disbursements (whether prepetition or postpetition) of counsel for and the financial advisor to the First Lien Trustee (whether incurred prepetition or postpetition).

15.     As adequate protection, which this Court finds is reasonable and necessary (i) to protect the Calpine Second Lien Holders' interest in the Calpine Corp. Collateral, including the use of the Calpine Corp. Cash Collateral, pursuant to sections 361 and 363(e) of the Bankruptcy Code, (ii) for any diminution in value from the use of the Calpine Corp. Collateral including, without limitation, the use of the Calpine Corp. Cash Collateral and (iii) for the imposition of the automatic stay pursuant to section 362 of the Bankruptcy Code, the Court approves the following:

(a)     The Calpine Second Lien Holders are hereby granted valid, binding and enforceable second priority replacement security interests in and replacement liens on the Calpine Corp. Collateral (exclusive of any avoidance actions available to the bankruptcy estates of the Debtors pursuant to sections 544, 545, 547, 548, 549, 550, 553(b) or 724(a) of the Bankruptcy Code or the proceeds thereof), and such replacement liens and replacement security interests (collectively, the "Second Replacement Liens") shall be equal to the extent of the aggregate diminution in value, if any, after the Petition Date, of the Calpine Corp. Collateral,

including the Calpine Corp. Cash Collateral, whether by use or the imposition of the automatic stay pursuant to section 362 of the Bankruptcy Code; provided, however, that the Second Replacement Liens shall be subordinate and junior to the First Replacement Liens.

(b)    The Debtors shall pay to the trustee of the Calpine Second Lien Debt (the "Second Lien Trustee"), for the benefit of the Calpine Second Lien Holders, the payment of $75,000,000 on March 31, 2006.    All parties shall reserve all rights as to the proper characterization of such payment as principal or interest until a later point in these chapter 11 cases.

(c)    The Debtors shall pay all reasonable fees and disbursements (whether prepetition or postpetition) of counsel for and the financial advisors to the ad hoc committee of the Calpine Second Lien Holders and the Second Lien Trustee.

16.    As adequate protection, which this Court finds is reasonable and necessary (i) to protect the Project Lenders' interest in collateral pledged by the Project Debtors to secure the applicable Project Debtor's obligations under the applicable Project Loan Documents (the "Project Lender Collateral"), including the use of the Restricted Cash and the Unrestricted Cash, pursuant to sections 361 and 363(e) of the Bankruptcy Code, (ii) for any diminution in value from the use of the Project Lender Collateral, including, without limitation, the use of the Restricted Cash in accordance with the applicable Cash Waterfall Provisions, the use of the Unrestricted Cash and the use of the Project Lender Collateral and (iii) for the imposition of the automatic stay pursuant to section 362 of the Bankruptcy Code, the Court approves the following:

(a)    Each Project Lender shall receive (i) current payment of all accrued but unpaid interest (whether prepetition or postpetition) under the applicable Project Loan

10

Documents at the non-default contract rate set forth under such  Project Loan Documents and reasonable professional fees (whether prepetition or postpetition) to the extent provided for under such Project Loan Documents.

(b)      The Project Debtors shall continue to comply with all provisions of the applicable Project Loan Documents, including (i) the Cash Waterfall Provisions and (ii) any provisions providing for the reasonable fees and disbursements of counsel and other consultants of the Project Lenders.

(c)      The Project Lenders are hereby granted valid, binding and enforceable replacement security interests in and replacement liens on all postpetition property and proceeds thereof of a Project Lender's particular Project Lender Collateral (exclusive of any avoidance actions available to the bankruptcy estates of the Debtors pursuant to sections 544, 545, 547, 548, 549, 550, 553(b) or 724(a) of the Bankruptcy Code or the proceeds thereof), and such replacement liens and replacement security interests (collectively, the "Project Lender Liens," and with the First Replacement Liens and the Second Replacement Liens, the "Replacement Liens") shall be equal to the extent of the aggregate diminution in value, if any, after the Petition Date, of a Project Lender's particular Project Lender Collateral, whether by use or the imposition of the automatic stay pursuant to section 362 of the Bankruptcy Code.

17.      The Replacement Liens shall constitute valid and duly perfected security interests and liens as of the Petition Date, and the First Lien Trustee, the Second Lien Trustee, any trustee of the Project Loan Documents, any Calpine Corp. Lienholder or Project Lender, as the case may be, shall not be required to file or serve financing statements, notices of lien or similar instruments which otherwise may be required under federal or state law in any

jurisdiction, or take any action, including taking possession, to validate and perfect such security interests and liens.

18.    In addition to the Replacement Liens granted to the Calpine Corp. Lienholders and the Project Lenders pursuant to this Interim Order, the Calpine Corp. Lienholders and Project Lenders are hereby granted a "superpriority" administrative claim against the respective estates as to which they hold secured claims, with respect to the Calpine Corp. Collateral or each Project Lender's particular Project Lender Collateral, as applicable, under sections 503(b)(1), 507(a) and 507(b) of the Bankruptcy Code (the "507(b) Claims") for the amount by which adequate protection afforded herein for any diminution of value of the Calpine Corp. Collateral, the Calpine Corp. Cash Collateral or the Project Lender Collateral, as applicable, from and after the Petition Date proves to be inadequate.  Such 507(b) Claims shall be allowed and shall have priority over all other costs and expenses of the kind specified in or ordered pursuant to sections 105, 326, 330, 331, 503(b), 506(c), 507(a), 507(b) or 726 of the Bankruptcy Code; provided, however, that the 507(b) Claims granted to the Calpine Corp. Lienholders and the Project Lenders shall be junior to any claims granted under sections 503(b)(1), 507(a) and 507(b) of the Bankruptcy Code to any lender of the DIP Facility by any order of this Court; provided, further, that the 507(b) Claims granted to the Calpine Second Lien Holders shall be junior to the 507(b) Claims granted claims granted to the Calpine First Lien Holders.

19.    Nothing in this Interim Order shall constitute a waiver by the Calpine Corp. Lienholders or the Project Lenders of the right to request additional adequate protection or relief or modification of the automatic stay or any other rights, claims or privileges of any kind,

and nothing in this Interim Order shall constitute a waiver of the Debtors' rights to oppose any such action by the Calpine Corp. Lienholders.

20.    Upon reasonable written notice to the Debtors by the First Lien Trustee or the Second Lien Trustee (or any Project Lender to the extent already allowed by, and subject to the terms of, the Project Loan Documents), as the case may be, such person shall have access to, and the right to examine, the Debtors' books, records and the Calpine Corp. Collateral or the Project Lender Collateral, as the case may be.  In addition, the Debtors shall provide the First Lien Trustee and the Second Lien Trustee the same financial information required to be provided to the lender under the DIP Facility in accordance with the terms of the DIP Facility or any order of this Court approving the DIP Facility.

21.    Notwithstanding anything to the contrary in this Interim Order, an event establishing grounds for expiration of the Debtors' right to use (i) the Calpine Corp. Cash Collateral, (ii) the Restricted Cash in accordance with the applicable Cash Waterfall Provisions and (iii) the Unrestricted Cash pursuant to this Interim Order (a "Termination Event") shall occur upon (a) the failure of the Debtors to make any payment required by this Interim Order, unless cured by the Debtors or waived by the applicable party by the fifth business day following the delivery of written notice to the Debtors by the applicable party asserting nonpayment, (b) the failure of the Debtors to comply with any other term or provision of this Interim Order, unless cured by the Debtors or waived by the applicable party by the fifth business day following the delivery of written notice to the Debtors by the applicable party asserting noncompliance by the Debtors with the terms of this Interim Order, (c) the conversion of Calpine's chapter 11 case to a chapter 7 case, (d) the date that is 45 days after the Petition Date if the Final Order has not been entered by such date; (e) the entry of an order in Calpine's chapter 11 case appointing an

examiner having expanded powers to operate or manage the financial affairs of any of the Debtors (beyond those set forth under sections 1106(a)(3) and (4) of the Bankruptcy Code), (f) the filing of a plan of reorganization by the Debtors, without the consent of the First Lien Trustee, that does not propose to pay in full all amounts owed by the Debtors under the Calpine First Lien Indenture; provided, however, that a Termination Event pursuant to section (f) of this paragraph shall not terminate the Project Debtors' right and ability to use the Project Lender Collateral, including the Restricted Cash and the Unrestricted Cash, pursuant to the terms of this Interim Order and (g) the termination of the Dip Facility (subject to applicable term and waiver periods).

22.    A Final Hearing is scheduled for January 25, 2006 at 10:00 a.m. before this Court.  The Debtors shall promptly mail copies of this Interim Order to the parties having been given notice of the Interim Hearing, and to any other party that has filed a request for notices with this Court and to any Committee after the same has been appointed, or Committee counsel, if the same shall have been appointed.  Any party in interest objecting to the relief sought at the Final Hearing shall serve and file written objections; which objections shall be served upon (a) Kirkland Ellis LLP, Attn:  Matthew A. Cantor, Esq. and Edward Sassower, Esq., attorneys for the Debtors; (b) the Office of the United States Trustee for the Southern District of New York, (c) counsel to the Calpine Corp. Lienholders (d) counsel to any Committee appointed in the Chapter 11 cases, (e) the Debtors' 80 largest unsecured creditors on a consolidated basis, as identified in their Chapter 11 petitions; (f) counsel to the administrative agents for the Debtors' prepetition secured lenders; (g) counsel to the ad hoc committees; (h) the indenture trustees pursuant to the Debtors' secured indentures; (i) counsel to the Debtors' proposed postpetition lenders; (j) the Securities and Exchange Commission; (k) the Internal Revenue

Service and (l) the United States Department of Justice, and shall be filed with the Clerk of the United States Bankruptcy Court, Southern District of New York, in each case to allow actual receipt by the foregoing no later than January 19, 2006 at 1:00 p.m., prevailing Eastern time.

23.    The subject of this Interim Order is a "core" proceeding within the meaning of 28 U.S.C. § 157.  This Interim Order shall be fully effective upon its entry.

SO ORDERED, ADJUDGED, DECREED AND STIPULATED, this 21st day of December, 2005.

Dated: New York, New York
       December 21, 2005

/s/Burton R. Lifland                          
UNITED STATES BANKRUPTCY JUDGE