Michael S. Stamer (MS-4900)
Philip C. Dublin (PD-4919)
AKIN GUMP STRAUSS HAUER & FELD LLP
590 Madison Avenue
New York, New York 10022-2524
(212) 872-1000 (Telephone)
(212) 872-1002 (Facsimile)

Sarah Link Schultz (TX 24033047)
AKIN GUMP STRAUSS HAUER & FELD LLP
1700 Pacific Avenue, Suite 4100
Dallas, Texas 75201
(214) 969-2800 (Telephone)
(214) 969-4343 (Facsimile)

Counsel to the Official Committee of Unsecured
Creditors of Calpine Corporation, et al.

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

---------------------------------------------------------------x
                                    :
In re:                              :    Chapter 11
                                    :
CALPINE CORPORATION, et al.,        :    Case No. 05-60200 (BRL)
                                    :
                        Debtors.    :    (Jointly Administered)
---------------------------------------------------------------x

**RESPONSE OF THE OFFICIAL COMMITTEE OF UNSECURED
CREDITORS OF CALPINE CORPORATION, ET AL. TO THE OBJECTION
OF THE FIRST LIEN TRUSTEE TO THE DEBTORS' MOTION FOR ORDER
AUTHORIZING REPAYMENT OF PRINCIPAL OF FIRST LIEN DEBT**

TO THE HONORABLE BURTON R. LIFLAND
UNITED STATES BANKRUPTCY JUDGE:

The Official Committee of Unsecured Creditors (the "Committee") of Calpine

Corporation ("Calpine") and its affiliated debtors and debtors in possession (collectively, with

Calpine, the "Debtors"), by and through its undersigned counsel, hereby submits this response

(the "Response") to the objection (the "Objection") of Law Debenture Trust Company of New

York (the "First Lien Trustee") to the Debtors' Motion for Order Authorizing Repayment of

Principal of First Lien Debt (the "Motion"). In support of this Response, the Committee respectfully submits as follows:

## INTRODUCTION

1. The Motion, which seeks authorization to (a) repay up to $646.11 million of principal of Calpine's First Lien Debt,[1] and (b) permit all parties in interest to litigate the disputed make-whole premium issue at the appropriate stage of the Debtors' reorganization cases, is not, as the First Lien Trustee has averred, an attempt to prepay or redeem unmatured debt and deprive the First Lien Trustee of its rights to seek payment of the make-whole payment. Rather, the relief requested in the Motion evidences the Debtors' compliance with their obligations to maximize the value of their estates for the benefit of their stakeholders through the *repayment* of accelerated oversecured, senior debt and the alleviation of the negative arbitrage associated with the difference between the limited interest accruing on the Collateral Account and the significant interest accruing on the First Lien Debt.

2. Notwithstanding the clear benefit repayment of the First Lien Debt will provide the Debtors' estates and the absence of any prejudice to the First Lien Noteholders, the First Lien Trustee has objected to the Motion. By its Objection, the First Lien Trustee asserts, among other things, that: (a) no provision of the Bankruptcy Code permits the Debtors to repay the First Lien Debt outside of a plan of reorganization absent obtaining the First Lien Noteholders' consent or strict compliance with the First Lien Indenture (including payment of the make-whole premium)[2]

---

[1] Terms not otherwise defined herein shall have the meanings ascribed to such terms in the Statement of the Official Committee of Unsecured Creditors of Calpine Corporation, et al. in Support of the Debtors' Motion for Order Authorizing Repayment of Principal of First Lien Notes (the "Statement") dated May 5, 2006.

[2] The adjudication of the First Lien Noteholders' alleged entitlement to collect a make-whole premium in connection with the payment requested in the Motion is not ripe for consideration by the Court at this time. See, Renne v. Geary, 501 U.S. 312, 316, 111 S.Ct. 2331, 2336, 115 L.Ed.2d 288 (1991)(stating that federal courts lack jurisdiction "unless the controversy appears affirmatively on the record")(internal citations omitted). Nonetheless,

2

(b) it is premature and improper to permit the Debtors to repay the First Lien Debt without a determination regarding the First Lien Noteholders' alleged entitlement to the make-whole premium; and (c) the Motion seeks to enjoin improperly the First Lien Trustee from prosecuting litigation concerning whether the First Lien Noteholders are entitled to collect the make-whole premium in connection with the repayment of the First Lien Debt.

3. The First Lien Trustee's Objection to the paydown of the First Lien Debt, however, is nothing more than a thinly-veiled attempt by the First Lien Trustee to take all actions (whether reasonable or unreasonable) to keep the high-yield First Lien Notes outstanding for as long as possible. The First Lien Trustee's actions should not be countenanced by this Court.

## RESPONSE

**A.    Repayment of the First Lien Debt Is Permissible Under Applicable Law**

4. The principal basis for the First Lien Trustee's Objection is that the relief requested is impermissible as a matter of law. In support of this position, the First Lien Trustee asserts the following: (a) there is no provision of the Bankruptcy Code that authorizes the Debtors to repay the First Lien Notes on the terms set forth in the Motion; (b) the relief requested is an attempt by the Debtors to modify impermissibly the First Lien Noteholders' contractual rights; (c) the relief requested in the Motion is an attempt to circumvent the plan process; and (d) the filing of the Motion was prompted by the Committee, which does not have the ability to

---

the First Lien Trustee devoted a substantial portion of the Objection to the First Lien Noteholders' purported right to collect such a payment. As set forth in the Statement, the First Lien Indenture does not entitle the First Lien Noteholders to collect a make-whole premium in connection with the repayment of the now matured First Lien Debt, which was accelerated both pursuant to the terms of the First Lien Indenture and by operation of law upon the filing of the Debtors' chapter 11 petitions. Statement at n.9. Indeed, the First Lien Indenture does not contain, among other provisions, the post-acceleration make-whole language specifically blessed by the courts in Anchor Resolution Corp. v. State St. Bank & Tr. Co. (In re Anchor Resolution Corp.), 221 B.R. 233 (Bankr. D. Del. 1998), which, in certain circumstances, permits a creditor to collect a make-whole premium following a debt's acceleration.

3

compel the Debtors to act. The First Lien Trustee is wrong with respect to each of the foregoing assertions.

5. First, section 363(b) of the Bankruptcy Code provides express authority for a court to authorize the use of estate property where such use is in a debtor's business judgment. 11 U.S.C. § 363(b)(1). To this end, principal payments on pre-petition secured debt are authorized when a significant savings to the estate will result from the payment of uncontested secured claims resulting in, among other things, a reduction in interest accrual. See, Rural Electrification Admin. v. Wabash Valley Power Ass'n, Inc. (In re Wabash Valley Power Ass'n, Inc.), 167 B.R. 885, 889 (S.D. Ind. 1994)(utilizing section 363 to approve the use of estate property to refinance pre-petition debt and lower debt service obligations). As set forth in the Motion and the Statement, the request to pay down the First Lien Debt is clearly within the purview of the Debtors' business judgment as it will, among other things, utilize available funds to eliminate the unnecessary accrual of millions of dollars in interest on the First Lien Debt.

6. Second, the Motion does not seek to modify any of the contractual rights of the First Lien Noteholders. Rather, it simply seeks to (a) repay debt that has been accelerated not only pursuant to the First Lien Indenture, but also by operation of law, and (b) defer the determination regarding the First Lien Noteholders' entitlement to collect a make-whole premium until a more appropriate time in these cases. See, infra at ¶ 14. Nevertheless, if the deferral of the make-whole issue is determined to be a modification of the First Lien Noteholders' contractual rights, Bankruptcy Code section 105 provides this Court with the authority to take such action as it deems necessary, including precluding a creditor from exercising contractual rights, in furtherance of the purposes of substantive provisions of the Bankruptcy Code. See, Holland Am. Ins. Co. v. Sportservice, Inc. (In re Cahokia Downs, Inc.),

5 B.R. 529, 532 (S.D. Ill. 1980)(holding that a bankruptcy court has broad powers over a debtor's contractual relations to permit a debtor's rehabilitation).

7.  Third, the Motion is not, as the First Lien Trustee asserts, an attempt to circumvent the plan process established by the Bankruptcy Code. Objection at ¶ 44. Unlike requests to use estate property which have been struck down as <u>sub</u> <u>rosa</u> or "creeping" plans of reorganization by other courts under the line of cases arising from <u>Pension Benefit Guar. Corp. v. Braniff Airways, Inc. (In re Braniff Airways, Inc.)</u>, 700 F.2d 935 (5th Cir. 1983), the instant Motion does not constitute such an impermissible act. The Motion does not seek to dispose of all claims against the Debtors, restrict a creditor's right to vote on a future plan of reorganization, or dispose of virtually all of the Debtors' assets "leaving 'little prospect or occasion for further reorganization'". <u>Official Comm. of Unsecured Creditors v. Cajun Elec. Power Coop., Inc. (In re Cajun Elec. Power Coop., Inc.)</u>, 119 F.3d 349, (5th Cir. 1997)(quoting <u>Braniff</u>, 700 F.2d at 940); <u>Rosenberg Real Estate Liquidity Fund III v. Air Beds, Inc. (In re Air Beds, Inc.)</u>, 92 B.R. 419, 423 (9th Cir. 1988) (<u>sub</u> <u>rosa</u> plans of reorganization generally attempt to effect the disposition of all or essentially all of a debtor in possession's assets, typically through a court sanctioned sale process). Rather, the request to repay the First Lien Debt addresses only one aspect of the Debtors' financial rehabilitation. This is far from an attempt to divest the Debtors' creditors of the rights afforded to them in connection with the disclosure statement and plan of reorganization processes. Objection at ¶ 44.

8.  Fourth, whether the Motion was filed merely at the insistence of the Committee is irrelevant. The Debtors also firmly believe that the relief requested in the Motion is in their best interests and a sound exercise of their business judgment. Such belief is evidenced not only by the Motion, but also by the Debtors' request to pay down the First Lien Debt contained in the

5

Debtors' motion to approve the DIP Facility that was filed on the Petition Date prior to the appointment of the Committee. Objection at ¶¶ 25-26. Assuming, arguendo, however, that the Motion was filed solely as the result of the Committee's insistence, in numerous different situations courts have permitted creditors, including unsecured creditors' committees, to act on behalf of the estate when the debtor has unjustifiably failed to do so. See, e.g., Smart World Techs., LLC v. Juno Online Servs., Inc. (In re Smart World), 2004 WL 1118328, at *3 (S.D.N.Y.) (finding settlement proposed by creditors over debtor's objection satisfied Bankruptcy Rule 9019); see also Glinka v. Murad (In re Housecraft Indus. U.S.A., Inc.), 310 F.3d 64, 70-71 (2d Cir. 2002) (permitting secured creditor to bring claims on behalf of the estate where debtor has unjustifiably refused to do so, or upon the consent of the debtor); Commodore Int'l, Ltd. v. Gould (In re Commodore Int'l, Ltd.), 262 F.3d 96, 100 (2d Cir. 2001) (stating that a creditors' committee may sue on behalf of a debtor upon court approval where the debtor unreasonably fails to bring suit on its claims); Unsecured Creditors of STN Enters., Inc. v. Noyes (In re STN Enters.), 779 F.2d 901, 904 (2d Cir. 1985) (holding that creditors' committee may initiate adversary proceeding in the name of the debtor if the debtor unjustifiably refuses to bring suit); In re Pilvas, 233 B.R. 1, 3-4 (Bankr. D. Mass. 1999) (permitting an appropriately designated party to bring suit on debtor's behalf where debtor unjustifiably refused to act); Glinka v. Abraham and Rose Co. Ltd., 199 B.R. 484, 493 (D. Vt. 1996) (stating that when a debtor unjustifiably refuses to act, many courts have allowed other parties in interest to pursue the action).

        9.        In sum, the relief requested in the Motion is an attempt by the Debtors to use estate assets both in accordance with sections 105(a) and 363 of the Bankruptcy Code and in the manner most prudent and beneficial to Debtors' estates and their creditors.

**B.      The Relief Requested In the Motion Is In the Best Interest of the Debtors and Their Estates**

10.    The First Lien Trustee's allegation that the Debtors have failed to establish that a paydown of the First Lien Debt, while deferring adjudication of the payment of a make-whole premium, is in the best interest of Calpine's estate is unfounded. Objection at ¶ 51. In support of this position, the First Lien Trustee contends that the Motion ignores the benefits derived from deferring the repayment of the First Lien Debt and utilizing the funds in the Control Account for other purposes. Id. at ¶¶ 51-52. Specifically, the First Lien Trustee asserts "that there are other debt issues in the Calpine capital structure" with interest rates that are higher than the First Lien Notes that the First Lien Trustee would consider allowing the Debtors to repay with the Calpine Collateral. Id. at ¶ 54. However, of the debt instruments set forth on Exhibit D to the Objection, only one, the $400 million of 9.875% Second Priority Senior Secured Notes due 2011 (the "9.875% Second Lien Debt"), is a direct obligation of Calpine secured by the Calpine Collateral. Each of the other debt instruments identified on Exhibit D is either non-recourse secured debt for which Calpine has no liability, a liability arising from a Calpine unsecured guaranty of an operating lease, a guaranty of project financing of Calpine's subsidiaries, or the debt of one of Calpine's Canadian subsidiaries.

11.    The First Lien Trustee also fails to acknowledge the interests of the Second Lien Noteholders in the Calpine Collateral and the consent of such creditors that would be needed (absent a contested adequate protection hearing) in order for the Debtors to use the funds in the Collateral Account to reduce the debt listed on Exhibit D -- consent which, upon information and belief, would not be forthcoming. Moreover, with respect to the 9.875% Second Lien Debt, it is unlikely that the other Second Lien Noteholders, who are pari passu with the holders of the

7

9.875% Second Lien Debt, would consent to the repayment of the 9.875% Second Lien Debt without a pro rata distribution.

12.     The First Lien Trustee further asserts in footnote 11 of the Objection that the plain language of the First Lien Indenture requires the Debtors to continue to pay interest on the <u>full principal amount</u> of the First Lien Debt "unless the optional redemption provisions under Section 3.05 of the First Lien Indenture is exercised <u>and</u> the required Make Whole Premium provided for therein is paid", thereby negating any benefit of a paydown.  Objection at n.11 (emphasis added). This interpretation is fatally flawed.  Indeed, under this line of thinking, the First Lien Indenture would also require Calpine to continue to pay interest on those First Lien Notes that were repurchased pursuant to the asset sale offers in 2005 because no make-whole premium was paid in connection with such repurchase.  This nonsensical interpretation is clearly not the intent of the drafters of the First Lien Indenture and is there legal authority to support such an interpretation.  Pursuant to the First Lien Indenture, Calpine is only required to continue to pay interest on the <u>outstanding</u> principal amount of the First Loan Notes.

**C.      The Debtors' Motion Furthers the Bankruptcy Code's Fundamental Purpose --
          Reorganization**

13.     The First Lien Trustee asserts that Calpine is "attempting to use their [sic] status as bankruptcy debtors [sic] to accomplish what they twice were unable to do outside of bankruptcy."  Objection at ¶¶ 1, 32.  The First Lien Trustee is correct.  Calpine is seeking to use the protections and benefits afforded a chapter 11 debtor to restructure its business operations and financial obligations for the benefit of its creditors, as was intended by Congress when it enacted the bankruptcy laws.  <u>See</u>, H.R. Rep. No. 95-595, at 220 (1978), as *reprinted in* 1978 U.S.C.C.A.N. 5963, 6180 (<u>citing Hearings on H.R. 31 and H.R. 32 Before the Subcomm. on Civil and Constitutional Rights of the House Comm. on the Judiciary</u>), 94th Cong., 1st and 2d

8

Sess., ser. 27, pt. 1, at 394-97, 436-37 (1975-76) ("When an out-of-court arrangement is inadequate to rehabilitate a business, the bankruptcy laws provide an alternative. An arrangement or reorganization accomplished under the Bankruptcy Act binds nonconsenting creditors, and permits more substantial restructuring of a debtor's finances than does an out-of-court work-out."); see also In re PSA, Inc., 335 B.R. 580, 588 (D. Del. 2005)("The Code necessarily provides debtors with protections that are not available to non-bankrupt debtors, the most basic protection being the discharge of debts that would otherwise be owed outside of bankruptcy"); In re Howell, 311 B.R. 173, 177 (Bankr. D. N.J. 2004) ("This is in part because the Bankruptcy Code gives a trustee certain rights which do not exist outside of bankruptcy."); In re Henson, 289 B.R. 741, 754 (Bankr. N.D. Cal. 2003) (The Bankruptcy Code enables a trustee to "apply sections 547 and 549 to avoid, respectively, any pre-petition preferential transfers and unauthorized post-petition transfers, which remedies are provided by the Code but not available to creditors outside of bankruptcy."). Indeed, contrary to the First Lien Trustee's allegations, it would be Calpine's failure to utilize the provisions of the Bankruptcy Code, like the ability to seek court approval to use a secured party's collateral without the secured party's consent provided in section 363, to further the Debtors' reorganization and reduce their debt obligations that would run afoul of the purposes of chapter 11.

**D      The Debtors Have Not, as Asserted In the Objection, Sought an Injunction**

14.     The First Lien Trustee devotes a substantial portion of the Objection to the argument that the Motion seeks to enjoin impermissibly the determination of the First Lien Noteholders' right to collect a make-whole premium for an indefinite period. Neither the Debtors, nor any other party, have requested such an injunction. Rather, the Debtors and the Committee are merely suggesting that at this early stage in the Debtors' reorganization, before the deadline to file proofs of claim has even passed, it is not the appropriate time to determine

9

the First Lien Noteholders' claim to a make-whole premium.  See, e.g., In re Pegasus Satellite Television, Inc., et al., United States Bankruptcy Court for the District of Maine, Case No. 04-20878 (reserving the issue of the payment of a make-whole premium to the secured lender while authorizing repayment of principal).  Rather, the First Lien Noteholders' alleged entitlement to a make-whole premium should be determined in conjunction with the resolution of all other claims.  This relief is consistent with relief regularly granted by bankruptcy courts and is in accord with applicable precedent holding that in the early phases of a chapter 11 reorganization, a debtor should have a breathing spell to get its operations and financial obligations in order.  N.L.R.B. v. Bildisco & Bildisco, 465 U.S. 513, 527, 104 S.Ct. 1188 (1984); Manville Corp. v. Equity Sec. Holders Comm. (In re Johns-Manville Corp. et al., 801 F.2d 60, 62 (2d Cir. 1986); United States Sav. Ass'n of Tex. v. Timbers of Inwood Forest Assocs., Ltd. (In re Timbers of Inwood Forest Assocs., Ltd.), 808 F.2d 363, 370 (5th Cir. 1987)(fundamental purpose of the automatic stay is to give the debtor a breathing spell and time to work constructively with its creditors to propose a plan of reorganization) (citing H.R. Rep. No. 595, 95th Cong., 2d Sess. 174, *as reprinted in* 1978 U.S.S.C.A.N. 5963, 6135).  Indeed, the latter is precisely what is intended by the relief requested in the Motion.

15.    To the extent the Court nevertheless determines that this is the appropriate time to adjudicate the First Lien Noteholders' claim for a make-whole premium, the propriety of such claim is a complex issue that must be fully briefed.  The Committee is prepared, upon the Court's request, to participate in such briefing.  The Committee would, however, respectfully submit that, in the interim, the Debtors must be allowed to pay down the First Lien Debt to

eliminate the approximately $5.2 million in interest[3] that will accrue if the Debtors are forced to wait even a mere 30 days to effectuate the paydown proposed in the Motion.

## CONCLUSION

16.     As set forth above and in the Statement, the relief requested in the Motion is clearly in the best interest of the Debtors, their estates and their creditors.  The immediate paydown of the First Lien Debt will save Calpine millions of dollars in unnecessary interest payments while reserving the issue of the payment of a make-whole premium which will allow the Debtors to focus on their reorganization efforts without prejudicing the interests of the First Lien Noteholders.

WHEREFORE, for the foregoing reasons, the Committee respectfully requests that the Court (a) grant the relief requested in the Motion, and (b) grant the Committee such other and further relief as the Court deems just, proper and equitable.

Dated:  May 9, 2006

**AKIN GUMP STRAUSS HAUER & FELD LLP**

By:  /s/  Michael S. Stamer

Michael S. Stamer (MS 4900)
Philip C. Dublin (PD-4919)
Akin Gump Strauss Hauer & Feld LLP
590 Madison Avenue
New York, New York 10022-2524
(212) 872-1000 (Telephone)
(212) 872-1002 (Facsimile)
mstamer@akingump.com
pdublin@akingump.com

---

[3]  This estimate does not give effect to claims for default interest or other amounts the First Lien Noteholders may assert under the First Lien Indenture.

11

        Sarah Link Schultz (TX – 24033047)
        Akin Gump Strauss Hauer & Feld LLP
        1700 Pacific Avenue, Suite 4100
        Dallas, Texas 75201
        (214)969-2800 (Telephone)
        (214)969-4343 (Facsimile)
        sschultz@akingump.com

        Counsel to the Official Committee of Unsecured
        Creditors of Calpine Corporation, et al.