UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

|  |  |
|---|---|
| In re: | x<br>: Chapter 11<br>: |
| CALPINE CORPORATION, et al., | : Case No. 05-60200 BRL<br>: |
| Debtors. | : (Jointly Administered)<br>:<br>x |

MONTHLY OPERATING STATEMENT FOR THE PERIOD
FROM JANUARY 1, 2006, TO JANUARY 31, 2006

DEBTOR'S ADDRESS:  50 West San Fernando Street, San Jose, California 95113

MONTHLY DISBURSEMENTS MADE BY CALPINE CORPORATION, ET AL.
AND ITS DEBTOR SUBSIDIARIES (IN THOUSANDS):      $429,192

DEBTOR'S ATTORNEY:  Kirkland & Ellis LLP
Richard M. Cieri (RC 6062)
Matthew A. Cantor (MC 7727)
David R. Seligman admitted pro hac vice
Edward O. Sassower (ES 5823)
Citigroup Center
153 East 53rd Street
New York, NY 10022-4611

MONTHLY OPERATING LOSS (IN THOUSANDS):      $370,922

REPORT PREPARER:  CALPINE CORPORATION, et al.

The undersigned, having reviewed the attached report and being familiar with the Debtor's financial affairs, verifies under penalty of perjury, that the information contained therein is complete, accurate and truthful to the best of my knowledge.

/s/ CHARLES B. CLARK, JR.
-----------------------------
Charles B. Clark, Jr.
Senior Vice President, Controller and
Chief Accounting Officer
Calpine Corporation

DATE: June 5, 2006

*Charles B Clark*
*June 5, 2006*

- 6 -

# DEFINITIONS

The following abbreviations contained herein have the meanings set forth below. Additionally, the terms, "the Company," "Calpine," "we," "us" and "our" refer to Calpine Corporation and its consolidated subsidiaries, unless the context clearly indicates otherwise. For clarification, such terms will not include the Canadian and other foreign subsidiaries that were deconsolidated as a result of the filings by the Canadian debtors under the CCAA.

| Abbreviation | Definition |
| --- | --- |
| 2005 Form 10-K | Calpine Corporation's Annual Report on Form 10-K for the year ended December 31, 2005, filed with the SEC on May 19, 2006 |
| 2014 Convertible Notes | Contingent Convertible Notes Due 2014 |
| 2015 Convertible Notes | 7 3/4% Contingent Convertible Notes Due 2015 |
| 2023 Convertible Notes | 4 3/4% Contingent Convertible Senior Notes Due 2023 |
| AICPA | American Institute of Certified Public Accountants |
| APB | Accounting Principles Board |
| Bankruptcy Code | United States Bankruptcy Code |
| Bankruptcy Courts | The U.S. Bankruptcy Court and the Canadian Court |
| Calpine Debtor(s) | The U.S. Debtors and the Canadian Debtors |
| Canadian Court | The Court of Queen's Bench of Alberta, Judicial District of Calgary |
| Canadian Debtor(s) | The subsidiaries and affiliates of Calpine Corporation that have been granted creditor protection under the CCAA in the Canadian Court |
| Cash Collateral Order | Second Amended Final Order of the U.S. Bankruptcy Court Authorizing Use of Cash Collateral and Granting Adequate Protection, dated February 24, 2006 |
| CCAA | Companies' Creditors Arrangement Act (Canada) |
| CDWR | California Department of Water Resources |
| Chapter 11 | Chapter 11 of the Bankruptcy Code |
| DIG | Derivatives Implementation Group |
| DIP | Debtor-in-possession |
| DIP Facility | The Revolving Credit, Term Loan and Guarantee Agreement, dated as of December 22, 2005, as amended on January 26, 2006, and as amended and restated by that certain Amended and Restated Revolving Credit, Term Loan and Guarantee Agreement, dated as of February 23, 2006, among Calpine Corporation, as borrower, the Guarantors party thereto, the Lenders from time to time party thereto, Credit Suisse Securities (USA) LLC and Deutsche Bank Securities Inc., as joint syndication agents, Deutsche Bank Trust Company Americas, as administrative agent for the First Priority Lenders, General Electric Capital Corporation, as Sub-Agent for the Revolving Lenders, Credit Suisse, as administrative agent for the Second Priority Term Lenders, Landesbank Hessen Thuringen Girozentrale, New York Branch, General Electric Capital Corporation and HSH Nordbank AG, New York Branch, as joint documentation agents for the first priority Lenders and Bayerische Landesbank, General Electric Capital Corporation and Union Bank of California, N.A., as joint documentation agents for the second priority Lenders, as amended |
| EITF | Emerging Issues Task Force |
| EPS | Earnings per share |
| Exchange Act | United States Securities Exchange Act of 1934, as amended |
| FASB | Financial Accounting Standards Board |

| Abbreviation | Definition |
| --- | --- |
| FERC | Federal Energy Regulatory Commission |
| First Priority Notes | 9 5/8% First Priority Senior Secured Notes Due 2014 |
| FSP | FASB staff positions |
| GAAP | Generally accepted accounting principles in the United States |
| GPC | Geysers Power Company, LLC |
| ISO | Independent System Operator |
| LSTC | Liabilities Subject to Compromise |
| MW | Megawatt(s) |
| NOL | Net operating loss |
| Non-Debtor(s) | The subsidiaries and affiliates of Calpine Corporation that are not Calpine Debtors |
| Non-U.S. Debtor(s) | The consolidated subsidiaries and affiliates of Calpine Corporation that are not U.S. Debtor(s) |
| Petition Date | December 20, 2005 |
| PPA(s) | Power purchase agreement(s) |
| SDNY Court | United States District Court for the Southern District of New York |
| SEC | United States Securities and Exchange Commission |
| Securities Act | United States Securities Act of 1933, as amended |
| SFAS | Statement of Financial Accounting Standards |
| SFAS No. 123-R | SFAS No. 123, as revised |
| SFAS No. 128-R | SFAS No. 128, as revised |
| SOP | Statement of Position |
| The Geysers | 19 Geothermal Power Plants at The Geysers in California |
| U.S. | United States of America |
| U.S. Bankruptcy Court | United States Bankruptcy Court for the Southern District of New York |
| U.S. Debtor(s) | Calpine Corporation and each of its subsidiaries and affiliates that have filed voluntary petitions for reorganization under Chapter 11 of the Bankruptcy Code in the U.S. Bankruptcy Court, which matters are being jointly administered in the U.S. Bankruptcy Court under the caption In re Calpine Corporation, et al., Case No. 05-60200 (BRL) |

CALPINE CORPORATION
(Debtor-in-Possession)
Index to Condensed Consolidated Financial Statements and Schedules

|  |  | Page |
|---|---|---|
| <S> | <C> <C> | |
| Financial Statements as of and for the Month Ended January 31, 2006: | | |
|  | Condensed Consolidated Statement of Operations................................................ | 10 |
|  | Condensed Consolidated Balance Sheet......................................................... | 11 |
|  | Notes to Condensed Consolidated Financial Statements......................................... | 12 |
| Schedules: | | |
| Schedule I | Schedule of Condensed Consolidating Balance Sheet as of January 31, 2006................... | 20 |
| Schedule II | Schedule of Condensed Consolidating Statement of Operations for the Month Ended January 31, 2006....... | 21 |
| Schedule III | Schedule of Payroll and Payroll Taxes...................................................... | 22 |
| Schedule IV | Schedule of Federal, State and Local Taxes Collected, Received, Due or Withheld............ | 23 |
| Schedule V | Schedule of Total Disbursements by Debtor.................................................. | 24 |
| Schedule VI | Insurance Statement........................................................................ | 28 |
| </TABLE> | | |

CALPINE CORPORATION
(Debtor-in-Possession)
CASE NO. 05-60200 (Jointly Administered)
CONDENSED CONSOLIDATED STATEMENT OF OPERATIONS
(Unaudited)
(In Thousands)
For the period from January 1, 2006 through January 31, 2006

<S>                                                                                        <C>           --
Total revenue....................................................................  $       470,055
Total cost of revenue............................................................          464,662
                                                                                   -----------------
    Gross profit.................................................................            5,393
Operating expenses...............................................................           14,262
                                                                                   -----------------
    Income (loss) from operations................................................           (8,869)
Interest expense, net............................................................           81,775
Other (income) expense, net......................................................           20,565
                                                                                   -----------------
    Income (loss) from continuing operations before reorganization items and income taxes......         (111,209)
Reorganization items.............................................................          260,530
Benefit for income taxes.........................................................              --
                                                                                   -----------------
    Income (loss) from continuing operations before discontinued operations and cumulative effect of a
      change in accounting principle.............................................         (371,739)
Income from discontinued operations..............................................              --
Cumulative effect of change in accounting principle, net of tax..................              817
                                                                                   -----------------
    Net income (loss)............................................................  $      (370,922)
                                                                                   =================
</TABLE>

           The accompanying notes are an integral part of these
                  condensed consolidated financial statements.

CALPINE CORPORATION
(Debtor-in-Possession)
CASE NO. 05-60200 (Jointly Administered)
CONDENSED CONSOLIDATED BALANCE SHEET
(Unaudited)
(In Thousands)
January 31, 2006

### ASSETS

Assets:

| | | |
|---|---|---:|
| Current assets | $ | 3,042,176 |
| Restricted cash, net of current portion | | 614,562 |
| Investments | | 82,031 |
| Property, plant and equipment, net | | 14,086,569 |
| Other assets | | 2,237,595 |
| Total assets | $ | 20,062,933 |

### LIABILITIES AND
### STOCKHOLDERS' DEFICIT

Liabilities not subject to compromise:

| | | |
|---|---|---:|
| Current liabilities | $ | 7,065,494 |
| Long-term debt | | 2,418,954 |
| Long-term derivative liabilities | | 855,616 |
| Other liabilities | | 652,437 |
| Liabilities subject to compromise | | 14,646,412 |
| Minority interest | | 275,384 |
| Stockholders' equity (deficit) | | (5,851,364) |
| Total liabilities and stockholders' equity (deficit) | $ | 20,062,933 |

The accompanying notes are an integral part of these
condensed consolidated financial statements.

1. Petition for Relief Under Chapter 11

On December 20, 2005 and December 21, 2005, Calpine and 254 of its wholly owned subsidiaries in the United States filed voluntary petitions for relief under Chapter 11 of the Bankruptcy Code in the U.S. Bankruptcy Court and, in Canada, 12 of its Canadian subsidiaries were granted relief in the Canadian Court under the CCAA, which, like Chapter 11, allows for reorganization under the protection of the court system. On December 27 and 29, 2005, January 8 and 9, 2006, February 3, 2006, and May 2, 2006, 19 additional wholly owned subsidiaries of Calpine commenced Chapter 11 cases in the U.S. Bankruptcy Court. The U.S. Bankruptcy Court has treated December 20, 2005 as the filing date for Calpine and its direct and indirect wholly owned subsidiaries that filed voluntary petitions at various dates in December 2005. Certain other subsidiaries could file in the U.S. or Canada in the future. The Chapter 11 cases of the U.S. Debtors are being jointly administered for procedural purposes only by the U.S. Bankruptcy Court under the case captioned In re Calpine Corporation et al., Case No. 05-60200 (BRL).

The Calpine Debtors are continuing to operate their business as debtors-in-possession under the jurisdiction of the Bankruptcy Courts and in accordance with the applicable provisions of the Bankruptcy Code, the Federal Rules of Bankruptcy Procedure, the CCAA and applicable court orders, as well as other applicable laws and rules. In general, as debtors-in-possession, each of the Calpine Debtors is authorized to continue to operate as an ongoing business, but may not engage in transactions outside the ordinary course of business without the prior approval of the applicable Bankruptcy Court.

On December 20, 2005, the U.S. Debtors entered into the $2.0 billion DIP Facility. On December 21, 2005, the U.S. Bankruptcy Court granted interim approval of the DIP Facility, but initially limited our access under the DIP Facility to $500 million under the revolving credit facility. On January 26, 2006 the U.S. Bankruptcy Court entered a final order approving the DIP Facility and removing the limitation on our ability to borrow thereunder. The syndication of the DIP Facility was closed on February 23, 2006. Deutsche Bank Securities Inc. and Credit Suisse were co-lead arrangers for the DIP Facility, which will remain in place until the earlier of an effective plan of reorganization or December 20, 2007. In connection with and as a condition to the closing, on February 3, 2006, we acquired ownership of The Geysers, which had previously been leased pursuant to a leveraged lease. We used borrowings under the DIP Facility to pay a portion of the purchase price for The Geysers and to retire certain facility operating lease and related debt obligations. The DIP Facility is secured by first priority liens on all of the unencumbered assets of the U.S. Debtors, including The Geysers, and junior liens on all of their encumbered assets. In addition, the DIP Facility was amended on May 3, 2006, to, among other things, provide us with extensions of time (i) to provide certain financial information to the DIP Facility lenders, including financial statements for the year ended December 31, 2005, and for the quarter ended March March 31, 2006 and (ii) to cause GPC to file for protection under Chapter 11 of the Bankruptcy Code. See Note 22 o f the Notes to Consolidated Financial Statements contained in the 2005 Form 10-K for further details regarding the DIP Facility.

In addition, the U.S. Bankruptcy Court approved cash collateral and adequate assurance stipulations in connection with the approval of the DIP Facility, which has allowed our business activities to continue to function. We have also sought and obtained U.S. Bankruptcy Court approval through our "first day" and subsequent motions to continue to pay critical vendors, meet our pre-petition and post-petition payroll obligations, maintain our cash management systems, collateralize certain of our gas supply contracts, enter into and collateralize trading contracts, pay our taxes, continue to provide employee benefits, maintain our insurance programs and implement an employee severance program. In addition, the U.S. Bankruptcy Court has approved certain trading notification and transfer procedures designed to allow us to restrict trading in our common stock (and related securities) which could negatively impact our accrued NOLs and other tax attributes, and granted us extensions of time to file and seek approval of a plan of reorganization and to assume or reject real property leases.

The U.S. Bankruptcy Court has established August 1, 2006 as a bar date for filing proofs of claim against the U.S. Debtors' estates and the Canadian Court has established June 30, 2006, as a bar date for filing claims against the Canadian Debtors' estates. We have not fully analyzed the validity and enforceability of any submitted proofs of claim filed against the Calpine Debtors' estates to date. In addition, because the bar dates have not yet occurred, we expect that additional proofs of claim will be filed. Accordingly, it is not possible at this time to determine the extent of the claims that may

be filed, whether or not such claims will be disputed, or whether or not such claims will be subject to discharge in the bankruptcy proceedings. Nor is it possible at this time to determine whether to establish any claims reserves. Once all applicable bar dates are established and all claims against the Calpine Debtors are filed, we will review all claims filed and begin the claims reconciliation process. In connection with the review and reconciliation process, we will also determine the reserves, if any, that may be established in respect of such claims.

Under the Bankruptcy Code, we have the right to assume, assume and assign, or reject certain executory contracts and unexpired leases, subject to the approval of the U.S. Bankruptcy Court and certain other conditions. Generally, the assumption of an executory contract or unexpired lease requires a debtor to cure certain existing defaults under the contract. Rejection of an executory contract or unexpired lease is typically treated as a breach occurring as of the moment immediately preceding the Chapter 11 filing. Subject to certain exceptions, this rejection relieves the debtor from performing its future obligations under the contract but entitles the counterparty to assert a pre-petition general unsecured claim for damages. Parties to executory contracts or unexpired leases rejected by a debtor may file proofs of claim against that debtor's estate for damages. Due to ongoing evaluation of contracts for assumption or rejection and the uncertain nature of many of the potential claims for damages, we cannot project the magnitude of these potential claims at this time. See Note 5 for further discussion of significant contracts and leases to be rejected.

At this time, it is not possible to accurately predict the effects of the reorganization process on the business of the Calpine Debtors or if and when some or all of the Calpine Debtors may emerge from bankruptcy. The prospects for future results depend on the timely and successful development, confirmation and implementation of a plan or plans of reorganization. There can be no assurance that a successful plan or plans of reorganization will be proposed by the Calpine Debtors, supported by the Calpine Debtors' creditors or confirmed by the Bankruptcy Courts, or that any such plan or plans will be consummated. The ultimate recovery, if any, that creditors and equity security holders receive will not be determined until confirmation of a plan or plans of reorganization. No assurance can be given as to what values, if any, will be ascribed in the bankruptcy cases to the interests of each of the various creditor and equity or other security holder constituencies, and it is possible that the equity interests in or other securities issued by Calpine and the other Calpine Debtors will be restructured in a manner that will substantially reduce or eliminate any remaining value of such equity interests or other securities, or that certain creditors may ultimately receive little or no payment with respect to their claims. Whether or not a plan or plans of reorganization are approved, it is possible that the assets of any one or more of the Calpine Debtors may be liquidated.

As a result of our bankruptcy filings and the other matters described herein, including the uncertainties related to the fact that we have not yet had time to complete and have approved a plan of reorganization, there is substantial doubt about our ability to continue as a going concern. Our ability to continue as a going concern, including our ability to meet our ongoing operational obligations, is dependent upon, among other things: (i) our ability to maintain adequate cash on hand; (ii) our ability to generate cash from operations; (iii) the cost, duration and outcome of the restructuring process; (iv) our ability to comply with our DIP Facility agreement and the adequate assurance provisions of the Cash Collateral Order and (v) our ability to achieve profitability following a restructuring. These challenges are in addition to those operational and competitive challenges faced by us in connection with our business. In conjunction with our advisors, we are working to design and implement strategies to ensure that we maintain adequate liquidity and will be able to continue as a going concern. However, there can be no assurance as to the success of such efforts.

With the consent of the Office of the U.S. Trustee and the Official Committee of Unsecured Creditors, the Debtors do not intend to file a monthly operating statement for December 2005. Financial information related to December 2005 is included in our 2005 Form 10-K that was filed with the SEC on May 19, 2006.

2. Basis of Presentation

The accompanying condensed consolidated financial statements have been prepared on a going concern basis, which assumes continuity of operations and realization of assets and satisfaction of liabilities in the ordinary course of business, and in accordance with SOP 90-7, "Financial Reporting by Entities in Reorganization Under the Bankruptcy Code." The condensed consolidated financial statements do not include any adjustments that might be required should we be unable to continue to operate as a going concern. In accordance with SOP 90-7, all pre-petition liabilities subject to compromise have been segregated in the condensed consolidated balance sheets and classified as LSTC, at the estimated amount of allowable claims. Interest expense related to pre-petition LSTC has been reported only to the extent that it will be paid during the pendency of the bankruptcy cases and is not expected to be an allowable claim. Liabilities not subject to compromise are separately

- 13 -

classified as current or noncurrent. Expenses, provisions for losses resulting from reorganization and certain other items directly related to our bankruptcy case are reported separately as reorganization expenses due to bankruptcy.

The Monthly Operating Statement is limited in scope, covers a limited time period, and has been prepared solely for the purpose of complying with the monthly reporting requirements of the U.S. Bankruptcy Court. Certain of our Canadian subsidiaries were granted relief by the Canadian Court under the CCAA. As a result, certain of our Canadian and other foreign subsidiaries were deconsolidated as of December 20, 2005. Financial information regarding such deconsolidated subsidiaries is not part of the consolidated group included in the Monthly Operating Statement. The financial information in the Monthly Operating Statement is preliminary and unaudited and does not purport to show the financial statements of any of the U.S. Debtors in accordance with GAAP, and therefore may exclude items required by GAAP, such as certain reclassifications, eliminations, accruals, valuations and disclosure items. We caution readers not to place undue reliance upon the Monthly Operating Statement. There can be no assurance that such information is complete and the Monthly Operating Statement may be subject to revision. The Monthly Operating Statement is in a format required by the Bankruptcy Code and should not be used for investment purposes. The Monthly Operating Statement should be read in conjunction with the consolidated financial statements and notes thereto included in the 2005 Form 10-K that was filed with the SEC on May 19, 2006.

The unaudited financial statements contained in the Monthly Operating Statement have been derived from the books and records of the Company. This information, however, has not been subject to procedures that would typically be applied to financial information presented in accordance with GAAP, and upon the application of such procedures, we believe that the financial information could be subject to changes, and these changes could be material. The information furnished in this Monthly Operating Statement includes primarily normal recurring adjustments but does not include all of the adjustments that would typically be made for quarterly financial statements in accordance with GAAP. In addition, certain information and footnote disclosures normally included in financial statements prepared in accordance with GAAP have been condensed or omitted.

Per agreement between the Company, the Office of the U.S. Trustee and the Committee of Unsecured Creditors, the Statements of Cash Flows will be excluded from Monthly Operating Reports except on a quarterly basis.

3. Summary of Significant Accounting Policies

See Note 2 "Summary of Significant Accounting Policies" in the Notes to Consolidated Financial Statements included in our 2005 Form 10-K for a summary of the accounting policies that we believe are significant to us.

4. New Accounting Pronouncements

SFAS No. 123-R and Related FSPs

In December 2004, FASB issued SFAS No. 123-R, which revises SFAS No. 123, and supersedes APB Opinion No. 25 and its related implementation guidance. This statement requires a public entity to measure the cost of employee services received in exchange for an award of equity instruments based on the grant-date fair value of the award (with limited exceptions), which must be recognized over the requisite service period (usually the vesting period) during which an employee is required to provide service in exchange for the award. The statement applies to all share-based payment transactions in which an entity acquires goods or services by issuing (or offering to issue) its shares, share options, or other equity instruments or by incurring liabilities to an employee or other supplier (a) in amounts based, at least in part, on the price of the entity's shares or other equity instruments or (b) that require or may require settlement by issuing the entity's equity shares or other equity instruments.

The new guidance requires the accounting for any excess tax benefits to be consistent with the existing guidance under SFAS No. 123, which provides a two-transaction model summarized as follows:

o    If settlement of an award creates a tax deduction that exceeds compensation cost, the additional tax benefit would be recorded as a contribution to paid-in-capital.

o    If the compensation cost exceeds the actual tax deduction, the write-off of the unrealized excess tax benefits would first reduce any available paid-in capital arising from prior excess tax benefits, and any remaining amount would be charged against the tax provision in the income statement.

The new guidance also amends SFAS No. 95, "Statement of Cash Flows," to require that excess tax benefits be reported as a financing cash inflow rather than as an operating cash inflow. However, the statement does not change the accounting guidance for share-based payment transactions with parties other than employees provided in SFAS No. 123 as originally issued and EITF Issue No. 96-18, "Accounting for Equity Instruments That Are Issued to Other Than

- 14 -

Employees for Acquiring, or in Conjunction with Selling, Goods or Services." Further, SFAS 123-R does not address the accounting for employee share ownership plans, which are subject to AICPA Statement of Position 93-6, "Employers' Accounting for Employee Stock Ownership Plans."

The statement applies to all awards granted, modified, repurchased, or cancelled after January 1, 2006, and to the unvested portion of all awards granted prior to that date. Public entities that used the fair-value-based method for either recognition or disclosure under SFAS No. 123 may adopt SFAS 123-R using a modified version of prospective application pursuant to which compensation cost for the portion of awards for which the employee's requisite service has not been rendered, which awards are outstanding as of January 1, 2006, must be recognized as the requisite service is rendered on or after that date. The compensation cost for that portion of those awards shall be based on the original grant-date fair value of those awards as calculated for recognition under SFAS No. 123. The compensation cost for those earlier awards shall be attributed to periods beginning on or after January 1, 2006 using the attribution method that was used under SFAS No. 123. Furthermore, the method of recognizing forfeitures must now be based on an estimated forfeiture rate and can no longer be based on forfeitures as they occur.

The effect of adopting SFAS No. 123-R has been reflected in our condensed consolidated results of operations and financial position at January 31, 2006.

SFAS No. 128-R

FASB is expected to revise SFAS No. 128, "Earnings Per Share" to make it consistent with International Accounting Standard No. 33, "Earnings Per Share," so that EPS computations will be comparable on a global basis. This proposed exposure draft, as currently written, would be effective for interim and annual periods ending after June 15, 2006 and will require restatement of prior periods diluted EPS, except that retrospective application would be prohibited for contracts that were either settled in cash prior to adoption or modified prior to adoption to require cash settlement. The proposed changes will affect the application of the treasury stock method and contingently issuable (based on conditions other than market price) share guidance for computing year-to-date diluted EPS. In addition to modifying the year-to-date calculation mechanics, the proposed revision to SFAS No. 128 would eliminate a company's ability to overcome the presumption of share settlement for those instruments or contracts that can be settled, at the issuer or holder's option, in cash or shares. Under the revised guidance, FASB has indicated that any possibility of share settlement other than in an event of bankruptcy will require a presumption of share settlement when calculating diluted EPS. The 2023 Convertible Notes and 2014 Convertible Notes contain provisions that would require share settlement in the event of conversion under certain events of default, including but not limited to a bankruptcy-related event of default. Additionally, the 2023 Convertible Notes include a provision allowing us to meet a put with either cash or shares of stock. The 2015 Convertible Notes allow for share settlement of the principal only in the case of certain bankruptcy-related events of default. Therefore, a presumption of share settlement is required for the 2014 Convertible Notes and the 2023 Convertible Notes, but is not required for the 2015 Convertible Notes. Depending on the degree to which the respective series of Convertible Notes are ultimately compromised as a result of our bankruptcy filing, the revised guidance could result in a significant increase in the potential dilution to our EPS, particularly when the price of our common stock is low, since SFAS No. 128-R requires that the more dilutive of calculations be used considering both:

- o   normal conversion assuming a combination of cash and variable number of shares; and

- o   conversion during events of default other than bankruptcy assuming 100% shares at the fixed conversion rate, or, in the case of 2023 Convertible Notes, meeting a put entirely with shares of stock.

SFAS No. 151

In November 2004, FASB issued SFAS No. 151, "Inventory Costs, an amendment of ARB No. 43, Chapter 4." This statement amends the guidance in ARB No. 43, Chapter 4, "Inventory Pricing," to clarify the accounting for abnormal amounts of idle facility expense, freight, handling costs and wasted material (spoilage). Paragraph 5 of ARB 43, Chapter 4, previously stated that "... under some circumstances, items such as idle facility expense, excessive spoilage, double freight, and rehandling costs may be so abnormal as to require treatment as current period charges. . . ." SFAS No. 151 requires those items to be recognized as a current-period charge regardless of whether they meet the criterion of "so abnormal." In addition, SFAS No. 151 requires that allocation of fixed production overheads to the costs of conversion be based on the normal capacity of the production facilities. The provisions of SFAS No. 151 are applicable to inventory costs incurred during fiscal years beginning after June 15, 2005. Adoption of this statement did not materially impact our consolidated results of operations or financial position.

SFAS No. 154

In May 2005, FASB issued SFAS No. 154, "Accounting Changes and Error Corrections." This statement replaces APB Opinion No. 20, "Accounting Changes," and FASB Statement No. 3, "Reporting Accounting Changes in Interim Financial Statements." and changes the requirements for the accounting for and reporting of a change in accounting principle. SFAS No. 154 applies to all voluntary changes in accounting principle. APB Opinion No. 20 previously required that most voluntary changes in accounting principle be recognized by including in net income for the period of the change the cumulative effect of changing to the new accounting principle. SFAS No. 154 requires retrospective application to prior periods' financial statements of changes in accounting principle, unless it is impracticable to determine either the period-specific effects or the cumulative effect of the change. When it is impracticable to determine the cumulative effect of applying a change in accounting principle to all prior periods, SFAS No. 154 requires that the new accounting principle be applied as if it were adopted prospectively from the earliest date practicable.

SFAS No. 154 also requires that a change in depreciation, amortization, or depletion method for long-lived, nonfinancial assets be accounted for as a change in accounting estimate effected by a change in accounting principle. SFAS No. 154 is effective for fiscal years beginning after December 15, 2005. Adoption of this statement did not materially impact our consolidated results of operations or financial position.

SFAS No. 155

In February 2006 FASB issued SFAS No. 155, "Accounting for Certain Hybrid Financial Instruments -- an amendment of FASB Statements No. 133 and 140," to resolve issues addressed in DIG Issue No. D1, "Application of Statement 133 to Beneficial Interests in Securitized Financial Assets." SFAS No. 155 permits fair value remeasurement for hybrid financial instruments containing embedded derivatives, clarifies that certain types of financial instruments are not subject to the requirements of SFAS No. 133, requires an evaluation of interests in securitized financial assets to determine whether an embedded derivative requires bifurcation, clarifies that concentrations of credit risk in the form of subordination are not embedded derivatives and amends SFAS No. 140 to eliminate the prohibition on a qualifying special-purpose entity from holding a derivative financial instrument that pertains to a beneficial interest other than another derivative financial instrument. SFAS No. 155 is effective for all financial instruments acquired or issued after the beginning of an entity's first fiscal year that begins after September 15, 2006. We do not expect the adoption of this statement to have a material impact on our results of operations, cash flows or financial position.

SFAS No. 156

In March 2006 FASB issued FASB Statement No. 156, "Accounting for Servicing of Financial Assets -- An Amendment of FASB Statement No. 140." The new statement addresses the recognition and measurement of separately recognized servicing assets and liabilities and provides an approach to simplify efforts to obtain hedge-like (offset) accounting. The statement also (i) clarifies when an obligation to service financial assets should be separately recognized as a servicing asset or a servicing liability, (ii) requires that a separately recognized servicing asset or servicing liability be initially measured at fair value, if practicable, (iii) permits an entity with a separately recognized servicing asset or servicing liability to choose either the amortization or fair value method for subsequent measurement and (iv) permits a servicer that uses derivative financial instruments to offset risks on servicing to report both the derivative financial instrument and related servicing asset or liability by using a consistent measurement attribute, or fair value. SFAS is effective for all separately recognized servicing assets and liabilities acquired or issued after the beginning of an entity's fiscal year that begins after September 15, 2006, with early adoption permitted. We do not expect the adoption of this statement to have a material impact on our results of operations, cash flows or financial position.

5.  Rejected Contracts

We continue to evaluate our executory contracts and real property leases in order to determine which contracts will be assumed, assumed and assigned, or rejected. Once the evaluation is complete with respect to each particular contract or lease, the applicable Calpine Debtors file the appropriate motion with the Bankruptcy Court seeking approval to assume, assume and assign, or reject the contract or lease. Pursuant to applicable orders of the U.S. Bankruptcy Court, if a Calpine Debtor seeks to reject a contract or lease, the contract or lease counterparties then have an opportunity to file objections. If an objection has been filed, the U.S. Bankruptcy Court will conduct a hearing to determine any matters raised by the objection. As of the date of this filing, the Calpine Debtors have identified the following significant contracts and leases to be rejected:

o   On December 21, 2005, we filed a motion with the U.S. Bankruptcy Court
    to reject eight PPAs and to enjoin FERC from asserting jurisdiction
    over the rejections. The U.S. Bankruptcy Court issued a temporary
    restraining order against FERC and set the matter for a hearing on
    January 5, 2006. Under most of the PPAs sought to be rejected, we are
    obligated to sell power at prices that are significantly lower than
    currently-prevailing market prices. At the time of filing the motion,
    we forecasted that it would cost us in excess of $1.2 billion if we
    were required to continue to perform under these PPAs rather than to
    sell the contracted energy at current market prices. On December 29,
    2005, certain counterparties to the various PPAs filed an action in
    the SDNY Court arguing that the U.S. Bankruptcy Court did not have
    jurisdiction over the dispute. On January 5, 2006, the SDNY Court
    entered an order that had the effect of transferring our motion
    seeking to reject the eight PPAs and our related request for an
    injunction against FERC to the SDNY Court (the U.S. Bankruptcy
    Court. Earlier, however, on December 19, 2005, CDWR, a counterparty to
    one of the eight PPAs, had filed a complaint with FERC seeking to
    obtain injunctive relief to prevent us from rejecting our PPA with
    CDWR and contending that FERC had exclusive jurisdiction over the
    matter. On January 3, 2006, FERC determined that it did not have
    exclusive jurisdiction, and that the matter could be heard by the U.S.
    Bankruptcy Court. However, despite the FERC ruling, on January 27,
    2006, the SDNY Court determined that FERC had jurisdiction over
    whether the contracts could be rejected. We appealed the SDNY Court's
    decision to the United States Court of Appeals for the Second Circuit.
    The appeal was heard on April 10, 2006 and we have not yet received a
    decision. We can not determine at this time whether the SDNY Court,
    the U.S. Bankruptcy Court or FERC will ultimately determine whether we
    may reject any or all of the eight PPAs, or when such determination
    will be made. In the meantime, three of the PPAs have been terminated
    by the applicable counterparties, and two of the PPAs are the subject
    of negotiated settlements. We continue to perform under the three PPAs
    that remain in effect.

o   On February 6, 2006, we filed a notice of rejection of our leasehold
    interests in the Rumford power plant and the Tiverton power plant with
    the U.S. Bankruptcy Court, and noticed the proposed surrender of the
    two plants to their owner-lessor. The owner-lessor has declined to
    take possession and control of the plants, which are not currently
    being dispatched but are being maintained in operating condition. Both
    the indenture trustee related to the leaseholds and the owner-lessor
    filed objections to the rejection. Additionally, the indenture trustee
    and ISO New England, Inc. filed motions to withdraw the reference of
    the rejection notice to the SDNY Court, arguing that the U.S.
    Bankruptcy Court does not have jurisdiction over the lease rejection
    dispute. We have been involved in extensive negotiations with the
    indenture trustee with respect to the surrender of possession and
    control of the two power plants and the sale of certain ancillary
    assets related to the power plants in consideration for the
    satisfaction and discharge of the indenture trustee's administrative
    claims against us in the Chapter 11 cases. On May 18, 2006, we filed a
    motion with the U.S. Bankruptcy Court seeking approval of the terms
    and conditions of a Transition Agreement to be entered into between
    us, the indenture trustee and a receiver for certain assets of the
    owner-lessor to be appointed on a motion filed with the SDNY Court by
    the indenture trustee. The hearing with respect to the appointment of
    the receiver was heard before the SDNY Court on June 5, 2006. However,
    the SDNY Court has not ruled upon such appointment. The hearing before
    the U.S. Bankruptcy Court with respect to the motion for approval of
    the Transition Agreement, and any objections thereto, and with respect
    to the Rejection Notice is currently scheduled for June 8, 2006. The
    date of such hearing is subject to change. In addition, we have been
    involved in negotiations with ISO New England, Inc. with respect to
    its objections to the rejection notice and on May 30, 2006, we filed a
    motion with the U.S. Bankruptcy Court seeking approval of the terms of
    a stipulation and settlement agreement by and among us, ISO New
    England, Inc., the receiver and the indenture trustee. The stipulation
    and settlement agreement provides for a standstill with respect to ISO
    New England, Inc.'s pending motion to withdraw the reference. The
    motion to approve the stipulation and settlement agreement is also
    scheduled to be considered by the U.S. Bankruptcy Court at the June 8,
    2006, hearing. The Rumford and Tiverton power plants represent a
    combined 530 MW of installed capacity with the output sold into the
    New England wholesale market.

o   In February 2006, we filed notices of rejection with the U.S.
    Bankruptcy Court relating to our office leases in Portland, Oregon and
    in Deer Park, Texas. In March 2006, we filed notices of rejection
    relating to our office leases in Denver and Fort Collins, Colorado and
    in Tampa, Florida. In April 2006, we filed a notice of rejection
    relating to our office lease in Atlanta, Georgia. In May 2006, we
    filed a notice of rejection relating to our office lease in Dublin,
    California. The rejection of each of the foregoing leases has been
    approved by the U.S. Bankruptcy Court. We anticipate that it is more

likely than not that we will file further notices of rejection with respect to additional office leases; in particular, we announced in April 2006 that we intend to close our Boston, Massachusetts office.

## 6. Liabilities Subject to Compromise

Liabilities Subject to Compromise -- Liabilities subject to compromise include unsecured and undersecured liabilities, including secured liabilities as to which there is uncertainty as to whether the value of the collateral securing such liabilities is less than, equals or exceeds such obligations, incurred prior to the Petition Date and exclude liabilities that are fully secured or liabilities of our subsidiaries or affiliates that have not made bankruptcy filings and other approved payments such as taxes and payroll. In accordance with SOP 90-7, "Financial Reporting by Entities in Reorganization Under the Bankruptcy Code," we ceased to accrue and recognize interest expense on liabilities subject to compromise, except that paid pursuant to the Cash Collateral Order. We are making periodic cash payments to second lien lenders through June 30, 2006, in accordance with the Cash Collateral Order. In addition, deferred financing costs and debt discounts related to LSTC were adjusted to reflect the related debt at its expected probable allowed claim amount, which resulted in the write-off of approximately $148.1 million to reorganization items. The amounts of various categories of liabilities of which we are aware that are subject to compromise are set forth below. These amounts represent our best estimates of known or potential pre-petition liabilities that are probable of resulting in an allowed claim against us in connection with the bankruptcy filings and are recorded at the estimated amount of the allowed claim which may differ from the amount for which the liability will be settled. Such claims remain subject to future adjustments. Adjustments may result from negotiations, actions of the Bankruptcy Courts, rejection of executory contracts and unexpired leases, the determination as to the value of any collateral securing claims, proofs of claim or other events. We expect that the liabilities of the Calpine Debtors could exceed the fair value of their assets, which could result in claims being paid at less than 100% of their face value, and the equity of Calpine's stockholders could be diluted or eliminated entirely. In addition, the claims bar dates -- the dates by which claims against the Calpine Debtors must be filed with the applicable Bankruptcy Court -- have been set for August 1, 2006 by the U.S. Bankruptcy Court with respect to claims against the U.S. Debtors and June 30, 2006 by the Canadian Court with respect to claims against the Canadian Debtors. Accordingly, not all potential claims would have been filed as of January 31, 2006, and we expect that additional claims will be filed against us prior to the claims bar dates; however, the amount of such claims cannot be estimated at this time. Any claims filed may result in additional liabilities, some or all of which may be subject to compromise, and the amounts of which may be material to us.

The amounts of LSTC at January 31, 2006 consisted of the following (in millions):

| | | |
|---|---|---:|
| Accounts payable and accrued liabilities | $ | 478.2 |
| Derivative liabilities | | 143.3 |
| Project financing | | 166.5 |
| Convertible notes | | 1,823.5 |
| Second priority senior secured notes | | 3,671.9 |
| Unsecured senior notes | | 1,880.0 |
| Notes payable and other liabilities -- related party | | 1,118.1 |
| Provision for allowable claims | | 5,364.9 |
| | | |
| Total liabilities subject to compromise | $ | 14,646.4 |

As a result of our bankruptcy filings, the fair value cannot be reasonably determined for the outstanding debt that is included in Liabilities Subject to Compromise on the Condensed Consolidated Balance Sheet.

## 7. DIP Facility

On December 20, 2005, Calpine Corporation, as borrower, entered into the DIP Facility with Deutsche Bank Securities, Inc. and Credit Suisse, as joint syndication agents, Deutsche Bank Trust Company Americas as administrative agent for the first priority lenders and Credit Suisse as administrative agent for the second priority lenders. The DIP Facility is guaranteed by each of the other U.S. Debtors. On January 26, 2006, the U.S. Bankruptcy Court granted final approval of the DIP Facility, and on February 23, 2006, the DIP Facility was amended and restated and the term loans were funded. On May 3, 2006, the DIP Facility was further amended.

Pursuant to the DIP Facility, and applicable orders of the U.S. Bankruptcy Court, the lenders have made available to Calpine up to $2 billion comprising a $1 billion revolving loan and letter of credit facility, a $400 million first priority term loan facility and a $600 million second priority term loan facility. The proceeds of borrowings and letters of credit issued under the DIP Facility will be used, among other things, for working capital and other general corporate purposes. A portion of the DIP Facility was used to purchase The Geysers, including the redemption of the lessor's notes. In addition, a portion

of restricted cash and borrowings under the DIP Facility were used to repay the remaining balance of the First Priority Notes in May 2006 and June 2006. As of December 31, 2005, we had outstanding borrowings of $25 million under the DIP Facility. During the month of January 2006, we repaid the $25 million previously outstanding plus the related interest and there were no additional borrowings under the DIP Facility. Accordingly, at January 31, 2006 there were no amounts outstanding under the DIP Facility. At May 31, 2006, there was $999 million outstanding under the DIP Facility term loans and nothing outstanding under the DIP Facility revolver; however, $3 million of letters of credit have been issued against the revolver.

See Note 22 of the Notes to Consolidated Financial Statements included in the 2005 Form 10-K for further discussion of the DIP Facility.

8. Reorganization Items

Reorganization items represent the direct and incremental costs of the bankruptcy cases, such as professional fees, pre-petition liability claim adjustments and losses that are probable and can be estimated related to terminated contracts. SOP 90-7 requires reorganization items to be separately disclosed. The U.S. Debtors' reorganization items consist of the following (in millions):

| | Month Ended January 31, 2006 | December 20, 2005 to January 31, 2006 |
|---|---|---|
| Provision for allowable claims........................................... | $ 232.5 | $ 4,024.0 |
| Impairment of investment in Canadian subsidiaries....................... | (0.2) | 878.9 |
| Write-off of unamortized deferred financing costs and debt discounts..... | -- | 148.1 |
| Loss on terminated contracts, net....................................... | -- | 139.4 |
| Professional fees....................................................... | 28.2 | 64.6 |
| Other reorganization items.............................................. | -- | 32.0 |
| Total reorganization items......................................... | $ 260.5 | $ 5,287.0 |

On January 16, 2006, Calpine Energy Services Canada Partnership ("CES-Canada"), a Canadian debtor, repudiated its tolling agreement with Calgary Energy Centre Limited Partnership (Calgary Energy Centre"). Calpine Corporation had guaranteed CES-Canada's performance under the tolling agreement. We determined that the $232.5 million reorganization expense related to this repudiation was properly a Q1 2006 charge under SOP 90-7, "Financial Reporting by Entities in Reorganization Under the Bankruptcy Code." This charge represents the out-of-the money value of the contract to CES-Canada and the expected allowable claim from Calgary Energy Centre to Calpine Corporation under the guarantee.

See Note 4 of the Notes to Consolidated Financial Statements included in the 2005 Form 10-K for a discussion of the Reorganization items.

CALPINE CORPORATION
(Debtor-in-Possession)
CASE No. 05-60200 (Jointly Administered)
CONDENSED CONSOLIDATING BALANCE SHEET
(Unaudited)
(In Thousands)
January 31, 2006

<TABLE>
<CAPTION>

| ASSETS | U.S. Debtors | Non-U.S. Debtors | Eliminations | Consolidated |
|---|---|---|---|---|
| <S> | <C> | <C> | <C> | <C> |
| Assets: | | | | |
| Current assets..................................... | $ 41,604,513 | $ 4,051,158 | $ (42,613,495) | $ 3,042,176 |
| Restricted cash, net of current portion............ | 459,067 | 155,495 | -- | 614,562 |
| Investments........................................ | 11,501,242 | 9,952,231 | (21,371,442) | 82,031 |
| Property, plant and equipment, net................. | 7,918,348 | 6,169,105 | (884) | 14,086,569 |
| Other assets....................................... | 6,254,606 | 949,920 | (4,966,931) | 2,237,595 |
| Total assets....................................... | $ 67,737,776 | $ 21,277,909 | $ (68,952,752) | $ 20,062,933 |
| | | | | |
| LIABILITIES AND STOCKHOLDERS' DEFICIT | | | | |
| Liabilities not subject to compromise: | | | | |
| Current liabilities................................ | $ 5,825,823 | $ 4,345,822 | $ (3,106,151) | $ 7,065,494 |
| Long-term debt..................................... | 4,209,979 | 4,116,007 | (5,907,032) | 2,418,954 |
| Long-term derivative liabilities................... | 680,141 | 175,475 | -- | 855,616 |
| Other liabilities................................. | 409,739 | 256,528 | (13,830) | 652,437 |
| Liabilities subject to compromise................. | 53,421,408 | 787 | (38,775,783) | 14,646,412 |
| Minority interest................................. | 275,384 | -- | -- | 275,384 |
| Stockholders' equity (deficit).................... | 2,915,302 | 12,383,290 | (21,149,956) | (5,851,364) |
| Total liabilities and stockholders' equity (deficit).. | $ 67,737,776 | $ 21,277,909 | $ (68,952,752) | $ 20,062,933 |

</TABLE>

Calpine Corporation's consolidated results are comprised of U.S. Debtor and Non-U.S. Debtor entities that have affiliated transactions with other U.S. Debtor and Non-U.S. Debtor entities that must be eliminated in consolidation. Amounts listed under the "Eliminations" heading are required to correctly eliminate transactions between any affiliated entities for consolidated financial statement presentation purposes.

CALPINE CORPORATION
(Debtor-in-Possession)
CASE No. 05-60200 (Jointly Administered)
CONDENSED CONSOLIDATING STATEMENT OF OPERATIONS
(Unaudited)
(In Thousands)
For the Period from January 1, 2006 to January 31, 2006

| | U.S. Debtors | Non-U.S. Debtors | Eliminations | Consolidated |
|---|---|---|---|---|
| Total revenue............................................... | $ 872,423 | $ 210,074 | $ (612,442) | $ 470,055 |
| Total cost of revenue........................................ | 916,761 | 160,348 | (612,447) | 464,662 |
| Gross profit (loss)..................................... | (44,338) | 49,726 | 5 | 5,393 |
| Operating expenses........................................... | 284,989 | (1,431) | (269,296) | 14,262 |
| Income (loss) from operations........................... | (329,327) | 51,157 | 269,301 | (8,869) |
| Interest expense, net........................................ | 52,666 | 29,109 | -- | 81,775 |
| Other (income) expense, net.................................. | 19,430 | 1,128 | 7 | 20,565 |
| Income (loss) from continuing operations before reorganization items and income taxes................. | (401,423) | 20,920 | 269,294 | (111,209) |
| Reorganization items......................................... | 260,530 | -- | -- | 260,530 |
| Benefit for income taxes .................................... | -- | -- | -- | -- |
| Income (loss) from continuing operations before discontinued operations and cumulative effect of change in accounting principle........................... | (661,953) | 20,920 | 269,294 | (371,739) |
| Income from discontinued operations......................... | -- | -- | -- | -- |
| Cumulative effect of change in accounting principle, net of tax.............................................. | 817 | -- | | 817 |
| Net income (loss)....................................... | $ (661,136) | $ 20,920 | $ 269,294 | $ (370,922) |

Calpine Corporation's consolidated results are comprised of U.S. Debtor and Non-U.S. Debtor entities that have affiliated transactions with other U.S. Debtor and Non-U.S. Debtor entities that must be eliminated in consolidation. Amounts listed under the "Eliminations" heading are required to correctly eliminate transactions between any affiliated entities for consolidated financial statement presentation purposes.

Schedule III
CALPINE CORPORATION
(Debtor-in-Possession)
CASE No. 05-60200 (Jointly Administered)
SCHEDULE OF PAYROLL AND PAYROLL TAXES
(In Thousands)
For the Period from January 1, 2006 to January 31, 2006

| Gross Wages Paid** | Employee Payroll Taxes Withheld* | Employer Payroll Taxes Remitted* |
|---|---|---|
| $ 19,457 | $ 4,836 | $ 2,129 |

\*    Employee Payroll Taxes are withheld each pay period and remitted by the Company, together with the Employer Payroll Taxes, to the appropriate tax authorities.

\*\*    Gross Wages were paid by the Company on January 6, 2006, January 13, 2006, January 20, 2006, and January 27, 2006.

CALPINE CORPORATION
(Debtor-in-Possession)
CASE No. 05-60200 (Jointly Administered)
SCHEDULE OF FEDERAL, STATE AND LOCAL TAXES
COLLECTED, RECEIVED, DUE OR WITHHELD
(In Thousands)
For the Period from January 1, 2006 to January 31, 2006

|  | Amount Withheld/Accrued | Amount Paid |
|---|---|---|
| Federal and state income taxes.............. | $ -- | $ -- |
| State and local taxes: | | |
| Property................................. | $ 6,213 | 21,252 |
| Sales and use............................ | 1,415 | 9,203 |
| Franchise................................ | -- | -- |
| Other.................................... | 54 | 54 |
| Total state and local................. | $ 7,682 | $ 30,509 |
| Total taxes......................... | $ 7,682 | $ 30,509 |

Schedule V
CALPINE CORPORATION
(Debtor-in-Possession)
CASE No. 05-60200 (Jointly Administered)
TOTAL DISBURSEMENTS BY DEBTOR
For the Month Ended January 31, 2006
(In Dollars)

<TABLE>
<CAPTION>

| Legal Entity | Case Number | Disbursements |
| --- | --- | --- |
| <S> | <C> | <C> |
| Amelia Energy Center, LP | 05-60223-BRL | $       -- |
| Anacapa Land Company, LLC | 05-60226-BRL | -- |
| Anderson Springs Energy Company | 05-60232-BRL | -- |
| Androscoggin Energy, Inc. | 05-60239-BRL | -- |
| Auburndale Peaker Energy Center, LLC | 05-60244-BRL | 1,111 |
| Augusta Development Company, LLC | 05-60248-BRL | -- |
| Aviation Funding Corp. | 05-60252-BRL | -- |
| Baytown Energy Center, LP | 05-60255-BRL | 3,840,003 |
| Baytown Power GP, LLC | 05-60256-BRL | -- |
| Baytown Power, LP | 05-60258-BRL | -- |
| Bellingham Cogen, Inc. | 05-60224-BRL | -- |
| Bethpage Energy Center 3, LLC | 05-60225-BRL | 48,347 |
| Bethpage Fuel Management Inc. | 05-60228-BRL | -- |
| Blue Heron Energy Center, LLC | 05-60235-BRL | -- |
| Blue Spruce Holdings, LLC | 05-60238-BRL | -- |
| Broad River Energy LLC | 05-60242-BRL | 2,222 |
| Broad River Holdings, LLC | 05-60245-BRL | -- |
| CalGen Equipment Finance Company, LLC | 05-60249-BRL | -- |
| CalGen Equipment Finance Holdings, LLC | 05-60251-BRL | -- |
| CalGen Expansion Company, LLC | 05-60253-BRL | -- |
| CalGen Finance Corp. | 05-60229-BRL | -- |
| CalGen Project Equipment Finance Company One, LLC | 05-60236-BRL | -- |
| CalGen Project Equipment Finance Company Three, LLC | 05-60259-BRL | -- |
| CalGen Project Equipment Finance Company Two, LLC | 05-60262-BRL | -- |
| Calpine Acadia Holdings, LLC | 05-60265-BRL | -- |
| Calpine Administrative Services Company, Inc. | 05-60201-BRL | 3,253,598 |
| Calpine Agnews, Inc. | 05-60268-BRL | -- |
| Calpine Amelia Energy Center GP, LLC | 05-60270-BRL | -- |
| Calpine Amelia Energy Center LP, LLC | 05-60272-BRL | -- |
| Calpine Auburndale Holdings, LLC | 05-60452-BRL | -- |
| Calpine Baytown Energy Center GP, LLC | 05-60453-BRL | -- |
| Calpine Baytown Energy Center LP, LLC | 05-60320-BRL | -- |
| Calpine Bethpage 3 Pipeline Construction Company, Inc. | 05-60330-BRL | -- |
| Calpine Bethpage 3, LLC | 05-60342-BRL | -- |
| Calpine c*Power, Inc. | 05-60250-BRL | -- |
| Calpine CalGen Holdings, Inc. | 05-60352-BRL | -- |
| Calpine California Development Company, LLC | 05-60355-BRL | -- |
| Calpine California Energy Finance, LLC | 05-60360-BRL | -- |
| Calpine California Equipment Finance Company, LLC | 05-60464-BRL | -- |
| Calpine Calistoga Holdings, LLC | 05-60377-BRL | -- |
| Calpine Capital Trust | 05-60325-BRL | -- |
| Calpine Capital Trust II | 05-60379-BRL | -- |
| Calpine Capital Trust III | 05-60384-BRL | -- |
| Calpine Capital Trust IV | 05-60391-BRL | -- |
| Calpine Capital Trust V | 05-60221-BRL | -- |
| Calpine Central Texas GP, Inc. | 05-60329-BRL | -- |
| Calpine Central, Inc. | 05-60333-BRL | 141 |
| Calpine Central, L.P. | 05-60351-BRL | 871,715 |
| Calpine Central-Texas, Inc. | 05-60338-BRL | -- |
| Calpine Channel Energy Center GP, LLC | 05-60340-BRL | -- |
| Calpine Channel Energy Center LP, LLC | 05-60343-BRL | -- |
| Calpine Clear Lake Energy GP, LLC | 05-60345-BRL | -- |
| Calpine Clear Lake Energy, LP | 05-60349-BRL | -- |
| Calpine Cogeneration Corporation | 05-60233-BRL | -- |
| Calpine Construction Management Company, Inc. | 05-60260-BRL | 1,562,313 |
| Calpine Corporation | 05-60200-BRL | 66,600,646 |
| Calpine Corpus Christi Energy GP, LLC | 05-60247-BRL | -- |
| Calpine Corpus Christi Energy, LP | 05-60261-BRL | -- |
| Calpine Decatur Pipeline, Inc. | 05-60263-BRL | -- |
| Calpine Decatur Pipeline, L.P. | 05-60254-BRL | -- |
| Calpine Dighton, Inc. | 05-60264-BRL | -- |
| Calpine East Fuels, Inc. | 05-60257-BRL | -- |
| Calpine Eastern Corporation | 05-60266-BRL | 221,314 |
| Calpine Energy Holdings, Inc. | 05-60207-BRL | -- |
| Calpine Energy Services Holdings, Inc. | 05-60208-BRL | -- |
| Calpine Energy Services, L.P. | 05-60222-BRL | 297,082,647 |
| Calpine Finance Company | 05-60204-BRL | -- |
| Calpine Freestone Energy GP, LLC | 05-60227-BRL | -- |
| Calpine Freestone Energy, LP | 05-60230-BRL | -- |
| Calpine Freestone, LLC | 05-60231-BRL | -- |
| Calpine Fuels Corporation | 05-60203-BRL | -- |
</TABLE>

- TABLE CONTINUES -

- 24 -

| Legal Entity | Case Number | Disbursements |
| --- | --- | --- |
| <S> | <C> | <C> |
| Calpine Gas Holdings LLC | 05-60234-BRL | -- |
| Calpine Generating Company, LLC | 05-60237-BRL | -- |
| Calpine Gilroy 1, Inc. | 05-60240-BRL | -- |
| Calpine Gilroy 2, Inc. | 05-60241-BRL | -- |
| Calpine Gilroy Cogen, L.P. | 05-60243-BRL | 2,978 |
| Calpine Global Services Company, Inc. | 05-60246-BRL | 362,563 |
| Calpine Gordonsville GP Holdings, LLC | 05-60281-BRL | -- |
| Calpine Gordonsville LP Holdings, LLC | 05-60282-BRL | -- |
| Calpine Gordonsville, LLC | 05-60283-BRL | -- |
| Calpine Greenleaf Holdings, Inc. | 05-60284-BRL | -- |
| Calpine Greenleaf, Inc. | 05-60285-BRL | 2,270 |
| Calpine Hidalgo Design, L.P. | 06-10039-BRL | -- |
| Calpine Hidalgo Energy Center, L.P. | 06-10029-BRL | 1,133,248 |
| Calpine Hidalgo Holdings, Inc. | 06-10027-BRL | -- |
| Calpine Hidalgo Power GP, LLC | 06-10030-BRL | -- |
| Calpine Hidalgo Power, LP | 06-10028-BRL | -- |
| Calpine Hidalgo, Inc. | 06-10026-BRL | -- |
| Calpine International Holdings, Inc. | 05-60205-BRL | -- |
| Calpine International, LLC | 05-60288-BRL | 24,878 |
| Calpine Investment Holdings, LLC | 05-60289-BRL | -- |
| Calpine Kennedy Airport, Inc. | 05-60294-BRL | -- |
| Calpine Kennedy Operators Inc. | 05-60199-BRL | -- |
| Calpine KIA, Inc. | 05-60465-BRL | -- |
| Calpine Leasing Inc. | 05-60297-BRL | -- |
| Calpine Long Island, Inc. | 05-60298-BRL | -- |
| Calpine Lost Pines Operations, Inc. | 05-60314-BRL | -- |
| Calpine Louisiana Pipeline Company | 05-60328-BRL | -- |
| Calpine Magic Valley Pipeline, Inc. | 05-60331-BRL | -- |
| Calpine Monterey Cogeneration, Inc. | 05-60341-BRL | -- |
| Calpine MVP, Inc. | 05-60348-BRL | -- |
| Calpine NCTP GP, LLC | 05-60359-BRL | -- |
| Calpine NCTP, LP | 05-60406-BRL | -- |
| Calpine Northbrook Corporation of Maine, Inc. | 05-60409-BRL | -- |
| Calpine Northbrook Energy Holdings, LLC | 05-60418-BRL | -- |
| Calpine Northbrook Energy, LLC | 05-60431-BRL | -- |
| Calpine Northbrook Holdings Corporation | 05-60286-BRL | -- |
| Calpine Northbrook Investors, LLC | 05-60291-BRL | -- |
| Calpine Northbrook Project Holdings, LLC | 05-60295-BRL | -- |
| Calpine Northbrook Services, LLC | 05-60299-BRL | -- |
| Calpine Northbrook Southcoast Investors, LLC | 05-60304-BRL | -- |
| Calpine NTC, LP | 05-60308-BRL | -- |
| Calpine Oneta Power I, LLC | 05-60311-BRL | -- |
| Calpine Oneta Power II, LLC | 05-60315-BRL | -- |
| Calpine Oneta Power, L.P. | 05-60318-BRL | 6,145 |
| Calpine Operating Services Company, Inc. | 05-60322-BRL | 15,094,408 |
| Calpine Operations Management Company, Inc. | 05-60206-BRL | 1,000 |
| Calpine Pastoria Holdings, LLC | 05-60302-BRL | -- |
| Calpine Philadelphia, Inc. | 05-60305-BRL | 31,388 |
| Calpine Pittsburg, LLC | 05-60307-BRL | 2,008,559 |
| Calpine Power Company | 05-60202-BRL | -- |
| Calpine Power Equipment LP | 05-60310-BRL | -- |
| Calpine Power Management, Inc. | 05-60319-BRL | -- |
| Calpine Power Management, LP | 05-60466-BRL | -- |
| Calpine Power Services, Inc. | 05-60323-BRL | 204,932 |
| Calpine Power, Inc. | 05-60316-BRL | -- |
| Calpine PowerAmerica, Inc. | 05-60211-BRL | -- |
| Calpine PowerAmerica, LP | 05-60212-BRL | 730,335 |
| Calpine PowerAmerica-CA, LLC | 05-60213-BRL | 105,768 |
| Calpine PowerAmerica-CT, LLC | 05-60214-BRL | -- |
| Calpine PowerAmerica-MA, LLC | 05-60215-BRL | -- |
| Calpine PowerAmerica-ME, LLC | 05-60216-BRL | -- |
| Calpine PowerAmerica-NH, LLC | 06-10032-BRL | -- |
| Calpine PowerAmerica-NY, LLC | 06-10031-BRL | -- |
| Calpine PowerAmerica-OR, LLC | 06-10034-BRL | -- |
| Calpine Producer Services, L.P. | 05-60217-BRL | 6,258,378 |
| Calpine Project Holdings, Inc. | 05-60324-BRL | -- |
| Calpine Pryor, Inc. | 05-60326-BRL | -- |
| Calpine Rumford I. Inc. | 05-60327-BRL | -- |
| Calpine Rumford, Inc. | 05-60414-BRL | -- |
| Calpine Schuylkill, Inc. | 05-60416-BRL | -- |
| Calpine Siskiyou Geothermal Partners, L.P. | 05-60420-BRL | 3,200 |
| Calpine Sonoran Pipeline LLC | 05-60423-BRL | -- |
| Calpine Stony Brook Operators, Inc. | 05-60424-BRL | -- |
| Calpine Stony Brook Power Marketing, LLC | 05-60425-BRL | -- |
| Calpine Stony Brook, Inc. | 05-60426-BRL | -- |
| Calpine Sumas, Inc. | 05-60427-BRL | -- |
| Calpine TCCL Holdings, Inc. | 05-60429-BRL | -- |
| Calpine Texas Pipeline GP, Inc. | 05-60433-BRL | -- |
| Calpine Texas Pipeline LP, Inc. | 05-60439-BRL | -- |
| Calpine Texas Pipeline, L.P. | 05-60447-BRL | 375 |
| </TABLE> | | |

- TABLE CONTINUES -

| Legal Entity | Case Number | Disbursements |
|---|---|---|
| <S> | <C> | <C> |
| Calpine Tiverton I. Inc. | 05-60450-BRL | -- |
| Calpine Tiverton, Inc. | 05-60451-BRL | -- |
| Calpine ULC I Holding, LLC | 05-60454-BRL | -- |
| Calpine University Power, Inc. | 05-60455-BRL | -- |
| Calpine Unrestricted Funding, LLC | 05-60456-BRL | -- |
| Calpine Unrestricted Holdings, LLC | 05-60458-BRL | -- |
| Calpine Vapor, Inc. | 05-60459-BRL | -- |
| Carville Energy LLC | 05-60460-BRL | 2,509 |
| CCFC Development Company, LLC | 05-60267-BRL | -- |
| CCFC Equipment Finance Company, LLC | 05-60269-BRL | -- |
| CCFC Project Equipment Finance Company One, LLC | 05-60271-BRL | -- |
| Celtic Power Corporation | 05-60273-BRL | -- |
| CES GP, LLC | 05-60218-BRL | -- |
| CGC Dighton, LLC | 05-60274-BRL | -- |
| Channel Energy Center, LP | 05-60275-BRL | 4,185,865 |
| Channel Power GP, LLC | 05-60276-BRL | -- |
| Channel Power, LP | 05-60277-BRL | -- |
| Clear Lake Cogeneration Limited Partnership | 05-60278-BRL | 1,251,779 |
| CogenAmerica Asia Inc. | 05-60372-BRL | -- |
| CogenAmerica Parlin Supply Corp. | 05-60383-BRL | -- |
| Columbia Energy LLC | 05-60440-BRL | 6,168 |
| Corpus Christi Cogeneration L.P. | 05-60441-BRL | 2,660,897 |
| CPN 3rd Turbine, Inc. | 05-60443-BRL | 1,432 |
| CPN Acadia, Inc. | 05-60444-BRL | -- |
| CPN Berks Generation, Inc. | 05-60445-BRL | -- |
| CPN Berks, LLC | 05-60446-BRL | -- |
| CPN Bethpage 3rd Turbine, Inc. | 05-60448-BRL | 1,111 |
| CPN Cascade, Inc. | 05-60449-BRL | -- |
| CPN Clear Lake, Inc. | 05-60287-BRL | -- |
| CPN Decatur Pipeline, Inc. | 05-60290-BRL | -- |
| CPN East Fuels, LLC | 05-60476-BRL | -- |
| CPN Energy Services GP, Inc. | 05-60209-BRL | -- |
| CPN Energy Services LP, Inc. | 05-60210-BRL | -- |
| CPN Freestone, LLC | 05-60293-BRL | -- |
| CPN Funding, Inc. | 05-60296-BRL | 25 |
| CPN Morris, Inc. | 05-60301-BRL | -- |
| CPN Oxford, Inc. | 05-60303-BRL | -- |
| CPN Pipeline Company | 05-60309-BRL | 86,311 |
| CPN Pleasant Hill Operating, LLC | 05-60312-BRL | -- |
| CPN Pleasant Hill, LLC | 05-60317-BRL | -- |
| CPN Power Services GP, LLC | 05-60321-BRL | -- |
| CPN Power Services, LP | 05-60292-BRL | -- |
| CPN Pryor Funding Corporation | 05-60300-BRL | 2,471 |
| CPN Telephone Flat, Inc. | 05-60306-BRL | 7,609 |
| Decatur Energy Center, LLC | 05-60313-BRL | -- |
| Deer Park Power GP, LLC | 05-60363-BRL | -- |
| Deer Park Power, LP | 05-60370-BRL | -- |
| Delta Energy Center, LLC | 05-60375-BRL | 555,430 |
| Dighton Power Associates Limited Partnership | 05-60382-BRL | 4,445 |
| East Altamont Energy Center, LLC | 05-60386-BRL | -- |
| Fond du Lac Energy Center, LLC | 05-60412-BRL | -- |
| Fontana Energy Center, LLC | 05-60335-BRL | -- |
| Freestone Power Generation LP | 05-60339-BRL | 3,630,223 |
| GEC Bethpage Inc. | 05-60347-BRL | -- |
| Geothermal Energy Partners, LTD., a California limited partnership | 05-60477-BRL | -- |
| Geysers Power Company II, LLC | 05-60358-BRL | -- |
| Geysers Power I Company | 05-60389-BRL | -- |
| Goldendale Energy Center, LLC | 05-60390-BRL | 2,353 |
| Hammond Energy LLC | 05-60393-BRL | -- |
| Hillabee Energy Center, LLC | 05-60394-BRL | 4,576 |
| Idlewild Fuel Management Corp. | 05-60397-BRL | -- |
| JMC Bethpage, Inc. | 05-60362-BRL | -- |
| KIAC Partners | 05-60366-BRL | 5,468,986 |
| Lake Wales Energy Center, LLC | 05-60369-BRL | -- |
| Lawrence Energy Center, LLC | 05-60371-BRL | -- |
| Lone Oak Energy Center, LLC | 05-60403-BRL | -- |
| Los Esteros Critical Energy Facility, LLC | 05-60404-BRL | 228 |
| Los Medanos Energy Center LLC | 05-60405-BRL | 10,430 |
| Magic Valley Gas Pipeline GP, LLC | 05-60407-BRL | 2,724 |
| Magic Valley Gas Pipeline, LP | 05-60408-BRL | -- |
| Magic Valley Pipeline, L.P. | 05-60332-BRL | -- |
| MEP Pleasant Hill, LLC | 05-60334-BRL | -- |
| Moapa Energy Center, LLC | 05-60337-BRL | -- |
| Mobile Energy L L C | 05-60344-BRL | 2,457 |
| Modoc Power, Inc. | 05-60346-BRL | -- |
| Morgan Energy Center, LLC | 05-60353-BRL | 468,545 |
| Mount Hoffman Geothermal Company, L.P. | 05-60361-BRL | -- |
| Mt. Vernon Energy LLC | 05-60376-BRL | -- |
| NewSouth Energy LLC | 05-60381-BRL | 14,179 |
| Nissequogue Cogen Partners | 05-60388-BRL | 53,109 |
| </TABLE> | | |

- TABLE CONTINUES -

| Legal Entity | Case Number | Disbursements |
|---|---|---|
| `<S>` | `<C>` | `<C>` |
| Northwest Cogeneration, Inc. | 05-60336-BRL | -- |
| NTC Five, Inc. | 05-60463-BRL | -- |
| NTC GP, LLC | 05-60350-BRL | -- |
| Nueces Bay Energy LLC | 05-60356-BRL | -- |
| O.L.S. Energy-Agnews, Inc. | 05-60374-BRL | 829,526 |
| Odyssey Land Acquisition Company | 05-60367-BRL | -- |
| Pajaro Energy Center, LLC | 05-60385-BRL | -- |
| Pastoria Energy Center, LLC | 05-60387-BRL | -- |
| Pastoria Energy Facility L.L.C. | 05-60410-BRL | 393,738 |
| Philadelphia Biogas Supply, Inc. | 05-60421-BRL | -- |
| Phipps Bend Energy Center, LLC | 05-60395-BRL | -- |
| Pine Bluff Energy, LLC | 05-60396-BRL | 413,979 |
| Power Investors, L.L.C. | 05-60398-BRL | -- |
| Power Systems MFG., LLC | 05-60399-BRL | 4,588,363 |
| Quintana Canada Holdings, LLC | 05-60400-BRL | -- |
| RockGen Energy LLC | 05-60401-BRL | 7,238 |
| Rumford Power Associates Limited Partnership | 05-60467-BRL | 10,077 |
| Russell City Energy Center, LLC | 05-60411-BRL | 30,119 |
| San Joaquin Valley Energy Center, LLC | 05-60413-BRL | 217 |
| Skipanon Natural Gas, LLC | 05-60415-BRL | -- |
| South Point Energy Center, LLC | 05-60417-BRL | 1,255,963 |
| South Point Holdings, LLC | 05-60419-BRL | -- |
| Stony Brook Cogeneration, Inc. | 05-60422-BRL | -- |
| Stony Brook Fuel Management Corp. | 05-60428-BRL | 1,952,283 |
| Sutter Dryers, Inc. | 05-60430-BRL | -- |
| TBG Cogen Partners | 05-60432-BRL | 2,339 |
| Texas City Cogeneration, L.P. | 05-60434-BRL | 1,739,569 |
| Texas Cogeneration Company | 05-60435-BRL | -- |
| Texas Cogeneration Five, Inc. | 05-60436-BRL | -- |
| Texas Cogeneration One Company | 05-60437-BRL | -- |
| Thermal Power Company | 05-60438-BRL | -- |
| Thomassen Turbine Systems America, Inc. | 05-60354-BRL | 84,894 |
| Tiverton Power Associates Limited Partnership | 05-60357-BRL | 2,376 |
| Towantic Energy, L.L.C. | 05-60364-BRL | 95 |
| VEC Holdings, LLC | 05-60365-BRL | -- |
| Venture Acquisition Company | 05-60368-BRL | -- |
| Vineyard Energy Center, LLC | 05-60373-BRL | -- |
| Wawayanda Energy Center, LLC | 05-60378-BRL | -- |
| Whatcom Cogeneration Partners, L.P. | 05-60468-BRL | -- |
| Zion Energy LLC | 05-60380-BRL | 3,014 |
| | | ------------- |
| Total | | $ 429,192,134 |
| | | ============= |

</TABLE>

SCHEDULE VI
CALPINE CORPORATION
(Debtor-in-Possession)
CASE No. 05-60200 (Jointly Administered)
DEBTOR'S STATEMENT REGARDING INSURANCE POLICIES
For the Period from January 1, 2006 to January 31, 2006

All insurance policies are fully paid for the current period, including amounts owed for workers' compensation and disability insurance.