**Hearing Date: May 9, 2007, 2006 at 10:00 a.m. (EDT)**
**Response Deadline: April 27, 2007 (EDT)**

CAMPEAU GOODSELL SMITH, L.C.
WILLIAM J. HEALY, #146158
440 N. 1st Street, Suite 100
San Jose, California   95112-4024
Telephone:   (408) 295-9555
Facsimile:   (408) 295-6606

ATTORNEYS FOR CREDITOR
Robert Membreno, Trustee of SAI Trust

## UNITED STATES BANKRUPTCY COURT

## SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| In re: | CHAPTER 11 |
| CALPINE CORPORATION, et al, | Case No. 05-60200 (BRL) |
| | Jointly Administered |
| Debtor. | |

**RESPONSE OF ROBERT MEMBRENO, TRUSTEE OF SAI TRUST TO DEBTORS' ELEVENTH OMNIBUS OBJECTION TO PROOFS OF CLAIMS, EQUITY INTEREST CLAIMS, UNLIQUIDATED CLAIMS, ANTICIPATORY CLAIMS, CLAIMS TO BE ADJUSTED AND WRONG DEBTOR CLAIMS TO BE ADJUSTED**

**TO:   THE HONORABLE BURTON R. LIFLAND**
**UNITED STATES BANKRUPTCY JUDGE**.

Robert Membreno, Trustee of SAI Trust ("SAI") files this response to DEBTORS' ELEVENTH OMNIBUS OBJECTION TO PROOFS OF CLAIMS, EQUITY INTEREST CLAIMS, UNLIQUIDATED CLAIMS, ANTICIPATORY CLAIMS, CLAIMS TO BE ADJUSTED AND WRONG DEBTOR CLAIMS TO BE ADJUSTED ("Objection"), and in support hereof, respectfully requesting the Objection be overruled or withdrawn and stating as follows:

**A.     DEBTORS' OBJECTION:**

1.     On April 5, 2007, Calpine and certain of its direct and indirect subsidiaries (collectively, the "Debtors"), filed DEBTORS'  ELEVENTH OMNIBUS OBJECTION TO

05-60200-cgm   Doc 4513   Filed 04/27/07   Entered 04/27/07 11:23:18   Main Document
Pg 2 of 10

PROOFS OF CLAIMS, EQUITY INTEREST CLAIMS, UNLIQUIDATED CLAIMS, ANTICIPATORY CLAIMS, CLAIMS TO BE ADJUSTED AND WRONG DEBTOR CLAIMS TO BE ADJUSTED) (the "Objection").

2.      The Objection, specifically pages 7-8, paragraphs 21-24, and Exhibit D, seek to disallow and expunge timely filed Proofs of Claim on the grounds:

"23.   The reason that the Debtors are objecting to these Unliquidated Claims is because the Bar Date set in these Chapter 11 Cases was more than eight months ago and the Chapter 11 Cases have been pending for more than a year, while the claimants who filed these claims still have not supplemented their proofs of claim to substantiate and liquidate the claims or provided the Debtors with any additional information regarding the Unliquidated Claims. The Debtors have thoroughly reviewed their books and records and other information concerning each Liquidated Claims that has been made available to them, and submit that without additional information from the claimants, the Unliquidated Claims are unenforceable under section 502 (b)(1) of the Bankruptcy Code or any other applicable law or agreement."

3.      By the Objection, the Debtors, the holders of written contracts, holders of the documentation regarding the income and expenses relating to the written contracts, the parties to a written contracts, the defendants in a filed civil action which, inter alia, seeks an accounting, and the parties withholding information from SAI, seek to disallow, without discovery, hearing, or trial, SAI's timely filed Proofs of Claims and eliminate SAI's pre-petition and bankruptcy stayed state court litigation underlying and relating to these Proofs of Claim, namely ROBERT MEMBRENO, TRUSTEE of THE SAI TRUST vs. FREEPORT MCMORAN RESOURCE PARTNERS, a Limited Partnership;  SANTA ROSA GEOTHERMAL COMPANY, L.P., SONOMA GEOTHERMAL PARTNERS, L.P.; CALPINE SONOMA, INC.; CALPINE GEYSERS COMPANY, L.P.; CALPINE CORPORATION,, and DOES ONE through, FIFTY, inclusive, Santa Clara Superior Court Case No. 1-05-CV-041957 ("State Action").

4.      The Objection must be withdrawn or overruled as Debtors cannot be allowed to ignore their contractual obligations to SAI, withhold documents and evidence from SAI, prevent

SAI from pursuing its State Action, take advantage of the bankruptcy stay, not ask claimant for additional information, and then, on short notice, try to expunge these timely filed Proofs of Claim, and otherwise mislead this court regarding Debtors' alleged investigation and lack of knowledge.

**B.    ANSWER**

5.    SAI elects not to respond to the representations of counsel in paragraphs 1-20 and 25-45 and Exhibits A-C and E-H as they are either procedural or do not apply to SAI and reserves it right to admit or deny or otherwise respond to these representations of counsel. To the extent a response is required, SAI denies these representations.

6.    SAI specifically denies the representations in paragraphs 21-24.

**C.    RESPONSE:**

**I. Factual Background:**

7.    On or about May 17, 1987, SAI Geothermal, Inc. (hereinafter "SAI") and FREEPORT MCMORAN RESOURCE PARTNERS, L. P. ("FREEPORT") entered into an agreement entitled "Agreement For Purchase And Sale Of Assets (hereinafter "Agreement For Purchase") Article I, paragraph 1.2 (e) of the Agreement For Purchase provides, in pertinent part, that after commercial operation of a geothermal power plant to be constructed by FREEPORT known as West Ford Flat located in Sonoma County, California, that FREEPORT would pay to SAI a Net Profit Interest (hereinafter "NPI") representing the right to receive a monthly payment in an amount equal to 6% of the Net Income for the month. (Exhibit A)

8.    SAI assigned its  rights to receive 4.55 percent of the NPI to Plaintiff SAI TRUST and by letter dated August 4, 1989, so advised FREEPORT. Specifically, paragraph 1.2 (e) of the Agreement For Purchase provides, in pertinent part: "After the Date of First Commercial Operation, Buyer shall pay Seller, the amount of the Net Profits Interest, commencing as provided in Section 1.5, which shall be calculated and paid monthly in arrears not later than the 20th day of the following month." Section 9.10, in pertinent part, defines Net Income as "... the gross revenues received by Buyer from the Project minus the sum the sum of the following : (i) if Option 1 has been selected, the cost of steam for the Project, which shall be calculated using the base price and price

adjustments set forth in Section 19 of the Steam Sales Agreement (regardless of whether the Steam Sales Agreement has terminated), (ii) all Project direct operating expenses (excluding depreciation), (iii) general and administrative expenses associated with the Project, which shall be calculated as 15% of Project direct operating expenses (excluding depreciation and real estate taxes), (iv) the cost of any Project related capital additions made subsequent to the Date of First Commercial Operation, and (v) if the Project or a portion thereof is financed through Project Financing, principal, interest, reserves and any fees payable in respect of the Project Financing. For purposes of calculating the gross revenues of the Project, actual revenues received by the Buyer shall be used, unless Buyer has caused the PPA to be amended to provide for lower prices than provided for on the date of this Agreement, to obtain or retain any advantage of Buyer, in which event the gross revenues shall be deemed to be the revenues Buyer would have received under the PPA in effect on the date of this Agreement for delivery of the energy actually delivered. For purposes of calculating the direct operating expenses and the general and administrative expenses, the Accounting Procedure provided in Exhibit F shall govern."

9.      Effective July 2, 1990, FREEPORT assigned its interest in, to, and under the Agreement For Purchase and a Standard Offer 4 Power Purchase Agreement it received from Pacific Gas & Electric Company ("Assigned Agreements") to Calpine.

10.      On or about December 31, 1994 Calpine entered into a Settlement Agreement (hereinafter "Settlement Agreement") addressing past and future NPI related issues, including Overnight Interest, Escrow Balance, Debt Amortization, Audit Fees, and NPI Reports and specifically preserving the Agreement For Purchase and rights and remedies therein. (Exhibit B)

11.      Section 1.6 of The Agreement For Purchase provides, in pertinent part that "Buyer shall maintain complete and accurate accounting records of the account which are used to calculate the net Profits Interest. Within 60 days after the end of each fiscal year of Buyer, commencing with the fiscal year of Buyer in which the Date of First Commercial Operation occurs, it shall furnish Seller with a statement certified by Buyer's chief financial officer showing in reasonable detail the calculation of the Net Profits interest for the fiscal year ended....Seller and its authorized

representatives shall have the right, upon reasonable notice to Buyer and between 9 A.M. and 5 P.M. weekdays to audit Buyer's records to determine whether the calculation of the Net Profits Interest during the fiscal year then ended was in accordance with this Agreement. Buyer shall cooperate reasonably with Seller as it conducts its audit."

12.     SAI has not received a statement certified by Debtors' chief financial officer as required by the Agreement For Purchase since at least the fiscal year ending 2000. As a direct result SAI has not been able to audit Debtors' records to determine whether the calculation of the NPI for the fiscal years following 2000 were in accordance with the Agreement For Purchase. SAI noticed increases in costs, inclusions of costs, and allocations of costs since receipt of its last statement certified by Debtors' chief financial officer. SAI has attempted to communicate with Debtors and evaluate whether the uncertified NPI figures were reasonable and whether these increases on costs, inclusions of costs, and allocations of costs are in accordance with the Agreement For Purchase and Settlement Agreement.

13.     Debtors have not maintain complete and accurate accounting records of the accounts used to calculate NPI, have not maintained accounting records sufficient to show in reasonable detail the calculation of NPI in accordance with the Agreement For Purchase, have not maintained accounting records sufficient to show in reasonable detail the calculation of direct operating expenses and the general and administrative expenses in accordance with the Agreement For Purchase, and have not properly accounted for  the general and administrative expenses in accordance with the Agreement For Purchase. Debtors have not provided SAI with sufficient access to its records to determine whether the calculation of NPI, although uncertified by the chief financial officer, was in accordance with the Agreement For Purchase and have not reasonably cooperated with SAI so SAI could conduct its audit of the uncertified records.

14.     SAI brought to Debtors' attention that it noticed increases in costs, inclusions of costs, and allocations of costs since receipt of its last statement certified by Debtors' chief financial officer. SAI attempted to communicate with Debtors and determine whether these increases on costs, inclusions of costs, and allocations of costs are in accordance with the Agreement For

1    Purchase and Settlement Agreement. As of the date of this complaint Debtors have not properly

2    provided SAI with statements certified by their chief financial officer, have not provided SAI with

3    sufficient access to its records to determine whether the calculation of NPI (although uncertified by

4    the chief financial officer) was in accordance with the Agreement For Purchase, have not reasonably

5    cooperated with SAI so SAI could conduct an audit of the uncertified records, have not maintain

6    complete and accurate accounting records of the accounts used to calculate NPI, have not

7    maintained accounting records sufficient to show in reasonable detail the calculation of NPI in

8    accordance with the Agreement For Purchase, have not maintained accounting records sufficient to

9    show in reasonable detail the calculation of direct operating expenses and the general and

10   administrative expenses in accordance with the Agreement For Purchase, have not properly

11   accounted for  the general and administrative expenses in accordance with the Agreement For

12   Purchase, have not identified and accounted for many costs associated with the operation of the

13   power plant governed by the Agreement For Purchase, have improperly included and allocated costs

14   to SAI and have failed and refused to identify and account for many costs associated with the

15   operation of the power plants governed by the Agreement For Purchase.

16        15.    On May 26, 2005, SAI filed the State Action against Debtors and others, generally

17   predecessors, successors, assignors, assignees and/or partners of Debtors. The party and non-party

18   witnesses, the voluminous documentation, the subject steam plant operation, and the counsel for SAI

19   and Debtors are all located in Northern California. The State Action asserts various causes of action,

20   including: Accounting; Breach of Contract; Specific Performance; and Declaratory Relief.

21        16.    In an effort to resolve the ongoing disputes regarding Debtors' non-compliance with

22   the Agreement For Purchase and Settlement Agreement, SAI and its counsel meet with Debtors,

23   representative employees of Debtors, and Debtors' counsel. Such discussions did not resolve the

24   ongoing disputes. However, Debtors acknowledged, inter alia, they were unaware of the underlying

25   agreements, have not complied with the underlying agreements in several respects, have not

26   maintained the books and records reasonable detail to properly calculate direct operating expenses

27   and the general and administrative expenses in accordance with the underlying agreements, and have

28

1  not properly accounted for  the general and administrative expenses in accordance with the

2  underlying agreements, but rather, caused SAI to bear the expenses from adjacent plants inconsistent

3  with the underlying agreements due to their own accounting preferences.

4      17.    Debtors and others filed answers to the State Action. SAI propounded discovery on

5  parties of the State Action. In August 2005 and January 2006, Debtors filed Case Management

6  Conference Statements with the state court and represented to the state court, inter alia, "The

7  Calpine Defendants anticipate that plaintiff's document discovery will involve an enormous volume

8  of documents. Expert witness discovery will also be necessary."

9      18.    On December 20, 2005, December 21, 2005, February 3, 2006, and May 2, 2006,

10  various Debtors filed petitions for bankruptcy effectively staying prosecution of the State Action.

11  Notices of the bankruptcy and the stay were filed in the State Action and served on SAI.

12      19.    At least three Defendants to the State Action, namely Calpine Geysers Company,

13  L.P., Santa Rosa Geothermal Company, L.P., and Sonoma Geothermal Partners, L.P. served

14  discovery responses and indicated that documents responsive to SAI document requests were

15  transferred to Geysers Power Company, LLC on December 22, 2000 as part of a Agreement for

16  Purchase and Sale Of Assets. According to these same entities, Santa Rosa Geothermal Company,

17  L.P. changed its name to Calpine Geysers Company, L.P. on December 20, 1993, Sonoma

18  Geothermal Partners, L.P. was a general partner of Santa Rosa Geothermal Company, L.P., Calpine

19  Sonoma, Inc. was a general partner of Santa Rosa Geothermal Company, L.P. A Bill of Sale And

20  Assignment And Assumption Agreement and Memorandum Of Bill Of Sale And Assignment And

21  Assumption Agreement dated December 2000 provided by Debtors to SAI in the State Action is

22  attached hereto as Exhibit C. Otherwise, these discovery responses did not provide any substantive

23  information relative to the State Action.

24      20.    On or about July 18, 2006, the remainder of State Action was stayed by the court

25  because the named defendants and potential doe defendants were Debtors.

26      21.    On July 27, 2006, SAI timely filed Proofs of Claim as indicated in the Objection,

27

28

Exhibit D[1]. Attached to each Proof of Claim was an "Attachment to Proof of Claim" which detailed the factual background of the State Action, identified the substantive issues, and invited Debtors to contact SAI if it wanted to review the supporting documents currently available. SAI's proofs of claims do not carry specific figures because Debtors have thus far failed or refused to provide SAI with an annual certification from its chief financial office as required by the underlying agreements, prevented SAI from conducting an audit, and not provided documentation or discovery in the State Action and the bankruptcy stay has thus far prevented SAI from prosecuting the State Action and conducting related discovery. For example, Debtors admitted failure and refusal to provide an annual certification of the NPI calculation (income and expenses) is by itself a breach of the underlying agreements; Debtors admitted inclusion of expenses from other plants not subject to the underlying agreements is by itself a breach of the underlying agreements; and Debtors' admitted "apportionment" of expenses from other plants and improper characterization as general overhead expenses for unrelated plants as "direct expenses" is by itself a breach of the underlying agreements. The only practical issues are securing a determination of the proper amount of expenses to be used to properly calculate the NPI and monies owing to SAI and, if Debtors' continue to breach the agreements, a court judgment declaring the rights and obligations of SAI and the Debtors under the underlying agreements and requiring specific performance. As virtually all the factual and documentary evidence used to determine the amounts paid and payable to SAI pursuant to the underlying agreements rests with and/or are generated by Debtors, their purported ignorance is unpersuasive. SAI's claims, depending on and subject to the results of the audit and accounting, are estimated to range from the mid-$100,000 range to several hundreds of thousands, plus interest and attorneys fees as provided for in the underlying agreements.

22.     Debtors have never requested any information regarding SAI's Proofs of Claim.

**II. Debtors' Claim Objection Is Deficient:**

23.     "A proof of claim executed and filed in accordance with these rules constitutes *prima*

---

[1]SAI only attaches one of the six Proofs of Claim as they are similar.

*facia* evidence of the validity of the claim." FED. R. BANK. P 3001 (f).  SAI executed and filed the

various claims in accordance with the Federal Rules of Bankruptcy Procedure and the Debtors have

not alleged otherwise. The Debtors must offer sufficient evidence to overcome the presumptive

validity of the claim (In re Duggins, 263 B.R. 233, 238 (Bankr. C.D. Ill. 2001 (stating that a filed

proof of claim gives rise to a "rebuttable presumption" as to the validity and amount of the claim).

24.    Debtors have offered no evidence to support the representations of counsel contained

in the Objection. The Debtors are required to submit evidence of equal or greater probative value

contradicting the elements of SAI's claims. (Southland Corp. v. Toronto-Dominion (In re Southland

Corp.), 160 F.3d 1054 (5th Cir. 1980). The mere denial by Debtors' counsel that the claimant has not

supplemental the claims (when there has never been such a request) and that without additional

information the claims are unenforceable is insufficient to rebut the *prima facia* validity of the claim

(In re Frederes, 98 B.R. 165, 167 (Bankr. W.D.N.Y. 1989) and the vague objection does not satisfy

Debtors' burden (In re Narragansett Clothing Co., 143 B.R. 582, 583 (Bankr. D.R.I. 1992).

**III. SAI Will Promptly File A Motion For Relief From Stay In Order To Proceed With
The State Action, To Secure Documents And Evidence From Debtors, and To Establish The
Specific Amounts Owed And Owing To SAI Through A Formal Accounting:**

25.    SAI will promptly file a motion for relief from stay in order to proceed with the State

Action. The State Action will require Debtors, as provided for in the underlying agreement, to

provide documentation of the income and expenses which constitute the NPI payable to SAI, to

establish compliance with the express terms of the underlying agreement regarding proper

calculation of the NPI, including proper application of expenses, to establish that its chief financial

officer has not certified Debtors' compliance with the underlying agreement and calculation of the

NPI payable to SAI, and to allow SAI to inspect such voluminous records of Debtors at Debtors'

facility in Northern California. The State Action will also formally liquidate SAI's claims.

26.    SAI submits that all substantive party and non-party witness reside or do business in

Northern California, all substantive documents are all located within Northern California, according

to Debtors, Debtors' documentation is too voluminous to move from its plant in Northern California

1  and would have to be inspected at the subject plant in Northern California, the subject plant is

2  located and operates only in Northern California, and SAI's and Debtors' counsel are located in

3  Northern California.

4  **IV. SAI's Claims Must Be Allowed As Filed:**

5    27.    For the foregoing reasons, Debtors Objection to SAI's claims, KCC#2672, 2677,

6  2678, 2798, 2799, and 2802, must be overruled or withdrawn and SAI's claims remain as filed until

7  supplemented by SAI.

8  Dated: April 26, 2007                                    CAMPEAU GOODSELL SMITH

9                                                             /s/ William J. Healy
                                                           William J. Healy
10                                                          Attorneys for Creditor

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28