**Hearing Date: June 13, 2007 at 10:00 a.m. (EDT)**

CAMPEAU GOODSELL SMITH, L.C.
WILLIAM J. HEALY, #146158
440 N. 1st Street, Suite 100
San Jose, California   95112-4024
Telephone:   (408) 295-9555
Facsimile:   (408) 295-6606

ATTORNEYS FOR CREDITOR
Robert Membreno, Trustee of SAI Trust

**UNITED STATES BANKRUPTCY COURT**

**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re: | ) CHAPTER 11 |
| | ) |
| CALPINE CORPORATION, et al, | ) Case No. 05-60200 (BRL) |
| | ) Jointly Administered |
| | ) |
| Debtor. | ) |

**FURTHER RESPONSE OF ROBERT MEMBRENO, TRUSTEE OF SAI TRUST TO DEBTORS' ELEVENTH OMNIBUS OBJECTION TO PROOFS OF CLAIMS, EQUITY INTEREST CLAIMS, UNLIQUIDATED CLAIMS, ANTICIPATORY CLAIMS, CLAIMS TO BE ADJUSTED AND WRONG DEBTOR CLAIMS TO BE ADJUSTED AND REPLY TO DEBTORS' OBJECTION TO SAI'S MOTION FOR RELIEF FROM STAY**

**TO:   THE HONORABLE BURTON R. LIFLAND**
**UNITED STATES BANKRUPTCY JUDGE**.

Robert Membreno, Trustee of SAI Trust ("SAI") files this further response to DEBTORS' ELEVENTH OMNIBUS OBJECTION TO PROOFS OF CLAIMS, EQUITY INTEREST CLAIMS, UNLIQUIDATED CLAIMS, ANTICIPATORY CLAIMS, CLAIMS TO BE ADJUSTED AND WRONG DEBTOR CLAIMS TO BE ADJUSTED ("Objection"), and reply to Debtors' opposition to SAI's motion for relief from stay as follows:

**A. Summary Of Arguments**:

Debtors' Objection must be overruled as veiled attempt to use the bankruptcy stay as both a

shield against SAI's efforts to fully liquidate its claims, to tie SAI's hands behind its back, and as a sword to chop off SAI's head. SAI has timely and properly submitted proofs of claim base on valid authority and legitimate basis and filed amended proofs of claims in an effort to provide preliminary figures for calculation of SAI's damages/losses and should be allowed to proceed to liquidate these claims in the most cost effective manner.

As to SAI's motion for relief from stay, it must be granted so SAI and Debtors may properly liquidate SAI's claims and so Debtors cannot use the stay to tie SAI.

**B. SAI'S Amended Proofs of Claim:**

On Monday, June 11, 2007, SAI received Debtors' (A) Objection To SAI Trust's Motion For Relief From Stay And (B) Reply To SAI Trust's Response To The Debtors' Eleventh Omnibus Claims Objection To SAI Trust's Proofs Of Claim ("Debtors' Pleading").

On June 11, 2007, SAI filed amended proofs of claims in order to partially and preliminarily liquidate its claims. These amended claims outline preliminary information relative to SAI's claims and reflect portions of the business dealings between Debtors and SAI. These figures are preliminary and partial, do not include other potential damages/losses based on Debtors' use of budgeted figures and not actual figures, charging 15% overhead on budgeted figures and not actual figures and including allocated budgeted costs from other plants, and including costs not allowed to be included based on the parties contractual agreements and are limited to pre-petition matters. This preliminary calculation only addresses one area of damage/loss based on Debtors' improperly allocating budgeted costs to SAI on a percentage basis and pre-petition January 2001 through December 2005. Said amount totals $245,723.09. These figures were obtained from monthly NPI statements obtained from Debtors (Although never certified by debtors Chief Financial Officer as required by the underlying agreements):

//

//

//

**FURTHER RESPONSE OF ROBERT MEMBRENO, TRUSTEE OF SAI TRUST TO DEBTORS' ELEVENTH OMNIBUS OBJECTION TO PROOFS OF CLAIMS, EQUITY INTEREST CLAIMS, UNLIQUIDATED CLAIMS, ANTICIPATORY CLAIMS, CLAIMS TO BE ADJUSTED AND WRONG DEBTOR CLAIMS TO BE ADJUSTED AND REPLY TO DEBTORS' OBJECTION TO SAI'S MOTION FOR RELIEF FROM STAY**

2

//

//

**SAI Trust**
**Cal Pine Allocated Expenses Deduction in dispute**

|  |  | Total Allocated Expense |  | @4.55% |
|---|---|---|---|---|
|  | Jan-01 | $ - | | $ - |
|  | Feb-01 | $ - | | $ - |
|  | Mar-01 | $ - | | $ - |
| Jan-Mar True up | Apr-01 | $ 210,877.99 | * | $ 9,594.95 |
|  | May-01 | $ 74,889.32 | | $ 3,407.46 |
|  | Jun-01 | $ 107,243.43 | | $ 4,879.58 |
|  | Jul-01 | $ 54,514.42 | | $ 2,480.41 |
|  | Aug-01 | $ 104,038.44 | | $ 4,733.75 |
|  | Sep-01 | $ 82,132.01 | | $ 3,737.01 |
|  | Oct-01 | $ 87,599.98 | | $ 3,985.80 |
|  | Nov-01 | $ 60,165.47 | | $ 2,737.53 |
|  | Dec-01 | $ 35,148.38 | | $ 1,599.25 |
|  | Jan-02 | $ 75,835.26 | | $ 3,450.50 |
|  | Feb-02 | $ 65,889.48 | | $ 2,997.97 |
|  | Mar-02 | $ 61,450.45 | | $ 2,796.00 |
|  | Apr-02 | $ 41,621.72 | | $ 1,893.79 |
|  | May-02 | $ 42,069.18 | | $ 1,914.15 |
|  | Jun-02 | $ 37,943.85 | | $ 1,726.45 |
|  | Jul-02 | $ 44,318.60 | | $ 2,016.50 |
|  | Aug-02 | $ 53,364.83 | | $ 2,428.10 |
|  | Sep-02 | $ 54,383.44 | | $ 2,474.45 |
|  | Oct-02 | $ 62,323.49 | | $ 2,835.72 |
|  | Nov-02 | $ 56,571.61 | | $ 2,574.01 |
|  | Dec-02 | $ 57,514.97 | | $ 2,616.93 |
|  | Jan-03 | $ 110,891.37 | | $ 5,045.56 |
|  | Feb-03 | $ 93,134.88 | | $ 4,237.64 |
|  | Mar-03 | $ 83,359.91 | | $ 3,792.88 |
|  | Apr-03 | $ 104,483.34 | | $ 4,753.99 |
|  | May-03 | $ 100,422.52 | | $ 4,569.22 |
|  | Jun-03 | $ 90,554.96 | | $ 4,120.25 |
|  | Jul-03 | $ 106,978.17 | | $ 4,867.51 |
|  | Aug-03 | $ 94,185.34 | | $ 4,285.43 |
|  | Sep-03 | $ 123,901.44 | | $ 5,637.52 |
|  | Oct-03 | $ 111,313.10 | | $ 5,064.75 |
|  | Nov-03 | $ 188,866.58 | | $ 8,593.43 |
|  | Dec-03 | $ 229,528.23 | | $ 10,443.53 |
|  | Jan-04 | $ 167,579.22 | | $ 7,624.85 |
|  | Feb-04 | $ 161,547.67 | | $ 7,350.42 |
|  | Mar-04 | $ 112,971.97 | | $ 5,140.22 |
|  | Apr-04 | $ 86,545.03 | | $ 3,937.80 |

**FURTHER RESPONSE OF ROBERT MEMBRENO, TRUSTEE OF SAI TRUST TO DEBTORS' ELEVENTH OMNIBUS OBJECTION TO PROOFS OF CLAIMS, EQUITY INTEREST CLAIMS, UNLIQUIDATED CLAIMS, ANTICIPATORY CLAIMS, CLAIMS TO BE ADJUSTED AND WRONG DEBTOR CLAIMS TO BE ADJUSTED AND REPLY TO DEBTORS' OBJECTION TO SAI'S MOTION FOR RELIEF FROM STAY**

| Month | Amount | | Amount |
|---|---|---|---|
| May-04 | $ | 78,569.62 | $ 3,574.92 |
| Jun-04 | $ | 122,794.90 | $ 5,587.17 |
| Jul-04 | $ | 94,911.07 | $ 4,318.45 |
| Aug-04 | $ | 101,499.03 | $ 4,618.21 |
| Sep-04 | $ | 83,585.29 | $ 3,803.13 |
| Oct-04 | $ | 78,928.33 | $ 3,591.24 |
| Nov-04 | $ | 66,402.70 | $ 3,021.32 |
| Dec-04 | $ | 124,427.61 | $ 5,661.46 |
| Jan-05 | $ | 89,187.80 | $ 4,058.04 |
| Feb-05 | $ | 130,170.61 | $ 5,922.76 |
| Mar-05 | $ | 101,011.86 | $ 4,596.04 |
| Apr-05 | $ | 52,702.62 | $ 2,397.97 |
| May-05 | $ | 100,652.98 | $ 4,579.71 |
| Jun-05 | $ | 98,049.99 | $ 4,461.27 |
| Jul-05 | $ | 106,146.17 | $ 4,829.65 |
| Aug-05 | $ | 118,378.04 | $ 5,386.20 |
| Sep-05 | $ | 126,453.65 | $ 5,753.64 |
| Oct-05 | $ | 84,586.14 | $ 3,848.67 |
| Nov-05 | $ | 138,265.49 | $ 6,291.08 |
| Dec-05 | $ | 67,623.45 | $ 3,076.87 |
| Jan-06 | $ | 68,587.29 | $ 3,120.72 |
| Feb-06 | $ | 83,468.96 | $ 3,797.84 |
| Mar-06 | $ | 88,906.62 | $ 4,045.25 |
| Apr-06 | $ | 181,029.40 | $ 8,236.84 |
| May-06 | $ | 82,321.61 | $ 3,745.63 |
| Jun-06 | $ | 89,359.38 | $ 4,065.85 |
| Jul-06 | $ | 61,919.82 | $ 2,817.35 |
| Aug-06 | $ | 94,229.72 | $ 4,287.45 |
| Sep-06 | $ | 91,056.30 | $ 4,143.06 |
| Oct-06 | $ | 103,836.19 | $ 4,724.55 |
| Nov-06 | $ | 62,095.79 | $ 2,825.36 |
| Dec-06 | $ | 51,925.41 | $ 2,362.61 |

**C. The Original Agreements Between SAI Geothermal, SAI's predecessor, and Freeport McMoran, And The Calculation of NPI Were Premises On West Ford Flat Operating As A Stand Alone Plant And Pre-Date Any Involvement Of Debtors.**

The original agreement between SAI Geothermal and Freeport McMoran were made by Robert Membreno. Only SAI Geothermal, SAI, Mr. Membreno, and Freeport McMoran have personal knowledge of the drafting and intent of the underlying agreements relative to West Ford Flat and payment of the NPI to SAI. The original intent of the original parties and the underlying agreements was to own and operate West Ford Flat as a stand alone plant and to compensate SAI

**FURTHER RESPONSE OF ROBERT MEMBRENO, TRUSTEE OF SAI TRUST TO DEBTORS' ELEVENTH OMNIBUS OBJECTION TO PROOFS OF CLAIMS, EQUITY INTEREST CLAIMS, UNLIQUIDATED CLAIMS, ANTICIPATORY CLAIMS, CLAIMS TO BE ADJUSTED AND WRONG DEBTOR CLAIMS TO BE ADJUSTED AND REPLY TO DEBTORS' OBJECTION TO SAI'S MOTION FOR RELIEF FROM STAY**

4

based on the actual operating expenses associated with West Ford Flat. Although Calpine may have been in existence in 1984, no one with Debtors have personal knowledge relative to there underlying agreements.

Debtors' Pleading misleads the court by suggesting any that Debtors' subsequent purchase and operation of surrounding plants and the administrative difficulties Debtors would experience by complying with agreements somehow justifies Debtors' unilateral attempt to modify the agreements and not comply with them. Whether Debtors reasons for breaching the agreements and operating the various plants together are true or false is irrelevant and do not warrant or allow Debtors to re-write the agreements to serve their own purposes.

Debtors' Pleading simply acknowledge that six years ago (pre and post-petition) they have used a completely different method of calculating the NPI payable to SAI.

Coincidentally, six years ago a new line item appeared in the NPI statements, SAI noticed costs had increased and the payment to SAI decreased, and SAI stopped receiving certified NPI statements certified by Debtors' Chief Financial Officer.

SAI has included in this further response a summary of NPI statements based on information from Debtors. This summary reveals that from July 1994 through December 2000, there was not a line item in the NPI statements for "Allocated Expenses" and SAI was not charged "Allocated Expenses". This summary also reveals that in April 2001 (effective January 2001) Debtors unilaterally included "Allocated Expenses" as a line item and as an expenses and thereafter calculated the overhead expense on both Lease Operating Expenses AND this new found feature "Allocated Expenses".

**D. SAI's Claims Are Valid And Based In Part On Debtors' Acknowledged Ongoing Breach And Noncompliance With Agreements With SAI.**

SAI's State Action, claims, and initial response indicated that Debtors had acknowledged ongoing breaches of their agreements with SAI, including, but not limited to, not providing a yearly

**FURTHER RESPONSE OF ROBERT MEMBRENO, TRUSTEE OF SAI TRUST TO DEBTORS' ELEVENTH OMNIBUS OBJECTION TO PROOFS OF CLAIMS, EQUITY INTEREST CLAIMS, UNLIQUIDATED CLAIMS, ANTICIPATORY CLAIMS, CLAIMS TO BE ADJUSTED AND WRONG DEBTOR CLAIMS TO BE ADJUSTED AND REPLY TO DEBTORS' OBJECTION TO SAI'S MOTION FOR RELIEF FROM STAY**

5

certification of NPI statements by Debtors' Chief Financial Officer, using budgeted numbers rather than actual costs, allocating budgeted expenses from other plants and including such expenses in calculating the NPI payable to SAI, including expenses not directly attributable to the West Ford Flat plant and including such expenses in calculating the NPI payable to SAI, and using budgeted numbers and improper costs in calculating the overhead expenses used in calculating the NPI payable to SAI.

Debtors' Pleading confirms that Debtors have breach the underlying agreements, inter alia, by using budgeted numbers, not using actual cost figures, including costs not subject to the agreement, allocating expenses from other plants as costs, and charging an overhead percentage based on budgeted figures, inappropriate costs, and allocated costs. Mr. Tipton and Debtors' counsel's suggestion that Debtors use "a commercially reasonable method of allocation" does not excuse their non-compliance with the underlying agreements.

The Declaration of Guy Tipton also reveals some of Debtors' ignorance and arrogance. For example, noticeable absent from Mr. Tipton's declaration is any representation that anyone with any of the Debtors have personal knowledge of the West Ford Flat plant prior to the creation of Calpine (1984), the execution of the original agreements between SAI Geothermal and Freeport McMoran, an explanation why Debtors' have failed and refused to provide the contractually yearly required certifications of the NPI statements from Debtors' Chief Financial Officer, why Debtors use budgeted figures and not actual costs, why the allocated expenses did not exist prior to their first inclusion in the NPI Statements in April 2001 (back charge from January 2001), why the 15% contractual overhead provision includes both budgeted expenses and allocated expense from other plants. The answer is both a breach of the agreements and self-evident, Debtors' want to do it their way because it is apparently easier for them. However, such is not a justification for re-writing the agreements or a defense to SAI's claims.

//

//

**FURTHER RESPONSE OF ROBERT MEMBRENO, TRUSTEE OF SAI TRUST TO DEBTORS' ELEVENTH OMNIBUS OBJECTION TO PROOFS OF CLAIMS, EQUITY INTEREST CLAIMS, UNLIQUIDATED CLAIMS, ANTICIPATORY CLAIMS, CLAIMS TO BE ADJUSTED AND WRONG DEBTOR CLAIMS TO BE ADJUSTED AND REPLY TO DEBTORS' OBJECTION TO SAI'S MOTION FOR RELIEF FROM STAY**

6

**E. Debtors' Failure To Comply With The Contractual Obligations, Failure To Make Documents Available To SAI, And Failure To Allow An Audit Caused The Resulting State Action And SAI's Inability To Fully Determine Its Damages/Losses And To Liquidate Its Claims**.

The State Action was commenced, inter alia, because Debtors' failed to comply with its contractual obligations, including but not limited to, providing a certification of the NPI statements from Debtors' Chief Financial Officer, using budgeted numbers, improperly including costs, including expenses from other plants, and improperly including costs into the calculation of overhead.

Debtors' Pleading suggests the monthly NPI statements, including the two post-petition examples attached to Mr. Tipton's declaration, provide sufficient information for SAI. Mr. Tipton is wrong.

Debtors' Pleading also suggest Mr. Tipton's explanation regarding the use of allocation should answer SAI's concerns. Mr. Tipton is wrong. The pro-forma statement presented by Mr. Tipton was, for practical purpose, guess work, self-serving, irrelevant, and never agreed to by SAI. The documentation necessary to properly re-calculate the subject NPI statements is, as represented by Mr. Tipton, in Northern California, can't be moved, voluminous, and not yet inspected or reviewed by SAI.

Until such time as documentation of all the expenses, actual and allocated, are provided to SAI, the figures included in the NPI statements, except revenue from PG&E, are simple budgets from Mr. Tipton serve little purpose.

**F. SAI's Claims Must Be Allowed As Filed And Amended:**

For the foregoing reasons, Debtors' Objection to SAI's claims, KCC#2672, 2677, 2678, 2798, 2799, and 2802, must be overruled and SAI's claims remain as filed an as amended until supplemented by SAI.

//

**FURTHER RESPONSE OF ROBERT MEMBRENO, TRUSTEE OF SAI TRUST TO DEBTORS' ELEVENTH OMNIBUS OBJECTION TO PROOFS OF CLAIMS, EQUITY INTEREST CLAIMS, UNLIQUIDATED CLAIMS, ANTICIPATORY CLAIMS, CLAIMS TO BE ADJUSTED AND WRONG DEBTOR CLAIMS TO BE ADJUSTED AND REPLY TO DEBTORS' OBJECTION TO SAI'S MOTION FOR RELIEF FROM STAY**

7

//

**G.    The Court Should Grant SAI's Request For Relief From Stay to Allow SAI And Debtors to Properly Liquidate SAI's Claims.**

As the Court recalls, SAI promptly filed a motion for relief from stay because Debtors filed an Objection which (specifically pages 7-8, paragraphs 21-24, and Exhibit D) sought to disallow and expunge numerous timely filed Proofs of Claim, including SAI's, on the grounds:

> "23.    **The reason that the Debtors are objecting to these Unliquidated Claims is because** the Bar Date set in these Chapter 11 Cases was more than eight months ago and the Chapter 11 Cases have been pending for more than a year, while the claimants who filed these claims still have not supplemented their proofs of claim to substantiate and liquidate the claims or provided the Debtors with any additional information regarding the Unliquidated Claims. The Debtors have thoroughly reviewed their books and records and other information concerning each Liquidated Claims that has been made available to them, and submit that **without additional information from the claimants, the Unliquidated Claims are unenforceable under section 502 (b)(1) of the Bankruptcy Code or any other applicable law or agreement**." (Emphasis Added)

Debtors now seek continue use of the bankruptcy stay as a shield and as a sword to prevent SAI from obtaining the necessary information in the most effective manner in order to liquidate its claims.

If the court does not lift the stay or allow an alternative method for SAI to liquidate its claims then the Debtors will be allowed to summarily alter their contractual relationship with SAI and summarily eliminate a legitimate creditor without allowing SAI to utilize its contractual audit rights, proceed with its State Action, proceed with discovery, secure evidence, and have a trial.

Debtors have been in bankruptcy approximately eighteen months, have had ample time to work through many critical problems, has represented to the public that a plan would be forthcoming later this month, and now has two California law firms representing its interest relative to SAI.

Further, Debtors' ongoing failure and refusal to comply with its agreements with SAI cause ongoing post-petition harm to SAI. Although SAI receives its post-petition NPI payments from

**FURTHER RESPONSE OF ROBERT MEMBRENO, TRUSTEE OF SAI TRUST TO DEBTORS' ELEVENTH OMNIBUS OBJECTION TO PROOFS OF CLAIMS, EQUITY INTEREST CLAIMS, UNLIQUIDATED CLAIMS, ANTICIPATORY CLAIMS, CLAIMS TO BE ADJUSTED AND WRONG DEBTOR CLAIMS TO BE ADJUSTED AND REPLY TO DEBTORS' OBJECTION TO SAI'S MOTION FOR RELIEF FROM STAY**

8

Debtors on a monthly basis, these post-petition payments are not in accordance with the agreements between the parties.

The most cost effective manner to resolve these pre-petition and post-petition problems is to allow SAI to proceed with its State Court litigation. As previously stated, the witnesses, documents, subject property, and evidence are in Northern California and now, with Debtors' retention of Northern California bankruptcy counsel, all actual and potential counsel are located in Northern California.

Robert Membreno, Trustee of SAI Trust and signature to the underlying agreements currently resides in Nicaragua, but will travel to the United States for purposes of discovery and trial as necessary. Mark Membreno, associate with SAI Geothermal and administrator of SAI Trust resides in Northern California and will submit to discovery and trial as necessary. Other members of SAI Trust would have to be contacted to determine the availability for discovery and trial.

**H. Conclusion:**

SAI seeks relief from stay so it can conduct the necessary discovery to substantiate its damages/losses and liquidate its claims and secured Debtors' compliance with the underlying agreements.

Dated: June 11, 2007                                             CAMPEAU GOODSELL SMITH

    /s/ William J. Healy
William J. Healy
Attorneys for Creditor

**FURTHER RESPONSE OF ROBERT MEMBRENO, TRUSTEE OF SAI TRUST TO DEBTORS' ELEVENTH OMNIBUS OBJECTION TO PROOFS OF CLAIMS, EQUITY INTEREST CLAIMS, UNLIQUIDATED CLAIMS, ANTICIPATORY CLAIMS, CLAIMS TO BE ADJUSTED AND WRONG DEBTOR CLAIMS TO BE ADJUSTED AND REPLY TO DEBTORS' OBJECTION TO SAI'S MOTION FOR RELIEF FROM STAY**