**Hearing Date: September 11 at 10:00 a.m. (EDT)**
**Response Deadline: August 31, 2007 (EDT)**

CAMPEAU GOODSELL SMITH, L.C.
WILLIAM J. HEALY, #146158
440 N. 1st Street, Suite 100
San Jose, California 95112-4024
Telephone: (408) 295-9555
Facsimile: (408) 295-6606

ATTORNEYS FOR CREDITOR
Robert Membreno, Trustee of SAI Trust

**UNITED STATES BANKRUPTCY COURT**

**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re: ) | CHAPTER 11 |
| ) | |
| CALPINE CORPORATION, et al, ) | Case No. 05-60200 (BRL) |
| ) | Jointly Administered |
| ) | |
| Debtor. ) | |

**RESPONSE OF ROBERT MEMBRENO, TRUSTEE OF SAI TRUST TO DEBTORS' EIGHTEENTH OMNIBUS OBJECTION TO PROOFS OF CLAIMS, EQUITY INTEREST CLAIMS, UNLIQUIDATED CLAIMS, ANTICIPATORY CLAIMS, CLAIMS TO BE ADJUSTED AND WRONG DEBTOR CLAIMS TO BE ADJUSTED**

**TO: THE HONORABLE BURTON R. LIFLAND**
**UNITED STATES BANKRUPTCY JUDGE.**

Robert Membreno, Trustee of SAI Trust ("SAI") files this response to DEBTORS' ELEVENTH OMNIBUS OBJECTION TO PROOFS OF CLAIMS, EQUITY INTEREST CLAIMS, UNLIQUIDATED CLAIMS, ANTICIPATORY CLAIMS, CLAIMS TO BE ADJUSTED AND WRONG DEBTOR CLAIMS TO BE ADJUSTED ("Objection"), and in support hereof, respectfully requesting the Objection be overruled or withdrawn and stating as follows:

**A. SUMMARY OF ARGUMENTS:**

1. Debtors' Eighteenth Objection must be overruled as another veiled attempt to use the bankruptcy stay as both a shield against SAI's efforts to fully liquidate its claims, to tie SAI's hands

behind its back, and as a sword to chop off SAI's head. SAI has timely and properly submitted proofs of claim and amended those claims base on valid authority and legitimate basis and filed amended proofs of claims in an effort to provide preliminary figures for calculation of SAI's damages/losses and should be allowed to proceed to liquidate these claims in the most cost effective manner.

**B.    DEBTORS' ELEVENTH OBJECTION:**

2.    On April 5, 2007, Calpine and certain of its direct and indirect subsidiaries (collectively, the "Debtors"), filed DEBTORS' ELEVENTH OMNIBUS OBJECTION TO PROOFS OF CLAIMS, EQUITY INTEREST CLAIMS, UNLIQUIDATED CLAIMS, ANTICIPATORY CLAIMS, CLAIMS TO BE ADJUSTED AND WRONG DEBTOR CLAIMS TO BE ADJUSTED) (the "Eleventh Objection").

3.    The Eleventh Objection, specifically pages 7-8, paragraphs 21-24, and Exhibit D, seeks to disallow and expunge timely filed Proofs of Claim on the grounds:

> "23.    The reason that the Debtors are objecting to these Unliquidated Claims is because the Bar Date set in these Chapter 11 Cases was more than eight months ago and the Chapter 11 Cases have been pending for more than a year, while the claimants who filed these claims still have not supplemented their proofs of claim to substantiate and liquidate the claims or provided the Debtors with any additional information regarding the Unliquidated Claims. The Debtors have thoroughly reviewed their books and records and other information concerning each Liquidated Claims that has been made available to them, and submit that without additional information from the claimants, the Unliquidated Claims are unenforceable under section 502 (b)(1) of the Bankruptcy Code or any other applicable law or agreement."

4.    By the Eleventh Objection, the Debtors, the holders of written contracts, holders of the documentation regarding the income and expenses relating to the written contracts, the parties to a written contracts, the defendants in a filed civil action which, inter alia, seeks an accounting, and the parties withholding information from SAI, seek to disallow, without discovery, hearing, or trial, SAI's timely filed Proofs of Claims and eliminate SAI's pre-petition and bankruptcy stayed state

**RESPONSE OF ROBERT MEMBRENO, TRUSTEE OF SAI TRUST TO DEBTORS' EIGHTEENTH OMNIBUS OBJECTION TO PROOFS OF CLAIMS, EQUITY INTEREST CLAIMS, UNLIQUIDATED CLAIMS, ANTICIPATORY CLAIMS, CLAIMS TO BE ADJUSTED AND WRONG DEBTOR CLAIMS TO BE ADJUSTED**

2

court litigation underlying and relating to these Proofs of Claim, namely ROBERT MEMBRENO, TRUSTEE of THE SAI TRUST vs. FREEPORT MCMORAN RESOURCE PARTNERS, a Limited Partnership; SANTA ROSA GEOTHERMAL COMPANY, L.P., SONOMA GEOTHERMAL PARTNERS, L.P.; CALPINE SONOMA, INC.; CALPINE GEYSERS COMPANY, L.P.; CALPINE CORPORATION,, and DOES ONE through, FIFTY, inclusive, Santa Clara Superior Court Case No. 1-05-CV-041957 ("State Action").

5.  SAI filed a Response and a Further Response to the Eleventh Objection.

6.  SAI thereafter filed a Motion for Relief From Stay in order to pursue the State Action.

7.  On June 11, 2007, SAI filed Amended Proofs of Claim.

8.  Pursuant to agreements between SAI and Debtors the hearings on Debtor's Eleventh Objection and the Motion For Relief From Stay were continued and are currently scheduled for September 25, 2007.

9.  On August 2, 2007, SAI served a Request For Production Of Documents (and inspection) on Debtors to obtain documentation not previously obtained in the State Action due to the automatic stay and to address Debtor's purported Eleventh Objection and to support SAI's Amended Proofs of Claim. The use of a request for production of documents was discussed and agreed to between counsel for the Debtor and SAI as a means to provide SAI an opportunity to address Debtors' Eleventh Objection.  It appears from subsequent correspondence from Debtors' counsel that Debtors' may not comply with the formal request for production.

**C.    DEBTORS' ELEVENTH OBJECTION:**

10.  On August 7, 2007, Debtors filed their Eighteenth Omnibus Objection To Proofs Of claim (Claims To Be Adjusted, Wrong Debtor Claims To Be Adjusted, No Liability Claims, Amended/Replaced Claims, Indemnification Claims, and Anticipatory Claim) (Eighteen Objection").

11.  The Eighteenth Objection specifically states that prior to filing the Eighteen Objection it (through APS) sent letters to many vendor claimants requesting additional information

**RESPONSE OF ROBERT MEMBRENO, TRUSTEE OF SAI TRUST TO DEBTORS' EIGHTEENTH OMNIBUS OBJECTION TO PROOFS OF CLAIMS, EQUITY INTEREST CLAIMS, UNLIQUIDATED CLAIMS, ANTICIPATORY CLAIMS, CLAIMS TO BE ADJUSTED AND WRONG DEBTOR CLAIMS TO BE ADJUSTED**

3

and support and such failed to respond or Debtors unilaterally concluded the response was inadequate ( (Eighteen Objection, paragraph 14). Although SAI does not agree it is a "vendor" as the term is used by Debtors, no such letter was sent to SAI.

12. The Eighteenth Objection specifically states "no prior objection for relief requested herein has been made to this or any other court." Apparently, Debtors misrepresented to the court the existence of their Eleventh Objection.

13. The Eighteenth Objection asserts the same self serving boilerplate basis for the objection, namely that Debtors "have determined that these claims should be expunged because the Debtors' books and records indicate that the No Liability Claims are either not owed by any of the Debtors or they have been paid in full in these Chapter 11 Cases." (Eighteenth Objection, paragraph 23).

14. The Eighteen Objection is based on the hearsay, overly broad, baseless, and self serving and unqualified opinion of Craig Chancellor. Mr. Chancellor simply summarizes prior history and offers his unqualified opinion, and opinion not based on any personal knowledge, based on hearsay, and one totally ignoring SAI's State Action, SAI's prior Response and Further Response to the Eleventh Objection, and SAI's Request For Production Of Documents. Further, Mr. chancellor never declares having possession of or reading the underlying agreements or the documents between the original parties to the underlying contract.

15. The Eighteenth Objection and Mr. Chancellor completely ignore the undeniable, namely that Debtors' have (and continue to) breached the underlying agreements with SAI, inter alia, by failing to provide a certified NPI Statement singed by Debtors' Chief Financial Officer for at least four (4) years pre-petition (and all post petition), using budgeted numbers as opposed to actual cost figures, and calculating overhead. SAI submits that Mr. Chancellor's summary opinion and interpretation of agreements he has  is wrong regarding Debtors' improper use of allocating costs from other plants and including costs not subject to the agreement, allocating expenses from other plants as costs, and charging an overhead percentage based on budgeted figures, inappropriate costs, and allocated costs.

**RESPONSE OF ROBERT MEMBRENO, TRUSTEE OF SAI TRUST TO DEBTORS' EIGHTEENTH OMNIBUS OBJECTION TO PROOFS OF CLAIMS, EQUITY INTEREST CLAIMS, UNLIQUIDATED CLAIMS, ANTICIPATORY CLAIMS, CLAIMS TO BE ADJUSTED AND WRONG DEBTOR CLAIMS TO BE ADJUSTED**

4

16. The Eighteenth Objection must be withdrawn or overruled as Debtors cannot be allowed to ignore their contractual obligations to SAI, withhold documents and evidence from SAI, prevent SAI from pursuing its State Action, take advantage of the bankruptcy stay, not ask claimant for additional information, and then, on short notice, try to expunge these Amended Proofs of Claim, and otherwise mislead this court regarding Debtors' alleged investigation and lack of knowledge.

**D.    ANSWER**

17. SAI elects not to respond to all of the representations of counsel and exhibits as they are either procedural or do not apply to SAI and reserves it right to admit or deny or otherwise respond to these representations of counsel. To the extent a response is required, SAI denies these representations.

18. SAI specifically denies the representations relating to SAI.

**E.    RESPONSE:**

**I. Factual Background:**

19. On or about May 17, 1987, SAI Geothermal, Inc. (hereinafter "SAI") and FREEPORT MCMORAN RESOURCE PARTNERS, L. P. ("FREEPORT") entered into an agreement entitled "Agreement For Purchase And Sale Of Assets (hereinafter "Agreement For Purchase") Article I, paragraph 1.2 (e) of the Agreement For Purchase provides, in pertinent part, that after commercial operation of a geothermal power plant to be constructed by FREEPORT known as West Ford Flat located in Sonoma County, California, that FREEPORT would pay to SAI a Net Profit Interest (hereinafter "NPI") representing the right to receive a monthly payment in an amount equal to 6% of the Net Income for the month. (Exhibit A)

20. SAI assigned its rights to receive 4.55 percent of the NPI to Plaintiff SAI TRUST and by letter dated August 4, 1989, so advised FREEPORT. Specifically, paragraph 1.2 (e) of the Agreement For Purchase provides, in pertinent part: "After the Date of First Commercial Operation, Buyer shall pay Seller, the amount of the Net Profits Interest, commencing as provided in Section 1.5, which shall be calculated and paid monthly in arrears not later than the 20th day of the following month." Section 9.10, in pertinent part, defines Net Income as "... the gross revenues

**RESPONSE OF ROBERT MEMBRENO, TRUSTEE OF SAI TRUST TO DEBTORS' EIGHTEENTH OMNIBUS OBJECTION TO PROOFS OF CLAIMS, EQUITY INTEREST CLAIMS, UNLIQUIDATED CLAIMS, ANTICIPATORY CLAIMS, CLAIMS TO BE ADJUSTED AND WRONG DEBTOR CLAIMS TO BE ADJUSTED**

5

received by Buyer from the Project minus the sum the sum of the following : (i) if Option 1 has been selected, the cost of steam for the Project, which shall be calculated using the base price and price adjustments set forth in Section 19 of the Steam Sales Agreement (regardless of whether the Steam Sales Agreement has terminated), (ii) all Project direct operating expenses (excluding depreciation), (iii) general and administrative expenses associated with the Project, which shall be calculated as 15% of Project direct operating expenses (excluding depreciation and real estate taxes), (iv) the cost of any Project related capital additions made subsequent to the Date of First Commercial Operation, and (v) if the Project or a portion thereof is financed through Project Financing, principal, interest, reserves and any fees payable in respect of the Project Financing. For purposes of calculating the gross revenues of the Project, actual revenues received by the Buyer shall be used, unless Buyer has caused the PPA to be amended to provide for lower prices than provided for on the date of this Agreement, to obtain or retain any advantage of Buyer, in which event the gross revenues shall be deemed to be the revenues Buyer would have received under the PPA in effect on the date of this Agreement for delivery of the energy actually delivered. For purposes of calculating the direct operating expenses and the general and administrative expenses, the Accounting Procedure provided in Exhibit F shall govern."

21. Effective July 2, 1990, FREEPORT assigned its interest in, to, and under the Agreement For Purchase and a Standard Offer 4 Power Purchase Agreement it received from Pacific Gas & Electric Company ("Assigned Agreements") to Calpine.

22. On or about December 31, 1994 Calpine entered into a Settlement Agreement (hereinafter "Settlement Agreement") addressing past and future NPI related issues, including Overnight Interest, Escrow Balance, Debt Amortization, Audit Fees, and NPI Reports and specifically preserving the Agreement For Purchase and rights and remedies therein. (Exhibit B)

23. Section 1.6 of The Agreement For Purchase provides, in pertinent part that "Buyer shall maintain complete and accurate accounting records of the account which are used to calculate the net Profits Interest. Within 60 days after the end of each fiscal year of Buyer, commencing with the fiscal year of Buyer in which the Date of First Commercial Operation occurs, it shall furnish

**RESPONSE OF ROBERT MEMBRENO, TRUSTEE OF SAI TRUST TO DEBTORS' EIGHTEENTH OMNIBUS OBJECTION TO PROOFS OF CLAIMS, EQUITY INTEREST CLAIMS, UNLIQUIDATED CLAIMS, ANTICIPATORY CLAIMS, CLAIMS TO BE ADJUSTED AND WRONG DEBTOR CLAIMS TO BE ADJUSTED**

6

Seller with a statement certified by Buyer's chief financial officer showing in reasonable detail the calculation of the Net Profits interest for the fiscal year ended....Seller and its authorized representatives shall have the right, upon reasonable notice to Buyer and between 9 A.M. and 5 P.M. weekdays to audit Buyer's records to determine whether the calculation of the Net Profits Interest during the fiscal year then ended was in accordance with this Agreement. Buyer shall cooperate reasonably with Seller as it conducts its audit."

24.     SAI has not received a statement certified by Debtors' chief financial officer as required by the Agreement For Purchase since at least the fiscal year ending 2000. As a direct result SAI has not been able to audit Debtors' records to determine whether the calculation of the NPI for the fiscal years following 2000 were in accordance with the Agreement For Purchase. SAI noticed increases in costs, inclusions of costs, and allocations of costs since receipt of its last statement certified by Debtors' chief financial officer. SAI has attempted to communicate with Debtors and evaluate whether the uncertified NPI figures were reasonable and whether these increases on costs, inclusions of costs, and allocations of costs are in accordance with the Agreement For Purchase and Settlement Agreement.

25.     Debtors have not maintain complete and accurate accounting records of the accounts used to calculate NPI, have not maintained accounting records sufficient to show in reasonable detail the calculation of NPI in accordance with the Agreement For Purchase, have not maintained accounting records sufficient to show in reasonable detail the calculation of direct operating expenses and the general and administrative expenses in accordance with the Agreement For Purchase, and have not properly accounted for the general and administrative expenses in accordance with the Agreement For Purchase. Debtors have not provided SAI with sufficient access to its records to determine whether the calculation of NPI, although uncertified by the chief financial officer, was in accordance with the Agreement For Purchase and have not reasonably cooperated with SAI so SAI could conduct its audit of the uncertified records.

26.     SAI brought to Debtors' attention that it noticed increases in costs, inclusions of costs, and allocations of costs since receipt of its last statement certified by Debtors' chief financial

**RESPONSE OF ROBERT MEMBRENO, TRUSTEE OF SAI TRUST TO DEBTORS' EIGHTEENTH OMNIBUS OBJECTION TO PROOFS OF CLAIMS, EQUITY INTEREST CLAIMS, UNLIQUIDATED CLAIMS, ANTICIPATORY CLAIMS, CLAIMS TO BE ADJUSTED AND WRONG DEBTOR CLAIMS TO BE ADJUSTED**

7

officer. SAI attempted to communicate with Debtors and determine whether these increases on costs, inclusions of costs, and allocations of costs are in accordance with the Agreement For Purchase and Settlement Agreement. As of the date of this complaint Debtors have not properly provided SAI with statements certified by their chief financial officer, have not provided SAI with sufficient access to its records to determine whether the calculation of NPI (although uncertified by the chief financial officer) was in accordance with the Agreement For Purchase, have not reasonably cooperated with SAI so SAI could conduct an audit of the uncertified records, have not maintain complete and accurate accounting records of the accounts used to calculate NPI, have not maintained accounting records sufficient to show in reasonable detail the calculation of NPI in accordance with the Agreement For Purchase, have not maintained accounting records sufficient to show in reasonable detail the calculation of direct operating expenses and the general and administrative expenses in accordance with the Agreement For Purchase, have not properly accounted for the general and administrative expenses in accordance with the Agreement For Purchase, have not identified and accounted for many costs associated with the operation of the power plant governed by the Agreement For Purchase, have improperly included and allocated costs to SAI and have failed and refused to identify and account for many costs associated with the operation of the power plants governed by the Agreement For Purchase.

27.     On May 26, 2005, SAI filed the State Action against Debtors and others, generally predecessors, successors, assignors, assignees and/or partners of Debtors. The party and non-party witnesses, the voluminous documentation, the subject steam plant operation, and the counsel for SAI and Debtors are all located in Northern California. The State Action asserts various causes of action, including: Accounting; Breach of Contract; Specific Performance; and Declaratory Relief.

28.     In an effort to resolve the ongoing disputes regarding Debtors' non-compliance with the Agreement For Purchase and Settlement Agreement, SAI and its counsel meet with Debtors, representative employees of Debtors, and Debtors' counsel. Such discussions did not resolve the ongoing disputes. However, Debtors acknowledged, inter alia, they were unaware of the underlying agreements, have not complied with the underlying agreements in several respects, have not

**RESPONSE OF ROBERT MEMBRENO, TRUSTEE OF SAI TRUST TO DEBTORS' EIGHTEENTH OMNIBUS OBJECTION TO PROOFS OF CLAIMS, EQUITY INTEREST CLAIMS, UNLIQUIDATED CLAIMS, ANTICIPATORY CLAIMS, CLAIMS TO BE ADJUSTED AND WRONG DEBTOR CLAIMS TO BE ADJUSTED**

8

maintained the books and records reasonable detail to properly calculate direct operating expenses and the general and administrative expenses in accordance with the underlying agreements, and have not properly accounted for the general and administrative expenses in accordance with the underlying agreements, but rather, caused SAI to bear the expenses from adjacent plants inconsistent with the underlying agreements due to their own accounting preferences.

29.     Debtors and others filed answers to the State Action. SAI propounded discovery on parties of the State Action. In August 2005 and January 2006, Debtors filed Case Management Conference Statements with the state court and represented to the state court, inter alia, "The Calpine Defendants anticipate that plaintiff's document discovery will involve an enormous volume of documents. Expert witness discovery will also be necessary."

30.     On December 20, 2005, December 21, 2005, February 3, 2006, and May 2, 2006, various Debtors filed petitions for bankruptcy effectively staying prosecution of the State Action. Notices of the bankruptcy and the stay were filed in the State Action and served on SAI.

31.     At least three Defendants to the State Action, namely Calpine Geysers Company, L.P., Santa Rosa Geothermal Company, L.P., and Sonoma Geothermal Partners, L.P. served discovery responses and indicated that documents responsive to SAI document requests were transferred to Geysers Power Company, LLC on December 22, 2000 as part of a Agreement for Purchase and Sale Of Assets. According to these same entities, Santa Rosa Geothermal Company, L.P. changed its name to Calpine Geysers Company, L.P. on December 20, 1993, Sonoma Geothermal Partners, L.P. was a general partner of Santa Rosa Geothermal Company, L.P., Calpine Sonoma, Inc. was a general partner of Santa Rosa Geothermal Company, L.P. A Bill of Sale And Assignment And Assumption Agreement and Memorandum Of Bill Of Sale And Assignment And Assumption Agreement dated December 2000 provided by Debtors to SAI in the State Action is attached hereto as Exhibit C. Otherwise, these discovery responses did not provide any substantive information relative to the State Action.

32.     On or about July 18, 2006, the remainder of State Action was stayed by the court because the named defendants and potential doe defendants were Debtors.

**RESPONSE OF ROBERT MEMBRENO, TRUSTEE OF SAI TRUST TO DEBTORS' EIGHTEENTH OMNIBUS OBJECTION TO PROOFS OF CLAIMS, EQUITY INTEREST CLAIMS, UNLIQUIDATED CLAIMS, ANTICIPATORY CLAIMS, CLAIMS TO BE ADJUSTED AND WRONG DEBTOR CLAIMS TO BE ADJUSTED**

9

33.     On July 27, 2006, SAI timely filed Proofs of Claim. Attached to each Proof of Claim was an "Attachment to Proof of Claim" which detailed the factual background of the State Action, identified the substantive issues, and invited Debtors to contact SAI if it wanted to review the supporting documents currently available. SAI's proofs of claims do not carry specific figures because Debtors have thus far failed or refused to provide SAI with an annual certification from its chief financial office as required by the underlying agreements, prevented SAI from conducting an audit, and not provided documentation or discovery in the State Action and the bankruptcy stay has thus far prevented SAI from prosecuting the State Action and conducting related discovery. For example, Debtors admitted failure and refusal to provide an annual certification of the NPI calculation (income and expenses) is by itself a breach of the underlying agreements; Debtors admitted inclusion of expenses from other plants not subject to the underlying agreements is by itself a breach of the underlying agreements; and Debtors' admitted "apportionment" of expenses from other plants and improper characterization as general overhead expenses for unrelated plants as "direct expenses" is by itself a breach of the underlying agreements. The only practical issues are securing a determination of the proper amount of expenses to be used to properly calculate the NPI and monies owing to SAI and, if Debtors' continue to breach the agreements, a court judgment declaring the rights and obligations of SAI and the Debtors under the underlying agreements and requiring specific performance. As virtually all the factual and documentary evidence used to determine the amounts paid and payable to SAI pursuant to the underlying agreements rests with and/or are generated by Debtors, their purported ignorance is unpersuasive. SAI's claims, depending on and subject to the results of the audit and accounting, are estimated to range from the mid-$200,000 range to several hundreds of thousands, plus interest and attorneys fees as provided for in the underlying agreements.

34.     Debtors have never requested any information regarding SAI's Proofs of Claim.

**II. Debtors' Claim Objection Is Deficient:**

35.     "A proof of claim executed and filed in accordance with these rules constitutes *prima facia* evidence of the validity of the claim." FED. R. BANK. P 3001 (f). SAI executed and filed the

**RESPONSE OF ROBERT MEMBRENO, TRUSTEE OF SAI TRUST TO DEBTORS' EIGHTEENTH OMNIBUS OBJECTION TO PROOFS OF CLAIMS, EQUITY INTEREST CLAIMS, UNLIQUIDATED CLAIMS, ANTICIPATORY CLAIMS, CLAIMS TO BE ADJUSTED AND WRONG DEBTOR CLAIMS TO BE ADJUSTED**

10

various claims in accordance with the Federal Rules of Bankruptcy Procedure and the Debtors have not alleged otherwise. The Debtors must offer sufficient evidence to overcome the presumptive validity of the claim (In re Duggins, 263 B.R. 233, 238 (Bankr. C.D. Ill. 2001 (stating that a filed proof of claim gives rise to a "rebuttable presumption" as to the validity and amount of the claim).

36.    Debtors have offered no evidence to support the unqualified, hearsay opinion accompanying the Eighteenth Objection. The Debtors are required to submit evidence of equal or greater probative value contradicting the elements of SAI's claims. (Southland Corp. v. Toronto-Dominion (In re Southland Corp.), 160 F.3d 1054 (5th Cir. 1980). The mere denial by Debtors' that the claims are unenforceable is insufficient to rebut the *prima facia* validity of the claim (In re Frederes, 98 B.R. 165, 167 (Bankr. W.D.N.Y. 1989) and the vague objection does not satisfy Debtors' burden (In re Narragansett Clothing Co., 143 B.R. 582, 583 (Bankr. D.R.I. 1992).

**III. SAI's Motion For Relief From Stay To Proceed With The State Action, To Secure Documents And Evidence From Debtors, and To Establish The Specific Amounts Owed And Owing To SAI Through A Formal Accounting Will Resolve This Matter:**

37.    In response to Debtors' Eleventh Objection SAI promptly filed a motion for relief from stay in order to proceed with the State Action. The State Action will require Debtors, as provided for in the underlying agreement, to provide documentation of the income and expenses which constitute the NPI payable to SAI, to establish compliance with the express terms of the underlying agreement regarding proper calculation of the NPI, including proper application of expenses, to establish that its chief financial officer has not certified Debtors' compliance with the underlying agreement and calculation of the NPI payable to SAI, and to allow SAI to inspect such voluminous records of Debtors at Debtors' facility in Northern California. The State Action will also formally liquidate SAI's claims.

38.    SAI submits that all substantive party and non-party witness reside or do business in Northern California, all substantive documents are all located within Northern California, according to Debtors, Debtors' documentation is too voluminous to move from its plant in Northern California and would have to be inspected at the subject plant in Northern California, the subject plant is

**RESPONSE OF ROBERT MEMBRENO, TRUSTEE OF SAI TRUST TO DEBTORS' EIGHTEENTH OMNIBUS OBJECTION TO PROOFS OF CLAIMS, EQUITY INTEREST CLAIMS, UNLIQUIDATED CLAIMS, ANTICIPATORY CLAIMS, CLAIMS TO BE ADJUSTED AND WRONG DEBTOR CLAIMS TO BE ADJUSTED**

11

located and operates only in Northern California, and SAI's and Debtors' counsel are located in Northern California. If the court does not lift the stay or allow an alternative method for SAI to liquidate its claims then the Debtors will be allowed to summarily alter their contractual relationship with SAI and summarily eliminate a legitimate creditor without allowing SAI to utilize its contractual audit rights, proceed with its State Action, proceed with discovery, secure evidence, and have a trial. Debtors' ongoing failure and refusal to comply with its agreements with SAI cause ongoing post-petition harm to SAI. Although SAI receives its post-petition NPI payments from Debtors on a monthly basis, these post-petition payments are not in accordance with the agreements between the parties. The most cost effective manner to resolve these pre-petition and post-petition problems is to allow SAI to proceed with its State Court litigation. As previously stated, the witnesses, documents, subject property, and evidence are in Northern California and now, with Debtors' retention of Northern California bankruptcy counsel, all actual and potential counsel are located in Northern California. Robert Membreno, Trustee of SAI Trust and signature to the underlying agreements currently resides in Nicaragua, but will travel to the United States for purposes of discovery and trial as necessary. Mark Membreno, associate with SAI Geothermal and administrator of SAI Trust resides in Northern California and will submit to discovery and trial as necessary. Other members of SAI Trust would have to be contacted to determine the availability for discovery and trial.

39.     SAI's Motion For Relief From Stay is currently scheduled for hearing on September 25, 2007, having be continued based on agreements with Debtors' counsel.

**IV. SAI'S Amended Proofs of Claim:**

40.     On Monday, June 11, 2007, SAI received Debtors' (A) Objection To SAI Trust's Motion For Relief From Stay And (B) Reply To SAI Trust's Response To The Debtors' Eleventh Omnibus Claims Objection To SAI Trust's Proofs Of Claim ("Debtors' Pleading").

41.     On June 11, 2007, SAI filed amended proofs of claims in order to partially and preliminarily liquidate its claims. These amended claims outline preliminary information relative to SAI's claims and reflect portions of the business dealings between Debtors and SAI. These figures are preliminary

and partial, do not include other potential damages/losses based on Debtors' use of budgeted figures and not actual figures, charging 15% overhead on budgeted figures and not actual figures and including allocated budgeted costs from other plants, and including costs not allowed to be included based on the parties contractual agreements and are limited to pre-petition matters. This preliminary calculation only addresses one area of damage/loss based on Debtors' improperly allocating budgeted costs to SAI on a percentage basis and pre-petition January 2001 through December 2005. Said amount totals $245,723.09. These figures were obtained from monthly NPI statements obtained from Debtors (Although never certified by debtors Chief Financial Officer as required by the underlying agreements):

**SAI Trust**
**Cal Pine Allocated Expenses Deduction in dispute**

|  |  | Total Allocated Expense |  | @4.55% |
|---|---|---|---|---|
|  | Jan-01 | $ - | | $ - |
|  | Feb-01 | $ - | | $ - |
|  | Mar-01 | $ - | | $ - |
| Jan-Mar True up | Apr-01 | $ 210,877.99 | * | $ 9,594.95 |
|  | May-01 | $ 74,889.32 | | $ 3,407.46 |
|  | Jun-01 | $ 107,243.43 | | $ 4,879.58 |
|  | Jul-01 | $ 54,514.42 | | $ 2,480.41 |
|  | Aug-01 | $ 104,038.44 | | $ 4,733.75 |
|  | Sep-01 | $ 82,132.01 | | $ 3,737.01 |
|  | Oct-01 | $ 87,599.98 | | $ 3,985.80 |
|  | Nov-01 | $ 60,165.47 | | $ 2,737.53 |
|  | Dec-01 | $ 35,148.38 | | $ 1,599.25 |
|  | Jan-02 | $ 75,835.26 | | $ 3,450.50 |
|  | Feb-02 | $ 65,889.48 | | $ 2,997.97 |
|  | Mar-02 | $ 61,450.45 | | $ 2,796.00 |
|  | Apr-02 | $ 41,621.72 | | $ 1,893.79 |
|  | May-02 | $ 42,069.18 | | $ 1,914.15 |
|  | Jun-02 | $ 37,943.85 | | $ 1,726.45 |
|  | Jul-02 | $ 44,318.60 | | $ 2,016.50 |
|  | Aug-02 | $ 53,364.83 | | $ 2,428.10 |
|  | Sep-02 | $ 54,383.44 | | $ 2,474.45 |
|  | Oct-02 | $ 62,323.49 | | $ 2,835.72 |
|  | Nov-02 | $ 56,571.61 | | $ 2,574.01 |
|  | Dec-02 | $ 57,514.97 | | $ 2,616.93 |
|  | Jan-03 | $ 110,891.37 | | $ 5,045.56 |
|  | Feb-03 | $ 93,134.88 | | $ 4,237.64 |
|  | Mar-03 | $ 83,359.91 | | $ 3,792.88 |
|  | Apr-03 | $ 104,483.34 | | $ 4,753.99 |

| Month | Amount | | Amount | |
|---|---|---|---|---|
| May-03 | $ | 100,422.52 | $ | 4,569.22 |
| Jun-03 | $ | 90,554.96 | $ | 4,120.25 |
| Jul-03 | $ | 106,978.17 | $ | 4,867.51 |
| Aug-03 | $ | 94,185.34 | $ | 4,285.43 |
| Sep-03 | $ | 123,901.44 | $ | 5,637.52 |
| Oct-03 | $ | 111,313.10 | $ | 5,064.75 |
| Nov-03 | $ | 188,866.58 | $ | 8,593.43 |
| Dec-03 | $ | 229,528.23 | $ | 10,443.53 |
| Jan-04 | $ | 167,579.22 | $ | 7,624.85 |
| Feb-04 | $ | 161,547.67 | $ | 7,350.42 |
| Mar-04 | $ | 112,971.97 | $ | 5,140.22 |
| Apr-04 | $ | 86,545.03 | $ | 3,937.80 |
| May-04 | $ | 78,569.62 | $ | 3,574.92 |
| Jun-04 | $ | 122,794.90 | $ | 5,587.17 |
| Jul-04 | $ | 94,911.07 | $ | 4,318.45 |
| Aug-04 | $ | 101,499.03 | $ | 4,618.21 |
| Sep-04 | $ | 83,585.29 | $ | 3,803.13 |
| Oct-04 | $ | 78,928.33 | $ | 3,591.24 |
| Nov-04 | $ | 66,402.70 | $ | 3,021.32 |
| Dec-04 | $ | 124,427.61 | $ | 5,661.46 |
| Jan-05 | $ | 89,187.80 | $ | 4,058.04 |
| Feb-05 | $ | 130,170.61 | $ | 5,922.76 |
| Mar-05 | $ | 101,011.86 | $ | 4,596.04 |
| Apr-05 | $ | 52,702.62 | $ | 2,397.97 |
| May-05 | $ | 100,652.98 | $ | 4,579.71 |
| Jun-05 | $ | 98,049.99 | $ | 4,461.27 |
| Jul-05 | $ | 106,146.17 | $ | 4,829.65 |
| Aug-05 | $ | 118,378.04 | $ | 5,386.20 |
| Sep-05 | $ | 126,453.65 | $ | 5,753.64 |
| Oct-05 | $ | 84,586.14 | $ | 3,848.67 |
| Nov-05 | $ | 138,265.49 | $ | 6,291.08 |
| Dec-05 | $ | 67,623.45 | $ | 3,076.87 |
| Jan-06 | $ | 68,587.29 | $ | 3,120.72 |
| Feb-06 | $ | 83,468.96 | $ | 3,797.84 |
| Mar-06 | $ | 88,906.62 | $ | 4,045.25 |
| Apr-06 | $ | 181,029.40 | $ | 8,236.84 |
| May-06 | $ | 82,321.61 | $ | 3,745.63 |
| Jun-06 | $ | 89,359.38 | $ | 4,065.85 |
| Jul-06 | $ | 61,919.82 | $ | 2,817.35 |
| Aug-06 | $ | 94,229.72 | $ | 4,287.45 |
| Sep-06 | $ | 91,056.30 | $ | 4,143.06 |
| Oct-06 | $ | 103,836.19 | $ | 4,724.55 |
| Nov-06 | $ | 62,095.79 | $ | 2,825.36 |
| Dec-06 | $ | 51,925.41 | $ | 2,362.61 |

//

//

**V. The Original Agreements Between SAI Geothermal, SAI's Predecessor, and Freeport McMoran, And The Calculation of NPI Were Premised On West Ford Flat Operating As A Stand Alone Plant And Pre-Date Any Involvement Of Debtors.**

43. The original agreement between SAI Geothermal and Freeport McMoran were made by Robert Membreno. Only SAI Geothermal, SAI, Mr. Membreno, and Freeport McMoran have personal knowledge of the drafting and intent of the underlying agreements relative to West Ford Flat and payment of the NPI to SAI. The original intent of the original parties and the underlying agreements was to own and operate West Ford Flat as a stand alone plant and to compensate SAI based on the actual operating expenses associated with West Ford Flat. Although Calpine may have been in existence in 1984, no one with Debtors have personal knowledge relative to there underlying agreements.

44. Debtors' previously attempted to mislead the court by suggesting any that Debtors' subsequent purchase and operation of surrounding plants and the administrative difficulties Debtors would experience by complying with agreements somehow justifies Debtors' unilateral attempt to modify the agreements and not comply with them. Whether Debtors reasons for breaching the agreements and operating the various plants together are true or false is irrelevant and do not warrant or allow Debtors to re-write the agreements to serve their own purposes.

45. Debtors' previous pleadings acknowledged that six years ago (pre and post-petition) they have used a completely different method of calculating the NPI payable to SAI without notice to or consent by SAI.

46. Coincidentally, six years ago a new line item appeared in the NPI statements, SAI noticed costs had increased and the payment to SAI decreased, and SAI stopped receiving certified NPI statements certified by Debtors' Chief Financial Officer.

47. SAI 's summary of NPI statements is based on information from Debtors. This summary reveals that from July 1994 through December 2000, there was not a line item in the NPI statements for "Allocated Expenses" and SAI was not charged "Allocated Expenses". This summary also reveals that in April 2001 (effective January 2001) Debtors unilaterally included "Allocated

**RESPONSE OF ROBERT MEMBRENO, TRUSTEE OF SAI TRUST TO DEBTORS' EIGHTEENTH OMNIBUS OBJECTION TO PROOFS OF CLAIMS, EQUITY INTEREST CLAIMS, UNLIQUIDATED CLAIMS, ANTICIPATORY CLAIMS, CLAIMS TO BE ADJUSTED AND WRONG DEBTOR CLAIMS TO BE ADJUSTED**

15

Expenses" as a line item and as an expenses and thereafter calculated the overhead expense on both Lease Operating Expenses AND this new found feature "Allocated Expenses". Until such time as Debtor's provide a certified NPI Statement signed by Debtors' Chief Financial Officer, as required by the agreements, these figures are preliminary.

### V. SAI's Claims Are Valid And Based In Part On Debtors' Acknowledged Ongoing Breach And Noncompliance With Agreements With SAI.

48. SAI's State Action, claims, and prior pleadings indicate that Debtors had acknowledged ongoing breaches of their agreements with SAI, including, but not limited to, not providing a yearly certification of NPI statements by Debtors' Chief Financial Officer, using budgeted numbers rather than actual costs, allocating budgeted expenses from other plants and including such expenses in calculating the NPI payable to SAI, including expenses not directly attributable to the West Ford Flat plant and including such expenses in calculating the NPI payable to SAI, and using budgeted numbers and improper costs in calculating the overhead expenses used in calculating the NPI payable to SAI.

49. Debtors' prior pleadings confirm confirms that Debtors have breached the underlying agreements, inter alia, by using budgeted numbers, not using actual cost figures, including costs not subject to the agreement, allocating expenses from other plants as costs, and charging an overhead percentage based on budgeted figures, inappropriate costs, and allocated costs. Debtors' suggestion that Debtors use "a commercially reasonable method of allocation" does not excuse their non-compliance with the underlying agreements.

50. The Declaration of Guy Tipton submitted in support of Debtors' prior objection also reveals some of Debtors' ignorance and arrogance. For example, noticeable absent from Mr. Tipton's declaration is any representation that anyone with any of the Debtors have personal knowledge of the West Ford Flat plant prior to the creation of Calpine (1984), the execution of the original agreements between SAI Geothermal and Freeport McMoran, an explanation why Debtors' have failed and refused to provide the contractually yearly required certifications of the NPI statements

**RESPONSE OF ROBERT MEMBRENO, TRUSTEE OF SAI TRUST TO DEBTORS' EIGHTEENTH OMNIBUS OBJECTION TO PROOFS OF CLAIMS, EQUITY INTEREST CLAIMS, UNLIQUIDATED CLAIMS, ANTICIPATORY CLAIMS, CLAIMS TO BE ADJUSTED AND WRONG DEBTOR CLAIMS TO BE ADJUSTED**

16

from Debtors' Chief Financial Officer, why Debtors use budgeted figures and not actual costs, why the allocated expenses did not exist prior to their first inclusion in the NPI Statements in April 2001 (back charge from January 2001), why the 15% contractual overhead provision includes both budgeted expenses and allocated expense from other plants. The answer is both a breach of the agreements and self-evident, Debtors' want to do it their way because it is apparently easier for them. However, such is not a justification for re-writing the agreements or a defense to SAI's claims.

**VI. Debtors' Failure To Comply With The Contractual Obligations, Failure To Make Documents Available To SAI, And Failure To Allow An Audit Caused The Resulting State Action And SAI's Inability To Fully Determine Its Damages/Losses And To Liquidate Its Claims.**

51.     The State Action was commenced, inter alia, because Debtors' failed to comply with its contractual obligations, including but not limited to, providing a certification of the NPI statements from Debtors' Chief Financial Officer, using budgeted numbers, improperly including costs, including expenses from other plants, and improperly including costs into the calculation of overhead.

52.     Debtors' prior pleadings suggest the monthly NPI statements provide sufficient information for SAI. Debtors are wrong. Debtors' prior pleadings also suggest their justification or explanation regarding the use of allocations should answer SAI's concerns. Debtors are wrong. The pro-forma statement previously presented by Debtors was, for practical purpose, guess work, self-serving, irrelevant, and never agreed to by SAI. The documentation necessary to properly re-calculate the subject NPI statements is, as represented by Mr. Tipton, in Northern California, can't be moved, voluminous, and not yet inspected or reviewed by SAI.

53.     Until such time as documentation of all the expenses, actual and allocated, are provided to SAI, the figures included in the NPI statements, except revenue from PG&E, are simple budgets from Debtors serve little purpose.

**VII. Objection To The Affidavit Of Craig Chancellor:**

54.     SAI objects to the affidavit of Craig Chancellor because, in part, it is without foundation, is

**RESPONSE OF ROBERT MEMBRENO, TRUSTEE OF SAI TRUST TO DEBTORS' EIGHTEENTH OMNIBUS OBJECTION TO PROOFS OF CLAIMS, EQUITY INTEREST CLAIMS, UNLIQUIDATED CLAIMS, ANTICIPATORY CLAIMS, CLAIMS TO BE ADJUSTED AND WRONG DEBTOR CLAIMS TO BE ADJUSTED**

17

not based on personal knowledge, is based on hearsay, is simply a historical summary, and is an opinion from an unqualified person. SAI submits that the affidavit is simply a self serving, commentary, and baseless opinion from someone that does not have any personal knowledge of the underlying agreements at issue, never met or spoke with anyone associated with the underlying agreements, and never read the underlying agreements

**E. SAI's Claims Must Be Allowed As Filed:**

55.  For the foregoing reasons, Debtors Objection to SAI's claims, KCC#6309, 6314, 6315, and 6316 must be overruled or withdrawn and SAI's claims remain as filed until supplemented by SAI.

Dated: August 31, 2007               CAMPEAU GOODSELL SMITH
                                      /s/ William J. Healy
                                     William J. Healy