**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**
-----------------------------------------------------------
In re

       Calpine Corporation, et al.,

                  Debtors.

-----------------------------------------------------------

Chapter 11

Case No. 05-60200 (BRL)
Jointly Administered

**MEMORANDUM DECISION AND ORDER DENYING STAY PENDING APPEAL**

      Before the Court is the motion of the Official Equity Committee of Calpine Corporation and its affiliated debtors (collectively, the "Debtors") for a stay pending appeal of this Court's order approving the adequacy of the Debtors' Disclosure Statement and related solicitation procedures (the "Disclosure Statement Order"). As in its previous motion for an adjournment of the disclosure statement hearing what the Committee really objects to is the provision that the Debtors will publish an updated or "refreshed" valuation of the Debtors' enterprise value ten days before the voting deadline. As noted by the Creditor's Committee's objection to the request for a stay, the Equity Committee has not obtained authority to appeal the interlocutory Disclosure Statement Order. Even if the Equity Committee obtains authority to appeal, it cannot meet the burden for a stay. The timing of this motion by the Equity Committee has put severe time constraints for responses by the parties in interest and the Court. Nevertheless, the well considered responsive papers and briefs filed this morning fully establish this Court's conclusion that the request for a stay should be denied.

**Discussion**

      In order to obtain a stay pending appeal under Rule 8005 of the Federal Rules of Bankruptcy Procedure, the movant must demonstrate: (1) a substantial possibility, although less

than a likelihood, of success on the merits; (2) irreparable injury if a stay is denied; (3) no substantial injury to other parties if the stay is issued; and that (4) the public interest favors a stay. *See In re WestPoint Stevens, Inc.* 2007 WL 1346616, *4 (S.D.N.Y. May 9, 2007) *citing Mohammed v. Reno*, 309 F.3d 95, 100 (2d Cir.2002).

As I noted at the hearing denying the Equity Committee's motion to adjourn the disclosure statement hearing , the key issue in connection with the Debtors' plan of reorganization in these cases is whether the Debtors' reorganized equity value is sufficient to satisfy creditors' claims in full and also provide value to existing interest holders.  The Debtors Plan is a "waterfall" plan that would distribute Calpine's reorganized equity to unsecured creditors until they were paid in full, with the balance, if any, cascading to interest holders, in compliance with the absolute priority rule.  In the Disclosure Statement, the Debtors' estimated that, based on that valuation and their claims estimate, there would be sufficient reorganized Calpine equity to satisfy claims in full and make distributions to interest holders.  However, at the end of the day, under the Debtors' Plan, the value of the reorganized equity will ultimately be based on a valuation as determined by this Court.

The Equity Committee argues that because the Debtors have not provided a firm projected enterprise value of the reorganized entity that the Disclosure Statement does not provide adequate disclosure.  However the Equity Committee ignores the reality of the chapter 11 process.  At this point the parties apparently anticipate a valuation fight at the confirmation hearing - that is, a battle of the experts, with each constituency free to argue for a higher or lower valuation.  Without full consensus to confirmation of the Debtors' proposed Plan, this Court will then determine the enterprise value of the Debtors based upon the evidence presented at the confirmation hearing regardless of the Debtors' and Miller Buckfire's own views on valuation.

*See ie., In re Granite Broadcasting Corp.*, 369 B.R. 120, 140 (Bankr. S.D.N.Y. 2007)("The valuation of a debtor in connection with confirmation of a Plan is at best a challenging undertaking. Where, as here, a valuation is required, the parties ordinarily rely on expert testimony to calculate value, and each of the principal parties in this case provided a valuation report and expert testimony.")  Equity will then receive a distribution based upon that determination and the absolute priority scheme set forth in the Bankruptcy Code.  The Plan and Disclosure Statement clearly set forth this scheme providing appropriate disclosure to all parties in interest.

Moreover, a balancing of the harms clearly favors the Debtors and the creditor constituencies as articulated in the responses filed to the motion.  A delay of the Confirmation process may seriously jeopardize the Debtors' ability to emerge from chapter 11 within the timeframe to maintain their $8 billion favorable exit financing intact - financing terms that would be near impossible to replicate under current market conditions.   According to the Debtors' investment bankers, should the current commitment expire, the Debtors would incur up to $800 million dollars in additional interest expense.  Moreover there is a real possibility that the amount of exit financing they currently have lined up and require to implement their Plan would not even be available to the Debtors under the current market conditions.  Such a delay would threaten harm to all parties in interest including the equityholders.   In addition, each month the Debtors remain in chapter 11 they continue to accrue substantial administrative expenses and interest expense - approximately $70 million a month.  Continued delay could result in hundreds of millions of dollars in additional expenses.

Lastly I note that the Equity Committee's cries that they do not have enough information to inform their constituents ring hollow.  The Equity Committee is armed with a full panoply of

advisors and even proposed their own restructuring plan to the Debtors which was ultimately rejected. Indeed given the inference of the availability of substantial resources from their proposed restructuring plan it would not be beyond the pale of reality that avails exist for the posting of an $800 million bond - a sum not disproportionate to potential harm to the Debtors' estates. I do not find a basis for the Equity Committees' argument that a bond should not be required of an official committee if a stay pending appeal were granted . *See Chicago Inv. Group Equity Sec. Holders Committee v. Chicago Inv. Group,* 1988 WL 117295, *4 (N.D.Ill.Oct. 26,1988)(District court held that the bankruptcy judge did not abuse his discretion by requiring the Equity Committee to post a supersedeas bond as a condition of a stay order.). Such an exception, as requested by the Equity Committee, could teflon coat a frivolous group of appeals. Although such a posting might be fully justified here, I am not imposing that requirement.

**Conclusion**

       For all of the reasons stated, the Equity Committee's motion for a stay pending appeal is denied.

IT IS SO ORDERED.

Dated: New York, New York
       October 4, 2007

                                      /s/ Burton R. Lifland
                                      United States Bankruptcy Judge