1        **Hearing Date: June 13, 2007, at 10:00 a.m. (EDT)**

2

3    CAMPEAU GOODSELL SMITH, L.C.
     WILLIAM J. HEALY, #146158
4    440 N. 1st Street, Suite 100
     San Jose, California   95112-4024
5    Telephone:   (408) 295-9555
     Facsimile:   (408) 295-6606
6
     ATTORNEYS FOR CREDITOR
7    Robert Membreno, Trustee of SAI Trust ("SAI")

8
                 **UNITED STATES BANKRUPTCY COURT**
9
                  **SOUTHERN DISTRICT OF NEW YORK**
10

11    _____
      In re:                              )    CHAPTER 11
12                                         )
      CALPINE CORPORATION, et al,          )    Case No. 05-60200 (BRL)
13                                         )    Jointly Administered
                                           )
14                      Debtor.            )
      _____)
15

16        **DECLARATION OF MARC MEMBRENO RE: FURTHER RESPONSE OF ROBERT
          MEMBRENO, TRUSTEE OF SAI TRUST TO DEBTORS' ELEVENTH OMNIBUS
17        OBJECTION TO PROOFS OF CLAIMS, EQUITY INTEREST CLAIMS, UNLIQUIDATED
          CLAIMS, ANTICIPATORY CLAIMS, CLAIMS TO BE ADJUSTED AND WRONG
18        DEBTOR CLAIMS TO BE ADJUSTED AND REPLY TO DEBTORS' OBJECTION TO
                      SAI'S MOTION FOR RELIEF FROM STAY**

19

20     I, Marc Membreno, do hereby declare:

21     1.        At all times relevant herein I was over the age of eighteen, was and am affiliated with SAI

22     Geothermal, Inc. and SAI Trust, and am familiar with contracts and agreements and business

23     dealings relative to SAI Geothermal, Inc, SAI Trust, Freeport McMoran, and the Debtors. Since

24     approximately 1997, I have handled, along with my father Robert Membreno, business dealings with

25     Debtors, including administering SAI Trust's contracts, including the agreements with Debtors,

26     overseeing and insuring Debtors' compliance with the agreements, reviewing and determining the

27     NPI payment to SAI Trust, reviewing Debtors' certification of the NPI statements, reviewing the

28     NPI statements from Debtors, dealing with Debtors, including but not limited to Guy Tipton, Kevin

       ─────────────────────────────────────────────────────────────
                 **DECLARATION OF WILLIAM J. HEALY RE: MOTION FOR RELIEF FROM STAY**

1    Talkington, and their predecessor Bob Brown, and distributing such proceeds to the trust members. I

2    have had telephone conferences and meetings with Debtors to address concerns relative to Debtors'

3    compliance and non-compliance with the underlying agreements and have reviewed various

4    documents relative to the underlying agreements and NPI issues. I submit the following declaration

5    of my own personal knowledge and if called to testify would do so in an honest and competent

6    manner.

7    2.        The original agreement between SAI Geothermal, Inc., subsequently assigned to SAI Trust,

8    and Freeport McMoran was intended to treat West Ford Flat as a stand alone plant and compensate

9    SAI accordingly. The underlying agreements were specifically drafted and intended to treat West

10   Ford Flat as a stand alone plant and the costs items were specifically negotiated to address actual

11   costs and an overhead component based on these actual costs. SAI has never agreed to alter the

12   agreements with Freeport McMoran or Debtors, except to the extent of the assignments to Debtors

13   and to SAI and settlement agreement with Debtors.

14   3.        SAI has not received a certification of the NPI statements from Debtors since at least fiscal

15   year 2000 which is a breach of the Agreement and Settlement Agreement.

16   4.        Until 2001 the NPI statements did not include a category for Allocated Expenses. SAI

17   attempted to make inquiry regarding, among other things, the absence of certifications, coinciding

18   and following increases in expenses, fluctuating expenses, use of budgeted numbers, non-use of

19   actual expenses, the reference and apparent allocation of costs from other plants, improper inclusion

20   of expenses, and the improper calculation of overhead.

21   5.        I arranged and participated in several meetings with representatives of Debtors wherein,

22   among other things, Debtors acknowledged not knowing the existence of the underlying agreements,

23   the absence of certifications, coinciding and following increases in expenses, fluctuating expenses,

24   use of budgeted numbers, non-use of actual expenses, the reference and apparent allocation of costs

25   from other plants, inclusion of improper expenses, and the improper calculation of overhead.

26   Generally, Debtors representatives simply justified their actions as more convenient for them.

27   6.        I also attempted to secure Debtors' production of sufficient documentation such that an

28   informal and perhaps formal audit could be conducted as such was consistent with SAI's contract

**DECLARATION OF WILLIAM J. HEALY RE: MOTION FOR RELIEF FROM STAY**

rights and appeared necessary. The documents and information made available by Debtors was wholly non-responsive except to the extent it further confirmed Debtors were not complying with the agreement and had little intention of honoring the intent and language of the agreements as it relates to the proper calculation of NPI, document availability, and formal certification of the NPI statements. Debtors are not "providing the underlying data necessary to confirm its calculation of the NPI to SAI Trust with each monthly report". The "underlying data" referred to by Mr. Tipton is supposedly the attached spreadsheet from the PeopleSoft query software showing supposed labor costs for various departments. For example, such does not confirm how much labor was actually spent addressing repairs at West Ford Flat and potentially, it could be none, 2.5 %-the budgeted allocation, or some other figure.

7.      I am familiar with the state action entitled ROBERT MEMBRENO, TRUSTEE of THE SAI TRUST vs. FREEPORT MCMORAN RESOURCE PARTNERS, a Limited Partnership;  SANTA ROSA GEOTHERMAL COMPANY, L.P., SONOMA GEOTHERMAL PARTNERS, L.P.; CALPINE SONOMA, INC.; CALPINE GEYSERS COMPANY, L.P.;  CALPINE CORPORATION,, and DOES ONE through, FIFTY, inclusive, Santa Clara Superior Court Case No. 1-05-CV-041957 ("State Action"). This action became necessary based on Debtors' non-compliance with the underlying agreements. Subsequent conferences with Debtors have been equally unsuccessful primarily due to the bankruptcy stay and Debtors' attitude that their administrative convenience is a sufficient reason to disregard and excuse their contractual obligations. This State Action is legitimate as are SAI's claims.

8.      Based on information provided to SAI by Debtors, we have prepared a summary chart of NPI statements from January 1994 through March 2006 and prepared, solely as to the Allocated Expense issue, an estimate of the monies due to SAI from Debtors. Such amount, partial and preliminarily, totals $245,723.09, pre-petition only. A true and correct copy of this summary is attached to SAI's amended claims and this declaration.

9.      Robert Membreno currently resides in Nicargua, I reside in Northern California, and former members of SAI Geothermal, Inc. and current members of SAI Trust reside in various places. Robert

Membreno and I will participate in discovery and trial on these issues. Our preference, logistically and economically is for trial in Northern California.

10.      Today, I received a copy of the Declaration of Guy Tipton and offer the following partial response due to time restrictions:

a) the "Project" is defined in the "Agreement for Purchase and Sale of Asset" as a thirty (30) megawatt geothermal steam powered electric generating plant (the "Project"). Net income is derived from the gross revenues minus "(ii) all Project direct operating expenses (excluding depreciation). This basic tenant has not changed. The assertion that this is no longer a stand alone plant is immaterial – no amendment has been made to the original contract in this regard. No agreement has been presented or reached that recognizes the existence of any other plant.

b) the reference to "commercially reasonable" method of allocation has not been submitted to SAI prior to Debtors unilateral adoption of this method for our review, and or determination of compliance with the contract.

c) Exhibit "F" in the "Agreement" specifies accounting procedures, and states under II DIRECT CHARGES, "employees directly employed on the Joint Property", it makes no provision for employees not working directly for the specified plant and steam field.

d) Debtors' admission that it allocates costs based on "yearly budgeted costs in relation to other plants at the Geysers facility" is a clear admission to breach of contract based on the use of allocations, the absent of quantifiable, actual numbers, and the use of a budget or projections. None of Debtors' unilateral changes were the terms and conditions agreed to or actually intended by the original contracting parties.

e) The "Agreement", provides for overhead charged on a percentage basis, not on a fixed rate basis, i.e 15% "of the cost of Operating the Joint Property"( WFF), direct costs to the plant, – not 15% of budgeted lease operating costs, or 15% of allocated. The effect of Debtors' unilateral changes causes SAI to pay for a percentage of overhead for other plants operating costs.

f) November 4 2002 letter from Kevin Talkington provides, in pertinent part: "We then take

1   all of the Geysers shared costs that are allowed to be charged under our agreement with SAIT (that

2   we provide you with monthly) and multiply those numbers by the above percentages (2.55% for the

3   WFF power plant, and 0.53% for the steam field) to derive the allocated costs total for WFF and for

4   use in your net profits interest calculation." There are clearly no "shared costs that are allowed under

5   our agreement" – we don't "share" the costs with anyone but ourselves.

6       g) Pursuant to Mr. Tipton's declaration (paragraph #14), he states West Ford Flat is charged

7   more when additional O&M is required for this particular plant. However, as a result SAI is charged

8   more when other plants need more O&M.

9       h) Pursuant to Mr. Tipton's declaration (paragraph #15), he states various administrative

10  expenses are no being allocated to West Ford Flat. However, Mr. Tipton is confused and is

11  misleading. The Agreement specifically provides for Debtors to receive 15% overhead on direct

12  costs of this particular plant, but Debtors improperly charges 15% on budgeted allocations for all

13  eighteen plants, not solely West Ford Flat!

14

15  I declare under penalty of perjury under the laws of these United States that the foregoing is true and

16  correct and executed this 11th day of June 2007, in Santa Clara, California.

17                              /s/ Marc Membreno

18                              Marc Membreno

19

20

21

22

23

24

25

26

27

28