## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE SOUTHERN DISTRICT OF NEW YORK

| | | |
|---|---|---|
| In re: | ) | Chapter 11 Case |
| | ) | |
| CALPINE CORPORATION, et al. | ) | Case No. 05-60200 (BRL) |
| | ) | (Jointly Administered) |
| Debtors. | ) | |
| | ) | Honorable Burton R. Lifland |

### EIGHTH INTERIM AND FINAL APPLICATION OF AP SERVICES, LLC
### AS CRISIS MANAGERS TO THE DEBTORS
### FOR FINAL COMPENSATION AND REIMBURSEMENT OF EXPENSES

| | |
|---|---|
| Name of Applicant: | AP Services, LLC ("APS") |
| Authorized to Provide Professional Services to: | Calpine Corporation, et al. |
| Dates of Retention: | January 26, 2006 and January 17, 2007[1] |
| Period for which Compensation and Reimbursement is Sought: | December 21, 2005 through January 31, 2008 |
| Amount of Compensation Sought as Actual, Reasonable, and Necessary: | $52,571,747.10 |
| Amount of Expense Reimbursement Sought as Actual, Reasonable, and Necessary: | $4,022,520.04 |

This is APS' eighth and final application.

Total time expended for the preparation of this application is approximately 43 hours and the corresponding compensation is approximately $20,705. This fee application was prepared in its entirety subsequent to January 31, 2008. As such, compensation for the total time incurred for preparation of this fee application will be sought in connection with a subsequent monthly invoice.

---

[1] On January 17, 2007 this Court entered an order nunc pro tunc to November 3, 2006, transferring the retention of APS from sec. 327 of the Bankruptcy Code to sec. 363 of the Bankruptcy Code.

The fees set forth herein are 100% of the fees actually billed to the Debtors for which APS seeks Court approval. APS' monthly fee statements were paid pursuant to the Administrative Order entered in this case.

APS respectfully requests that this Court enter an order awarding APS a final allowance of compensation and expenses in the amount of $56,594,267.14 as set forth below and as indicated in the attached Declaration of Lisa J. Donahue, a Managing Director of APS. APS further respectfully requests that the Debtors pay APS the net unpaid amount of $10,147,423.79 from the assets of their estates and that the Court provide such other and further relief as may be just and equitable. In addition APS requests payment of the Emergence Incentive Bonus of APS' retention agreement agreed to by the Debtors and APS on November 6, 2006. A further description of fees and expenses is attached as Exhibit A-1.

| | |
|---|---|
| *Professional Fees Requested[2]* | $46,571,747.10 |
| Emergence Incentive Bonus | 6,000,000.00 |
| Out of Pocket Expenses | 4,022,520.04 |
| *Total Fees and Expenses Requested[3]* | $56,594,267.14 |
| *Less: Amounts Received* | 46,446,843.35 |
| *Net Unpaid[2]* | $10,147,423.79 |

Dated: New York, New York
March 3, 2008
AP Services, LLC
2000 Town Center, Suite 2400
Southfield, MI 48075

By /s/ Lisa J. Donahue
    Lisa J. Donahue
    Managing Director
    AP Services, LLC

---

[2] The fees requested include fees withdrawn without prejudice from the 5th, 6th, and 7th fee application period. APS seeks reimbursement for a portion of these fees in the amount of $145,325.00 as this is the final fee application. Pursuant to discussions with the United States Trustee, APS has agreed to a voluntary reduction of the balance of these fees in the amount of $369,896.25 and has not included this amount in the final fee application.

[3] The amount billed reflects a voluntary reduction of $888,635.80 in fees and $91,266.25 in expenses taken by APS for the period between December 21, 2005 and January 31, 2008. These fees and expenses relate to activities such as travel delays and expenses above self-imposed limitations. APS chose to voluntarily exclude such costs from its billings.

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE SOUTHERN DISTRICT OF NEW YORK

| | | |
|---|---|---|
| In re: | ) | Chapter 11 Case |
| | ) | |
| CALPINE CORPORATION, <u>et al.</u> | ) | Case No. 05-60200 (BRL) |
| | ) | (Jointly Administered) |
| Debtors. | ) | |
| | ) | Honorable Burton R. Lifland |

### EIGHTH INTERIM AND FINAL APPLICATION OF AP SERVICES, LLC
### FOR ALLOWANCE OF COMPENSATION AND REIMBURSEMENT OF EXPENSES

TO THE HONORABLE BURTON R. LIFLAND, UNITED STATES BANKRUPTCY
JUDGE:

AP Services, LLC ("APS"), crisis managers to Calpine Corporation and its affiliated debtors in the above captioned matter, (collectively, the "Debtors"), hereby submits this eighth interim and final application (the "Application"), for allowance of monthly compensation and reimbursement of expenses for services rendered for the period from December 21, 2005 through January 31, 2008 (the "Application Period"). In addition, APS respectfully requests allowance of the emergence incentive bonus ("Emergence Incentive Bonus") of its Retention Agreement, as hereinafter defined, during the Application Period, and respectfully represents:

INTRODUCTION

1.      By this Application, APS requests an order of this Court, pursuant to Sections 330(a), and 331 of Title 11 of the United States Code (the "Bankruptcy Code") and Rule 2016 of the Federal Rule of Bankruptcy Procedure (the "Bankruptcy Rules"), allowing the amounts requested herein as

1

compensation for professional services rendered as crisis managers to the Debtors during the Application Period.

2.     This Application has been prepared in accordance with the Amended Guidelines for Fees and Disbursements for Professionals in the Southern District of New York Bankruptcy Cases adopted by the Court on April 19, 1995 (the "Local Guidelines"), the United States Trustee Guidelines for Reviewing Applications for Compensation and Reimbursement of Expenses Filed Under U.S.C. section 330, adopted on January 30, 1996 (the "UST Guidelines") and this Court's Order Pursuant to Sections 105(a) and 331 of the Bankruptcy Code Establishing Procedures for Monthly Compensation and Reimbursement of Expenses of Professionals, dated January 25, 2006 (the "Administrative Order", and collectively with the Local Guidelines and UST Guidelines, the "Guidelines"). Pursuant to the Local Guidelines, a certification regarding compliance with same is attached hereto as **Exhibit A.**

RETENTION OF AP SERVICES, LLC

3.     On December 21, 2005 (the "Filing Date"), Debtors filed a petition for relief under Chapter 11 of the Bankruptcy Code.

4.     On November 29, 2005 the Debtors and APS executed a letter agreement (the "Retention Agreement") memorializing the terms of the Debtors' engagement of APS effective as of November 29, 2005, as attached hereto as **Exhibit B.**

5.     On December 21, 2005 (the "Petition Date"), the Debtors filed an Application of Calpine Corporation, et al. to retain APS as crisis managers (the "Retention Application").

6.     On January 26, 2006, the Court signed an order granting the Retention Application (the "Interim Retention Order"). No objections to APS' Retention Application were timely served and filed with the Court by the objection deadline.

7. On March 27, 2006, the Court signed an order granting the final approval of the Retention Application (the "Final Retention Order"). Pursuant to the Retention Agreement, APS was authorized to render financial advisor and restructuring consultant services.

8. On November 3, 2006, APS and the Debtors entered into an amendment to the Retention Agreement, expanding the scope of APS' services for the Debtors. On January 17, 2007, this Court entered an order nunc pro tunc to November 3, 2006 (the "363 Order", the 363 Order, together with the Final Retention Order will be collectively referred to as the "Retention Orders"), changing the retention of APS from section 327 of the Bankruptcy Code to crisis managers under section 363 of the Bankruptcy Code, including, among other things, appointing Lisa Donahue to serve as Debtors' interim Chief Financial Officer ("CFO").

9. On January 25, 2006, the Court signed an Administrative Order under 11 U.S.C. §§ 105(a) and 331 Establishing Procedures for Interim Compensation and Reimbursement of Expenses for Professionals (the "Compensation Order").

10. On May 3, 2006, in accordance with the Compensation Order, APS filed its First Interim Fee Application requesting an allowance of compensation in the amount of $1,652,349.50, reimbursement of expenses in the amount of $179,744.79, and a payment of $330,469.90 in net unpaid compensation for the period December 21, 2005 through January 31, 2006. On May 24, 2006, the Court approved a payment of $165,234.95 of unpaid fees, holding back the amount of $165,234.95, representing 50% of total net unpaid compensation.

11. On August 18, 2006, APS filed its Second Interim Fee Application requesting an allowance of compensation in the amount of $8,434,786.70, reimbursement of expenses in the amount of $985,557.05, and a payment of $1,687,048.34 in net unpaid compensation for the period February 1, 2006 to June 30, 2006. On September 15, 2006, the Court approved a payment of

$843,478.67, holding back the amount of $843,478.67, representing 50% of total net unpaid compensation for the period. The Court also approved payment of $165,234.95 representing total remaining unpaid fees for the period from December 21, 2005 through January 31, 2006.

12.     On December 20, 2006, APS filed its Third Interim Fee Application requesting an allowance of compensation in the amount of $6,878,090.40, reimbursement of expenses in the amount of $756,414.64, and a payment of $1,375,618.08 in net unpaid compensation for the period July 1, 2006 to September 30, 2006. The Court approved interim payment of amounts due to APS amounting to $6,878,090.40 in fees, $756,414.64 in expenses, but continued the withholding of $1,375,618.08 in net unpaid compensation. At that hearing the Court approved the payment of $843,478.67, the amount withheld from the previous motion.

13.     On April 4, 2007, APS filed its Fourth Interim Fee Application requesting an allowance of compensation in the amount of $6,738,383.00, reimbursement of expenses in the amount of $603,949.58, and a payment of $1,347,676.60 in net unpaid compensation for the period October 1, 2006 to December 31, 2006. The Court approved interim payment of amounts due to APS amounting to $6,738,383.00 in fees, $603,949.58 in expenses, but continued the withholding of $678,838.30 in net unpaid compensation. At the hearing the Court approved payment of $1,375,618.08, the amount withheld from the previous motion.

14.     On June 18, 2007, APS filed its Fifth Interim Fee Application requesting an allowance of compensation in the amount of $7,136,914.75, reimbursement of expenses in the amount of $491,011.43, and a payment of $678,838.30 in net unpaid compensation. The Court approved interim payment of amounts due to APS amounting to $7,136,914.75 in fess, $491,011.43 in expenses, but continued withholding of $1,070,537.21 in net unpaid compensation. At the

hearing the Court approved payment of $673,838.30, the amount withheld from the previous motion.

15.    On October 24, 2007, APS filed its Sixth Interim Fee Application requesting an allowance of compensation in the amount of $5,250,095.50, reimbursement of expenses in the amount of $380,956.30, and a payment of $1,175,770 in net unpaid compensation. The Court approved interim payment of the amounts due to APS amounting to $5,250,095.50 in fees, $380,956.30 in expenses, but continued withholding $525,009.55 in net unpaid compensation. At the hearing the Court approved payment of $1,070,537.21, the amount withheld from the previous motion.

16.    On January 15, 2008, APS filed its Seventh Interim Fee Application requesting an allowance of compensation in the amount of $4,193,017.75 in fees, $245,485.13 in expenses, and a payment of $1,166,052.45 in net unpaid compensation. The Court approved interim payment of the amounts due to APS amounting to $4,193,017.75, reimbursement of expenses in the amount of $245,485.13, but continued withholding $419,301.78 in net unpaid compensation. At the hearing the Court approved payment of $777,242.78 in net unpaid compensation.

17.    By this Application, APS seeks an allowance of interim compensation for the period from October 1, 2007 to January 31, 2008 in the amount of $6,111,250.75 in fees, $379,401.12 in expenses, and a payment of $4,002,098.79 in net unpaid compensation. This net unpaid compensation includes $419,301.78 of unpaid compensation withheld at the Seventh Interim Fee Application hearing.

18.    APS requests final approval of fees and expenses incurred during the Application Period. Specifically, APS seeks compensation in the aggregate amounts of $46,571,747.10[4] in fees

---

[4] The fees requested include fees withdrawn without prejudice from the 5th, 6th, and 7th fee application period. APS seeks reimbursement for a portion of these fees in the amount of $145,325.00 as this is the final fee application.

for services rendered on behalf of the debtors, $4,022,520.04 for the reimbursement of expenses incurred in connection with the rendition of such services, and the Emergence Incentive Bonus of $6,000,000, for a total award of $56,594,267.14,[5] and a payment of $10,147,423.79 in net unpaid compensation.

19.     Pursuant to the Compensation Order, APS has received payment of $46,446,843.35 representing eighty-percent (80%) of APS' fees for advisory services for the Application Period and reimbursement of one hundred percent (100%) of expenses incurred in connection with the rendition of such services. Therefore, APS seeks payment of $4,147,423.79 for fees and $6,000,000 for the Emergence Incentive Bonus pursuant to this Application. This amount represents the portion of APS' fees for crisis management services and expenses rendered during the Application Period that has not yet been paid to APS pursuant to the Compensation Order. Copies of APS' monthly fee statements for the Application Period are attached hereto as **Exhibit C**.

20.     APS has not received payment or promise of payment for services rendered in this case other than pursuant to the Retention Agreement, as amended, the Retention Orders and the Compensation Order.

21.     No agreement or understanding exists between APS and any other entity for sharing compensation to be received for services rendered in connection with this case.

22.     The fees and rates charged by APS in these chapter 11 cases for the services rendered by its professionals and paraprofessionals are billed at or below its standard billing rates

---

Pursuant to discussions with the United States Trustee, APS has agreed to a voluntary reduction of the balance of these fees in the amount of $369,896.25 and has not included this amount in the final fee application.
[5] The amount billed reflects a voluntary reduction of $888,635.80 in fees and $91,266.25 in expenses taken by APS for the period between December 21, 2005 and January 31, 2008. These fees and expenses relate to activities such excessive travel delays and expenses above self-imposed limitations. APS willingly chose to voluntarily exclude such costs from its billings.

during the Application Period and are the same or lower than rates APS charges for professional services rendered in comparable related matters. Such fees are reasonable, based on the customary compensation charged by comparably skilled practitioners in comparable non-bankruptcy cases in a competitive national advisory market.

23. As contemplated by the Retention Agreement, certain of the services provided by APS may have been performed by individuals employed by APS as independent contractors. APS' standard practice is to charge for an independent contractor's services at the APS rate for a professional of comparable skill and experience, which rate typically exceeds the compensation provided by APS to such independent contractor. In this Application, APS is seeking payment in the amount of $145,325.00 for services of independent contractors used during the fifth, sixth and seventh Fee Application Periods. These amounts were previously withheld without prejudice, and APS seeks reimbursement at this time as this is the final fee application and, most importantly, value was added by these independent contractors to the Debtors' successful reorganization.

24. Pursuant to the UST Guidelines, annexed hereto as **Exhibit D** is a schedule setting forth all APS professionals who have performed services in these chapter 11 cases during the Application Period, the capacities in which each such individual is employed by APS, the hourly billing rate charged by APS for services performed by such individual, the aggregate number of hours expended in this matter and fees billed.

25. Annexed hereto as **Exhibit E** is a schedule specifying the categories of expenses for which APS is seeking reimbursement, the total amount for each such expense category and an itemized record of all expenses for which APS is seeking reimbursement. Out-of-pocket expenses incurred by APS are charged to a client if the expenses are incurred for the client or are otherwise

necessary in connection with services rendered for such particular client. APS does not factor general overhead expenses into disbursements charged to its clients in connection with Chapter 11 cases.

26.     Pursuant to Section II.D of the UST Guidelines, annexed hereto as **Exhibit F** is a summary of time detail by task regarding the services performed by APS during the Application Period.

27.     APS maintains computerized records of the time spent by all APS professionals in connection with the prosecution of the Debtors' chapter 11 cases. Attached hereto as **Exhibit G** is a schedule of itemized time detail by task by professional for the Application Period.

28.     To the extent that time or disbursement charges for services rendered or disbursements incurred relate to the Application Period, but were not processed prior to the preparation of this Application, APS respectfully requests that the Court allow additional compensation for such services and reimbursement of such expenses in a future invoice.

CRISIS MANAGEMENT SERVICES RENDERED DURING THE APPLICATION PERIOD

29.     The services that APS has been required to perform have been substantial and necessary in these chapter 11 cases. APS has attempted to perform such services with the minimum amount of duplication with the Debtors other advisors.

30.     The Debtor has authorized APS to perform services in addition to the tasks originally outlined in the November 29, 2005 Retention Agreement. These tasks were formalized in the November 3, 2006 amended Retention Agreement between the Debtor and APS. During this Application Period, APS rendered crisis management services that are summarized in paragraph 32 below.

31.     APS segregated time billings for consulting services into 23 categories, as follows:

| Category | General Description of Services |
|---|---|
| CFO Duties | Performed the functions of interim CFO for the Debtors |
| Cash Management | Work associated with advising the Debtors on cash management and treasury-related activities including 13 week cash flow forecasting |
| Restructuring | Various tasks providing chapter 11 advisory support including contract assessment and interaction with creditor advisors |
| Company Analysis | Tasks associated with understanding intercompany transactions |
| Business Plan Development | Activities associated with the development of the business plan and general due diligence |
| Claims | Work associated with setting up a process and analyzing claims |
| Creditor Information Requests | Activities associated with responding to reasonable due diligence requests of lenders and general creditors. |
| Claims | Work associated with setting up a process and analyzing claims. |
| Creditor Information Requests | Activities associated with responding to reasonable due diligence requests of lenders and general Creditors. |
| Accounts Payable Issues | Various tasks associated with intercompany accounting issues and separating of pre/post petition unpaid invoices |
| Bankruptcy Support | Various necessary bankruptcy related activities |
| Accounting Support | Performed the role of interim controller to the Debtors and performed tasks associated with the improvement in accounting procedures |
| Schedules and Statement of Affairs | Tasks associated with advising the Debtors on preparation of Schedules and the Statement of Financial Affairs |
| Specific Transactions Reviews | Activities associated with review of structured finance transactions and other general transactional due diligence, research and assistance to the counsel in their pursuit of various bankruptcy or potential legal strategies & tactics |
| Reclamation | Activities associated with review and assessment of reclamation claims |
| Preferences | Analysis of potential preference payments |
| MOR | Work associated with preparation and filing of Monthly Operating Reports |
| Substantive Consolidation | Analysis to determine the possibility and proper procedure to substantively consolidate entities |
| Interim Controller Duties | Performed the functions of interim controller for the Debtors |
| Fraudulent Conveyance / Litigation Support | Examined various transactions to determine if fair value was received in exchange for assets divested prior to the chapter 11 proceedings |
| Unresolved Claims Analysis | Analysis of key claims and determination of potential liabilities |
| E-Discovery | Activities related to extracting electronic data for purposes related to litigation preparation and discovery related to plan confirmation issues |

| Accounting Reorganization | Activities related to process improvements to improve efficiencies within the accounting organization |
|---|---|
| Rosetta Transaction | Analysis of sale of natural gas assets and various accounting issues |
| Travel | Travel time to and from client site billed at 50% of standard rates |

32. The following is a summary of significant professional services rendered by APS during the Application Period.

**Chief Financial Officer and Interim Controller Duties**

- During the period of October 1, 2007 to January 31, 2008, filled roles at the Debtors as CFO, and as Interim Corporate Controller, reporting to the CFO, responsible for corporate and financial accounting and consolidations; operational accounting including plant, commodity and derivative accounting and centralized accounting services, including accounts payable and fixed asset processing. Three vice presidents and approximately 200 managers and staff report directly to the CFO.

- Expanded and developed the Debtors' administrative operations (located in Folsom, California) capabilities and breadth of services to become a "Center of Excellence" for transaction intensive functions, including the continuation of accounts payable centralization, facilitating elimination of on site checking accounts, centralizing bank reconciliations and assuming responsibilities for the Debtors' newly outsourced payroll system.

- Developed and implemented improved processes, organizational structure and work flow streams to account for spare parts and major maintenance activities, including reducing significantly the Turbine Maintenance Group's intercompany billing backlog, which in turn improved working capital.

- Established a monthly consolidated closing calendar across all accounting areas providing a foundation for improvements, gaining an understanding of dependencies and implementing process changes which resulted in a reduction of two (2) days in the monthly close cycle.

- Completed successful transition of the corporate accounting function, including the SEC reporting and management reporting to Houston, and hired new vice president-level leadership in plant operations accounting and realigned the consolidated Houston accounting organizational structure for improved efficiency and effectiveness.

- Completed reduction of the number of contactors in the accounting organization by over 70% from the beginning of the year, resulting in better succession planning and staff development.

- Continued management of the fresh start accounting project, using internal and external resources to prepare the Debtor for bankruptcy emergence accounting and for fresh start accounting, if it is ultimately required.

- Under newly positioned accounting leadership in the plant operations accounting group, established new stand alone financial statements process improvements and organizational restructuring to capitalize on existing plant accounting capabilities and implement a disciplined approach to completing the required quarterly reporting and year end audits of the facilities under separate project financings.

- Commenced business unit and legal entity simplification projects to reduce the complexity and costs of maintaining legal and accounting processes which are inappropriate for the future organization of the Debtors.

- Established processes in the accounting organization supporting the 2008 budget process providing links between actual results and budgeted expectations on a detailed basis with analytical capabilities and reasonable plans for actionable activities related to same.

- Capitalized on the multi-functional spark spread project to establish a multi-functional and repeatable monthly process to provide detailed analysis by region of the explanations for the spark spread performance during the close process.

- Provided management for the accounting group to establish a robust goals and objectives process which was used to determine bonus amounts for each level of management and staff for 2007.

- Established a revised business segment determination pursuant to the Debtors' business planning post emergence and developed system and accounting processes to support this segment presentation.

- Assisted the Debtors and their counsel in complex negotiations to finalize emergence financing.

## Substantive Consolidation Activities

- Calpine Corporation comprises 409 legal entities, of which 286 are the Debtors (the "Calpine Entities"). The Calpine Entities are an extremely complex environment with a significant number of intercompany relationships. As the bankruptcy process recognizes the sovereignty and separateness of each Debtor, it is necessary to determine whether there is any basis to support consolidating any number of the Debtor estates for plan purposes. Substantive consolidation is the pooling of assets and liabilities of related debtors into one estate for recovery and administrative purposes. This process requires a significant amount of legal, financial and accounting due diligence as substantive consolidation is not a recognized remedy articulated in the Bankruptcy Code and it is used sparingly by the courts.

- During the Application Period, APS continued the financial due diligence to support the required analysis regarding substantive consolidation alternatives for purposes of the Debtors' Plan of Reorganization (the "Plan"). As part of the Plan due diligence conducted by the Official Committee of Unsecured Creditors ("CC"), APS also worked with Debtors' legal counsel, Kirkland & Ellis, and met with the advisors to the CC. These meetings provided additional analysis and detail necessary for the advisors to review and assess Debtors' position regarding substantive consolidation as described in the Plan. APS developed presentation materials for the advisors and attempted to respond to general questions from the advisors to make the meetings more productive and efficient.

- To support the Plan and the process related to the confirmation hearing, drafted and filed an affidavit supporting the Debtors' substantive consolidation with the necessary facts found during the analysis. This affidavit was part of the Debtors' memorandum of findings of fact supporting the Plan.

- APS assisted an independent expert retained by the Debtors who provided an expert report regarding substantive consolidation. APS provided the expert and his advisors with a substantial amount of material that required more than three compact discs to distribute. APS not only provided the expert with such information, but also reviewed the materials with the advisors to the experts and answered many questions regarding the information provided. APS also assisted the expert in finalizing his report regarding his conclusions of the facts related to the Debtors' intercompany accounting issues.

- The financial and accounting due diligence primarily focused on the nature of the Filing Date intercompany claims between each Debtor and the quality of the intercompany books and records. In order to begin this due diligence APS needed to determine how to properly obtain the intercompany transaction data in order to begin to assess the nature and quality of such records. Given the complexity and the amount of data, APS determined that Debtors' existing general ledger software, PeopleSoft, would not be conducive to analyzing such a large amount of data that spans 409 legal entities. Additionally, Debtors' accounting staff would not have the time or resources to facilitate such management of data as well as maintain its own day-to-day responsibilities. During the Application Period, APS continued to utilize a methodology it developed in a previous fee application period to replicate Debtors' general ledger into a database. This database replication process provides flexibility for analysis and data manipulation to analyze the nature of the intercompany claims as of the Filing Date. During the Application Period, APS continued to replicate Debtors' general ledger for additional accounting periods, reconciled the general ledger replication and developed a query and analysis process to extract the appropriate data from the data base that represented intercompany activity. This process required a significant amount of time working with various individuals in the accounting and tax departments to determine which accounts represented intercompany activity and how to map each business unit to a specific legal entity. Additionally, APS reconciled the PeopleSoft legal entity structure with the accounting and tax legal entity structure to

ensure a complete and accurate data set. This database comprises over 18 million transactions.

- APS reviewed 115 specific intercompany balances comprising over 128,000 journal line items. APS was able to develop a cross-tab summary of the nature and age of the transactions comprising such balances. As a result, APS was able to ascertain various accounting issues that affected the intercompany balances. APS researched and analyzed certain specific intercompany accounting issues during the Application Period. Specifically, APS determined that Debtors shifted intercompany assets and liabilities between legal entities and reclassified intercompany indebtedness primarily to Calpine Corporation with the intent to convert the balances to equity. This intercompany balance clearing program was initiated in the fourth quarter of 2005, within 90 days prior to the filing. APS continued to review documents and discuss its findings with management and Debtors' legal advisors, Kirkland & Ellis, to obtain an understanding of Debtors' intent with this program. Given the timing of the program and that it affected intercompany balances between Debtors and non-debtors, it was critical to analyze the effect of this program. During the Application Period, APS attempted to determine the potential scope of this program. As there was no consistent documentation or instructions to collect the transactions recorded as part of this program, APS had to review all manual journal line items recorded into Debtors' general ledger beginning October 1, 2005 to determine the potential number of transactions as part of this program. The database APS had developed allowed for this type of analysis, and APS reviewed electronically over 100,000 journal line items to assess the scope of this program. APS also spent time with Debtors' counsel, Kirkland & Ellis, and the advisors to Debtors' constituents to explain this program and its effect on the intercompany balances.

- APS analyzed Debtors' Note 17 process that was initiated in 2002 and suspended in 2004. Briefly, Note 17 was a process to classify certain intercompany indebtedness across affiliates with corporate for the purpose of charging intercompany interest to provide a basis for state tax purposes. Note 17 was supported by an actual intercompany note as well as implementation instructions. However, the implementation process did not properly segregate balances on a legal entity basis. APS had to research and conduct due diligence regarding the implementation process and the affect of the process on the intercompany books and records. Given the complexity and number of transactions that resulted from Note 17, APS determined the potential number of Note 17 transactions, the number of legal entities affected, as well as prepared presentations explaining the Note 17 issues to Debtors' management, its advisors, and the advisors of Debtors' constituents.

- When Note 17 was suspended, Debtors' accounting organization determined that the outstanding balances of adjustments should be capitalized through equity. Given the short-cut methodology employed to implement Note 17, APS reviewed the methodology to capitalize the Note 17 balances. APS reviewed journal entries and had several discussions with Debtors' accountants to assess the affect of the capitalization process. This review was required to assess the quality of the Note 17 process in

determining the accuracy of the books and records regarding intercompany balances. APS was able to assess the affect of this capitalization process on the intercompany balances. APS also spent time with the advisors to CC reviewing Note 17 issues.

- APS provided Debtors and their legal advisors, Kirkland & Ellis, with a synthesis of the various accounting, reliability and validation issues uncovered during the course of the case. This synthesis required summarizing the issues identified in reviewing specific account balances as well as other projects. APS spent time with Kirkland & Ellis to review this synthesis of accounting issues to help determine substantive consolidation alternatives.

- Given the enormity of the scope of intercompany transactions, integrity issues with these transactions as well as the scope of Debtors' legal entity structure, the advisors to the CC requested a significant amount of due diligence. During the Application Period, APS prepared and facilitated meetings with the advisors to the CC. During these meetings, APS provided a tremendous amount of detail regarding specific questions raised by the advisors. APS facilitated due diligence, providing several thousand pages of due diligence to the CC.

- APS also prepared several presentations and led several meetings with Debtors' management team and the advisors to Debtors' constituents. These meetings were not only updates on the analysis regarding substantive consolidation, but also to provide a summary of findings and observations regarding the nature of Debtors' books and records. APS has provided several documents to demonstrate the review analysis completed as well as the process to assess the nature of intercompany accounts.

- Debtors attempted to refinance its original debtor-in-possession ("DIP") financing with a revised credit package. As part of this refinancing, Debtors also attempted to liquidate the secured debt of Calpine Generating Company, LLC ("CalGen"). As this debt was approximately $2.5B, the lenders of CalGen contested various aspects of the refinancing. APS assisted Debtors and their legal advisors during this process. Specifically, APS provided details regarding the intercompany balances for CalGen and its subsidiaries and potential reliability and validation issues, review and summary of material internal control weaknesses disclosed in CalGen's public filings, and several thousand pages of APS analysis workpapers as a result of a very broad and far-reaching discovery request from CalGen's legal advisors. Additionally, APS also assisted with preparation of witnesses for several depositions related to this contested matter. .

## Cash Management Activities

- Maintained a weekly liquidity review package for the Debtors' DIP lenders and advisors to its various creditor constituents. APS developed a bottoms-up forecasting process and has maintained this process to assess the current forecasted liquidity position of the Debtors' domestic operations for both Debtors and non-debtors. The liquidity review package is required on a weekly basis in order to comply with the DIP credit agreement and to provide adequate information regarding liquidity to the

Debtors' creditors. Debtors' treasury group had no such package available in a concise, repeatable and understandable format. APS designed and implemented a controlled process within the Debtors' treasury group to produce a weekly liquidity overview package that included an actual to forecast variance analysis, forecast-to-forecast variance analysis, and projected liquidity trend analysis. The Debtors previously did not track actual to forecast variances on a controlled basis for one week's cash flow activity, nor had the Debtors implemented a process to update the liquidity forecast.

- APS worked with over 100 employees of the Debtors in order to properly document and model the relationships of intercompany activity for over 250 legal entities representing the Debtors' domestic operations. As turnover of existing employees continued, APS trained a new set of Debtors' associates in the forecasting process in order to maintain the integrity of the modeling process. APS consolidated the model each week and worked with the Debtors' treasury group to reconcile major receipts and disbursements. The transition of this process to the Debtors was completed during the Application Period.

- Maintained a controlled and repeatable forecasting methodology for the Debtors' trading operations necessary for the integrity of the liquidity forecast process. One of the single largest drivers to the Debtors' liquidity position and liquidity forecast process is the Calpine Energy Services ("CES") cash flow forecast. APS worked with the CES staff to develop forecasting information contained within its models to provide a forecast of cash flows based on current commodity prices and dispatch trends rather than historical trends. APS maintained a rigid weekly routine with the treasury staff and the CES staff to review and modify the trading operations forecast. This process facilitated by APS provided the Debtors' treasury staff with the necessary assistance to maintain an understanding and in-depth knowledge of the key drivers of liquidity. This has been a repeatable and standard process between the Debtors' treasury group and the CES forecast team improving communication and the flow of information. The transition of this process to the Debtors' was completed during the Application Period.

- Continued to facilitate a process to review the Debtors' current liquidity position with the advisors in the case on a weekly basis. Given the large, complex nature of the Debtors' estate, the advisors to various constituent groups and the DIP lenders required frequent communication regarding the Debtors' liquidity projections. APS developed a process and protocol for delivering the weekly liquidity forecast. Each week, APS facilitated a call with the advisors in the case to review the liquidity forecast materials as well as address questions/issues regarding liquidity.

- APS developed and maintained a model whereby contractual toll payments that are indexed to power and gas prices can be updated on a weekly basis to account for changes in the commodity price index. Debtors did not have a model available to properly forecast changes in contractual toll payments during the current production month based on new commodity prices. As a result, Debtors were experiencing significant forecast to actual cash flow variances when actual toll payments were calculated after each month was closed. This process improvement has increased the accuracy and reliability of the Debtors' liquidity forecasting models to better predict

liquidity trends. Maintenance of this modeling process is ongoing; however, the day to day forecasting process has been transitioned to the Debtors'.

- APS maintained the model to properly classify checks written based on the general ledger code used for the disbursement. APS developed an access database to extract the necessary information from the treasury department's systems and code the disbursements into meaningful categories for use in the cash flow forecast process. APS developed the database to extract the information as well as a table cross-referencing general ledger activity codes with line items on the cash flow forecast. The Debtors now have a robust process to track and explain all disbursements made by category. This process was transitioned to the Debtors during the Application Period.

- APS provided a summary model tracking actual cash flow trends for Debtors since the filing date. As Debtors' treasury staff had very little Excel reporting and consolidating models, APS was able to develop and maintain a model that provided management with actual historical cash flow trend information. This trend analysis provided management with not only the net change in cash during the bankruptcy, but also the nature of the receipts and disbursements incurred by Debtors. This report has multiple uses in the case proceedings for both internal and external use. .

## Other Cash Management Related Activities

- APS maintained cash flow tracking for several assets the Debtors and creditors agreed would be restructured or sold. The creditor constituents and Debtors agreed to a maximum amount of spending, and the Debtors were required to track actual cash flow spending against the maximum allowable funding. Tracking spending for these designated assets was complicated because these assets did not have cash accounts. Rather, funding was provided by corporate and all net cash activity was tracked via intercompany accounts. APS developed and implemented a process to track actual cash flow spending by utilizing the Debtors' accounting systems and segregating transactions from within the general ledger for these specific assets.

- As a result of the review and analysis regarding substantive consolidation, APS also assisted Kirkland & Ellis with an analysis of certain intercompany issues regarding the Rumford and Tiverton operations. As the Debtors were in negotiations with certain constituents regarding claims from rejected executory contracts, certain intercompany transactions required some additional financial analysis related to potential fraudulent transfer claims. APS had the database and the data necessary to provide Kirkland & Ellis with this information. APS assisted Kirkland & Ellis with several due diligence efforts and meetings with various advisors to help facilitate settlement discussions.

## Restructuring Activities

- APS assisted Debtors' financial planning and analysis department with preparing and finalizing the 2008 income and cash budget. APS developed a comprehensive model to calculate the labor costs to Debtors at a department level by individual. APS also

worked with the Debtors in developing an analysis for comparing prior year plant operating expenses with forecasted plant operating expenses.

- APS assisted the Debtors' preparation for the Plan confirmation hearing. APS assisted the Debtors and its legal advisors, Kirkland & Ellis, in obtaining the necessary documents and emails that were required to be produced as part of the discovery process related to the Plan confirmation hearing. As this was an extremely complex case with numerous constituents, collecting such electronic information was critical not only to be responsive to the constituents' requests, but also to preserve the integrity of the electronic history for each file and email. As there was litigation on multiple fronts and the Debtors' operations were vast and complex, Kirkland & Ellis and the Debtors required the expertise necessary to search various systems and databases in order to be responsive in a timely manner. APS provided the necessary resources to obtain and control this electronic data. This data retrieval process required access to all necessary electronic files from the Debtors and certain of its advisors that were involved in various issues relevant to the Plan confirmation hearing. During this Application Period, APS finished this initiative working with the Debtors and their advisors.

- APS assisted the Debtors in the optimization of several payroll initiatives in the accounts payable department that will streamline the posting of employee benefits.

## Disclosure Statement and Plan Of Reorganization

- APS assisted Debtors other restructuring advisors in the preparation and completion of the six amendments to the Plan, which was originally filed on June 20, 2007. APS was instrumental in providing charts and tables related to classes of claims and high/low claims estimates for the Plan. Additionally, APS' experience analyzing the substantive consolidation issues aided Debtors' legal counsel in drafting the section of the Plan related to substantive consolidation.

- During previous fee application periods, APS provided key estimates and inputs into the liquidation analysis necessary to complete the best interests of creditors test required as part of the Plan. APS also assisted with developing financial statement projections related to Debtors' operations on a pro forma basis after emerging from chapter 11 bankruptcy. APS worked with Debtors' advisors regarding assumptions and verifying key trends contained in the projections to ensure completeness of material and relevant information.

- APS continued to assist the Debtors' legal counsel with developing and refining amendments to the Plan that was ultimately approved by the court on December 19, 2007.

## Unresolved Claims

- During the Application Period, APS assisted the Debtors in supporting the Debtors' attempt to resolve large outstanding claims with select creditors. At the request of

17

Debtors' counsel, APS has analyzed various claims and their supporting documents, reviewed Federal Energy Regulatory Commission filings and materials related to these claims, and analyzed various sources of publicly available financial information to assist the Debtors' assessment of these outstanding claims.

- In addition, APS performed detailed analysis related to the claims put forth by Gas Transmission Northwest ("GTN") and Portland Natural Gas Transmission System ("PNGTS"). As part of this analysis, APS provided the Court with an affidavit and deposition testimony regarding the appropriate discount to be applied to these claims to determine the allowable claim. APS has also reviewed and analyzed expert reports put forth by GTN and PNGTS regarding the appropriate discount rate related to these specific claims. Post-emergence, APS has continued to assist the Debtors with the resolution of these claims.

## Support of Settlements with Canadian Debtors

- Identified and reconciled all intercompany claims between the U.S. and Canadian debtors and negotiated with the monitor to settle the amounts owed. The Debtors received payment for outstanding balances owed.

- Implemented the Canadian global settlement agreement. Working with the Canadian estate and Canadian monitor, APS developed an implementation plan for the global settlement that would result in significant value returning to the U.S. Debtors.

- APS worked with the Debtors and U.S. counsel to resolve several outstanding issues surrounding the calculation of pre-petition and post-petition interest on various bond issuances. These revised calculations were the basis of the finalized settlements.

- APS worked extensively with the Canadian monitor, Calpine staff, and Kirkland & Ellis to determine the optimal method to flow funds to satisfy outstanding debt obligations.

## Claims, Preferences and General Bankruptcy Support, Schedules & Statements of Financial Affairs, MORs

- APS continued to maintain and update the claims database for claims status and claims estimates. APS also continued to maintain the Debtors' claims resolution team database for Debtors and their SEC financial reporting and participated in meetings with Debtors personnel in order to discuss adjustments to amounts accrued in LSTC for claims. This process in ongoing.

- APS, through its review of filed proofs of claims, identified numerous claims for the twenty-fourth and twenty-fifth omnibus objections filed with the U.S. Bankruptcy Court seeking to expunge 2,360 claims worth $1.4 billion and seeking to reduce 86 claims a total of $1.1 million. This process is ongoing.

- APS continued to update the claims analyses in order to provide the company with a high-low range of filed and scheduled claims based on a consolidated view. The claims analyses was constantly refined with updated until distributions are made. Distributions began on January 31, 2008 and will continue for several months.

- As part of preparations for the Effective Date, as defined in the Plan, APS developed a distribution model determining the amount of cash and stock each claimant would receive upon initial distribution. This effort required the coordination of numerous internal and external parties to ensure that Plan distributions would commence on the Effective Date. APS coordinated these activities to ensure the proper controls and documentation was in place to effect the distributions.

- APS assisted the Debtors in determining the cash funds flow on the Effective Date. APS worked with the Debtors' treasury department and exit lenders to ensure that the proper funds would be distributed on the Effective Date and that the proper constituents required to receive cash payments would receive such payments on a timely basis. APS worked with the various claimants in determining the proper amount of cash payments required.

- APS supported Debtors' personnel and Kirkland & Ellis in settlement negotiations with contract counterparties and creditors through the preparation of claims analyses and exhibits. This process is ongoing.

- APS supported Debtors' personnel and other professionals regarding the fresh start accounting analysis through the preparation of claim reports.

- APS supported Debtors' personnel and Kirkland & Ellis in the review and analysis of retained causes of action. This process is ongoing.

- APS assisted Debtors with the preparation and filing of the total disbursements by legal entity for the first, second, third, and fourth quarter of 2007. The total disbursements by legal entity reports are included in the appropriate Monthly Operating Report, and the quarterly total disbursements by legal entity reports are used to calculate the U.S. Trustee Fees.

- APS supported the Debtors' accounts payable accounting group through the reconciliation of trade payable claims with pre-petition invoices from the Debtors' books and records. This process is ongoing.

- APS finalized the analysis for the Plan solicitation.

- APS gathered the outstanding data needed for the calculation of preferences from Debtors and/or their lenders. APS reconciled the payment data files, bank statements, wire and check clear dates, and the wire log. APS prepared and mailed over 1,000 preference tolling letters to counterparties. This process is concluded.

**Finance Business Process Reengineering Activities**

- Created Final Phase I: Defined current state wrap-up documentation and presented the project steering team with our findings and recommendations.

- Implemented many accounting improvements enhancing preventive and detective controls, and reducing inefficiencies. Representative results are:
  - Reduced the number of forced post entries to control accounts by 58%
  - Reduced from 683 to 8, the number of employees able to make job scheduling changes
  - 19% reduction in chart-of-account fields available for use
  - Reduced the number of employees with purchasing authority from 662 to 224 (projected)
  - Implemented process to track, approve and reduce the number of forced accounting entries
  - Established a consolidated closing calendar across all accounting areas

33. The foregoing crisis management services rendered by APS on behalf of the Debtors and their estates during the Application Period (as described in greater detail in **Exhibit G** attached hereto) were reasonable, necessary and appropriate to the administration of the Debtors' chapter 11 cases and related matters. The crisis management services performed by APS were in the best interests of the Debtors, their estates, their creditors and other parties in interest. Compensation for the foregoing services as requested is commensurate with the complexity, importance, magnitude, deadlines and nature of the problems, issues or tasks involved. Additionally, the crisis management services for which compensation is sought herein were performed expeditiously and in an efficient manner.

34. The services performed by the APS crisis managers were rendered principally by APS' turnaround restructuring services and case management services practices. APS has a preeminent practice in each of these areas and enjoys a national and international reputation for its expertise in financial reorganizations and restructurings of troubled companies.

35. APS worked with the Debtors in numerous areas of these chapter 11 cases during the Application Period. To this end, as set forth in detail in **Exhibit D**, approximately 80 crisis

managers expended 123,359 hours during the Application Period rendering professional services on behalf of the Debtors and their estates.

36. During the Application Period, APS' hourly billing rates for crisis managers ranged from $100 to $795. Allowance of compensation in the amount requested would result in a blended hourly billing rate of approximately $381.89 (based on approximately 123,359 recorded hours at APS' regular billing rates and net of adjustments for services provided but not billed and the adjustment for 50% of the travel in effect at the time of the performance of services). The fees charged by APS in these cases are billed at or below its existing 2008 billing rates in effect during the Application Period. The rates APS charged for the services rendered by its crisis managers in these chapter 11 cases are the same or lower rates that APS charges for crisis management services rendered in comparable non-bankruptcy related matters. Such fees are reasonable based on the customary compensation charged by comparably skilled practitioners in comparable bankruptcy cases in a competitive national market.

37. It is the policy of APS to charge its clients for travel time and to work on client matters while traveling. However, that portion of travel which was not used for work on client matters has been included at 50% of then-applicable rates charged during this period. Therefore, APS has excluded from this Application 50% of travel time during the Application Period totaling 10,482 hours, representing $4,434,617.70 in time charges. Furthermore, APS voluntarily withheld $888,635.80 of fees incurred due to travel times. APS withheld these fees given the magnitude of travel delays and the inherent inefficiencies as a result of such delays.

ACTUAL AND NECESSARY EXPENSE INCURRED BY APS

38. As set forth in **Exhibit E** attached hereto, APS has incurred $4,022,520.04 in expenses on behalf of the Debtors in providing crisis management services during the Application

21

Period. All charges submitted by APS during the Application Period are billed at actual costs incurred. Specifically, APS charges for external copying charges at the provider's cost without markup; APS charges actual cost for Federal Express and postage at provider's cost without markup; APS does not charge for internal copying charges; APS charges for supplies purchased for on-site work at the client at the provider's cost without markup. Furthermore, APS has voluntarily reduced expenses, incurred as a result of managing a significant number of resources in a complex reorganization, in the amount of $91,266.25.

39.     The location of the Debtors and the need to be onsite to administer many of the duties on behalf of the Debtors caused APS' employees to travel extensively to and from various locations to provide crisis management services. All air travel to and from the Debtors' locations was necessary and the expenses billed at actual coach airfare. The actual expenses incurred in providing crisis management services were necessary, reasonable, and justified under the circumstances to serve the needs of the Debtors in these chapter 11 cases.

THE REQUESTED EMERGENCE INCENTIVE BONUS

40.     The Engagement Letter dated November 3, 2006, and approved by the judge in the retention order dated January 17, 2007 provides that, in addition to hourly fees, APS shall be entitled to an additional Emergence Incentive Bonus of $6,000,000 for the consummation of a confirmed plan of reorganization if the adjusted enterprise value of the Debtors was greater than $7,500,000,000. APS' activities were instrumental in driving an extremely successful outcome in this case, as enterprise value was $18,950,000,000, more than two times greater than the minimum threshold for APS' Emergence Incentive Bonus. As described previously, APS led a number of projects for the Debtors, in addition to operating in the Chief Financial Officer role. As the outcome achieved was certainly not anticipated at the initiation of these cases, APS involvement

was a significant contributor to negotiating a successful plan of reorganization, reducing the Debtors' leverage by over $8 billion and providing flexibility in its finance and accounting operations for continued growth post-emergence.

41.     The services of APS were important to the effective administration and prosecution of the Debtors' restructuring. As this was an extremely complex case with numerous constituents, APS' services included not only interim management of certain senior-level financial positions for the Debtors, but also essential activities necessary in preparing, negotiating and receiving confirmation of the plan of reorganization. APS' services were specific to not only restructuring the Debtors' finance operations, but also were utilized to manage the bankruptcy process, removing a significant burden from the Debtors' management so that those resources could be expended managing and restructuring the Debtors' operations. Activities such as cash forecasting, business plan development, claims and distribution management, and managing and addressing constituency information requirements, to name a few, were essential in achieving the outcome for the Debtors. Implementing tools to manage liquidity, developing databases to manage claims, redesigning the finance and accounting functions, relocating the finance and accounting functions, hiring over 80 finance and accounting professionals in Houston and managing the due diligence requirements of all constituents are some of the activities facilitated by APS that led to an extraordinary outcome. As a result, unsecured claimants are expected to receive over 99% of their prepetition principal and interest claims. Additionally, APS was instrumental in the claims management and distribution process such that almost 85% of the Debtors' equity securities were distributed within 10 days of the effective date of the Plan, helping with creating a liquid security for the Debtors' new shareholders. APS' activities were instrumental in driving an extremely successful outcome in this case, as enterprise value was

significantly greater than $7,500,000,000, which is the threshold for APS' Emergence Incentive Bonus.

42.     Performance fees are normal parts of compensation for firms such as turnaround firms, management restructuring consulting firms, and investment banking firms. APS is, among other things, a firm that specializes in supplying senior executives on an interim basis to financially troubled companies.

43.     As the Bankruptcy Court the Southern District of Ohio held in *In re Cardinal Indus., Inc.*, 151 B.R. 843 (Bankr. S.D. Ohio 1993) (Chapter 11 operating trustee awarded a fee of $2.1 million plus a success fee of 50,000 shares of stock):

> Performance-based or success-factor bonuses are a normal part of compensation arrangements for management restructure consultants and … such bonuses generally far exceed the time value of the consultant's services on a lodestar basis. Indeed, the time value component is referred to as the base salary, apparently payable to the consultant even if success is not achieved.

*In re Cardinal Indus., Inc.*, 151 B.R. at 847

44.     APS, as well as other turnaround firms, regularly receive performance fees in matters both inside and outside of bankruptcy cases. When Congress passed the Bankruptcy Reform Act of 1978, it decided to remove the "spirit of frugality" as a factor in bankruptcy fees. The standard is now the cost of comparable services in a non-bankruptcy setting.

45.     Recent bankruptcy success fees, proposed or awarded to other persons or firms include the following:

- Enron Corp., a Chapter 11 case in the Southern District of New York. Stephen F. Cooper, of the turnaround firm Kroll Zolfo Cooper LLC, applied to the Bankruptcy court for a $25 million success fee for his services as Debtor's interim chairman. Cooper later agreed to reduce his request to $12.5 million, and this reduced fee was approved. In re Enron Corp., 2006 WL 1030421 (Bankr. S.D.N.Y. 2006).

- Northwestern Corp., a Chapter 11 case in the District of Delaware. Lazard Freres & Co. LLC, financial advisor to the Debtor, was awarded a transaction (or success) fee of $2.75 million, "which brings it in line with the transaction fee of the financial advisors employed by the Official Committee of Unsecured Creditors." In re Northwestern Corp. 324 B.R. 538, 547-48 (Bankr. D. Del. 2005), rev'd, 344 B.R. 40 (D. Del. 2006) (it was error to reduce the success fee; full $5.5 million awarded).

- Warnaco, a Chapter 11 case in the Southern District of New York. Tony Alvarez, of the firm Alvarez & Marsal, who was Debtor's interim CEO, was awarded a success fee of $2.25 million. Warnaco Proxy Statement, filed April 2003.

- Farmland Industries, a Chapter 11 case in the Western District of Missouri. Houlihan Lokey Howard & Zukin Financial Advisors, Inc., financial advisors for the Unsecured Creditors Committee, was awarded a success fee of 1% of the amount distributed to unsecured creditors, with a minimum guaranty of $1 million and a cap of $3 million. In re Farmland Industries, Inc., 286 B.R. 895, 897, n.1 (Bankr. W. D. Mo. 2002).

46.    Other reported decisions awarding success fees to firms that were not law firms or accounting firms include *Kaufman v. S and C Corp.*, 171 B.R. 38 (S.D. Texas 1994) (management company that operated hotel entitled to a success fee of $212,417 for fiscal year 1992); *In re Intelogic Trace, Inc.*, 188 B.R. 557 (Bankr. W.D. Texas 1995) (awarding consultant a success fee of $77,500 based on a percentage of the sale price of Debtors' assets plus hourly fees of $24,880 based on a rate of $200 per hour); *In the matter of Chicago, Milwaukee, St. Paul and Pacific Railroad Co.*, 841 F.2d 789 (7th Cir. 1988) (investment banking firm awarded $1 million success fee).

47.    Success or performance fees are a normal part of compensation for firms such as APS, which provide crisis management and turnaround services to debtors, particularly where the services provided benefit the debtors' bankruptcy estate. In the instant case, the outcome of these proceedings both warrants and contemplates payment of the Emergence Incentive Bonus to APS. The Debtors received significant benefit from the work of APS. These efforts and contributions were a key enabler of the successful outcome of these proceedings. Further, the Emergence Incentive Bonus sought is an important component of compensation contained in the APS

Retention Agreement, and the condition for earning the Emergence Incentive Bonus has been met. Therefore, this Court should approve APS' request for payment of the Emergence Incentive Bonus.

46.     Attached hereto as Exhibit A, the Declaration of Lisa J. Donahue (the "Donahue Declaration"), which supports this request. The Donahue Declaration shows that APS, as well as other turnaround firms, regularly receive success fees from both inside and outside of bankruptcy cases.

## THE REQUESTED COMPENSATION SHOULD BE ALLOWED

47.     Section 331 of the Bankruptcy Code provides for interim compensation and incorporates the substantive standards of section 330 of the Bankruptcy Code to govern the Court's award of such compensation. 11 U.S.C. § 331. Section 330 of the Bankruptcy Code provides that a court may award "reasonable compensation for actual necessary services rendered...and reimbursement for actual, necessary expenses." 11 U.S.C. § 330(a) (1). Section 330 of the Bankruptcy Code also sets forth the criteria for the award of such compensation and reimbursement.

48.     In this case, APS respectfully submits that the services for which it seeks compensation in this Application were necessary for and beneficial to the Debtors and their estates, and were rendered in order to protect and preserve the Debtors' estates during the pendency of these chapter 11 cases. APS' services were performed economically, effectively and efficiently, and the results obtained to date have benefited not only the Debtors, but also the Debtors' estates and the creditor body as a whole. Accordingly, the compensation requested herein is reasonable in light of the nature, extent, and value of such services to the Debtors, their estates, and all parties in interest.

49.     APS' crisis managers spent a total of 123,359 hours during the Application Period, which services have a fair market value of $51,544,029.30 less a reduction of $4,972,282.20 for

50% of travel and other fees, for a total of $46,571,747.10. As demonstrated by this Application and the exhibits attached hereto, APS spent its time economically and without unnecessary duplication. In addition, the work conducted was carefully assigned to appropriate employees according to the experience and level of expertise required for each particular task.

50.     During this Eighth Interim Fee Application Period, APS spent a total of 14,347 hours, which services have a fair market value of $6,576,723.25 less a reduction for 50% of travel for a total of $6,111,250.75.

51.     In sum, the services rendered by APS were necessary and beneficial to the Debtors and their estates, and were consistently performed in a timely manner commensurate with the complexity, importance, and nature of the issues involved. Accordingly, approval of the compensation sought herein is warranted.

MEMORANDUM OF LAW

52.     APS respectfully submits that the relevant legal authorities are set forth herein and that this Application presents no novel issue of law. Thus, APS respectfully submits that this Application satisfies the requirement set forth in the Southern District of New York Local Bankruptcy Rule 9013-1 that a separate memorandum of law be filed in support of this Application.

53.     Notice of the Motion has been provided to (a) Calpine Corporation, 717 Texas Ave, Houston, TX, 77002, Attn.: Greg Doody (b) Kirkland & Ellis LLP as attorney for the Debtors, Citigroup Center, 153 East 53rd Street, New York, NY 10022-4611, Att.: Edward O. Sassower (c) Akin Gump Strauss Hauer & Feld LLP, as counsel to the Official Committee of Unsecured Creditors, 590 Madison Avenue, New York, NY 10022, Att.: Michael S. Stamer and (d) the Office of the United States Trustee, 33 Whitehall Street, 21st Floor, New York, NY 10004, Attn.: Paul

Schwartzberg (the "Notice Parties"), (e) counsel for the Administrative Agent for the Debtors' pre-petition secured lenders and (f) 2002 Notice parties.

<u>CONCLUSION</u>

WHEREFORE, AP SERVICES, LLC respectfully requests that this Court enter an order awarding APS a final allowance of compensation and expenses in the amount of $56,594,267.14 as set forth below and as indicated in the attached Declaration of Lisa J. Donahue of APS. APS further respectfully requests that the Debtors pay the net amount due to APS of $10,147,423.79 from the assets of their estates and that the Court provides such other and further relief as may be just and equitable.

Dated: New York, New York
March 3, 2008
AP Services, LLC
2000 Town Center, Suite 2400
Southfield, MI 48075

By _____
Lisa J. Donahue
Managing Director
AP Services, LLC

## SUMMARY OF EXHIBITS

| A | Certification of Lisa J. Donahue |
|---|---|
| A-1 | Summary of Compensation and Expenses |
| B | Signed Engagement Letter |
| C | December 21, 2005 through January 31, 2008 Monthly Fee Statements |
| D | Summary of Crisis Managers and Fees |
| E | Summary of Expense Detail by Category |
| F | Summary of Time Detail by Task |
| G | Time Detail by Task by Crisis Manager |
| H | Biographies of Top Tier (based on most hours worked in period) |
| I | Calpine Joint Fee Review Committee Certification |

# IN THE UNITED STATES BANKRUPTCY COURT
# FOR THE SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| In re: | Chapter 11 Case |
| CALPINE CORPORATION, <u>et al</u>. | Case No. 05-60200 (BRL) |
| | (Jointly Administered) |
| Debtors. | |
| | Honorable Burton R. Lifland |

## <u>CERTIFICATION OF LISA J. DONAHUE</u>

I, Lisa J. Donahue, make this declaration and state as follows:

1.      I am a Managing Director of AlixPartners, LLP, an affiliate of AP Services, LLC ("APS"), which maintains offices at, among other locations, 2000 Town Center, Suite 2400, Southfield, Michigan 48075.

2.      This certification is submitted pursuant to Section 504 of the Bankruptcy Code and Bankruptcy Rule 2016 in connection with and in support of APS' final fee application (the "Application") for allowance of final compensation and reimbursement of expenses incurred for services rendered as financial advisor to the Calpine Corporation, et al., (the "Debtors") for the period from December 21, 2005 through January 31, 2008 (the "Application Period"). In addition, this certification is in connection with and support of APS' Emergence Incentive Bonus request. I have read the application, and the facts contained in the foregoing Application are true and correct to the best of my knowledge, information and belief.

3.      I make this certification in accordance with General Order M0151, Amended Guidelines for Fees and Disbursement for Processionals in Southern District of New York

Bankruptcy Cases, adopted by the United States Bankruptcy Court for the Southern District of New York on April 19, 1995 (the "Local Guidelines").

4.     The Application respectfully requests that this Court enter an Order awarding APS $46,571,747.10[6] in fees for services rendered on behalf of the Debtors, $4,022,520.04 for the reimbursement of expenses incurred in connection with the rendition of such services, and an Emergence Incentive Bonus of $6,000,000, for a total award of $56,594,267.14.

5.     No agreement or understanding exists between APS and any other persons or parties to share in any compensation received in connection with this Case other than as among members of APS.

6.     The fees and disbursements requested in the Application are billed at or below rates in accordance with practices customarily employed by APS and generally accepted by APS' clients.

7.     The services of APS were important to the effective administration of the estate and recovery of value to certain parties in interest. These contributions were important enablers for the Debtors' confirmation of their consensual plan of reorganization and are the basis for the Emergence Incentive Bonus sought herein.

8.     In addition to time charges, incentive fees are a normal part of compensation for firms such as turnaround firms and management restructuring consulting firms. APS priced the engagement, negotiated the Emergence Incentive Bonus as part of its total compensation package, and took the Emergence Incentive Bonus into account in accepting the work from the Debtors.

---

[6] The fees requested include fees withdrawn without prejudice from the 5th, 6th, and 7th fee application period. APS seeks reimbursement for a portion of these fees in the amount of $145,325.00 as this is the final fee application. Pursuant to discussions with the United States Trustee, APS has agreed to a voluntarily reduction of the balance of these fees in the amount of $369,896.25 and has not included this amount in the final fee application.

9.      APS has at all times, to the extent practicable, minimized disbursements incurred in connection with its services for the Debtor. In charging for a particular service, APS does not include in the amount for which reimbursement is sought the amortization of the cost of any investment, equipment or capital outlay. Except as set forth in paragraph 23 of the Application, in seeking reimbursement for a service that is justifiably purchased or contracted for from a third party, APS requests reimbursement only for the amount billed to APS by the third-party vendor and paid by APS to such vendor.

I declare under penalty of perjury that the foregoing is true and correct to the best of my knowledge, information, and belief.

Dated: March 3, 2008

Lisa J. Donahue
Managing Director
AP Services, LLC

# Exhibit A-1

# AP Services, LLC
## Summary of Compensation and Expenses - Calpine Corporation
### December 21, 2005 through January 31, 2008

| Period | | | Fees | Expenses | TOTAL |
|---|---|---|---|---|---|
| December 21, 2005 | to | January 31, 2006 | 1,856,791.50 | 179,744.79 | 2,036,536.29 |
| February 1, 2006 | to | February 28, 2006 | 1,747,396.00 | 163,989.38 | 1,911,385.38 |
| March 1, 2006 | to | March 31, 2006 | 1,941,896.00 | 179,251.56 | 2,121,147.56 |
| April 1, 2006 | to | April 30, 2006 | 1,730,273.50 | 195,623.01 | 1,925,896.51 |
| May 1, 2006 | to | May 31, 2006 | 1,869,733.00 | 178,346.01 | 2,048,079.01 |
| June 1, 2006 | to | June 30, 2006 | 2,201,181.90 | 268,347.09 | 2,469,528.99 |
| July 1, 2006 | to | July 31, 2006 | 2,601,410.90 | 225,287.33 | 2,826,698.23 |
| August 1, 2006 | to | August 31, 2006 | 2,701,524.25 | 275,377.09 | 2,976,901.34 |
| September 1, 2006 | to | September 30, 2006 | 2,345,924.75 | 255,750.22 | 2,601,674.97 |
| October 1, 2006 | to | October 31, 2006 | 2,661,050.00 | 235,446.18 | 2,896,496.18 |
| November 1, 2006 | to | November 30, 2006 | 2,600,890.25 | 202,205.27 | 2,803,095.52 |
| December 1, 2006 | to | December 31, 2006 | 2,287,078.25 | 166,298.13 | 2,453,376.38 |
| January 1, 2007 | to | January 31, 2007 | 3,112,439.25 | 192,906.75 | 3,305,346.00 |
| February 1, 2007 | to | February 28, 2007 | 2,545,639.25 | 168,716.09 | 2,714,355.34 |
| March 1, 2007 | to | March 31, 2007 | 2,349,007.75 | 129,388.59 | 2,478,396.34 |
| April 1, 2007 | to | April 30, 2007 | 2,031,807.75 | 134,413.02 | 2,166,220.77 |
| May 1, 2007 | to | May 31, 2007 | 2,171,911.00 | 111,027.21 | 2,282,938.21 |
| June 1, 2007 | to | June 30, 2007 | 1,695,225.50 | 135,516.07 | 1,830,741.57 |
| July 1, 2007 | to | July 31, 2007 | 1,514,692.50 | 96,675.41 | 1,611,367.91 |
| August 1, 2007 | to | August 31, 2007 | 1,568,882.50 | 63,527.00 | 1,632,409.50 |
| September 1, 2007 | to | September 30, 2007 | 1,432,550.25 | 85,282.72 | 1,517,832.97 |
| October 1, 2007 | to | October 31, 2007 | 2,065,836.25 | 136,705.28 | 2,202,541.53 |
| November 1, 2007 | to | November 30, 2007 | 1,537,559.25 | 89,804.14 | 1,627,363.39 |
| December 1, 2007 | to | December 31, 2007 | 1,303,874.00 | 80,953.99 | 1,384,827.99 |
| January 1, 2008 | to | January 31, 2008 | 1,669,453.75 | 71,937.71 | 1,741,391.46 |
| | | | $ 51,544,029.30 | $ 4,022,520.04 | $ 55,566,549.34 |
| | | Less 50% Travel Time | (4,434,617.70) | - | (4,434,617.70) |
| | | Less ITTS-CMS Adj | (167,768.25) | | (167,768.25) |
| | | Sub-Total | 46,941,643.35 | 4,022,520.04 | 50,964,163.39 |
| | | Less 20% Deferral | (9,346,105.17) | | (9,346,105.17) |
| | | **TOTAL INVOICED** | **$ 37,595,538.18** | **$ 4,022,520.04** | **$ 41,618,058.22** |

 

November 29, 2005


Ann B. Curtis
Vice Chairman and Executive Vice President
Calpine Corporation
50 West San Fernando Street
San Jose, CA 95113

Re: Agreement for Restructuring Services

Dear Ms. Curtis:

This letter outlines the understanding ("Agreement") between AP Services LLC, a Michigan limited liability company ("APS") and Calpine Corporation (the "Company") of the objectives, tasks, work product and fees for the engagement of AlixPartners to provide financial advisory and consulting services to the Company, reporting to you in your role as Vice Chairman and Executive Vice President.

All defined terms shall have the meanings ascribed to them in this letter and in the attached Schedules, Exhibit and General Terms and Conditions.

| **OBJECTIVE** |
| --- |

- Assist the Company and its management in developing short-term cash flow forecasting tools and related methodologies and assist with day-to-day operational planning and for the evaluation of strategic alternatives as requested by the Company.

| **TASKS** |
| --- |

- Assist the Company in very quickly addressing its current liquidity challenges, including, but not limited to:

  - Developing a rolling 13-week cash forecasting tool for cash sources and uses, as outlined below, including the impact of business environment changes such as:
    - Credit rating changes
    - Spark spread deterioration or improvement
    - Collateral requirements

  - Understanding the corporate structure and its impact on liquidity



- Understanding the various debt agreements and restrictions contained therein

- Understanding the current cash positions and what funds may be available for general corporate needs and which are restricted

- Understanding the transactions among and between subsidiaries and the flows of funds related to these inter-company transactions

- Developing an understanding and forecasting methodology for the settlement of power supply and fuel delivery agreements

- Understanding and forecasting the settlement of proprietary/non-generation trading positions

- Forecast the impact of credit rating changes on collateral required to support hedged positions

- Monitor actual receipts and disbursements and assist the Company in developing a variance reporting mechanism, explanations of key differences and recommendations for improving the forecasting process

- Assist management in identifying and implementing recommendations to improve the Company's net cash position.

- Provide such other assistance as may be requested and is within our expertise to support.

| **WORK PRODUCT** |
|---|

Our work product will be in the form of:

- Information to be discussed with you and others, as you may direct.

- Written reports and analysis worksheets to support our suggestions as we deem necessary or as you may request.

| **STAFFING** |
|---|

Michael Feder will be the managing director and temporary employee responsible for the day-to-day execution of the engagement. He will be assisted by a staff of temporary employees ("Temporary Employees") at various levels as provided on Exhibit A, all of whom have a wide range of skills and abilities related to this type of assignment. In



addition, we have relationships with and periodically retain independent contractors with specialized skills and abilities to assist us.

The Temporary Employees may be assisted by or replaced by other professionals at various levels, as required, who shall also become Temporary Employees. APS will keep the Company informed as to APS' staffing and will not add additional Temporary Employees to the assignment without first consulting with the Company to obtain Company concurrence that such additional resources are required and do not duplicate the activities of other employees or professionals.

## TIMING, FEES AND RETAINER

APS will commence this engagement immediately upon receipt of a copy of the Agreement executed by the Company accompanied by the Retainer, as set forth in Schedule 1.

APS shall be compensated for its services, and reimbursed for expenses, under this Agreement as set forth on Schedule 1.

\*　　\*　　\*

In the event the Company seeks protection under the U.S. Bankruptcy Code, the Company will promptly apply to the Bankruptcy Court to obtain approval of APS' retention and Retainer nunc pro tunc to the date of the filing.

The terms and conditions set out in the attached Schedules, Exhibit and the General Terms and Conditions form part of this Agreement and are incorporated by reference herein.

If these terms meet with your approval, please sign and return the enclosed copy of this Agreement and wire transfer the amount to establish the Retainer.

# AP Services LLC

We look forward to working with you.

Sincerely yours,

AP SERVICES, LLC

Albert A. Koch
Vice Chairman

Acknowledged and Agreed to:

CALPINE CORPORATION

By: _____

Its: _____EVP_____

Dated: _____11/29/05_____



**AP Services, LLC**
**Employment by Calpine Corporation**

**Exhibit A**

**Temporary Employees**

| Name | Hourly Rate | Commitment Full[1] or Part[2] Time |
|------|-------------|-------------------------------------|
| Al Koch | $690 | Part Time |
| Lisa Donahue | $670 | Part Time |
| Michael Feder | $630 | Full Time |
| John Castellano | $510 | Full Time |
| Dave Johnston | $460 | Full Time |
| Michael Porter | $410 | Full Time |
| Terry Singla | $320 | Full Time |
| Kyle Braden | $340 | Full Time |
| Kent Percy | $410 | Full Time |

The parties agree that Exhibit A can be amended by APS from time to time to add or delete staff.

[1] Full time is defined as substantially full time.

[2] Part time is defined as approximately 2-3 days per week, with some weeks more or less depending on the needs and issues facing the Company at that time.



**SCHEDULE 1**

**FEES AND EXPENSES**

1. **Fees:** APS' Temporary Employees will be billed to the Company on a semi monthly basis and will be based on the hours charged at APS' hourly rates, which are:

|  |  |
|---|---|
| Managing Directors | $570 - 690 |
| Directors | $430 - 530 |
| Vice Presidents | $320 - 410 |
| Associates | $250 - 280 |
| Analysts | $180 - 200 |
| Paraprofessionals | $150 |

APS reviews and revises its billing rates on January 1 of each year. APS will give the Company written notice prior to increasing its rates.

2. **Contingent Success Fee:** APS does not seek a Contingent Success Fee in connection with this cash forecasting engagement, but reserves the right to negotiate a Contingent Success Fee should the engagement change..

3. **Expenses:** In addition to the fees set forth herein, the Company shall pay directly, or reimburse APS upon receipt of periodic billings, for all reasonable out-of-pocket expenses incurred in connection with this assignment, such as travel, lodging, postage and a communications charge of $4.00 per billable hour to cover telephone and facsimile charges.

4. **Break Fee:** APS does not seek a Break Fee in connection with this engagement.

5. **Retainer:** The Company shall pay APS a retainer of $700,000 to be applied against Fees and Expenses as set forth in this Schedule and in accordance with Section 2 of the attached General Terms and Conditions.



**SCHEDULE 2**

**DISCLOSURES**

We have not completed a thorough check of the parties in interest with regard to the Company, as we have not received the list of the parties in interest. However, as soon as practicable after beginning the engagement, we will provide you with a listing of parties with whom we have current or prior relationships that may be related to the Company. We will provide this so that you might assess the impact, if any, that you believe such disclosures have upon our relationship.

This Schedule 2 may be updated by APS from time to time to disclose additional connections or relationships between APS and the interested parties.

# AP SERVICES, LLC
## GENERAL TERMS AND CONDITIONS

These General Terms and Conditions ("Terms") are incorporated into the letter agreement ("Agreement") between the Company and APS to which these Terms are attached.

### Section 1. Company Responsibilities

The Company will undertake responsibilities as set forth below:

1. Provide reliable and accurate detailed information, materials, documentation and

2. Make decisions and take future actions, as the Company determines in its sole discretion, on any recommendations made by APS in connection with the tasks or work product under this Agreement.

APS' delivery of the services and the fees charged are dependent on (i) the Company's timely and effective completion of its responsibilities; and (ii) timely decisions and approvals made by the Company's management. The Company shall be responsible for any delays, additional costs or other deficiencies caused by not completing its responsibilities.

### Section 2. Retainer and Payments.

**Retainer.** APS will submit monthly invoices for services rendered and expenses incurred and will offset such invoices against the Retainer. Payment will be due upon receipt of the invoices to replenish the Retainer to the agreed-upon amount. Any unearned portion of the Retainer will be returned to the Company at the termination of the engagement.

**Payments.** All payments to be made by the Company to APS shall be payable upon receipt of invoice via wire transfer to APS' bank account, as follows:

| | |
|---|---|
| Receiving Bank: | Comerica Bank |
| | ABA #072000096 |
| Receiving Account: | AP Services, LLC |
| | A/C #1851-765410 |

### Section 3. Relationship of the Parties.

The parties intend that an independent contractor relationship will be created by the Agreement. As an independent contractor, APS will have complete and exclusive charge of the management and operation of its business, including hiring and paying the wages and other compensation of all its employees and agents, and paying all bills, expenses and other charges incurred or payable with respect to the operation of its business. Of course, neither the Temporary Staff nor APS will be entitled to receive from the Company any vacation pay, sick leave, retirement, pension or social security benefits, workers' compensation, disability, unemployment insurance benefits or any other employee benefits. APS will be responsible for all employment, withholding, income and other taxes incurred in connection with the operation and conduct of its business.

The Company shall not solicit, recruit or hire any employees or agents of APS for a period of two years subsequent to the completion and/or termination of the Agreement.

### Section 4. Confidentiality.

APS shall keep confidential its relationship with the Company and all non-public, confidential or proprietary information obtained from the Company during the performance of its services hereunder (the "Information"), and neither APS nor the Temporary Staff will disclose any Information to any other person or entity. "Information" includes non-public, confidential and proprietary data, plans, reports, schedules, drawings, accounts, records, calculations, specifications, flow sheets, computer programs, source or object codes, results, models or any work product relating to the business of the Company,

its subsidiaries, distributors, affiliates, vendors, customers, employees, contractors and consultants.

The foregoing is not intended to prohibit, nor shall it be construed as prohibiting, APS or the Temporary Staff from disclosure pursuant to a valid subpoena or court order, but neither APS nor the Temporary Staff shall encourage, suggest, invite or request, or assist in securing, any such subpoena or court order; and the Temporary Staff shall promptly give notice of any such subpoena or court order by fax transmission to the Company. After obtaining written permission from the general counsel of the Company, APS and the Temporary Staff may make reasonable disclosures of Information to third parties in connection with the performance of APS' obligations and assignments hereunder.

The Company acknowledges that all information (written or oral), including Work Product (as defined in Section 5), generated by APS and the Temporary Staff in connection with this engagement is intended solely for the benefit and use of the Company (including its management and its Board of Directors) in connection with the transactions to which it relates. The Company agrees that no such information shall be used for any other purpose or reproduced, disseminated, quoted or referred to with attribution to APS at any time in any manner or for any purpose without APS' prior approval except as required by law.

### Section 5. Intellectual Property.

All methodologies, processes, techniques, ideas, concepts, know-how, procedures, software, tools, writings and other intellectual property that APS has created, acquired or developed prior to the date of this Agreement are, and shall remain, the sole and exclusive property of APS, and the Company shall not acquire any interest therein. APS shall be free to use all methodologies, processes, techniques, ideas, concepts, know-how, procedures, software, tools, writings and other intellectual property that APS may create or develop in connection with this engagement, subject to its duty of confidentiality to the extent that the same contain information or materials furnished to APS by the Company that constitute Information referred to in Section 4 above. Except as provided above, all information, reports, materials, software and other work product that APS creates or develops specifically for the Company as part of this engagement (collectively known as "Work Product") shall be owned by the Company and shall constitute Information referred to in Section 4 above. APS may retain copies of the Work Product subject to its obligations under Section 4 above.

### Section 6. Framework of the Engagement.

The Company acknowledges that it is retaining APS to provide the Temporary Staff solely to assist the Company and its Board of Directors in the management and restructuring of the Company. This engagement shall not constitute an audit, review or compilation, or any other type of financial statement reporting or consulting engagement that is subject to the rules of the AICPA, the SSCS or other such state and national professional bodies.

### Section 7. Indemnification and Other Matters.

The Company shall indemnify, hold harmless and defend APS and APS' directors, officers, employees, Temporary Staff and agents from and against all claims, liabilities, losses, expenses and damages to the extent of the most favorable indemnities provided by the Company to any of its directors or officers, provided, however, that to the extent any matter for which indemnification is called for hereunder arises while the Company is under the protection of the Bankruptcy Code, indemnification of APS personnel who are not directors or officers of the Company shall be subject to the approval of the Board of

Directors of the Company. The Company shall pay costs as incurred, including reasonable legal fees and disbursements of counsel and the costs of APS' professional time (APS' professional time will be reimbursed at APS' rates in effect when such future time is required), relating to or arising out of the engagement, including any legal proceeding in which APS or other indemnitees may be required or agree to participate but in which they are not a party. APS and its directors, officers, employees, Temporary Staff and agents may, but are not required to, engage a single firm of separate counsel of their choice in connection with any of the matters to which this indemnification agreement relates.

The Company shall use its best efforts to specifically include and cover, as a benefit for their protection, Temporary Staff serving as directors or officers of the Company or affiliates from time to time with direct coverage as named insureds under the Company's policy for directors' and officers' ("D&O") insurance. The Company will maintain such D&O insurance coverage for the period through which claims can be made against such persons. The Company disclaims a right to distribution from the D&O insurance coverage with respect to such persons. In the event that the Company is unable to include Temporary Staff under the Company's policy or does not have first dollar coverage acceptable to APS in effect for at least $30 million [Company's market cap greater than $1 billion] OR $10 million [Company's market cap less than $1 billion] (e.g., such policy is not reserved based on actions that have been or are expected to be filed against officers and directors alleging prior acts that may give rise to a claim), APS may, at its option, attempt to purchase a separate D&O policy that will cover the Temporary Staff only. The cost of same shall be invoiced to the Company as an out -of -pocket cash expense. If APS is unable to purchase such D&O insurance, then APS reserves the right to terminate the Agreement.

APS is not responsible for any third-party products or services. The Company's sole and exclusive rights and remedies with respect to any third party products or services are against the third-party vendor and not against APS, whether or not APS is instrumental in procuring the third-party product or service.

APS shall not be liable to the Company except for actual damages resulting from breach of this agreement, bad faith, self-dealing or intentional misconduct.

## Section 8. Governing Law

The Agreement is governed by and shall be construed in accordance with the laws of the State of Michigan with respect to contracts made and to be performed entirely therein and without regard to choice of law or principles thereof.

Any controversy or claim arising out of or relating to the Agreement, or the breach thereof, shall be settled by arbitration. Each party shall appoint one non-neutral arbitrator. The two party arbitrators shall select a third arbitrator. If within 30 days after their appointment the two party arbitrators do not select a third arbitrator, the third arbitrator shall be selected by the American Arbitration Association (AAA). The arbitration shall be conducted in Southfield, Michigan under the AAA's Commercial Arbitration Rules, and the arbitrators shall issue a reasoned award. The arbitrators may award costs and attorneys' fees to the prevailing party. Judgment on the award rendered by the arbitrators may be entered in any court having jurisdiction thereof. However, in the event the Company is under the protection of the Bankruptcy Code, the arbitration provisions shall apply only to the extent that the Bankruptcy Court, or the U.S. District Court if the reference is withdrawn, does not retain jurisdiction over a controversy or claim.

## Section 9. Termination and Survival.

The Agreement may be terminated at any time by written notice by one party to the other; provided, however, that notwithstanding such termination APS will be entitled to any fees and expenses due under the provisions of the Agreement, including Contingent Success Fee and Break Fee in accordance with Schedule 1. The Break Fee is due and payable at the time of termination of the Agreement. Such payment obligation shall inure to the benefit of any successor or assignee of APS.

In connection with any of the foregoing, if there has been a Change in Control of the Company, APS will receive the Success Fee in accordance with Schedule 2 immediately prior to such Change in Control.

Additionally, unless the Agreement is terminated by the Company for Cause (as defined below) or due to circumstances described in the Contingent Success Fee provision in the Agreement, APS shall remain entitled to the Contingent Success Fee(s) that otherwise would be payable for the greater of 12 months from the date of termination or the period of time that that has elapsed from the date of this Agreement to the date of termination. Cause shall mean:

(a) a Temporary Staff member acting on behalf of the Company is convicted of a felony, or

(b) it is determined in good faith by the Board of Directors of the Company that, after 30 days notice and opportunity to cure, either (i) a Temporary Staff member is engaging in misconduct injurious to the Company, or (ii) a Temporary Staff member breaches any of his or her material obligations under this Agreement; or (iii) a Temporary Staff member willfully disobeys a lawful direction of the Board of Directors or senior management of the Company.

Sections 2, 4, 5, 7, 8, 9 and 10 of these Terms shall survive the expiration or termination of the Agreement.

## Section 10. General.

Severability. If any portion of the Agreement shall be determined to be invalid or unenforceable, the remainder shall be valid and enforceable to the maximum extent possible.

Entire Agreement. These Terms, the letter agreement into which they are incorporated and the Schedule(s) and Exhibit to such letter agreement contain the entire understanding of the parties relating to the services to be rendered by APS and the Temporary Staff and may not be amended or modified in any respect except in a writing signed by the parties. APS is not responsible for performing any services not specifically described herein or in a subsequent writing signed by the parties. If there is a conflict between these Terms and the balance of the Agreement, these Terms shall govern.

Notices. All notices required or permitted to be delivered under the Agreement shall be sent, if to APS, to:

> AP Services, LLC
> 2000 Town Center, Suite 2400
> Southfield, MI 48075
> Attention: Mr. Melvin R. Christiansen

and if to the Company, to the address set forth in the Agreement, to the attention of the Company's General Counsel, or to such other name or address as may be given in writing to the other party. All notices under the Agreement shall be sufficient if delivered by facsimile or overnight mail. Any notice shall be deemed to be given only upon actual receipt.

**Section 11. Disclosures.**

APS is not aware of any fact or situation, other than those disclosed in Schedule 2, which would represent a conflict of interest for APS with regard to the Company. However, APS has not completed a thorough check of the parties in interest with regard to the Company. Upon receiving additional information from the Company with respect to the parties in interest, APS will promptly complete a search of its relationships and will notify the Company of any connections APS may have with such parties in interest. While APS is not aware of any relationships, other than those disclosed in Schedule 2, that connect APS to any party in interest, because APS is a consulting firm that serves clients on a international basis in numerous cases, it is possible that APS may have rendered services to or have business associations with other entities which had or have relationships with the Company. APS has not and will not represent the interests of any of the entities disclosed on Schedule 2 in this case.



December 17, 2005

Mr. Robert P. May
President and Chief Executive Officer
Calpine Corporation
50 West San Fernando Street
San Jose, CA 95113

Re:  Agreement for Restructuring Services

Dear Mr. May:

This letter outlines the understanding ("Agreement") between AP Services LLC, a Michigan limited liability company ("APS") and Calpine Corporation (the "Company") of the objectives, tasks, work product and fees for the engagement of APS that will provide Lisa Donahue as a Managing Director to lead a project whereby APS will provide financial services to the Company, reporting to you in your role as President and Chief Executive Officer.  The letter supersedes in its entirety the agreement dated November 29, 2005 between APS and the Company.

All defined terms shall have the meanings ascribed to them in this letter and in the attached Schedules, Exhibit and General Terms and Conditions.

---

| **OBJECTIVES** |
| :---: |

- Assist the Company and its management in developing short-term cash flow forecasting tools and related methodologies and assist with day-to-day operational planning and for the evaluation of strategic alternatives as requested by the Company.

- Assist the Company and its management in preparing contingency plans in the event that a Chapter 11 bankruptcy filing is required and, if a filing is required, thereafter to support the Company as needed in its Chapter 11 proceedings with a view to emerging from Chapter 11 at the earliest possible date.  In doing so, we will work closely with you and other members of the Calpine Management team and its advisors to assure that there is not duplication of effort, that work product and projects are carefully targeted to assure that our effort is in response to a specific need and that we work collaboratively with Management, Kirkland & Ellis, Miller Buckfire & Co., Kurtzman Carson Consultants and any other professionals that are retained by the Company to assist the Company.



| TASKS |
|---|

APS's Tasks will be determined by the Company. The Company and AP will review the list of the assigned Tasks on a periodic schedule determined by the Company to review and confirm the current Task list, the status and completion dates for each Task and the estimated budget. APS's tasks may include the following:

- Assist the Company in very quickly addressing its current liquidity challenges, including, but not limited to:

    - Developing a rolling 13-week cash forecasting tool for cash sources and uses, as outlined below, including the impact of business environment changes such as:
        - Credit rating changes
        - Spark spread deterioration or improvement
        - Collateral requirements

    - Understanding the corporate structure and its impact on liquidity

    - Understanding the various debt agreements and restrictions contained therein

    - Understanding the current cash positions and what funds may be available for general corporate needs and which are restricted

    - Understanding the transactions among and between subsidiaries and the flows of funds related to these inter-company transactions

    - Developing an understanding and forecasting methodology for the settlement of power supply and fuel delivery agreements

    - Understanding and forecasting the settlement of proprietary/non-generation trading positions

    - Forecast the impact of credit rating changes on collateral required to support hedged positions

    - Monitor actual receipts and disbursements and assist the Company in developing a variance reporting mechanism, explanations of key differences and recommendations for improving the forecasting process

    - Assist management in identifying and implementing recommendations to improve the Company's net cash position.

- Assist with the Company's financial and treasury functions as they respond to the analytical requests and other requests for information that are placed upon them.

2

APServices LLC

- Provide assistance in the formulation and negotiation with respect to a Plan of Reorganization.

- Assist in preparing for and filing a Bankruptcy Petition, coordinating and providing administrative support for the proceeding and developing the Company's Plan of Reorganization or other appropriate case resolution, if necessary.

- Assist with the preparation of the statement of affairs, schedules and other regular reports required by the Bankruptcy Court or which are customarily issued by the Company's Chief Financial Officer as well as providing assistance in such areas as testimony before the Bankruptcy Court on matters that are within APS' areas of expertise.

- Assist with financing issues either prior to or during the bankruptcy proceeding and in conjunction with the Plan of Reorganization or which arise from the Company's financing sources outside of the United States.

- Assist in negotiations with stakeholders and their representatives.

- Assist in managing the "working group" professionals who are assisting the Company in the reorganization process or who are working for the Company's various stakeholders to improve coordination of their effort and individual work product to be consistent with the Company's overall restructuring goals.

- Work with the Company and its team to further identify and implement both short-term and long-term liquidity generating initiatives.

- Assist in developing and implementing cash management strategies, tactics and processes. Work with the Company's treasury department and other professionals and coordinate the activities of the representatives of other constituencies in the cash management process.

- Assist in overseeing and driving financial performance in conformity with the Company's business plan.

- Assist management with the development of the Company's revised business plan, and such other related forecasts as may be required by the bank lenders in connection with negotiations or by the Company for other corporate purposes.

- Assist in communication and/or negotiation with outside constituents including the banks and their advisors.



AP Services LLC

- Provide such other assistance as may be requested and is within our expertise to support.

## WORK PRODUCT

Our work product will be in the form of:

- Information to be discussed with you and others, as you may direct.

- Written reports and analysis worksheets to support our suggestions as we deem necessary or as you may request.

## STAFFING

Lisa Donahue will be the managing director responsible for the day-to-day execution of the engagement. She will be assisted by Michael Feder and a staff of professionals at various levels as provided on Exhibit A, all of whom have a wide range of skills and abilities related to this type of assignment. In addition, we have relationships with and periodically retain independent contractors with specialized skills and abilities to assist us; however, those independent contractors shall not be retained without the prior written approval of the Company.

Staffing levels and assignments shall be determined through consultation between the Company and APS. The staff may be assisted by or replaced by other professionals at various levels, as required. APS will keep the Company informed as to APS' staffing and will not add additional staff to the assignment without first consulting with the Company to obtain your agreement that such additional resources are required and do not duplicate the activities of other employees or professionals.

## TIMING, FEES AND RETAINER

This will confirm that APS commenced this engagement on November 29, 2005. This Agreement supersedes our engagement letter pursuant thereto and is replaced by this Agreement as if it was entered into on that date.

APS shall be compensated for its services, and reimbursed for expenses, under this Agreement as set forth on Schedule 1.

\*       \*       \*



**AP**Services LLC

Mr. Robert P. May                                                    December 17, 2005

In the event the Company seeks protection under the U.S. Bankruptcy Code, the Company will promptly apply to the Bankruptcy Court to obtain approval of APS' retention and Retainer nunc pro tunc to the date of the filing.

The terms and conditions set out in the attached Schedules, Exhibit and the General Terms and Conditions form part of this Agreement and are incorporated by reference herein.

If these terms meet with your approval, please sign and return the enclosed copy of this Agreement and wire transfer the amount specified on Schedule 1 to establish the Retainer.

We look forward to working with you.

Sincerely yours,

AP SERVICES, LLC

Lisa Donahue          by J.J. Kool

Lisa Donahue
Managing Director

Acknowledged and Agreed to:

CALPINE CORPORATION

By:

Its:                    Executive Vice President

Dated:                  December 19, 2005

5

# APServices LLC

**AP Services, LLC**
**Employment by Calpine Corporation**

**Exhibit A**

| Name | Description | Hourly Rate | Commitment Full[1] or Part[2] Time |
|------|-------------|-------------|-------------------------------------|
| Lisa Donahue | Managing Director | $670 | Full time |
| Al Koch | Managing Director | $690 | Part Time |
| Michael Feder | Managing Director | $630 | Full Time |
| Barry Folse | Director | $480 | Full Time |
| John Castellano | Director | $510 | Full Time |
| Dave Johnston | Director | $460 | Full Time |
| Bryan Porter | Director | $460 | Full Time |
| Terry Singla | Vice President | $320 | Full Time |
| Robb McWilliams | Vice President | $300 | Full Time |
| Drew Lockard | Vice President | $300 | Full Time |
| Aleksandra Bozic | Vice President | $350 | Full Time |
| Deborah Rieger-Paganis | Director | $480 | Full Time |
| Tom Osmun | Director | $480 | Full Time |
| Scott Mell | Director | $480 | Full Time |

The parties agree that Exhibit A can be amended by APS from time to time, subject to the Company's approval, to add or delete staff and the Monthly Staffing Reports shall be treated by the parties as such amendments. Staff will be expanded or contracted in order to meet the Company's needs.

[1] Full time is defined as substantially full time.

[2] Part time is defined as approximately 2-3 days per week, with some weeks more or less depending on the needs and issues facing the Company at that time.

1

# AP Services LLC

## FEES AND EXPENSES

1. **Fees:** APS staff will be billed to the Company on a semi- monthly basis and will be based on the hours charged at APS' hourly rates, which are:

| | |
|---|---|
| Managing Directors | $570 - 690 |
| Directors | $430 - 530 |
| Vice Presidents | $320 - 410 |
| Associates | $250 - 280 |
| Analysts | $180 - 200 |
| Paraprofessionals | $150 |

   APS reviews and revises its billing rates on January 1 of each year. The billing rates listed in this engagement letter are those in effect for 2005; however, APS agrees that no increase for 2006 shall be made in the above rates. APS will give the Company written notice prior to increasing its rates.

   APS acknowledges that the Company retains the right to restrict the number of hours worked per APS staff person.

2. **Contingent Success Fee:** APS and the Company agree that within 90 days from the date of this letter they will determine a reasonable success fee, if any, based upon APS' contribution to a successful reorganization or sale of the Company. A separate filing with the Bankruptcy Court will be made seeking approval of the results of these discussions. APS shall be entitled to receive the contingent success fee whether or not it is still actively engaged when the event giving rise to payment of the success fee occurs. Provided, however, that if APS is not engaged at the time that Chapter 11 is filed or on March 31, 2006 if a Chapter 11 bankruptcy petition is not filed then no Contingent Success Fee shall be payable.

3. **Expenses:** In addition to the fees set forth herein, the Company shall pay directly, or reimburse APS upon receipt of periodic billings, for all reasonable out-of-pocket expenses incurred in connection with this assignment, such as coach class air travel, lodging, postage and a communications charge of $4.00 per billable hour to cover telephone and facsimile charges.

4. **Break Fee:** APS does not seek a Break Fee in connection with this engagement.

5. **Retainer:** The Company shall pay APS a total retainer of $1,500,000 to be applied against Fees and Expenses as set forth in this Schedule and in accordance with Section 2 of the attached General Terms and Conditions. We acknowledge receipt of a $700,000 retainer; therefore, the amount still owing under this paragraph is $800,000.

**AP**Services LLC

SCHEDULE 2

DISCLOSURES

We have completed a check of approximately 1,400 parties in interest that we received from the Company. Following is the listing of disclosures from our review of the first listing of parties in interest. We provide this so that you might assess the impact, if any, that you believe such disclosures have upon our relationship.

- Questor Partners Fund, L.P. ("QPF") and an affiliated side-by-side fund and Questor Partners Fund II, L.P. ("QPF II") and affiliated side-by-side funds, $300 million and $865 million funds, respectively, are private equity funds that invest in special situations and under-performing companies. Neither QPF nor QPF II will make an investment to the Company for at least three years after the date that APS' engagement terminates.

- Mr. Jay Alix, a managing director in AlixPartners, an affiliate of APS, is also the President and CEO of Questor Management Company, LLC ("Questor"), the entity that manages QPF and QPF II.

- Questor and AlixPartners are separate companies. AlixPartners, pursuant to contract, performs certain accounting and other administrative services for Questor. From time to time, Questor hires AlixPartners as a contractor to advise it regarding a potential acquisition, and occasionally investee companies of QPF and QPF II hire AlixPartners. From time to time, employees of AlixPartners are elected to the boards of directors of investee companies of QPF and QPF II, but other than Mr. Koch no such board members are involved in this engagement. Mr. Koch is Chairman of the Board of Polar Corporation, an investee company of QPF II.

- Mr. Alix and Mr. Robert Shields own interests in Questor General Partner, LP ("QGP") and Questor General Partner II, LP ("QGP II"), the general partners of QPF and QPF II. Substantially all of the AlixPartners managing directors are limited partners in QGP II and, as such, are passive participants in the general partner with no voice in authorizing QPF II's investments. Mr. Alix, Mr. Albert A. Koch, and Mr. Michael Grindfors are also managing directors of Questor and, along with Mr. Shields, members of its Investment Committee. The Investment Committee makes investment decisions for Questor.

- Substantially all of the managing directors of AlixPartners own limited partnership interests in one or more of the following entities: Questor Side-by-Side Partners, L.P. ("SBS"), Questor Side-by-Side Partners II,L.P. ("SBS II") and Questor Side-by-Side Partners II 3(c)(1), L.P. ("SBS II 3c1"). Limited partners, except for Mr. Alix, Mr. Koch and Mr. Grindfors are passive investors and have no voice in approving the entities' investments.

- Some of the limited partners of QPF and/or QPF II are affiliates of financial institutions that are also lenders to companies that may have retained AlixPartners. The affiliates of such

1

# AP Services LLC

financial institutions are passive investors in QPF and QPF II and have no voice in approving Questor's investments. Where such situations occur, the lending relationship and investment in QPF and/or QPF II is detailed in AlixPartners' disclosures.

- QPF, QPF II, SBS, SBS II, SBS II 3c1 and Questor are all related entities. The Side-by-Side funds contain, in the aggregate, 6.3% of the total Questor funds, which are in excess of $1.17 billion.

- ABN Amro, a contract party of the Company, is a current and former client of AlixPartners in matters unrelated to the Company. ABN Amro was an indenture trustee, bondholder and collateral agent for vendors to former AlixPartners and/or APS clients in matters unrelated to the Company.

- ANR Pipeline Company, a contract party of the Company, was a related party to a former AlixPartners client in matters unrelated to the Company.

- Benjamin B. Abedine, an officer/director of the Company, was an officer of a former AlixPartners client in matters unrelated to the Company.

- Bruce Bisson, an officer/director of the Company, was a director of a former AlixPartners client in matters unrelated to the Company.

- AIG/National Union, a contract party of the Company, is affiliated with entities that are investors in QPF and QPF II. In addition, other AIG/National Union affiliated entities are limited partners, lenders and bondholders of current and former AlixPartners and/or APS clients in matters unrelated to the Company.

- Bank of America Securities, a contract party of the Company, is a current and former client of AlixPartners, as well as a professional person and lender to current and former AlixPartners and/or APS clients in matters unrelated to the Company.

- Booz Allen & Hamilton, a vendor to the Company, was former employer of current AlixPartners employees.

- BP Energy Company, a contract party of the Company and affiliated entities, is a current client of AlixPartners in matters unrelated to the Company.

- Bracewell & Giuliani, a vendor to the Company, is a professional person to a current APS client in matters unrelated to the Company.

- Carolina Power & Light Company, a contract party of the Company, was a creditor, vendor and director affiliated company to former AlixPartners and/or APS clients in matters unrelated to the Company.

2

# ÅPServices LLC

- Cinergy Services, a contract party of the Company, was a related party to a former AlixPartners client in matters unrelated to the Company.

- Conoco, a vendor to the Company, was a creditor and adverse party to former AlixPartners and/or APS clients in matters unrelated to the Company. In addition, Conoco was a related party to a former AlixPartners client in matters unrelated to the Company.

- Covington & Burling, a vendor to the Company, was a client professional to a former AlixPartners client in matters unrelated to the Company.

- Credit Suisse First Boston, a contract party of the Company, and CSFB affiliates are current and former clients of AlixPartners, as well as creditors, professionals, noteholders and lenders to current and former AlixPartners and/or APS clients in matters unrelated to the Company. A CSFB affiliated entity is a lender to a Questor portfolio company.

- Deloitte & Touche, a contract party and professional of the Company, is affiliated with entities that are vendors to AlixPartners, adverse to a former AlixPartners client, as well as professionals to current and former AlixPartners and/or APS clients in matters unrelated to the Company. Deloitte & Touche is also a current client of AlixPartners in matters unrelated to the Company. Additionally, Deloitte & Touche affiliated entities previously employed several current AlixPartners employees.

- Deutsche Bank, a vendor to the Company, is affiliated with entities that are shareholders, lenders, indenture trustees, creditors, limited partners and retained professionals to current and former AlixPartners and/or APS clients in matters unrelated to the Company.

- Dow Chemical Company, a vendor to the Company, was a former client of AlixPartners in matters unrelated to the Company. Dow Chemical Company was also a creditor and director affiliated company of former AlixPartners and/or APS clients in matters unrelated to the Company.

- Enron North America Corp., a contract party of the Company, and ENAC affiliated entities are adverse parties, creditors, and financial derivative counterparties to current and former clients of AlixPartners in matters unrelated to the Company. In addition, an affiliated entity of Enron North America was a former client of AlixPartners in matters unrelated to the Company.

- General Electric International, a vendor to the Company, is affiliated with an investor in QPF II. General Electric International and its affiliated entities are also former clients of AlixPartners as well as creditors, lenders, lessors and bondholders to current and former AlixPartners and/or APS clients in matters unrelated to the Company.

- Houlihan Lokey, a contract party of the Company, was an affiliated entity and client professional to current and former AlixPartners and/or APS clients in matters unrelated to the Company.

3

# AP Services LLC

- Intercontinental Exchange, a contract party of the Company, was a counterparty to litigation of a former APS client in matters unrelated to the Company.

- Illinois Power Company, a contract party of the Company, was a related party to a former AlixPartners client in matters unrelated to the Company.

- Internal Revenue Service was a former creditor and client through representative creditor's committee to former AlixPartners and/or APS clients in matters unrelated to the Company. In addition, Internal Revenue Service was previous employer of current AlixPartners employees.

- Iron Mountain, a vendor to the Company, is a vendor to AlixPartners and is a former AlixPartners client in matters unrelated to the Company.

- Kinder Morgan, a contract party of the Company, is a current client of AlixPartners in matters unrelated to the Company.

- KirkPatrick & Lockhart, a vendor to the Company, is client professional to current and former AlixPartners and/or APS clients in matters unrelated to the Company.

- KPMG, a professional to the Company, is a current client of AlixPartners as well as a professional, adverse party and creditor to current and former AlixPartners and/or APS clients in matters unrelated to the Company. Additionally, KPMG previously employed several current AlixPartners employees.

- Kurtzman Carson Consultants, a professional to the Company, is client professional to a current AlixPartners client in matters unrelated to the Company.

- Latham & Watkins, a professional to the Company, is legal counsel and opposing legal counsel to current and former AlixPartners and/or APS clients in matters unrelated to the Company.

- Lehman Brothers, a contract party of the Company, was a former client of AlixPartners through AlixPartners work for a bank group, a vendor to AlixPartners, a client related party, as well as bondholders, shareholders and lenders to current and former AlixPartners and/or APS clients in matters unrelated to the Company. Additionally, Lehman Brothers previously employed a current AlixPartners employee.

- Marathon Oil Company, a contract party of the Company, was a creditor and related party to former AlixPartners and/or APS clients in matters unrelated to the Company.

- Merrill Lynch, a contract party of the Company, is affiliated with several entities that are former clients of AlixPartners, as well as lenders, bondholders, shareholders limited partners and retained professionals to current and former AlixPartners and/or APS clients in matters unrelated to the Company. Merrill Lynch Asset Management is a lender to a Questor

4

portfolio company. Additionally, Merrill Lynch previously employed several AlixPartners employees.

- Mirant America Energy Marketing, a contract party of the Company, and affiliated entities were former clients of APS in matters unrelated to the Company.

- Morgan Stanley, a contract party of the Company, is a lender, bondholder and client professional of current AlixPartners and/or APS clients in matters unrelated to the Company. Additionally, Morgan Stanley was a lender to a former QPF and QPF II portfolio company. Lastly, Morgan Stanley previously employed a current AlixPartners employee.

- National Bank of Canada, a contract party of the Company, was a lender and client, as a participant bank, to former AlixPartners and/or APS clients in matters unrelated to the Company.

- Nixon Peabody, a professional to the Company, is a client professional to a current APS client in matters unrelated to the Company.

- NRG Energy, an affiliate of the Company, was an adverse party to a former AlixPartners client in matters unrelated to the Company.

- Pratt & Whitney, a vendor to the Company, was a member of the creditor's committee to a former AlixPartners client in matters unrelated to the Company.

- Progress Energy, a vendor to the Company, is a director affiliated company to a former APS client in matters unrelated to the Company.

- Oaktree Capital, a contract party of the Company, was an adverse party to a former AlixPartners client in a litigated matter as well as a bondholder and lender to current and former AlixPartners and/or APS affiliated entities in matters unrelated to the Company. Additionally, Oaktree is a significant shareholder of a Questor portfolio company and a director of that same Questor portfolio company is affiliated with Oaktree Capital.

- Oracle Corporation, a vendor to the Company, is a former AlixPartners client in matters unrelated to the Company. In addition, Oracle Corporation was a creditor and adverse party to former AlixPartners and/or APS clients in matters unrelated to the Company. Lastly, Oracle Corporation was previous employer of a current AlixPartners employee.

- Paul Weiss Rifkind & Garrison, a professional of the Company, is clients' legal counsel to current and former AlixPartners and/or APS clients in matters unrelated to the Company.

- Perkins Coie, a professional of the Company, was opposing counsel and client professional to former AlixPartners and/or APS clients in matters unrelated to the Company.

- PricewaterhouseCoopers, a professional of the Company, is a professional to current and former AlixPartners clients in matters unrelated to the Company. PWC is the auditor for

alb

# ĀPServices LLC

QPF and QPF II. Additionally, PWC previously employed several current AlixPartners employees.

- Refco, Inc., a contract party of the Company, is a current client of APS in matters unrelated to the Company.

- Sargent & Lundy, a contract party of the Company, was a former client of AlixPartners in matters unrelated to the Company.

- Siemens Power Generation, a vendor to Company, and SPC affiliated entities are creditors, lenders, adverse parties and lessors to former AlixPartners and/or APS clients in matters unrelated to the Company. In addition, affiliated entities of Siemens Power Generation were former clients of AlixPartners in matters unrelated to the Company.

- Skadden, Arps, Slate, Meagher & Flom, a professional of the Company, is client's professional to current and former AlixPartners and/or APS clients in matters unrelated to the Company.

- A Confidential client, a contract party of the Company, is a current AlixPartners client in matters unrelated to the Company. In addition, an affiliated entity of the confidential client is an investor in QPF.

- Stroock & Stroock & Lavan, a professional of the Company, is a current and former client of AlixPartners, as well as a professional and adverse party to current and former AlixPartners clients in matters unrelated to the Company.

- Sun Microsystems, a vendor to the Company, was a creditor to former APS clients in matters unrelated to the Company. In addition, Sun Microsystems was previous employer of a current AlixPartners employee.

- Thelen Reid & Priest, a vendor to the Company, was a former AlixPartners client in matters unrelated to the Company.

- UBS AG, a contract party of the Company, is affiliated with entities that are lenders, vendors, professionals, creditors, bondholders, and lessors to current and former AlixPartners and/or APS clients in matters unrelated to the Company.

- UPS, a contract party of the Company, was a vendor and director affiliated company to current and former AlixPartners and/or APS clients in matters unrelated to the Company.

- U.S Filter Corporation, a vendor to the Company, was previous employer of a current AlixPartners employee.

- Winston & Strawn, a professional of the Company, is a current and former client of AlixPartners. In addition Winton & Strawn is a professional and opposing counsel to current and former AlixPartners clients in matters unrelated to the Company.

# APServices LLC

We recently received a supplemental listing of approximately 1,000 additional parties in interest and, as soon as practicable, we will provide you with a listing of parties with whom we have current or prior relationships that may be related to the Company.

This Schedule 2 may be updated by APS from time to time to disclose additional connections or relationships between APS and the interested parties.

# AP SERVICES, LLC
# GENERAL TERMS AND CONDITIONS

These General Terms and Conditions ("Terms") are incorporated into the letter agreement ("Agreement") between the Company and APS to which these Terms are attached.

### Section 1. Company Responsibilities

The Company will undertake responsibilities as set forth below:

1. Provide reliable and accurate detailed information, materials, documentation and

2. Make decisions and take future actions, as the Company determines in its sole discretion, on any recommendations made by APS in connection with the tasks or work product under this Agreement.

APS' delivery of the services and the fees charged are dependent on (i) the Company's timely and effective completion of its responsibilities; and (ii) timely decisions and approvals made by the Company's management. The Company shall be responsible for any delays, additional costs or other deficiencies caused by not completing its responsibilities.

### Section 2. Retainer and Payments.

**Retainer.** APS will submit semi-monthly invoices for services rendered and expenses incurred and will offset such invoices against the Retainer. Payment will be due upon receipt of the invoices to replenish the Retainer to the agreed-upon amount. Any unearned portion of the Retainer will be returned to the Company at the termination of the engagement.

**Payments.** All payments to be made by the Company to APS shall be payable upon receipt of invoice via wire transfer to APS' bank account, as follows:

| | |
|---|---|
| Receiving Bank: | Comerica Bank |
| | ABA #072000096 |
| Receiving Account: | AP Services, LLC |
| | A/C #1851-765410 |

### Section 3. Relationship of the Parties.

The parties intend that an independent contractor relationship will be created by the Agreement. As an independent contractor, APS will have complete and exclusive charge of the management and operation of its business, including hiring and paying the wages and other compensation of all its employees and agents, and paying all bills, expenses and other charges incurred or payable with respect to the operation of its business. Of course, neither the Temporary Staff nor APS will be entitled to receive from the Company any vacation pay, sick leave, retirement, pension or social security benefits, workers' compensation, disability, unemployment insurance benefits or any other employee benefits. APS will be responsible for all employment, withholding, income and other taxes incurred in connection with the operation and conduct of its business.

The Company shall not solicit, recruit or hire any employees or agents of APS for a period of two years subsequent to the completion and/or termination of the Agreement.

### Section 4. Confidentiality.

APS shall keep confidential its relationship with the Company (unless such relationship is disclosed publicly in a Court filing or otherwise) and all non-public, confidential or proprietary information obtained from the Company during the performance of its services hereunder (the "Information"), and neither APS nor the Temporary Staff will disclose any information to any other person or entity. "Information" includes non-public, confidential and proprietary data, plans, reports, schedules, drawings, accounts, records, calculations, specifications, flow sheets, computer programs, source or object codes, results,

models or any work product relating to the business of the Company, its subsidiaries, distributors, affiliates, vendors, customers, employees, contractors and consultants.

The foregoing is not intended to prohibit, nor shall it be construed as prohibiting, APS or the Temporary Staff from disclosure pursuant to a valid subpoena or court order, but neither APS nor the Temporary Staff shall encourage, suggest, invite or request, or assist in securing, any such subpoena or court order; and the Temporary Staff shall promptly give notice of any such subpoena or court order by fax transmission to the Company. After obtaining written permission from the general counsel of the Company, APS and the Temporary Staff may make reasonable disclosures of information to third parties in connection with the performance of APS' obligations and assignments hereunder unless such disclosure is occurring in the regular course of a bankruptcy proceeding and is to parties-at-interest in such proceeding in which case no written permission shall be required.

The Company acknowledges that all information (written or oral), including Work Product (as defined in Section 5), generated by APS and the Temporary Staff in connection with this engagement is intended solely for the benefit and use of the Company (limited to its management and its Board of Directors) in connection with the transactions to which it relates. The Company agrees that no such information shall be used for any other purpose or reproduced, disseminated, quoted or referred to with attribution to APS at any time in any manner or for any purpose without APS' prior approval except as required by law.

### Section 5. Intellectual Property.

All methodologies, processes, techniques, ideas, concepts, know-how, procedures, software, tools, writings and other intellectual property that APS has created, acquired or developed prior to the date of this Agreement are, and shall remain, the sole and exclusive property of APS, and the Company shall not acquire any interest therein. APS shall be free to use all methodologies, processes, techniques, ideas, concepts, know-how, procedures, software, tools, writings and other intellectual property that APS may create or develop in connection with this engagement, subject to its duty of confidentiality to the extent that the same contain information or materials furnished to APS by the Company that constitute Information referred to in Section 4 above. Except as provided above, all information, reports, materials, software and other work product that APS creates or develops specifically for the Company as part of this engagement (collectively known as "Work Product") shall be owned by the Company and shall constitute Information referred to in Section 4 above. APS may retain copies of the Work Product subject to its obligations under Section 4 above.

### Section 6. Framework of the Engagement.

The Company acknowledges that it is retaining APS to provide the Temporary Staff solely to assist the Company and its Board of Directors in the management and restructuring of the Company. This engagement shall not constitute an audit, review or compilation, or any other type of financial statement reporting or consulting engagement that is subject to the rules of the AICPA, the SSCS or other such state and national professional bodies.

### Section 7. Indemnification and Other Matters.

The Company shall indemnify, hold harmless and defend APS and APS' directors, officers, employees, Temporary Staff and agents from and against all claims, liabilities, losses, expenses and damages to the extent of the most favorable indemnities provided by the Company to

1

any of its directors or officers, provided, however, that to the extent any matter for which indemnification is called for hereunder arises while the Company is under the protection of the Bankruptcy Code, indemnification of APS personnel who are not directors or officers of the Company shall be subject to the approval of the Board of Directors of the Company. The Company shall pay costs as incurred, including reasonable legal fees and disbursements of counsel and the costs of APS' professional time (APS' professional time will be reimbursed at APS' rates in effect when such future time is required), relating to or arising out of the engagement, including any legal proceeding in which APS or other indemnitees may be required or agree to participate but in which they are not a party. APS and its directors, officers, employees, Temporary Staff and agents may, but are not required to, engage a single firm of separate counsel of their choice in connection with any of the matters to which this indemnification agreement relates.

The Company shall use its best efforts to specifically include and cover, as a benefit for their protection, Temporary Staff serving as directors or officers of the Company or affiliates from time in time with direct coverage as named insureds under the Company's policy for directors' and officers' ("D&O") insurance. The Company will maintain such D&O insurance coverage for the period through which claims can be made against such persons. The Company disclaims a right to distribution from the D&O insurance coverage with respect to such persons. In the event that the Company is unable to include Temporary Staff under the Company's policy or does not have first dollar coverage acceptable to APS in effect for at least $30 million (e.g., such policy is not reserved based on actions that have been or are expected to be filed against officers and directors alleging prior acts that may give rise to a claim), APS may, at its option, attempt to purchase a separate D&O policy that will cover the Temporary Staff only. The cost of same shall be invoiced to the Company as an out -of -pocket cash expense. If APS is unable to purchase such D&O insurance, then APS reserves the right to terminate the Agreement.

APS is not responsible for any third-party products or services. The Company's sole and exclusive rights and remedies with respect to any third party products or services are against the third-party vendor and not against APS, whether or not APS is instrumental in procuring the third-party product or service.

APS shall not be liable to the Company except for actual damages resulting from breach of this agreement, bad faith, self-dealing or intentional misconduct.

## Section 8. Governing
The Agreement is governed by and shall be construed in accordance with the laws of the State of New York with respect to contracts made and to be performed entirely therein and without regard to choice of law or principles thereof.

Any controversy or claim arising out of or relating to the Agreement, or the breach thereof, shall be settled by arbitration. Each party shall appoint one non-neutral arbitrator. The two party arbitrators shall select a third arbitrator. If within 30 days after their appointment the two party arbitrators do not select a third arbitrator, the third arbitrator shall be selected by the American Arbitration Association (AAA). The arbitration shall be conducted in New York, New York under the AAA's Commercial Arbitration Rules, and the arbitrators shall issue a reasoned award. The arbitrators may award costs and attorneys' fees to the prevailing party. Judgment on the award rendered by the arbitrators may be entered in any court having jurisdiction thereof. However, in the event the Company is under the protection of the Bankruptcy Code, the arbitration provisions shall apply only to the extent that the Bankruptcy Court, or the U.S. District Court if the reference is withdrawn, does not retain jurisdiction over a controversy or claim.

## Section 9. Termination and Survival.

The Agreement may be terminated at any time by written notice by one party to the other; provided, however, that notwithstanding such termination APS will be entitled to any fees and expenses due under the provisions of the Agreement, including Contingent Success Fee and Break Fee in accordance with Schedule 1. The Break Fee is due and payable at the time of termination of the Agreement. Such payment obligation shall inure to the benefit of any successor or assignee of APS.

In connection with any of the foregoing, if there has been a Change in Control of the Company, APS will receive the Success Fee in accordance with Schedule 2 immediately prior to such Change in Control.

Additionally, unless the Agreement is terminated by the Company for Cause (as defined below) or due to circumstances described in the Contingent Success Fee provision in the Agreement, APS shall remain entitled to the Contingent Success Fee(s) that otherwise would be payable for the greater of 12 months from the date of termination or the period of time that that has elapsed from the date of this Agreement to the date of termination. Cause shall mean:

(a) a Temporary Staff member acting on behalf of the Company is convicted of a felony, or

(b) it is determined in good faith by the Board of Directors of the Company that, after 30 days notice and opportunity to cure, either (i) a Temporary Staff member is engaging in misconduct injurious to the Company, or (ii) a Temporary Staff member breaches any of his or her material obligations under this Agreement; or (iii) a Temporary Staff member willfully disobeys a lawful direction of the Board of Directors or senior management of the Company.

Sections 2, 4, 5, 7, 8, 9 and 10 of these Terms shall survive the expiration or termination of the Agreement.

## Section 10. General.

Severability. If any portion of the Agreement shall be determined to be invalid or unenforceable, the remainder shall be valid and enforceable to the maximum extent possible.

Entire Agreement. These Terms, the letter agreement into which they are incorporated and the Schedule(s) and Exhibit to such letter agreement contain the entire understanding of the parties relating to the services to be rendered by APS and the Temporary Staff and may not be amended or modified in any respect except in a writing signed by the parties. APS is not responsible for performing any services not specifically described herein or in a subsequent writing signed by the parties. If there is a conflict between these Terms and the balance of the Agreement, these Terms shall govern.

Notices. All notices required or permitted to be delivered under the Agreement shall be sent, if to APS, to:

AP Services, LLC
2000 Town Center, Suite 2400
Southfield, MI 48075
Attention: Mr. Melvin R. Christiansen

and if to the Company, to the address set forth in the Agreement, to the attention of the Company's General Counsel, or to such other name or address as may be given in writing to the other party. All notices under the Agreement shall be sufficient if delivered by facsimile or overnight mail. Any notice shall be deemed to be given only upon actual receipt.

2

**Section 11. Disclosures.**

APS is not aware of any fact or situation, other than those disclosed in Schedule 2, which would represent a conflict of interest for APS with regard to the Company. However, APS has not completed a thorough check of the parties in interest with regard to the Company. Upon receiving additional information from the Company with respect to the parties in interest, APS will promptly complete a search of its relationships and will notify the Company of any connections APS may have with such parties in interest. While APS is not aware of any relationships, other than those disclosed in Schedule 2, that connect APS to any party in interest, because APS is a consulting firm that serves clients on a international basis in numerous cases, it is possible that APS may have rendered services to or have business associations with other entities which had or have relationships with the Company. APS has not and will not represent the interests of any of the entities disclosed on Schedule 2 in this case.



November 3, 2006


Robert May
Calpine Corporation
50 West San Fernando Street
San Jose, CA 95113

Re: Agreement for Restructuring Services

This letter is the first amendment of the Agreement dated December 17, 2005 (the "Agreement"), between AP Services LLC, a Michigan limited liability company ("APS") and Calpine Corporation ("Calpine" or the "Company"). Unless otherwise modified herein, the terms and conditions of the Agreement remain in full force and effect.

| TASKS |
| :---: |

*The following tasks are added to those stated in the Agreement:*

- Assist in the review and assessment of executory contracts to identify rejection opportunities.

- Collaborate with internal and external legal counsel to develop strategies for dealing with uneconomic contracts that cannot be rejected due to jurisdictional issues.

- Support Company process to evaluate and sell certain plants and assets that are no longer strategically relevant to Calpine.

- Assist in the development and process for completing the monthly operating reports and other reporting required during the bankruptcy.

- Assist the Company in analyzing and reconciling Chapter 11 bankruptcy claims, including reclamation analysis and potential preferences.

- Advising the Company's accounting department on certain reporting requirements and evaluating the closing process to accelerate the reporting of financial results.

- Support US company and evaluate issues related to the Canadian chapter 11 filing.

- Develop analysis to assess solvency of CES, LP and the trading operations, including evaluating interco transactions.

# ÅPServices LLC

- Work with the Company to identify the total population of inter-company general ledger accounts and to understand the purpose and nature of activity for each inter-company account.

- Work with management and the Company's outside counsel to review a sample of structured finance transactions, assess the economic value of the transactions, and identify potential pre and post-petition claims for the respective transactions.

- Maintain a controlled and repeatable forecasting methodology for the Debtors' trading operations to provide a forecast of cash flows based on current commodity prices and dispatch trends rather than historical trends.

- Develop a model whereby contractual toll payments indexed to power and gas prices can be updated on a weekly basis to account for changes in the commodity price index.

- Assist the Company by providing an analyst in the Treasury department responsible for maintaining a daily bank reconciliation between forecasted and actual cash flow activity for all cash accounts that sweep to Corp (over 20 accounts).

- Assist the Company by providing an analyst in the Credit Department responsible for interacting with all counterparties on a daily basis, assessing the net exposure between the counterparty and Calpine, and determining if any cash collateral will need to posted or can be colleted. This analyst maintains the information and documentation that will allow the Director of Credit the ability to help minimize the working capital required in the trading organization.

- Assist the Company and its legal advisors in identifying possible substantive consolidation scenarios, as well as support the Company in understanding both the third-party and intercompany affiliate claims associated with each legal entity and scenario

- Managing the transition of accounting and finance functions from San Jose to Houston, to include:

  - Retentions of key San Jose staff through an appropriate transition period
  - Recruiting, retention and training of new staff in Houston
  - Transitioning of duties from San Jose staff to Houston staff

- Diagnosis and develop strategies and tactics to enhance processes surrounding accounting close and consolidation

APServices LLC

| STAFFING |
| --- |

*The Staffing section of the Agreement is replaced in its entirety by the following:*

APS will provide Lisa Donahue to serve as the Company's Chief Financial Officer, reporting to the Company's Chief Executive Officer. Working collaboratively with the senior management team, the Board of Directors and other Company professionals, Ms. Donahue will assist the Company in evaluating and implementing strategic and tactical options through the restructuring process. She will be assisted by Michael Feder and a staff of professionals at various levels as provided on Exhibit A, all of whom have a wide range of skills and abilities related to this type of assignment. In addition, we have relationships with and periodically retain independent contractors with specialized skills and abilities to assist us.

Staffing levels and assignments shall be determined through consultation between the Company and APS. The staff may be assisted by or replaced by other professionals at various levels, as required. APS will keep the Company informed as to APS' staffing and will add additional staff to the assignment after consulting with the Company.

If APS finds it desirable to augment its professional staff with independent contractors (an "I/C") in this case, it shall do so consistent with applicable bankruptcy law.

| SCHEDULE 1, FEES AND EXPENSES |
| --- |

*Section 2, Contingent Success Fee, of Schedule 1 is replaced in its entirety with the following:*

APS shall be eligible to receive an Emergence Incentive Bonus of up to $6.0 million earned upon consummation of a confirmed plan of reorganization. The threshold at which such bonus shall be earned and the maximum amount of the Emergence Incentive Bonus shall be as specified in the schedule attached hereto; provided that it shall remain within the sole discretion of the CEO to reduce the Emergence Incentive Bonus below the maximum amount specified in the schedule.

Please see the attached schedule for a detailed analysis of the APS Incentive Bonuses.

APS reviews and revises its billing rates on January 1 of each year. However, rates were not revised for the Temporary Staff in place on the engagement at January 1, 2006. Therefore, APS will be returning to standard rates effective January 1, 2007

| EXHIBIT A |
| --- |

*The attached Exhibit A replaces in its entirety the Exhibit A attached to the Agreement.*

**AP**Services LLC

Calpine Corporation
November 3, 2006
Page 4

APS reviews and revises its billing rates on January 1 of each year. However, rates were not revised for the Temporary Staff in place on the engagement at January 1, 2006. Therefore, APS will be returning to standard rates effective January 1, 2007

| **EXHIBIT A** |
| --- |

*The attached Exhibit A replaces in its entirety the Exhibit A attached to the Agreement.*

\*   \*   \*

This letter is supplemental to, and not in lieu of, the Agreement, and, except as modified herein, the Agreement shall remain in full force and effect.

Sincerely yours,

AP SERVICES, LLC

Lisa J. Donahue
Managing Director

Acknowledged and Agreed to:

CALPINE CORPORATION

By: _____

Its: _____

Dated: _____

# AP Services, LLC
## Employment by Calpine Corporation

### Exhibit A - Temporary Employees

#### Individuals with Executive Officer Positions

| Name | Description | Hourly Rate | Commitment Full[1] or Part Time |
|------|-------------|-------------|---------------------------------|
| Lisa Donahue | Chief Financial Officer | $670 | Full |

#### Additional Temporary Employees

| Name | Description | Hourly Rate | Commitment Full[1] or Part[2] Time |
|------|-------------|-------------|------------------------------------|
| Amanda Knudsen | Claims Resolution | $220 | Full |
| Timothy Rosolio | Claims Resolution | $220 | Full |
| Christopher Anderson | Contract Resolution | $260 | Full |
| Aleksandra Bozic | Contract Resolution | $280 | Full |
| Adam Hollerbach | Treasury Analyst | $300 | Full |
| Robert Albergotti | Restructuring | $300 | Full |
| Andrew Baker | Intercompany claims | $300 | Full |
| Ryan Thurber-Dean | Contract Resolution | $300 | Part |
| Robb McWilliams | Claims Management | $300 | Full |
| Lauren Schulman | Intercompany Claims | $300 | Full |
| Terry Singla | Cash Management and Forecasting | $320 | Full |
| Meaghan Frawley | Intercompany Claims | $330 | Full |
| Drew Lockard | Claims Management | $330 | Full |
| Kevin Montague | Restructuring | $350 | Full |
| Kyle Braden | Cash Management and Forecasting | $380 | Full |
| Salvador Caputto | Accounts Payable | $380 | Full |
| Jeffrey Webb | Credit Analyst | $380 | Full |
| Heather Stack | Intercompany Claims | $380 | Full |
| Tamie Vitek | Accounting | $425 | Full |
| Jon Shell | Accounting | $430 | Full |
| Henry Colvin | Restructuring | $440 | Full |
| David Johnston | Restructuring | $460 | Full |
| Bryan Porter | Claims Management | $460 | Full |
| Thomas Osmun | Business Plan/Restructuring | $480 | Full |
| Deborah Rieger-Paganis | Contract Resolution | $480 | Full |
| Barry Folse | Claims Management | $480 | Full |
| Doug Jung | Intercompany Claims | $495 | Full |
| Michael Tinsely | Contract Resolution | $495 | Full |
| Jamie Lisac | Contract Resolution | $495 | Full |
| Robert Rakowski | Contract Resolution | $495 | Full |
| John Castellano | Cash Management, Forecasting and Restructuring | $510 | Full |
| Jared Yerian | Restructuring | $590 | Part |
| Michael Feder | Restructuring | $630 | Full |

The parties agree that Exhibit A can be amended by APS from time to time to add or delete staff, and the Monthly Staffing Reports shall be treated by the parties as such amendments.

[1] Full time is defined as substantially full time.

[2] Part time is defined as approximately 2-3 days per week, with some weeks more or less depending on the needs and issues facing the Company at that time.

**Calpine Corporation**
**AP Services, LLC Compensation Summary**
**($MM)**

**Additional Emergence Incentive Component:**

- At the discretion of the CEO, upon consummation of a confirmed plan of reorganization, earned on achievement of Market Adjusted Enterprise Value ("Market AEV") [1] and Plan Adjusted Enterprise Value ("Plan AEV") metrics [2]

- To be earned beginning at Initial Market AEV hurdle of $5.0 billion *provided that* Plan AEV is greater than $5.0 billion

- Increase by $133,334 for each $100 million increase in market AEV over $4.5 billion [3] provided that payments do not exceed $4.0 million and Total Incentive Bonus does not exceed $6.0 million.

| | Plan Adjusted Enterprise Value >= $5,000 | | | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | Market Adjusted Enterprise Value | | | | | | | | | | | |
| | $3,500 | $4,000 | $4,500 | $5,000 | $5,500 | $6,000 | $6,500 | $7,000 | $7,500 | $8,000 | $8,500 | $9,000 |
| Minimum Emergence Bonus | * | * | * | $2.00 | $2.00 | $2.00 | $2.00 | $2.00 | $2.00 | $2.00 | $2.00 | $2.00 |
| Valuation Component | - | - | - | 0.67 | 1.33 | 2.00 | 2.67 | 3.33 | 4.00 | 4.00 | 4.00 | 4.00 |
| *% of Valuation Increase* | | | | 0.13% | 0.13% | 0.13% | 0.13% | 0.13% | 0.13% | 0.00% | 0.00% | 0.00% |
| **Total Incentive Bonus** | **$0.00** | **$0.00** | **$0.00** | **$2.67** | **$3.33** | **$4.00** | **$4.67** | **$5.33** | **$6.00** | **$6.00** | **$6.00** | **$6.00** |

---

(1) Market AEV shall be equal to: The market value of debt that is primarily the obligation of reorganized Calpine Corporation ("Calpine") (i.e., debt other than all project-level debt and guarantees thereon including, without limitation, notes payable, capital leases, project loans, project-level preferred interests, and sale lease back obligations (collectively," Project-Level Debt"); plus the market value of preferred equity at reorganized Calpine; minus cash on the balance sheet of reorganized Calpine upon the effective date of a Plan of Reorganization (other than any restricted cash held by direct or indirect subsidiaries posted in favor of trading counterparties, cash posted to collateralize letters of credit and pre-petition asset sales proceeds in escrow); plus the market value of reorganized Calpine's common stock (and any other equity-link securities including warrants) excluding non-vested equity (including options) issued as part of the management incentive compensation pursuant to a Plan of Reorganization. All market prices shall be calculated as a 10-day average beginning on the 60th trading day following the consummation date and for the following nine (9) trading days. Prices for debt and preferred equity shall be calculated as an average price based on AdvantageData (ADI quote), Factset, Markit Loans (LoanX) and Bloomberg. The average market price for any given debt, preferred or convertible security on any given day shall be equal to the average of the trade prices for all trades recorded on that day greater than or equal to $1 million of said security. Any corporate-level debt, equity or equity-linked security ("Corporate-Level Securities" for which there is no publicly quoted price shall be valued at face value. Volume weighted-average prices for common equity shall be determined by reference to Bloomberg's AQR function. Market AEV shall be further adjusted for the exclusion of any debt or other securities issues at reorganized Calpine used to refinance Project-Level Debt.

(2) Plan AEV shall be equal to: Total Enterprise Value, as set forth in a confirmed Plan of Reorganization and/or its accompanying Disclosure Statement, plus cash (excluding cash escrowed from pre-petition asset sales) which will be distributed on or around the effective date in accordance with said Plan of Reorganization (excluding any cash raised through any and all post-petition and exit financing transactions); minus the book value of all Project-Level Debt. Plan AEV shall be further adjusted upward, to include 9a) cash received from asset sales consummated post-petition used to repay any Corporate-Level Securities prior to the consummation of the Plan of Reorganization; and (b) corporate-level cash used to repay Corporate-Level Securities during the pendency of the chapter 11 cases (excluding any cash raised through all pre- or post-petition financing and cash held in escrow from pre-petition asset sales).

3) Equivalent to 13.3 bps for each incremental $100 million in AEV achieved.

---

* APS will have the same threshold as for the senior executives in the Emergence Incentive Plan.

 **AP**Services LLC

Detroit   New York   Chicago   Dallas

February 22, 2007

Mr. Greg Doody
Executive Vice President, General Counsel
Calpine Corporation
717 Texas Avenue, Suite 1000
Houston, TX 77002

Re: Agreement for Restructuring Services – Second Amendment

This letter is the second amendment of the Agreement dated December 17, 2005 (the "Agreement"), between AP Services LLC, a Michigan limited liability company ("APS") and Calpine Corporation ("Calpine" or the "Company"). Unless otherwise modified herein, the terms and conditions of the Agreement remain in full force and effect.

| SCHEDULE 1, FEES AND EXPENSES |
|---|

*Section 1, Fees, of Schedule 1 is replaced in its entirety with the following:*

APS staff will be billed to the Company on a monthly basis and will be based on the hours charged at APS' hourly rates, which are:

| | |
|---|---|
| Managing Directors | $600-750 |
| Directors | $440-575 |
| Vice Presidents | $325-450 |
| Associates | $260-315 |
| Analysts | $210-230 |
| Paraprofessionals | $100-175 |

APS reviews and revises its billing rates on January 1 of each year. Effective January 1, 2007, APS' hourly rates are increased to those reflected above.

| EXHIBIT A |
|---|

*The attached Exhibit A replaces in its entirety the Exhibit A attached to the Agreement.*

# APServices LLC

This letter is supplemental to, and not in lieu of, the Agreement, and, except as modified herein, the Agreement and the First Amendment thereto shall remain in full force and effect.

Sincerely yours,

AP SERVICES, LLC

Lisa J. Donahue
Managing Director

Acknowledged and Agreed to:

CALPINE CORPORATION

By: _____

Its: _____

Dated: _____

## AP Services, LLC
### Employment by Calpine Corporation

### Exhibit A - Temporary Employees
### Individuals with Executive Officer Positions

| Name | Description | Hourly Rate | Commitment Full[1] or Part[2] Time |
|------|-------------|-------------|-------------------------------------|
| Lisa Donahue | Chief Financial Officer | $725 | Full |
| Steve Hodkinson | Interim Controller | $575 | Full |

### Additional Temporary Employees

| Name | Description | Hourly Rate | Commitment Full[1] or Part[2] Time |
|------|-------------|-------------|-------------------------------------|
| Amanda Knudsen | Claims Resolution | $230 | Full |
| Timothy Rosolio | Claims Resolution | $230 | Full |
| Christopher Anderson | Contract Resolution | $315 | Full |
| Gabe Greenbaum | Cash Management and Forecasting | $315 | Full |
| Chad Tollison | Accounting | $315 | Full |
| Robert Albergotti | Restructuring | $315 | Full |
| Drew Lockard | Claims Management | $350 | Full |
| Jeffrey Webb | Credit Analyst | $400 | Full |
| Michael Wagoner | Accounting | $420 | Full |
| Terry Singla | Cash Management and Forecasting | $425 | Full |
| Robb McWilliams | Claims Management | $440 | Full |
| Tamie Vitek | Accounting | $450 | Full |
| Jon Shell | Accounting | $450 | Full |
| Henry Colvin | Restructuring | $495 | Full |
| Greg Orler | Accounting | $495 | Full |
| Bryan Porter | Claims Management | $520 | Full |
| Deborah Rieger-Paganis | Accounting | $525 | Full |
| David Johnston | Restructuring | $525 | Full |
| Thomas Osmun | Business Plan/Restructuring | $525 | Full |
| Jamie Lisac | Contract Resolution | $525 | Full |
| Barry Folse | Claims Management | $600 | Full |
| John Castellano | Cash Management and Restructuring | $600 | Full |
| Michael Feder | Restructuring | $675 | Full |
| Kathleen Todd | Intercompany Claims | $210 | Part Time |
| Deanna Berlin | Intercompany Claims | $210 | Part Time |
| Andrew Baker | Intercompany claims | $315 | Part Time |
| Ryan Thurber-Dean | Contract Resolution | $315 | Part Time |
| Lauren Schulman | Intercompany Claims | $315 | Part Time |
| Samuel Jacobs | Intercompany Claims | $315 | Part Time |
| Meaghan Frawley | Intercompany Claims | $400 | Part Time |
| Kevin Montague | Restructuring | $400 | Part Time |
| Salvador Caputto | Accounts Payable | $400 | Part Time |
| Heather Stack | Intercompany Claims | $400 | Part Time |
| Kyle Braden | Cash Management and Forecasting | $465 | Part Time |
| Robert Rakowski | Contract Resolution | $525 | Part Time |
| Doug Jung | Intercompany Claims | $600 | Part Time |
| Jared Yerian | Restructuring | $625 | Part Time |
| Jay Marshall | Accounting | $725 | Part Time |
| Harvey Kelly | Intercompany Claims | $725 | Part Time |

The parties agree that Exhibit A can be amended by APS from time to time to add or delete staff, and the Monthly Staffing Reports shall be treated by the parties as such amendments.

[1] Full time is defined as substantially full time.

[2] Part time is defined as approximately 2-3 days per week, with some weeks more or less depending on the needs and issues facing the Company at that time.

# AP Services LLC

August 22, 2007

Mr. Greg Doody
Executive Vice President, General Counsel
Calpine Corporation
717 Texas Avenue, Suite 1000
Houston, TX 77002

Re: Agreement for Restructuring Services – Third Amendment

This letter is the third amendment ("Third Amendment") of the agreement dated December 17, 2005 (the "Agreement"), between AP Services LLC, a Michigan limited liability company ("APS") and Calpine Corporation ("Calpine" or the "Company"), as amended on November 3, 2006 and April 22, 2007. Unless otherwise modified herein, the terms and conditions of the Agreement and the First and Second Amendments remain in full force and effect.

| EXHIBIT A |
|---|

*The attached Exhibit A replaces in its entirety the Exhibit A attached to the Agreement.*

| EXHIBIT B |
|---|

*The attached Exhibit B is for informational purposes only. This exhibit identifies the APS staff no longer providing services to Calpine that were included as part of the Second Amendment.*

This letter is supplemental to, and not in lieu of, the Agreement, and, except as modified herein, the Agreement and the First and Second Amendments thereto shall remain in full force and effect.

Sincerely yours,

AP SERVICES, LLC

Lisa J. Donahue
Managing Director

Acknowledged and Agreed to:

CALPINE CORPORATION

By: _____

Its: _____

Dated: _____

# AP Services, LLC
## Employment by Calpine Corporation

### Exhibit A - Temporary Employees
### Individuals with Executive Officer Positions

| Name | Description | Hourly Rate | Commitment Full[1] or Part[2] Time |
|------|-------------|-------------|-----------------------------------|
| Lisa Donahue | Chief Financial Officer | $725 | Full |
| Steve Hodkinson | Interim Controller | $575 | Full |

### Current Temporary Employees

| Name | Description | Hourly Rate | Commitment Full[1] or Part[2] Time |
|------|-------------|-------------|-----------------------------------|
| Amanda Knudsen | Claims Resolution | $230 | Full |
| Timothy Rosolio | Claims Resolution | $230 | Full |
| Gabe Greenbaum | Cash Management and Forecasting | $315 | Full |
| Chad Tollison | Claims Resolution | $315 | Full |
| Robert Albergotti | Restructuring | $315 | Full |
| Drew Lockard | Claims Management | $350 | Full |
| Jeffrey Webb | Cash Management and Forecasting | $400 | Full |
| Terry Singla | Cash Management and Forecasting | $425 | Full |
| Robb McWilliams | Claims Management | $440 | Full |
| Deborah Rieger-Paganis | Accounting | $525 | Full |
| Greg Orler | Accounting | $495 | Full |
| Barry Folse | Claims Management | $600 | Full |
| John Castellano | Cash Management, Forecasting and Restructuring | $600 | Full |
| Kurt Kauth | Accounting | $420 | Full |
| Kathleen Todd | Claims Litigation | $210 | Part Time |
| Deanna Berlin | Claims Litigation | $210 | Part Time |
| Ryan Thurber-Dean | Claims Litigation | $315 | Part Time |
| Samuel Jacobs | Claims Litigation | $315 | Part Time |
| Dave Johnston | Restructuring | $525 | Part Time |
| Kevin Montague | Claims Litigation | $400 | Part Time |
| Salvador Caputto | Accounts Payable | $400 | Part Time |
| Bryan Porter | Claims Management | $520 | Part Time |
| Henry Colvin | Restructuring | $495 | Part Time |
| Nick Hienz | Claims Litigation | $315 | Part Time |
| Jared Yerian | Claims Litigation | $625 | Part Time |

The parties agree that Exhibit A can be amended by APS from time to time to add or delete staff, and the Monthly Staffing Reports shall be treated by the parties as such amendments.

[1]  Full time is defined as substantially full time.
[2]  Part time is defined as approximately 2-3 days per week, with some weeks more or less depending on the needs and issues facing the Company at that time.

**AP Services, LLC**
**Exhibit B – APS staff no longer providing services to Calpine**

| Name | Description | Hourly Rate |
|------|-------------|-------------|
| Christopher Anderson | Contract Resolution | $315 |
| Michael Wagoner | Accounting | $420 |
| Tamie Vitek | Accounting | $450 |
| Jon Shell | Accounting | $450 |
| Thomas Osmun | Business Plan/Restructuring | $525 |
| Jamie Lisac | Contract Resolution | $525 |
| Michael Feder | Restructuring | $675 |
| Andrew Baker | Intercompany claims | $315 |
| Lauren Schulman | Intercompany Claims | $315 |
| Meaghan Frawley | Intercompany Claims | $400 |
| Heather Stack | Intercompany Claims | $400 |
| Kyle Braden | Cash Management and Forecasting | $465 |
| Robert Rakowski | Contract Resolution | $525 |
| Doug Jung | Intercompany Claims | $600 |
| Jay Marshall | Accounting | $725 |
| Harvey Kelly | Intercompany Claims | $725 |

 **AP**Services LLC

October 8, 2007

Mr. Greg Doody
Executive Vice President, General Counsel
Calpine Corporation
717 Texas Avenue, Suite 1000
Houston, TX 77002

Re:  Agreement for Restructuring Services – Fourth Amendment

This letter is the fourth amendment ("Fourth Amendment") of the agreement dated December 17, 2005 (the "Agreement"), between AP Services LLC, a Michigan limited liability company ("APS") and Calpine Corporation ("Calpine" or the "Company"), as amended on November 3, 2006, April 22, 2007 and August 22, 2007.  Unless otherwise modified herein, the terms and conditions of the Agreement and the First, Second and Third Amendments remain in full force and effect.

| TASKS |
|---|

*The following Tasks are incremental to those in the Agreement:*

- Assist the Company and its outside counsel in identifying and preserving potentially relevant electronically stored information.
- Develop a plan for data collection and collect electronically stored information.
- Assist the Company's outside counsel with project management of processing electronic information.

| EXHIBIT A |
|---|

*The attached Exhibit A replaces in its entirety the Exhibit A attached to the Agreement.*

\* \* \*

This letter is supplemental to, and not in lieu of, the Agreement, and, except as modified herein, the Agreement and the First, Second and Third Amendments thereto shall remain in full force and effect.

Sincerely yours,

AP SERVICES, LLC

Lisa J. Donahue
Managing Director

Acknowledged and Agreed to:

CALPINE CORPORATION

By: _____

Its: _____ *KVP, General Counsel; Secretary* _____

Dated: _____ *8 October 2007* _____

**AP Services, LLC**
**Employment by Calpine Corporation**

**Exhibit A - Temporary Employees**
**Individuals with Executive Officer Positions**

| Name | Description | Hourly Rate | Commitment Full[1] or Part[2] Time |
|------|-------------|-------------|------------------------------------|
| Lisa Donahue | Chief Financial Officer | $725 | Full Time |
| Steve Hodkinson | Interim Controller | $575 | Full Time |

**Additional Temporary Employees**

| Name | Description | Hourly Rate | Commitment Full[1] or Part[2] Time |
|------|-------------|-------------|------------------------------------|
| Amanda Knudsen | Claims Resolution | $230 | Full Time |
| Timothy Rosolio | Claims Resolution | $230 | Full Time |
| Gabe Greenbaum | Cash Management and Forecasting | $315 | Full Time |
| Chad Tollison | Claims Resolution | $315 | Full Time |
| Robert Albergotti | Restructuring | $315 | Full Time |
| Drew Lockard | Claims Management | $350 | Full Time |
| Jeffrey Webb | Cash Management and Forecasting | $400 | Full Time |
| Terry Singla | Cash Management and Forecasting | $425 | Full Time |
| Robb McWilliams | Claims Management | $440 | Full Time |
| Deborah Rieger-Paganis | Accounting | $525 | Full Time |
| Greg Orler | Accounting | $495 | Full Time |
| Barry Folse | Claims Management | $600 | Full Time |
| John Castellano | Cash Management, Forecasting and Restructuring | $600 | Full Time |
| Kurt Kauth | Accounting | $420 | Full Time |
| Kathleen Todd | Claims Litigation | $210 | Part Time |
| Deanna Berlin | Claims Litigation | $210 | Part Time |
| Ryan Thurber-Dean | Claims Litigation | $315 | Part Time |
| Samuel Jacobs | Claims Litigation | $315 | Part Time |
| Dave Johnston | Restructuring | $525 | Part Time |
| Kevin Montague | Claims Litigation | $400 | Part Time |
| Salvador Caputto | Accounts Payable | $400 | Part Time |
| Bryan Porter | Claims Management | $520 | Part Time |
| Henry Colvin | Restructuring | $495 | Part Time |
| Nick Hienz | Claims Litigation | $315 | Part Time |
| Jared Yerian | Claims Litigation | $625 | Part Time |
| Steve Ambort | Electronic Discovery | $625 | Full Time |
| Charles Cipione | Electronic Discovery | $600 | Full Time |
| Dan Goldwin | Electronic Discovery | $495 | Full Time |
| Walt Manning | Electronic Discovery | $495 | Full Time |
| Sean Renshaw | Electronic Discovery | $495 | Full Time |
| Brett Roberson | Electronic Discovery | $400 | Full Time |
| Leewai Wacek | Electronic Discovery | $315 | Full Time |
| John Niesen | Electronic Discovery | $150 | Part Time |
| Rob LeVally | Electronic Discovery | $150 | Part Time |
| Nick Marurkar | Electronic Discovery | $150 | Part Time |
| Steve Fratus | Electronic Discovery | $260 | Part Time |
| Dean Lindo | Accounting | $450 | Full Time |

The parties agree that Exhibit A can be amended by APS from time to time to add or delete staff, and the Monthly Staffing Reports shall be treated by the parties as such amendments.

[1] Full time is defined as substantially full time.
[2] Part time is defined as approximately 2-3 days per week, with some weeks more or less depending on the needs and issues facing the Company at that time.

November 14, 2007


Mr. Greg Doody
Executive Vice President, General Counsel
Calpine Corporation
717 Texas Avenue, Suite 1000
Houston, TX 77002

Re: Agreement for Restructuring Services – Fifth Amendment

This letter is the fifth amendment ("Fifth Amendment") of the agreement dated December 17, 2005 (the "Agreement"), between AP Services LLC, a Michigan limited liability company ("APS") and Calpine Corporation ("Calpine" or the "Company"), as amended on November 3, 2006, April 22, 2007 and August 22, 2007 and October 8, 2007.

| EXHIBIT A |
|---|

*The attached Exhibit A replaces in its entirety the Exhibit A attached to the Agreement.*

\*   \*   \*

This letter is supplemental to, and not in lieu of, the Agreement, and, except as modified herein, the Agreement and the First, Second, Third and Fourth Amendments thereto shall remain in full force and effect.

Sincerely yours,

AP SERVICES, LLC

Lisa J. Donahue
Managing Director

Acknowledged and Agreed to:

CALPINE CORPORATION

By: _____

Its: _____

Dated: _____

**AP Services, LLC**
**Employment by Calpine Corporation**

**Exhibit A - Temporary Employees**
**Individuals with Executive Officer Positions**

| Name | Description | Hourly Rate | Commitment Full[1] or Part[2] Time |
|------|-------------|-------------|-----------------------------------|
| Lisa Donahue | Chief Financial Officer | $725 | Full Time |
| Steve Hodkinson | Interim Controller | $575 | Full Time |

**Additional Temporary Employees**

| Name | Description | Hourly Rate | Commitment Full[1] or Part[2] Time |
|------|-------------|-------------|-----------------------------------|
| Amanda Knudsen | Claims Resolution | $230 | Full Time |
| Timothy Rosolio | Claims Resolution | $230 | Full Time |
| Gabe Greenbaum | Cash Management and Forecasting | $315 | Full Time |
| Chad Tollison | Claims Resolution | $315 | Full Time |
| Robert Albergotti | Restructuring | $315 | Full Time |
| Drew Lockard | Claims Management | $350 | Full Time |
| Jeffrey Webb | Cash Management and Forecasting | $400 | Full Time |
| Terry Singla | Cash Management and Forecasting | $425 | Full Time |
| Robb McWilliams | Claims Management | $440 | Full Time |
| Deborah Rieger-Paganis | Accounting | $525 | Full Time |
| Greg Orler | Accounting | $495 | Full Time |
| Barry Folse | Claims Management | $600 | Full Time |
| John Castellano | Cash Management, Forecasting and Restructuring | $600 | Full Time |
| Kurt Kauth | Accounting | $420 | Full Time |
| Kathleen Todd | Claims Litigation | $210 | Part Time |
| Deanna Berlin | Claims Litigation | $210 | Part Time |
| Ryan Thurber-Dean | Claims Litigation | $315 | Part Time |
| Samuel Jacobs | Claims Litigation | $315 | Part Time |
| Dave Johnston | Restructuring | $525 | Part Time |
| Kevin Montague | Claims Litigation | $400 | Part Time |
| Salvador Caputto | Accounts Payable | $400 | Part Time |
| Bryan Porter | Claims Management | $520 | Part Time |
| Henry Colvin | Restructuring | $495 | Part Time |
| Nick Hienz | Claims Litigation | $315 | Part Time |
| Jared Yerian | Claims Litigation | $625 | Part Time |
| Steve Ambort | Electronic Discovery | $625 | Full Time |
| Charles Cipione | Electronic Discovery | $600 | Full Time |
| Dan Goldwin | Electronic Discovery | $495 | Full Time |
| Walt Manning | Electronic Discovery | $495 | Full Time |
| Sean Renshaw | Electronic Discovery | $495 | Full Time |
| Brett Roberson | Electronic Discovery | $400 | Full Time |
| Leewai Wacek | Electronic Discovery | $315 | Full Time |
| John Niesen | Electronic Discovery | $150 | Part Time |
| Rob LeVally | Electronic Discovery | $150 | Part Time |
| Nick Marurkar | Electronic Discovery | $150 | Part Time |
| Steve Fratus | Electronic Discovery | $260 | Part Time |
| Dean Lindo | Accounting | $450 | Full Time |
| Jessica Cowart | Electronic Discovery | $110 | Part Time |
| Brandon Pearson | Electronic Discovery | $150 | Part Time |
| Allan Hsu | Electronic Discovery | $350 | Full Time |
| David Sikorski | Electronic Discovery | $400 | Full Time |

The parties agree that Exhibit A can be amended by APS from time to time to add or delete staff, and the Monthly Staffing Reports shall be treated by the parties as such amendments.

[1] Full time is defined as substantially full time.
[2] Part time is defined as approximately 2-3 days per week, with some weeks more or less depending on the needs and issues facing the Company at that time.

**Exhibit C**

**AP Services, LLC**
**Monthly Fee Statement**
**For The Period December 21, 2005 through January 31, 2008**



February 27, 2006

Nancy Murray
Calpine Corporation
50 West San Fernando Street
San Jose, CA 95113

Re: Calpine Corporation, et. al.,
    Case No. 05-60200 (BRL) Jointly Administered
    Monthly Fee Statement for period December 21, 2005 through January 31, 2006

Dear Ms. Murray:

Enclosed please find the fee statement (the "Fee Statement") of AP Services, LLC ("APS"), for services rendered to the debtors in the above-referenced bankruptcy proceedings (collectively, the "Debtors") and expenses incurred from December 21, 2005 through January 31, 2006 (the "Fee Statement Period"). We have also enclosed a detailed listing of the services provided by APS to the Debtors and the related disbursements.

Pursuant to the Administrative Order Establishing Procedures for Interim Compensation and Reimbursement of Expenses of Professionals as entered by the Bankruptcy Court on January 4, 2006 (the "Order"), APS is entitled to request payment of 80% of its fees and 100% of its expenses at this time, with the remaining 20% of fees subject to the approval of the Bankruptcy Court in a quarterly fee application.

Specifically, at this time APS is requesting $1,321,879.60 in fees (i.e. 80% of $1,652,349.50) and $179,744.79 in expenses, for a total of $1,501,624.39 in fees and expenses for the Fee Statement Period.

# APServices LLC

If none of the interested parties identified in the Order object to the Fee Statement by April 3, 2006 the Debtors are authorized to pay the total amount requested herein by APS, which is $1,501,624.39, subject to the conditions specified herein.

Lisa J. Donahue, Managing Director
AP Services, LLC



Calpine Corporation
50 West San Fernando Street
San Jose, CA 95113

Att: Nancy Murray

## Summary of Professional Fees
### For the Period December 21, 2005 through January 31, 2006

| Current Charges: | | Hours | Rate | Amount |
|---|---|---|---|---|
| Aleksandra Bozic | Vice President | 250.20 | 280.00 | 70,056.00 |
| Tarek Ghalayini | Associate | 119.10 | 300.00 | 35,730.00 |
| Robb C. McWilliams | Vice President | 303.30 | 300.00 | 90,990.00 |
| Terry Singla | Vice President | 265.90 | 320.00 | 85,088.00 |
| Drew Lockard | Vice President | 242.60 | 330.00 | 80,058.00 |
| Meaghan Frawley | Vice President | 192.10 | 330.00 | 63,393.00 |
| Keith Verville | Vice President | 195.10 | 380.00 | 74,138.00 |
| Albert Leung | Vice President | 187.00 | 380.00 | 71,060.00 |
| Kyle A. Braden | Vice President | 134.10 | 380.00 | 50,958.00 |
| Bryan K. Porter | Director | 264.70 | 460.00 | 121,762.00 |
| David C. Johnston | Director | 319.30 | 460.00 | 146,878.00 |
| Deborah Rieger-Paganis | Director | 262.20 | 480.00 | 125,856.00 |
| Thomas B Osmun | Director | 267.10 | 480.00 | 128,208.00 |
| Barry Folse | Director | 145.90 | 480.00 | 70,032.00 |
| Doug Jung | Director | 179.40 | 495.00 | 88,803.00 |
| John R. Castellano | Director | 290.30 | 510.00 | 148,053.00 |
| Meade Monger | Managing Dir. | 17.30 | 630.00 | 10,899.00 |
| Michael A. Feder | Managing Dir. | 299.60 | 630.00 | 188,748.00 |
| Lisa J. Donahue | Managing Dir. | 219.20 | 670.00 | 146,864.00 |
| Albert A Koch | Managing Dir. | 27.10 | 690.00 | 18,699.00 |
| Harvey Kelly | Managing Dir. | 58.30 | 695.00 | 40,518.50 |
| **Total Hours & Fees:** | | **4,239.80** | | **1,856,791.50** |
| | | | | |
| Less 50% Calpine Corp - Travel | | | | (204,442.00) |
| | | | | |
| Expenses | | | | 179,744.79 |
| | | | | |
| Total Amount Due | | | USD | **1,832,094.29** |



Calpine Corporation
50 West San Fernando Street
San Jose, CA 95113

Att: Nancy Murray

**Summary of Expenses**
**For the Period December 21, 2005 through January 31, 2006**

| Expenses | Amount |
|---|---:|
| Airfare | 84,371.87 |
| Cab Fare/Ground Transportation | 17,653.41 |
| Lodging | 56,750.39 |
| Meals & Tips | 15,419.62 |
| Mileage | 53.40 |
| Other | 64.40 |
| Overnight Mail Charges | 206.30 |
| Parking & Tolls | 1,721.47 |
| Rental Car | 3,111.96 |
| Supplies | 393.23 |
| **Total Disbursements** | **179,744.79** |



March 29, 2006

Nancy Murray
Calpine Corporation
50 West San Fernando Street
San Jose, CA 95113

Re: Calpine Corporation, et. al.,
    Case No. 05-60200 (BRL) Jointly Administered
    Monthly Fee Statement for period February 1, 2006 through February 28, 2006

Dear Ms. Murray:

Enclosed please find the fee statement (the "Fee Statement") of AP Services, LLC
("APS"), for services rendered to the debtors in the above-referenced bankruptcy
proceedings (collectively, the "Debtors") and expenses incurred from February 1, 2006
through February 28, 2006 (the "Fee Statement Period"). We have also enclosed a
detailed listing of the services provided by APS to the Debtors and the related
disbursements.

Pursuant to the Administrative Order Establishing Procedures for Interim Compensation
and Reimbursement of Expenses of Professionals as entered by the Bankruptcy Court on
January 4, 2006 (the "Order"), APS is entitled to request payment of 80% of its fees and
100% of its expenses at this time, with the remaining 20% of fees subject to the approval
of the Bankruptcy Court in a quarterly fee application.

Specifically, at this time APS is requesting $1,232,433.60 in fees (i.e. 80% of
$1,540,542.00) and $163,989.38 in expenses, for a total of $1,396,422.98 in fees and
expenses for the Fee Statement Period.

# APServices LLC

If none of the interested parties identified in the Order object to the Fee Statement fifthteen days from the date of this letter the Debtors are authorized to pay the total amount requested herein by APS, which is $1,396,422.98 subject to the conditions specified herein.

Lisa J. Donahue, Managing Director
AP Services, LLC



Calpine Corporation
50 West San Fernando Street
San Jose, CA 95113

Att: Nancy Murray

## Summary of Professional Fees
### For the Period February 1, 2006 through February 28, 2006

| Current Charges: | | Hours | Rate | Amount |
|---|---|---|---|---|
| Christopher Anderson | Associate | 191.90 | 260.00 | 49,894.00 |
| Aleksandra Bozic | Vice President | 209.40 | 280.00 | 58,632.00 |
| Tarek Ghalayini | Associate | 161.00 | 300.00 | 48,300.00 |
| Robb C. McWilliams | Vice President | 231.80 | 300.00 | 69,540.00 |
| Terry Singla | Vice President | 232.80 | 320.00 | 74,496.00 |
| Drew Lockard | Vice President | 233.70 | 330.00 | 77,121.00 |
| Meaghan Frawley | Vice President | 194.30 | 330.00 | 64,119.00 |
| Keith Verville | Vice President | 166.70 | 380.00 | 63,346.00 |
| Salvador N. Caputto | Vice President | 219.45 | 380.00 | 83,391.00 |
| Albert Leung | Vice President | 192.20 | 380.00 | 73,036.00 |
| Kyle A. Braden | Vice President | 223.60 | 380.00 | 84,968.00 |
| Henry Colvin | Director | 59.80 | 440.00 | 26,312.00 |
| David C. Johnston | Director | 212.20 | 460.00 | 97,612.00 |
| Bryan K. Porter | Director | 204.00 | 460.00 | 93,840.00 |
| Barry Folse | Director | 123.90 | 480.00 | 59,472.00 |
| Thomas B Osmun | Director | 228.60 | 480.00 | 109,728.00 |
| Deborah Rieger-Paganis | Director | 212.50 | 480.00 | 102,000.00 |
| Doug Jung | Director | 180.80 | 495.00 | 89,496.00 |
| John R. Castellano | Director | 236.80 | 510.00 | 120,768.00 |
| Michael A. Feder | Managing Dir. | 230.80 | 630.00 | 145,404.00 |
| Meade Monger | Managing Dir. | 0.50 | 630.00 | 315.00 |
| Lisa J. Donahue | Managing Dir. | 152.60 | 670.00 | 102,242.00 |
| Albert A Koch | Managing Dir. | 30.20 | 690.00 | 20,838.00 |
| Harvey Kelly | Managing Dir. | 46.80 | 695.00 | 32,526.00 |
| **Total Hours & Fees:** | | **4,176.35** | | **1,747,396.00** |
| Less 50% Calpine Corp - Travel | | | | (206,854.00) |
| Expenses | | | | 163,989.38 |
| Total Amount Due | | | | USD   1,704,531.38 |



Calpine Corporation
50 West San Fernando Street
San Jose, CA 95113

Att: Nancy Murray

**Summary of Expenses**
**For the Period February 1, 2006 through February 28, 2006**

| Expenses | Amount |
|---|---:|
| Airfare | 71,412.31 |
| Cab Fare/Ground Transportation | 15,953.79 |
| Lodging | 57,159.52 |
| Meals & Tips | 12,959.43 |
| Mileage | 22.25 |
| Other | 587.31 |
| Overnight Mail Charges | 54.15 |
| Parking & Tolls | 1,745.98 |
| Long Distance Calls | 13.35 |
| Rental Car | 4,081.29 |
| **Total Disbursements** | **163,989.38** |



April 26, 2006

Nancy Murray
Calpine Corporation
50 West San Fernando Street
San Jose, CA 95113

Re: Calpine Corporation, et. al.,
    Case No. 05-60200 (BRL) Jointly Administered
    Monthly Fee Statement for period March 1, 2006 through March 31, 2006

Dear Ms. Murray:

Enclosed please find the fee statement (the "Fee Statement") of AP Services, LLC ("APS"), for services rendered to the debtors in the above-referenced bankruptcy proceedings (collectively, the "Debtors") and expenses incurred from March 1, 2006 through March 31, 2006 (the "Fee Statement Period").  We have also enclosed a detailed listing of the services provided by APS to the Debtors and the related disbursements.

Pursuant to the Administrative Order Establishing Procedures for Interim Compensation and Reimbursement of Expenses of Professionals as entered by the Bankruptcy Court on January 4, 2006 (the "Order"), APS is entitled to request payment of  80% of its fees and 100% of its expenses at this time, with the remaining 20% of fees subject to the approval of the Bankruptcy Court in a quarterly fee application.

Specifically, at this time APS is requesting $1,397,170.60 in fees (i.e. 80% of $1,746,463.25) less a retainer amount of $106, 944.16 for a total of $1,290,226.44.  In addition, APS is requesting $179,251.56 in expenses, for a total of $1,469,478.00 in fees and expenses for the Fee Statement Period.

# AP Services LLC

Nancy Murray
April 26, 2006
Page 2

If none of the interested parties identified in the Order object to the Fee Statement fifthteen days from the date of this letter the Debtors are authorized to pay the total amount requested herein by APS, which is $1,469,478.00 subject to the conditions specified herein.

Lisa J. Donahue, Managing Director
AP Services, LLC



Calpine Corporation
50 West San Fernando Street
San Jose, CA 95113

Att: Nancy Murray

**Summary of Professional Fees**
**For the Period March 1, 2006 through March 31, 2006**

| Current Charges: | | Hours | Rate | Amount |
|---|---|---|---|---|
| Christopher Anderson | Associate | 253.80 | 260.00 | 65,988.00 |
| Aleksandra Bozic | Vice President | 197.70 | 280.00 | 55,356.00 |
| Tarek Ghalayini | Associate | 248.40 | 300.00 | 74,520.00 |
| Robb C. McWilliams | Vice President | 315.90 | 300.00 | 94,770.00 |
| Terry Singla | Vice President | 258.60 | 320.00 | 82,752.00 |
| Drew Lockard | Vice President | 291.70 | 330.00 | 96,261.00 |
| Meaghan Frawley | Vice President | 222.80 | 330.00 | 73,524.00 |
| Keith Verville | Vice President | 54.20 | 380.00 | 20,596.00 |
| Salvador N. Caputto | Vice President | 280.90 | 380.00 | 106,742.00 |
| Kyle A. Braden | Vice President | 325.40 | 380.00 | 123,652.00 |
| Florence Gwite | Vice President | 235.40 | 380.00 | 89,452.00 |
| Albert Leung | Vice President | 158.70 | 380.00 | 60,306.00 |
| Henry Colvin | Director | 110.00 | 440.00 | 48,400.00 |
| Larry E. Ramaekers | Director | 28.50 | 440.00 | 12,540.00 |
| David C. Johnston | Director | 177.20 | 460.00 | 81,512.00 |
| Bryan K. Porter | Director | 214.20 | 460.00 | 98,532.00 |
| Thomas B Osmun | Director | 201.30 | 480.00 | 96,624.00 |
| Deborah Rieger-Paganis | Director | 243.80 | 480.00 | 117,024.00 |
| Barry Folse | Director | 228.80 | 480.00 | 109,824.00 |
| Doug Jung | Director | 185.60 | 495.00 | 91,872.00 |
| John R. Castellano | Director | 282.80 | 510.00 | 144,228.00 |
| Michael A. Feder | Managing Dir. | 200.30 | 630.00 | 126,189.00 |
| Lisa J. Donahue | Managing Dir. | 86.40 | 670.00 | 57,888.00 |
| Harvey Kelly | Managing Dir. | 19.20 | 695.00 | 13,344.00 |
| Total Hours & Fees: | | 4,821.60 | | 1,941,896.00 |
| Less 50% Calpine Corp - Travel | | | | (195,432.75) |
| | | | | 1,746,463.25 |
| Less 20% Holdback | | | | (349,292.65) |
| | | | | 1,397,170.60 |
| Expenses | | | | 179,251.56 |



| Current Charges: | Hours | Rate | Amount |
|---|---|---|---|
| Total Advanced Deposit Applied | | | (106,944.16) |
| **Total Amount Due** | | **USD** | **1,469,478.00** |



Calpine Corporation
50 West San Fernando Street
San Jose, CA 95113

Att: Nancy Murray

**Summary of Expenses**
**For the Period March 1, 2006 through March 31, 2006**

| Expenses | Amount |
|---|---:|
| Airfare | 72,277.56 |
| Cab Fare/Ground Transportation | 17,770.01 |
| Computer Supplies / Support | 172.80 |
| Lodging | 65,386.44 |
| Meals & Tips | 14,716.48 |
| Mileage | 93.00 |
| Other | 103.64 |
| Overnight Mail Charges | 709.17 |
| Parking & Tolls | 988.39 |
| Rental Car | 7,034.07 |
| **Total Disbursements** | **179,251.56** |



May 25, 2006

Nancy Murray
Calpine Corporation
50 West San Fernando Street
San Jose, CA 95113

Re: Calpine Corporation, et. al.,
    Case No. 05-60200 (BRL) Jointly Administered
    Monthly Fee Statement for period April 1, 2006 through April 30, 2006

Dear Ms. Murray:

Enclosed please find the fee statement (the "Fee Statement") of AP Services, LLC ("APS"), for services rendered to the debtors in the above-referenced bankruptcy proceedings (collectively, the "Debtors") and expenses incurred from April 1, 2006 through April 30, 2006 (the "Fee Statement Period"). We have also enclosed a detailed listing of the services provided by APS to the Debtors and the related disbursements.

Pursuant to the Administrative Order Establishing Procedures for Interim Compensation and Reimbursement of Expenses of Professionals as entered by the Bankruptcy Court on January 4, 2006 (the "Order"), APS is entitled to request payment of 80% of its fees and 100% of its expenses at this time, with the remaining 20% of fees subject to the approval of the Bankruptcy Court in a quarterly fee application.

Specifically, at this time APS is requesting $1,239,696.60 in fees (i.e. 80% of $1,549,620.75) and $195,623.01 in expenses, for a total of $1,435,319.61 in fees and expenses for the Fee Statement Period.

# ÅPServices LLC

If none of the interested parties identified in the Order object to the Fee Statement fifteen days from the date of this letter the Debtors are authorized to pay the total amount requested herein by APS, which is $1,435,319.61 subject to the conditions specified herein.

Lisa J. Donahue, Managing Director
AP Services, LLC



50 West San Fernando Street
San Jose, CA 95113

Att: Nancy Murray

**Summary of Professional Fees**
**For the Period April 1, 2006 through April 30, 2006**

| Current Charges: | | Hours | Rate | Amount |
|---|---|---|---|---|
| Christopher Anderson | Associate | 164.30 | 260.00 | 42,718.00 |
| Aleksandra Bozic | Vice President | 222.60 | 280.00 | 62,328.00 |
| Tarek Ghalayini | Associate | 184.10 | 300.00 | 55,230.00 |
| Robb C. McWilliams | Vice President | 226.10 | 300.00 | 67,830.00 |
| Terry Singla | Vice President | 230.90 | 320.00 | 73,888.00 |
| Drew Lockard | Vice President | 211.50 | 330.00 | 69,795.00 |
| Meaghan Frawley | Vice President | 227.90 | 330.00 | 75,207.00 |
| Salvador N. Caputto | Vice President | 227.90 | 380.00 | 86,602.00 |
| Albert Leung | Vice President | 184.30 | 380.00 | 70,034.00 |
| Kyle A. Braden | Vice President | 265.20 | 380.00 | 100,776.00 |
| Florence Gwite | Vice President | 117.80 | 380.00 | 44,764.00 |
| Henry Colvin | Director | 38.80 | 440.00 | 17,072.00 |
| Larry E. Ramaekers | Director | 116.80 | 440.00 | 51,392.00 |
| David C. Johnston | Director | 215.20 | 460.00 | 98,992.00 |
| Bryan K. Porter | Director | 188.00 | 460.00 | 86,480.00 |
| Barry Folse | Director | 166.50 | 480.00 | 79,920.00 |
| Deborah Rieger-Paganis | Director | 221.70 | 480.00 | 106,416.00 |
| Thomas B Osmun | Director | 223.00 | 480.00 | 107,040.00 |
| Doug Jung | Director | 163.80 | 495.00 | 81,081.00 |
| Nathan Cook | Director | 57.50 | 495.00 | 28,462.50 |
| John R. Castellano | Director | 222.40 | 510.00 | 113,424.00 |
| Michael A. Feder | Managing Dir. | 201.10 | 630.00 | 126,693.00 |
| Meade Monger | Managing Dir. | 35.30 | 630.00 | 22,239.00 |
| Lisa J. Donahue | Managing Dir. | 87.40 | 670.00 | 58,558.00 |
| Albert A Koch | Managing Dir. | 0.80 | 690.00 | 552.00 |
| Harvey Kelly | Managing Dir. | 4.00 | 695.00 | 2,780.00 |
| Total Hours & Fees: | | 4,204.90 | | 1,730,273.50 |
| Less 50% Calpine Corp - Travel | | | | (180,652.75) |
| Subtotal | | | | 1,549,620.75 |
| Less 20% Holdback | | | | (309,924.15) |



| Current Charges: | Hours | Rate | Amount |
|---|---|---|---|
| | | | 1,239,696.60 |
| Expenses | | | 195,623.01 |
| **Total Amount Due** | | **USD** | **1,435,319.61** |



Calpine Corporation
50 West San Fernando Street
San Jose, CA 95113

Att: Nancy Murray

**Summary of Expenses**
**For the Period April 1, 2006 through April 30, 2006**

| Expenses | Amount |
|---|---:|
| Airfare | 91,024.96 |
| Cab Fare/Ground Transportation | 23,873.34 |
| Lodging | 55,243.76 |
| Meals & Tips | 14,361.86 |
| Mileage | 13.36 |
| Other | 487.17 |
| Overnight Mail Charges | 273.12 |
| Parking & Tolls | 1,399.03 |
| Rental Car | 9,430.68 |
| Voluntary reduction | -676.30 |
| Supplies | 192.03 |
| **Total Disbursements** | **195,623.01** |



June 27, 2006

Nancy Murray
Calpine Corporation
50 West San Fernando Street
San Jose, CA 95113

Re: Calpine Corporation, et. al.,
    Case No. 05-60200 (BRL) Jointly Administered
    Monthly Fee Statement for period May 1, 2006 through May 31, 2006

Dear Ms. Murray:

Enclosed please find the fee statement (the "Fee Statement") of AP Services, LLC ("APS"), for services rendered to the debtors in the above-referenced bankruptcy proceedings (collectively, the "Debtors") and expenses incurred from May 1, 2006 through May 31, 2006 (the "Fee Statement Period").  We have also enclosed a detailed listing of the services provided by APS to the Debtors and the related disbursements.

Pursuant to the Administrative Order Establishing Procedures for Interim Compensation and Reimbursement of Expenses of Professionals as entered by the Bankruptcy Court on January 4, 2006 (the "Order"), APS is entitled to request payment of  80% of its fees and 100% of its expenses at this time, with the remaining 20% of fees subject to the approval of the Bankruptcy Court in a quarterly fee application.

Specifically, at this time APS is requesting $1,307,446.20 in fees (i.e. 80% of $1,634,307.75) and $178,346.01 in expenses, for a total of $1,485,792.21 in fees and expenses for the Fee Statement Period.

# APServices LLC

If none of the interested parties identified in the Order object to the Fee Statement fifteen days from the date of this letter the Debtors are authorized to pay the total amount requested herein by APS, which is $1,485,792.21 subject to the conditions specified herein.

Lisa J. Donahue, Managing Director
AP Services, LLC



50 West San Fernando Street
San Jose, CA 95113

Att: Nancy Murray

**Summary of Professional Fees**
**For the Period May 1, 2006 through May 31, 2006**

| Current Charges: | | Hours | Rate | Amount |
|---|---|---|---|---|
| Travis Phelan | Associate | 14.50 | 260.00 | 3,770.00 |
| Christopher Anderson | Associate | 189.10 | 260.00 | 49,166.00 |
| Aleksandra Bozic | Vice President | 284.50 | 280.00 | 79,660.00 |
| Adam Hollerbach | Associate | 201.20 | 300.00 | 60,360.00 |
| Tarek Ghalayini | Associate | 35.20 | 300.00 | 10,560.00 |
| Robb C. McWilliams | Vice President | 199.80 | 300.00 | 59,940.00 |
| Terry Singla | Vice President | 223.60 | 320.00 | 71,552.00 |
| Drew Lockard | Vice President | 239.90 | 330.00 | 79,167.00 |
| Meaghan Frawley | Vice President | 218.00 | 330.00 | 71,940.00 |
| Kyle A. Braden | Vice President | 262.20 | 380.00 | 99,636.00 |
| Albert Leung | Vice President | 37.40 | 380.00 | 14,212.00 |
| Salvador N. Caputto | Vice President | 249.40 | 380.00 | 94,772.00 |
| G. Jon Shell | Vice President | 161.90 | 430.00 | 69,617.00 |
| Henry Colvin | Director | 59.60 | 440.00 | 26,224.00 |
| Larry E. Ramaekers | Director | 35.10 | 440.00 | 15,444.00 |
| David C. Johnston | Director | 231.80 | 460.00 | 106,628.00 |
| Bryan K. Porter | Director | 205.70 | 460.00 | 94,622.00 |
| Barry Folse | Director | 242.40 | 480.00 | 116,352.00 |
| Deborah Rieger-Paganis | Director | 247.40 | 480.00 | 118,752.00 |
| Thomas B Osmun | Director | 214.20 | 480.00 | 102,816.00 |
| Doug Jung | Director | 150.00 | 495.00 | 74,250.00 |
| Nathan Cook | Director | 75.90 | 495.00 | 37,570.50 |
| Jamie Lisac | Director | 43.80 | 495.00 | 21,681.00 |
| Donald Parcell | Director | 149.30 | 495.00 | 73,903.50 |
| John R. Castellano | Director | 224.60 | 510.00 | 114,546.00 |
| Michael A. Feder | Managing Dir. | 194.70 | 630.00 | 122,661.00 |
| Lisa J. Donahue | Managing Dir. | 119.30 | 670.00 | 79,931.00 |
| Total Hours & Fees: | | 4,510.50 | | 1,869,733.00 |
| Less 50% Calpine Corp - Travel | | | | (235,425.25) |
| | | | | 1,634,307.75 |
| Less 20% Holdback | | | | (326,861.55) |



| Current Charges: | Hours | Rate | Amount |
|---|---|---|---|
| | | | 1,307,446.20 |
| Expenses | | | 178,346.01 |
| **Total Amount Due** | | **USD** | **1,485,792.21** |

Calpine Corporation



50 West San Fernando Street
San Jose, CA 95113

Att: Nancy Murray

**Summary of Expenses**
**For the Period May 1, 2006 through May 31, 2006**

| Expenses | Amount |
|---|---:|
| Airfare | 82,568.94 |
| Cab Fare/Ground Transportation | 15,135.27 |
| Computer Supplies / Support | 456.62 |
| Lodging | 57,902.07 |
| Meals & Tips | 13,502.96 |
| Mileage | 41.10 |
| Other | 283.84 |
| Overnight Mail Charges | 395.37 |
| Parking & Tolls | 1,839.65 |
| Rental Car | 6,220.19 |
| **Total Disbursements** | **178,346.01** |



July 26, 2006

Nancy Murray
Calpine Corporation
50 West San Fernando Street
San Jose, CA 95113

Re: Calpine Corporation, et. al.,
    Case No. 05-60200 (BRL) Jointly Administered
    Monthly Fee Statement for period June 1, 2006 through June 30, 2006

Dear Ms. Murray:

Enclosed please find the fee statement (the "Fee Statement") of AP Services, LLC ("APS"), for services rendered to the debtors in the above-referenced bankruptcy proceedings (collectively, the "Debtors") and expenses incurred from June 1, 2006 through June 30, 2006 (the "Fee Statement Period"). We have also enclosed a detailed listing of the services provided by APS to the Debtors and the related disbursements.

Pursuant to the Administrative Order Establishing Procedures for Interim Compensation and Reimbursement of Expenses of Professionals as entered by the Bankruptcy Court on January 4, 2006 (the "Order"), APS is entitled to request payment of 80% of its fees and 100% of its expenses at this time, with the remaining 20% of fees subject to the approval of the Bankruptcy Court in a quarterly fee application.

Specifically, at this time APS is requesting $1,571,082.36 in fees (i.e. 80% of $1,963,852.95) and $268,347.09 in expenses, for a total of $1,839,429.45 in fees and expenses for the Fee Statement Period.

# APServices LLC

If none of the interested parties identified in the Order object to the Fee Statement fifteen days from the date of this letter the Debtors are authorized to pay the total amount requested herein by APS, which is $1,839,429.45 subject to the conditions specified herein.

Lisa J. Donahue, Managing Director
AP Services, LLC



50 West San Fernando Street
San Jose, CA 95113

Att: Nancy Murray

## Summary of Professional Fees
### For the Period June 1, 2006 through June 30, 2006

| Current Charges: | | Hours | Rate | Amount |
|---|---|---|---|---|
| Ami Desai | Analyst | 81.35 | 220.00 | 17,897.00 |
| Timothy Rosolio | Analyst | 148.80 | 220.00 | 32,736.00 |
| Travis Phelan | Associate | 14.90 | 260.00 | 3,874.00 |
| Christopher Anderson | Associate | 210.80 | 260.00 | 54,808.00 |
| Aleksandra Bozic | Vice President | 174.40 | 280.00 | 48,832.00 |
| Adam Hollerbach | Associate | 225.30 | 300.00 | 67,590.00 |
| Ryan Thurber-Dean | Associate | 96.30 | 300.00 | 28,890.00 |
| Robb C. McWilliams | Vice President | 158.50 | 300.00 | 47,550.00 |
| Terry Singla | Vice President | 228.70 | 320.00 | 73,184.00 |
| Meaghan Frawley | Vice President | 228.80 | 330.00 | 75,504.00 |
| Drew Lockard | Vice President | 228.70 | 330.00 | 75,471.00 |
| Kevin M. Montague | Vice President | 103.40 | 350.00 | 36,190.00 |
| Kyle A. Braden | Vice President | 269.30 | 380.00 | 102,334.00 |
| Heather Stack | Vice President | 89.58 | 380.00 | 34,040.40 |
| Salvador N. Caputto | Vice President | 193.75 | 380.00 | 73,625.00 |
| Jeffrey Webb | Vice President | 130.50 | 380.00 | 49,590.00 |
| Albert Leung | Vice President | 9.40 | 380.00 | 3,572.00 |
| Tamie Vitek | Ind Contractor | 32.00 | 425.00 | 13,600.00 |
| G. Jon Shell | Vice President | 195.10 | 430.00 | 83,893.00 |
| Larry E. Ramaekers | Director | 26.90 | 440.00 | 11,836.00 |
| Henry Colvin | Director | 164.20 | 440.00 | 72,248.00 |
| David C. Johnston | Director | 255.30 | 460.00 | 117,438.00 |
| Bryan K. Porter | Director | 139.80 | 460.00 | 64,308.00 |
| Deborah Rieger-Paganis | Director | 248.50 | 480.00 | 119,280.00 |
| Thomas B Osmun | Director | 187.90 | 480.00 | 90,192.00 |
| Barry Folse | Director | 226.50 | 480.00 | 108,720.00 |
| Donald Parcell | Director | 158.90 | 495.00 | 78,655.50 |
| Susan Hartman | Director | 9.70 | 495.00 | 4,801.50 |
| Charles A. Cipione | Director | 5.80 | 495.00 | 2,871.00 |
| Doug Jung | Director | 181.60 | 495.00 | 89,892.00 |
| Jamie Lisac* | Director | 156.40 | 495.00 | 77,418.00 |



| Current Charges: | | Hours | Rate | Amount |
|---|---|---|---|---|
| Jamie Lisac | Director | 191.90 | 495.00 | 94,990.50 |
| John R. Castellano | Director | 219.50 | 510.00 | 111,945.00 |
| Jared D. Yerian | Managing Dir. | 79.00 | 590.00 | 46,610.00 |
| Michael A. Feder | Managing Dir. | 194.30 | 630.00 | 122,409.00 |
| Lisa J. Donahue | Managing Dir. | 96.10 | 670.00 | 64,387.00 |
| Total Hours & Fees: | | 5,361.88 | | 2,201,181.90 |
| Less 50% Calpine Corp - Travel | | | | (237,328.95) |
| | | | | 1,963,852.95 |
| Less 20% Holdback | | | | (392,770.59) |
| | | | | 1,571,082.36 |
| Expenses | | | | 268,347.09 |
| **Total Amount Due** | | | **USD** | **1,839,429.45** |

*May hours not previously billed

Calpine Corporation



50 West San Fernando Street
San Jose, CA 95113

Att: Nancy Murray

**Summary of Expenses**
**For the Period June 1, 2006 through June 30, 2006**

| Expenses | Amount |
|---|---:|
| Airfare | 125,750.26 |
| Cab Fare/Ground Transportation | 34,020.01 |
| Computer Supplies / Support | 48.34 |
| Lodging | 81,769.03 |
| Meals & Tips | 18,379.28 |
| Mileage | 270.90 |
| Other | 543.66 |
| Overnight Mail Charges | 904.10 |
| Parking & Tolls | 2,284.83 |
| Rental Car | 6,217.60 |
| Supplies | 16.08 |
| Voluntary Reduction Cab Fare & Meal Charges | -1,857.00 |
| **Total Disbursements** | **268,347.09** |



August 29, 2006

Nancy Murray
Calpine Corporation
50 West San Fernando Street
San Jose, CA 95113

Re: Calpine Corporation, et. al.,
    Case No. 05-60200 (BRL) Jointly Administered
    Monthly Fee Statement for period July 1, 2006 through July 31, 2006

Dear Ms. Murray:

Enclosed please find the fee statement (the "Fee Statement") of AP Services, LLC ("APS"), for services rendered to the debtors in the above-referenced bankruptcy proceedings (collectively, the "Debtors") and expenses incurred from July 1, 2006 through July 31, 2006 (the "Fee Statement Period"). We have also enclosed a detailed listing of the services provided by APS to the Debtors and the related disbursements.

Pursuant to the Administrative Order Establishing Procedures for Interim Compensation and Reimbursement of Expenses of Professionals as entered by the Bankruptcy Court on January 4, 2006 (the "Order"), APS is entitled to request payment of 80% of its fees and 100% of its expenses at this time, with the remaining 20% of fees subject to the approval of the Bankruptcy Court in a quarterly fee application.

Specifically, at this time APS is requesting $1,857,095.12 in fees (i.e. 80% of $2,321,368.90) and $225,287.33 in expenses, for a total of $2,082,382.45 in fees and expenses for the Fee Statement Period.

# APServices LLC

If none of the interested parties identified in the Order object to the Fee Statement fifteen days from the date of this letter the Debtors are authorized to pay the total amount requested herein by APS, which is $2,082,382.45 subject to the conditions specified herein.

Lisa J. Donahue, Managing Director
AP Services, LLC

# ΛPServices LLC

Calpine Corporation
50 West San Fernando Street
San Jose, CA 95113

Att: Nancy Murray

**Summary of Professional Fees**
**For the Period July 1, 2006 through July 31, 2006**

| Current Charges: | | Hours | Rate | Amount |
|---|---|---|---|---|
| Ami Desai | Analyst | 160.30 | 220.00 | 35,266.00 |
| Timothy Rosolio | Analyst | 199.00 | 220.00 | 43,780.00 |
| Christopher Anderson | Associate | 188.20 | 260.00 | 48,932.00 |
| Travis Phelan | Associate | 52.70 | 260.00 | 13,702.00 |
| Aleksandra Bozic | Vice President | 209.20 | 280.00 | 58,576.00 |
| Jason Vogel | Ind Contractor | 17.70 | 295.00 | 5,221.50 |
| Adam Hollerbach | Associate | 216.70 | 300.00 | 65,010.00 |
| Robert Albergotti | Associate | 160.55 | 300.00 | 48,165.00 |
| Lauren Schulman | Associate | 175.25 | 300.00 | 52,575.00 |
| Robb C. McWilliams | Vice President | 222.30 | 300.00 | 66,690.00 |
| Ryan Thurber-Dean | Associate | 203.30 | 300.00 | 60,990.00 |
| Terry Singla | Vice President | 224.60 | 320.00 | 71,872.00 |
| Meaghan Frawley | Vice President | 217.80 | 330.00 | 71,874.00 |
| Drew Lockard | Vice President | 198.70 | 330.00 | 65,571.00 |
| Kevin M. Montague | Vice President | 196.70 | 350.00 | 68,845.00 |
| Kyle A. Braden | Vice President | 185.30 | 380.00 | 70,414.00 |
| Heather Stack | Vice President | 145.78 | 380.00 | 55,396.40 |
| Salvador N. Caputto | Vice President | 242.20 | 380.00 | 92,036.00 |
| Jeffrey Webb | Vice President | 205.20 | 380.00 | 77,976.00 |
| Tamie Vitek | Ind Contractor | 182.75 | 425.00 | 77,668.75 |
| G. Jon Shell | Vice President | 189.10 | 430.00 | 81,313.00 |
| Henry Colvin | Director | 155.40 | 440.00 | 68,376.00 |
| Larry E. Ramaekers | Director | 42.10 | 440.00 | 18,524.00 |
| David C. Johnston | Director | 249.60 | 460.00 | 114,816.00 |
| Bryan K. Porter | Director | 193.50 | 460.00 | 89,010.00 |
| Barry Folse | Director | 180.25 | 480.00 | 86,520.00 |
| Thomas B Osmun | Director | 194.10 | 480.00 | 93,168.00 |
| Deborah Rieger-Paganis | Director | 206.60 | 480.00 | 99,168.00 |
| Robert P. Rakowski | Director | 184.35 | 495.00 | 91,253.25 |

# AP Services LLC

| Current Charges: | | Hours | Rate | Amount |
|---|---|---|---|---|
| Charles A. Cipione | Director | 5.00 | 495.00 | 2,475.00 |
| Michael G Tinsely | Director | 120.10 | 495.00 | 59,449.50 |
| Doug Jung | Director | 197.10 | 495.00 | 97,564.50 |
| Jamie Lisac | Director | 185.70 | 495.00 | 91,921.50 |
| Donald Parcell | Director | 62.50 | 495.00 | 30,937.50 |
| John R. Castellano | Director | 174.80 | 510.00 | 89,148.00 |
| Jared D. Yerian | Managing Dir. | 171.90 | 590.00 | 101,421.00 |
| Michael A. Feder | Managing Dir. | 197.50 | 630.00 | 124,425.00 |
| Lisa J. Donahue | Managing Dir. | 132.60 | 670.00 | 88,842.00 |
| Harvey Kelly | Managing Dir. | 32.40 | 695.00 | 22,518.00 |
| Total Hours & Fees: | | 6,478.83 | | 2,601,410.90 |
| Less 50% Calpine Corp - Travel | | | | (280,042.00) |
| | | | | 2,321,368.90 |
| Less 20% Holdback | | | | (464,273.78) |
| | | | | 1,857,095.12 |
| Expenses | | | | 225,287.33 |
| **Total Amount Due** | | | **USD** | **2,082,382.45** |

# AP Services LLC

Calpine Corporation
50 West San Fernando Street
San Jose, CA 95113

Att: Nancy Murray

**Summary of Expenses**
**For the Period July 1, 2006 through July 31, 2006**

| Expenses | Amount |
| --- | ---: |
| Airfare | 99,762.14 |
| Cab Fare/Ground Transportation | 24,544.61 |
| Computer Supplies / Support | 62.30 |
| Lodging | 70,843.97 |
| Meals & Tips | 17,288.34 |
| Mileage | 184.70 |
| Other | 561.06 |
| Overnight Mail Charges | 1,034.34 |
| Parking & Tolls | 1,367.95 |
| Postage Charges | 25.23 |
| Rental Car | 9,612.69 |
| **Total Disbursements** | **225,287.33** |



September 28, 2006

Nancy Murray
Calpine Corporation
50 West San Fernando Street
San Jose, CA 95113

Re: Calpine Corporation, et. al.,
    Case No. 05-60200 (BRL) Jointly Administered
    Monthly Fee Statement for period August 1, 2006 through August 31, 2006

Dear Ms. Murray:

Enclosed please find the fee statement (the "Fee Statement") of AP Services, LLC ("APS"), for services rendered to the debtors in the above-referenced bankruptcy proceedings (collectively, the "Debtors") and expenses incurred from August 1, 2006 through August 31, 2006 (the "Fee Statement Period").  We have also enclosed a detailed listing of the services provided by APS to the Debtors and the related disbursements.

Pursuant to the Administrative Order Establishing Procedures for Interim Compensation and Reimbursement of Expenses of Professionals as entered by the Bankruptcy Court on January 4, 2006 (the "Order"), APS is entitled to request payment of  80% of its fees and 100% of its expenses at this time, with the remaining 20% of fees subject to the approval of the Bankruptcy Court in a quarterly fee application.

Specifically, at this time APS is requesting $1,951,302.40 in fees (i.e. 80% of $2,439,128.00) and $275,377.09 in expenses, for a total of $2,226,679.49 in fees and expenses for the Fee Statement Period.

# APServices LLC

If none of the interested parties identified in the Order object to the Fee Statement fifteen days from the date of this letter the Debtors are authorized to pay the total amount requested herein by APS, which is $2,226,679.49 subject to the conditions specified herein.

Lisa J. Donahue, Managing Director
AP Services, LLC



Calpine Corporation
50 West San Fernando Street
San Jose, CA 95113

Att: Nancy Murray

## Summary of Professional Fees
### For the Period August 1, 2006 through August 31, 2006

| Current Charges: | | Hours | Rate | Amount |
|---|---|---|---|---|
| Amanda Knudsen | Analyst | 80.20 | 220.00 | 17,644.00 |
| Ami Desai | Analyst | 69.60 | 220.00 | 15,312.00 |
| Timothy Rosolio | Analyst | 268.35 | 220.00 | 59,037.00 |
| Christopher Anderson | Associate | 238.10 | 260.00 | 61,906.00 |
| Aleksandra Bozic | Vice President | 256.40 | 280.00 | 71,792.00 |
| Adam Hollerbach | Associate | 270.60 | 300.00 | 81,180.00 |
| Ryan Thurber-Dean | Associate | 243.70 | 300.00 | 73,110.00 |
| Robb C. McWilliams | Vice President | 287.60 | 300.00 | 86,280.00 |
| Lauren Schulman | Associate | 262.80 | 300.00 | 78,840.00 |
| Robert Albergotti | Associate | 226.50 | 300.00 | 67,950.00 |
| Terry Singla | Vice President | 204.80 | 320.00 | 65,536.00 |
| Meaghan Frawley | Vice President | 254.30 | 330.00 | 83,919.00 |
| Drew Lockard | Vice President | 249.30 | 330.00 | 82,269.00 |
| Kevin M. Montague | Vice President | 232.30 | 350.00 | 81,305.00 |
| Kyle A. Braden | Vice President | 271.60 | 380.00 | 103,208.00 |
| Salvador N. Caputto | Vice President | 253.90 | 380.00 | 96,482.00 |
| Jeffrey Webb | Vice President | 234.50 | 380.00 | 89,110.00 |
| Heather Stack | Vice President | 80.00 | 380.00 | 30,400.00 |
| Tamie Vitek | Ind Contractor | 173.75 | 425.00 | 73,843.75 |
| G. Jon Shell | Vice President | 160.10 | 430.00 | 68,843.00 |
| Henry Colvin | Director | 120.20 | 440.00 | 52,888.00 |
| David C. Johnston | Director | 226.70 | 460.00 | 104,282.00 |
| Bryan K. Porter | Director | 241.20 | 460.00 | 110,952.00 |
| Thomas B Osmun | Director | 192.00 | 480.00 | 92,160.00 |
| Deborah Rieger-Paganis | Director | 156.20 | 480.00 | 74,976.00 |
| Barry Folse | Director | 246.60 | 480.00 | 118,368.00 |
| Doug Jung | Director | 90.50 | 495.00 | 44,797.50 |
| Michael G Tinsely | Director | 229.90 | 495.00 | 113,800.50 |
| Jamie Lisac | Director | 208.40 | 495.00 | 103,158.00 |
| Robert P. Rakowski | Director | 205.20 | 495.00 | 101,574.00 |



| Current Charges: | | Hours | Rate | Amount |
|---|---|---|---|---|
| John R. Castellano | Director | 257.10 | 510.00 | 131,121.00 |
| Jared D. Yerian | Managing Dir. | 71.00 | 590.00 | 41,890.00 |
| Michael A. Feder | Managing Dir. | 205.90 | 630.00 | 129,717.00 |
| Lisa J. Donahue | Managing Dir. | 117.60 | 670.00 | 78,792.00 |
| Harvey Kelly | Managing Dir. | 21.70 | 695.00 | 15,081.50 |
| Total Hours & Fees: | | 6,908.60 | | 2,701,524.25 |
| Less 50% Calpine Corp - Travel | | | | (262,396.25) |
| Subtotal | | | | 2,439,128.00 |
| Less 20% Holdback | | | | (487,825.60) |
| Subtotal | | | | 1,951,302.40 |
| Expenses | | | | 275,377.09 |
| **Total Amount Due** | | | **USD** | **2,226,679.49** |



Calpine Corporation
50 West San Fernando Street
San Jose, CA 95113

Att: Nancy Murray

## Summary of Expenses
## For the Period August 1, 2006 through August 31, 2006

| Expenses | Amount |
|---|---|
| Airfare | 97,502.88 |
| Cab Fare/Ground Transportation | 24,075.09 |
| Computer Supplies / Support | 119.64 |
| Lodging | 111,660.77 |
| Meals & Tips | 24,547.62 |
| Mileage | 434.51 |
| Other | 750.16 |
| Overnight Mail Charges | 405.30 |
| Parking & Tolls | 2,882.25 |
| Rental Car | 12,944.76 |
| Supplies | 54.11 |
| **Total Disbursements** | **275,377.09** |

 **AP**Services LLC

October 25, 2006

Greg Doody
Executive Vice President and General Counsel
Calpine Corporation
717 Texas Avenue, Suite 1000
Houston, TX 77002

Re: Calpine Corporation, et. al.,
    Case No. 05-60200 (BRL) Jointly Administered
    Monthly Fee Statement for period September 1, 2006 through September 30, 2006

Dear Mr. Doody:

Enclosed please find the fee statement (the "Fee Statement") of AP Services, LLC ("APS"), for services rendered to the debtors in the above-referenced bankruptcy proceedings (collectively, the "Debtors") and expenses incurred from September 1, 2006 through September 30, 2006 (the "Fee Statement Period"). We have also enclosed a detailed listing of the services provided by APS to the Debtors and the related disbursements.

Pursuant to the Administrative Order Establishing Procedures for Interim Compensation and Reimbursement of Expenses of Professionals as entered by the Bankruptcy Court on January 4, 2006 (the "Order"), APS is entitled to request payment of 80% of its fees and 100% of its expenses at this time, with the remaining 20% of fees subject to the approval of the Bankruptcy Court in a quarterly fee application.

Specifically, at this time APS is requesting $1,694,074.80 in fees (i.e. 80% of $2,117,593.50) and $255,750.22 in expenses, for a total of $1,949,825.02 in fees and expenses for the Fee Statement Period.

**AP**Services LLC

Greg Doody
October 25, 2006
Page 2

If none of the interested parties identified in the Order object to the Fee Statement fifteen days from the date of this letter the Debtors are authorized to pay the total amount requested herein by APS, which is $1,949,825.02 subject to the conditions specified herein.

Lisa J. Donahue, Managing Director
AP Services, LLC

 **AP**Services LLC

Greg Doody
Executive Vice President and General Counsel
Calpine Corporation
717 Texas Avenue, Suite 1000
Houston, TX 77002

### Summary of Professional Fees
### For the Period September 1, 2006 through September 30, 2006

| Current Charges: | | Hours | Rate | Amount |
|---|---|---|---|---|
| Amanda Knudsen | Analyst | 222.40 | 220.00 | 48,928.00 |
| Timothy Rosolio | Analyst | 194.30 | 220.00 | 42,746.00 |
| Christopher Anderson | Associate | 121.90 | 260.00 | 31,694.00 |
| Aleksandra Bozic | Vice President | 215.00 | 280.00 | 60,200.00 |
| Adam Hollerbach | Associate | 235.00 | 300.00 | 70,500.00 |
| Robert Albergotti | Associate | 179.90 | 300.00 | 53,970.00 |
| Andrew Baker | Associate | 59.80 | 300.00 | 17,940.00 |
| Ryan Thurber-Dean | Associate | 196.00 | 300.00 | 58,800.00 |
| Robb C. McWilliams | Vice President | 212.00 | 300.00 | 63,600.00 |
| Lauren Schulman | Associate | 240.60 | 300.00 | 72,180.00 |
| Terry Singla | Vice President | 193.30 | 320.00 | 61,856.00 |
| Meaghan Frawley | Vice President | 168.80 | 330.00 | 55,704.00 |
| Drew Lockard | Vice President | 187.30 | 330.00 | 61,809.00 |
| Kevin M. Montague | Vice President | 101.90 | 350.00 | 35,665.00 |
| Kyle A. Braden | Vice President | 189.50 | 380.00 | 72,010.00 |
| Salvador N. Caputto | Vice President | 182.80 | 380.00 | 69,464.00 |
| Jeffrey Webb | Vice President | 181.70 | 380.00 | 69,046.00 |
| Heather Stack | Vice President | 149.10 | 380.00 | 56,658.00 |
| Tamie Vitek | Ind Contractor | 208.45 | 425.00 | 88,591.25 |
| G. Jon Shell | Vice President | 36.20 | 430.00 | 15,566.00 |
| Henry Colvin | Director | 146.60 | 440.00 | 64,504.00 |
| David C. Johnston | Director | 256.10 | 460.00 | 117,806.00 |
| Bryan K. Porter | Director | 181.50 | 460.00 | 83,490.00 |
| Thomas B Osmun | Director | 215.30 | 480.00 | 103,344.00 |
| Deborah Rieger-Paganis | Director | 170.20 | 480.00 | 81,696.00 |
| Barry Folse | Director | 183.00 | 480.00 | 87,840.00 |
| Doug Jung | Director | 165.90 | 495.00 | 82,120.50 |
| Michael G Tinsely | Director | 171.10 | 495.00 | 84,694.50 |
| Jamie Lisac | Director | 144.00 | 495.00 | 71,280.00 |



| Current Charges: | | Hours | Rate | Amount |
|---|---|---|---|---|
| Robert P. Rakowski | Director | 213.30 | 495.00 | 105,583.50 |
| John R. Castellano | Director | 212.40 | 510.00 | 108,324.00 |
| Jared D. Yerian | Managing Dir. | 67.60 | 590.00 | 39,884.00 |
| Michael A. Feder | Managing Dir. | 204.50 | 630.00 | 128,835.00 |
| Lisa J. Donahue | Managing Dir. | 118.80 | 670.00 | 79,596.00 |
| Total Hours & Fees: | | 5,926.25 | | 2,345,924.75 |
| Less 50% Calpine Corp - Travel | | | | (228,331.25) |
| Subtotal | | | | 2,117,593.50 |
| Less 20% Holdback | | | | (423,518.70) |
| Subtotal | | | | 1,694,074.80 |
| Expenses | | | | 255,750.22 |
| **Total Amount Due** | | | **USD** | **1,949,825.02** |



Greg Doody
Executive Vice President and General Counsel
Calpine Corporation
717 Texas Avenue, Suite 1000
Houston, TX 77002

## Summary of Professional Fees by Matter Code
### For the Period September 1, 2006 through September 30, 2006

| Project Code | Description | Amount |
|---|---|---|
| 004200.00001 | Calpine Corp - Cash Management | 202,737.00 |
| 004200.00002 | Calpine Corp - Travel | 228,331.25 |
| 004200.00004 | Calpine Corp - Restructuring | 683,405.50 |
| 004200.00006 | Calpine Corp - Company Analysis | 17,700.00 |
| 004200.00008 | Calpine Corp - CMS - Schedules and Statement | 710.00 |
| 004200.00009 | Calpine Corp - CMS - Claims | 116,518.00 |
| 004200.00010 | Business Plan Development | 50,928.00 |
| 004200.00011 | Creditor Information Requests | 33,012.00 |
| 004200.00012 | Accounts Payable Issues | 59,584.00 |
| 004200.00013 | General Bankruptcy Support | 141,357.25 |
| 004200.00015 | Calpine Corp - FAS - Admin./General/Planning/Sale | 232,771.50 |
| 004200.00019 | Preferences | 47,663.00 |
| 004200.00020 | Claims | 144,266.00 |
| 004200.00021 | MOR | 6,348.00 |
| 004200.00022 | Calpine Corp - Solvency Analysis | 152,262.00 |
| **Total Fees Incurred** | | **2,117,593.50** |



Greg Doody
Executive Vice President and General Counsel
Calpine Corporation
717 Texas Avenue, Suite 1000
Houston, TX 77002

**Summary of Expenses**
**For the Period September 1, 2006 through September 30, 2006**

| Expenses | Amount |
|---|---:|
| Airfare | 96,484.20 |
| Cab Fare/Ground Transportation | 24,013.25 |
| Computer Supplies / Support | 84.54 |
| Lodging | 96,785.22 |
| Meals & Tips | 20,272.10 |
| Meeting Expenses | 28.46 |
| Mileage | 592.42 |
| Other | 1,569.87 |
| Overnight Mail Charges | 1,042.25 |
| Parking & Tolls | 2,752.16 |
| Rental Car | 11,936.33 |
| Supplies | 189.42 |
| **Total Disbursements** | **255,750.22** |

 **AP**Services LLC

November 28, 2006

Greg Doody
Executive Vice President and General Counsel
Calpine Corporation
717 Texas Avenue, Suite 1000
Houston, TX 77002

Re: Calpine Corporation, et. al.,
    Case No. 05-60200 (BRL) Jointly Administered
    Monthly Fee Statement for period October 1, 2006 through October 31, 2006

Dear Mr. Doody:

Enclosed please find the fee statement (the "Fee Statement") of AP Services, LLC ("APS"), for services rendered to the debtors in the above-referenced bankruptcy proceedings (collectively, the "Debtors") and expenses incurred from October 1, 2006 through October 31, 2006 (the "Fee Statement Period"). We have also enclosed a detailed listing of the services provided by APS to the Debtors and the related disbursements.

Pursuant to the Administrative Order Establishing Procedures for Interim Compensation and Reimbursement of Expenses of Professionals as entered by the Bankruptcy Court on January 4, 2006 (the "Order"), APS is entitled to request payment of 80% of its fees and 100% of its expenses at this time, with the remaining 20% of fees subject to the approval of the Bankruptcy Court in a quarterly fee application.

Specifically, at this time APS is requesting $1,913,982.60 in fees (i.e. 80% of $2,392,478.25) and $235,446.18 in expenses, for a total of $2,149,428.78 in fees and expenses for the Fee Statement Period.

# APServices LLC

Greg Doody
November 28, 2006
Page 2

If none of the interested parties identified in the Order object to the Fee Statement fifteen days from the date of this letter the Debtors are authorized to pay the total amount requested herein by APS, which is $2,149,428.78 subject to the conditions specified herein.

Lisa J. Donahue, Managing Director
AP Services, LLC



Greg Doody
Executive Vice President and General Counsel
Calpine Corporation
717 Texas Avenue, Suite 1000
Houston, TX 77002

## Summary of Professional Fees
### For the Period October 1, 2006 through October 31, 2006

| Current Charges: | | Hours | Rate | Amount |
|---|---|---|---|---|
| Julia Mysinger | Paraprofessional | 73.50 | 160.00 | 11,760.00 |
| Diane Peppers | Paraprofessional | 47.70 | 160.00 | 7,632.00 |
| Jessica Cowart | Paraprofessional | 48.00 | 160.00 | 7,680.00 |
| Latonya Jones-Callaway | Paraprofessional | 11.50 | 160.00 | 1,840.00 |
| Amanda Knudsen | Analyst | 203.80 | 220.00 | 44,836.00 |
| Timothy Rosolio | Analyst | 220.30 | 220.00 | 48,466.00 |
| Christopher Anderson | Associate | 213.60 | 260.00 | 55,536.00 |
| Aleksandra Bozic | Vice President | 213.50 | 280.00 | 59,780.00 |
| Adam Hollerbach | Associate | 211.50 | 300.00 | 63,450.00 |
| Robert Albergotti | Associate | 219.00 | 300.00 | 65,700.00 |
| Andrew Baker | Associate | 223.60 | 300.00 | 67,080.00 |
| Robb C. McWilliams | Vice President | 218.10 | 300.00 | 65,430.00 |
| Lauren Schulman | Associate | 249.80 | 300.00 | 74,940.00 |
| Terry Singla | Vice President | 231.60 | 320.00 | 74,112.00 |
| Meaghan Frawley | Vice President | 196.80 | 330.00 | 64,944.00 |
| Drew Lockard | Vice President | 205.10 | 330.00 | 67,683.00 |
| Kevin M. Montague | Vice President | 111.70 | 350.00 | 39,095.00 |
| Kyle A. Braden | Vice President | 252.90 | 380.00 | 96,102.00 |
| Heather Stack | Vice President | 195.10 | 380.00 | 74,138.00 |
| Salvador N. Caputto | Vice President | 263.70 | 380.00 | 100,206.00 |
| Jeffrey Webb | Vice President | 213.20 | 380.00 | 81,016.00 |
| Tamie Vitek | Ind Contractor | 188.50 | 425.00 | 80,112.50 |
| G. Jon Shell | Vice President | 162.30 | 430.00 | 69,789.00 |
| Henry Colvin | Director | 148.40 | 440.00 | 65,296.00 |
| David C. Johnston | Director | 203.10 | 460.00 | 93,426.00 |
| Bryan K. Porter | Director | 204.70 | 460.00 | 94,162.00 |
| Thomas B Osmun | Director | 208.70 | 480.00 | 100,176.00 |
| Barry Folse | Director | 207.50 | 480.00 | 99,600.00 |
| Deborah Rieger-Paganis | Director | 219.90 | 480.00 | 105,552.00 |

# AP Services LLC

| Current Charges: | | Hours | Rate | Amount |
|---|---|---|---|---|
| Robert P. Rakowski | Director | 251.10 | 495.00 | 124,294.50 |
| Jamie Lisac | Director | 218.70 | 495.00 | 108,256.50 |
| Michael G Tinsely | Director | 204.90 | 495.00 | 101,425.50 |
| Doug Jung | Director | 111.60 | 495.00 | 55,242.00 |
| John R. Castellano | Director | 228.50 | 510.00 | 116,535.00 |
| Jared D. Yerian | Managing Dir. | 81.70 | 590.00 | 48,203.00 |
| Michael A. Feder | Managing Dir. | 170.30 | 630.00 | 107,289.00 |
| Lisa J. Donahue | Managing Dir. | 179.50 | 670.00 | 120,265.00 |
| Total Hours & Fees | | 6,813.40 | | 2,661,050.00 |
| Less 50% Travel Adjustment | | | | (268,571.75) |
| Subtotal | | | | 2,392,478.25 |
| Less 20% Holdback | | | | (478,495.65) |
| Subtotal | | | | 1,913,982.60 |
| Expenses | | | | 235,446.18 |
| **Total Amount Due** | | | | **2,149,428.78** |

 **APServices** LLC

Greg Doody
Executive Vice President and General Counsel
Calpine Corporation
717 Texas Avenue, Suite 1000
Houston, TX 77002

### Summary of Professional Fees by Matter Code
### For the Period October 1, 2006 through October 31, 2006

| Project Code | Description | Amount |
|---|---|---|
| 004200.00001 | Calpine Corp - Cash Management | 251,053.00 |
| 004200.00002 | Calpine Corp - Travel | 268,571.75 |
| 004200.00004 | Calpine Corp - Restructuring | 772,251.50 |
| 004200.00009 | Calpine Corp - CMS - Claims | 180,232.00 |
| 004200.00010 | Business Plan Development | 30,708.00 |
| 004200.00011 | Creditor Information Requests | 19,971.00 |
| 004200.00012 | Accounts Payable Issues | 49,256.00 |
| 004200.00013 | General Bankruptcy Support | 169,762.00 |
| 004200.00015 | Calpine Corp - FAS - Admin./General/Planning/Sale | 274,554.00 |
| 004200.00019 | Preferences | 13,233.00 |
| 004200.00020 | Claims | 198,161.00 |
| 004200.00021 | MOR | 6,256.00 |
| 004200.00022 | Calpine Corp - Solvency Analysis | 1,632.00 |
| 004200.00024 | Calpine Corp - Sub-Con/InterCompany Analysis | 156,837.00 |
| Total Fees Incurred | | 2,392,478.25 |

**AP**Services LLC

Greg Doody
Executive Vice President and General Counsel
Calpine Corporation
717 Texas Avenue, Suite 1000
Houston, TX 77002

## Summary of Expenses
### For the Period October 1, 2006 through October 31, 2006

| Expenses | Amount |
|---|---|
| Airfare | 79,398.85 |
| Cab Fare/Ground Transportation | 29,570.85 |
| Computer Supplies / Support | 489.24 |
| Lodging | 89,562.05 |
| Meals & Tips | 21,151.09 |
| Mileage | 658.47 |
| Other | 1,710.41 |
| Overnight Mail Charges | 664.65 |
| Parking & Tolls | 2,691.57 |
| Postage Charges | 0.39 |
| Rental Car | 9,548.61 |
| Total Disbursements | 235,446.18 |



December 18, 2006

Greg Doody
Executive Vice President and General Counsel
Calpine Corporation
717 Texas Avenue, Suite 1000
Houston, TX 77002


Re: Calpine Corporation, et. al.,
    Case No. 05-60200 (BRL) Jointly Administered
    Monthly Fee Statement for period November 1, 2006 through November 30, 2006


Dear Mr. Doody:


Enclosed please find the fee statement (the "Fee Statement") of AP Services, LLC ("APS"), for services rendered to the debtors in the above-referenced bankruptcy proceedings (collectively, the "Debtors") and expenses incurred from November 1, 2006 through November 30, 2006 (the "Fee Statement Period"). We have also enclosed a detailed listing of the services provided by APS to the Debtors and the related disbursements.

Pursuant to the Administrative Order Establishing Procedures for Interim Compensation and Reimbursement of Expenses of Professionals as entered by the Bankruptcy Court on January 4, 2006 (the "Order"), APS is entitled to request payment of 80% of its fees and 100% of its expenses at this time, with the remaining 20% of fees subject to the approval of the Bankruptcy Court in a quarterly fee application.

Specifically, at this time APS is requesting $1,777,273.80 in fees (i.e. 80% of $2,221,592.25) and $202,205.27 in expenses, for a total of $1,979,479.07 in fees and expenses for the Fee Statement Period.

 **AP**Services LLC

Chicago  Dallas  Detroit  Düsseldorf  London
Los Angeles  Milan  Munich  New York  Tokyo

Greg Doody
December 18, 2006
Page 2

If none of the interested parties identified in the Order object to the Fee Statement fifteen days from the date of this letter the Debtors are authorized to pay the total amount requested herein by APS, which is $1,979,479.07 subject to the conditions specified herein.

Lisa J. Donahue, Managing Director
AP Services, LLC



Executive Vice President and General Counsel
Calpine Corporation
717 Texas Avenue, Suite 1000
Houston, TX 77002

## Summary of Professional Fees
### For the Period November 1, 2006 through November 30, 2006

| Current Charges: | | Hours | Rate | Amount |
|---|---|---|---|---|
| Julia Mysinger | Parprofessional | 136.00 | 110.00 | 14,960.00 |
| Diane Peppers | Paraprof. | 51.60 | 110.00 | 5,676.00 |
| Jessica Cowart | Paraprof. | 96.20 | 110.00 | 10,582.00 |
| Amanda Knudsen | Analyst | 186.60 | 220.00 | 41,052.00 |
| Timothy Rosolio | Analyst | 179.80 | 220.00 | 39,556.00 |
| Christopher Anderson | Associate | 178.40 | 260.00 | 46,384.00 |
| Aleksandra Bozic | Vice President | 117.70 | 280.00 | 32,956.00 |
| Gabe Greenbaum | Associate | 84.35 | 300.00 | 25,305.00 |
| Samuel S Jacobs | Associate | 33.80 | 300.00 | 10,140.00 |
| Andrew Baker | Associate | 178.30 | 300.00 | 53,490.00 |
| Robb C. McWilliams | Vice President | 176.70 | 300.00 | 53,010.00 |
| Chad Tolleson | Associate | 174.20 | 300.00 | 52,260.00 |
| Lauren Schulman | Associate | 204.50 | 300.00 | 61,350.00 |
| Robert Albergotti | Associate | 208.50 | 300.00 | 62,550.00 |
| Adam Hollerbach | Associate | 40.50 | 300.00 | 12,150.00 |
| Terry Singla | Vice President | 198.40 | 320.00 | 63,488.00 |
| Meaghan Frawley | Vice President | 128.10 | 330.00 | 42,273.00 |
| Drew Lockard | Vice President | 214.50 | 330.00 | 70,785.00 |
| Kevin M. Montague | Vice President | 171.30 | 350.00 | 59,955.00 |
| Kyle A. Braden | Vice President | 240.50 | 380.00 | 91,390.00 |
| Heather Stack | Vice President | 185.30 | 380.00 | 70,414.00 |
| Salvador N. Caputto | Vice President | 223.25 | 380.00 | 84,835.00 |
| Jeffrey Webb | Vice President | 176.80 | 380.00 | 67,184.00 |
| Tamie Vitek | Ind Contractor | 192.50 | 425.00 | 81,812.50 |
| G. Jon Shell | Vice President | 94.00 | 430.00 | 40,420.00 |
| Henry Colvin | Director | 146.60 | 440.00 | 64,504.00 |
| Bryan K. Porter | Director | 172.30 | 460.00 | 79,258.00 |
| David C. Johnston | Director | 198.10 | 460.00 | 91,126.00 |
| Deborah Rieger-Paganis | Director | 164.90 | 480.00 | 79,152.00 |
| Thomas B Osmun | Director | 176.60 | 480.00 | 84,768.00 |



| Current Charges: | | Hours | Rate | Amount |
|---|---|---|---|---|
| Barry Folse | Director | 189.20 | 480.00 | 90,816.00 |
| Jamie Lisac | Director | 172.60 | 495.00 | 85,437.00 |
| Greg Orler | Director (ITTS) | 117.75 | 495.00 | 58,286.25 |
| Gary Baker | Director (ITTS) | 104.20 | 495.00 | 51,579.00 |
| Robert P. Rakowski | Director | 223.30 | 495.00 | 110,533.50 |
| Michael G Tinsely | Director | 50.00 | 495.00 | 24,750.00 |
| Paul F. Borrusch | Director (ITTS) | 86.00 | 495.00 | 42,570.00 |
| Doug Jung | Director | 173.00 | 495.00 | 85,635.00 |
| John R. Castellano | Director | 217.30 | 510.00 | 110,823.00 |
| Steve F. Hodkinson | Director | 45.90 | 550.00 | 25,245.00 |
| Jared D. Yerian | Managing Dir. | 122.00 | 590.00 | 71,980.00 |
| Michael A. Feder | Managing Dir. | 174.10 | 630.00 | 109,683.00 |
| Lisa J. Donahue | Managing Dir. | 200.70 | 670.00 | 134,469.00 |
| Jay Marshall | Managing Dir. (ITTS) | 9.40 | 670.00 | 6,298.00 |
| Total Hours & Fees | | 6,615.75 | | 2,600,890.25 |

| | |
|---|---|
| Less 50% Calpine Corp - Travel | (211,529.75) |
| Less 100% ITTS Evaluation | (158,733.25) |
| Credit for Oct. overcharge on CMS claims reconciliation | (9,035.00) |
| Subtotal | 2,221,592.25 |
| Less 20% Holdback | ( 444,318.45) |
| Subtotal | 1,777,273.80 |
| Expenses | 202,205.27 |
| **Total Amount Due** | **USD   1,979,479.07** |



Greg Doody
Executive Vice President and General Counsel
Calpine Corporation
717 Texas Avenue, Suite 1000
Houston, TX 77002

## Summary of Professional Fees by Matter Code
### For the Period November 1, 2006 through November 30, 2006

| Project Code | Description | Amount |
|---|---|---:|
| 004200.00001 | Calpine Corp - Cash Management | 226,921.00 |
| 004200.00002 | Calpine Corp - Travel | 211,529.75 |
| 004200.00004 | Calpine Corp - Restructuring | 462,104.50 |
| 004200.00008 | Calpine Corp - CMS - Schedules and Statement | 455.00 |
| 004200.00009 | Calpine Corp - CMS - Claims | 194,613.00 |
| 004200.00010 | Business Plan Development | 48,528.00 |
| 004200.00011 | Creditor Information Requests | 15,876.00 |
| 004200.00012 | Accounts Payable Issues | 8,626.00 |
| 004200.00013 | General Bankruptcy Support | 265,178.00 |
| 004200.00014 | Claims Reconciliation | 2,028.00 |
| 004200.00015 | Calpine Corp - FAS - Admin./General/Planning/Sale | 274,148.00 |
| 004200.00019 | Preferences | 4,606.00 |
| 004200.00020 | Claims | 144,694.00 |
| 004200.00021 | MOR | 4,416.00 |
| 004200.00022 | Calpine Corp - Solvency Analysis | 3,514.00 |
| 004200.00024 | Calpine Corp - Sub-Con/InterCompany Analysis | 232,022.00 |
| 004200.00025 | CFO Duties | 83,147.00 |
| 004200.00026 | ITTS Evaluation | 0.00 |
| 004200.00027 | Calpine Corp - Litigation Support | 39,186.00 |
| Total Fees Incurred | | 2,221,592.25 |



Greg Doody
Executive Vice President and General Counsel
Calpine Corporation
717 Texas Avenue, Suite 1000
Houston, TX 77002

## Summary of Expenses
### For the Period November 1, 2006 through November 30, 2006

| Expenses | Amount |
|---|---:|
| Airfare Change Fees | 750.90 |
| Airfare | 66,778.83 |
| Airfare Service Charge | 7,736.70 |
| Cab Fare/Ground Transportation | 21,485.53 |
| Computer Supplies / Support | 290.27 |
| Lodging | 70,391.52 |
| Meals & Tips | 18,282.44 |
| Meeting Expenses | 237.71 |
| Mileage | 367.69 |
| Other | 4,004.02 |
| Overnight Mail Charges | 699.32 |
| Parking & Tolls | 2,891.68 |
| Postage Charges | 39.24 |
| Rental Car | 8,097.91 |
| Supplies | 151.51 |
| Total Disbursements | 202,205.27 |


January 24, 2007

Greg Doody
Executive Vice President and General Counsel
Calpine Corporation
717 Texas Avenue, Suite 1000
Houston, TX 77002

Re: Calpine Corporation, et. al.,
    Case No. 05-60200 (BRL) Jointly Administered
    Monthly Fee Statement for period December 1, 2006 through December 31, 2006

Dear Mr. Doody:

Enclosed please find the fee statement (the "Fee Statement") of AP Services, LLC ("APS"), for services rendered to the debtors in the above-referenced bankruptcy proceedings (collectively, the "Debtors") and expenses incurred from December 1, 2006 through December 31, 2006 (the "Fee Statement Period"). We have also enclosed a detailed listing of the services provided by APS to the Debtors and the related disbursements.

Pursuant to the Administrative Order Establishing Procedures for Interim Compensation and Reimbursement of Expenses of Professionals as entered by the Bankruptcy Court on January 4, 2006 (the "Order"), APS is entitled to request payment of 80% of its fees and 100% of its expenses at this time, with the remaining 20% of fees subject to the approval of the Bankruptcy Court in a quarterly fee application.

Specifically, at this time APS is requesting $1,699,450.00 in fees (i.e. 80% of $2,124,312.50) and $166,298.13 in expenses, for a total of $1,865,748.13 in fees and expenses for the Fee Statement Period.

# AP Services LLC

Greg Doody
January 24, 2007
Page 2

If none of the interested parties identified in the Order object to the Fee Statement fifteen days from the date of this letter the Debtors are authorized to pay the total amount requested herein by APS, which is $1,865,748.13 subject to the conditions specified herein.

Lisa J. Donahue, Managing Director
AP Services, LLC



Greg Doody
Executive Vice President and General Counsel
Calpine Corporation
717 Texas Avenue, Suite 1000
Houston, TX 77002

## Summary of Professional Fees
### For the Period December 1, 2006 through December 31, 2006

| Current Charges: | | Hours | Rate | Amount |
|---|---|---|---|---|
| Erika De Leon | Ind Contractor | 40.25 | 100.00 | 4,025.00 |
| Diane Peppers | Parprofessional | 12.90 | 110.00 | 1,419.00 |
| Julia Mysinger | Parprofessional | 126.70 | 110.00 | 13,937.00 |
| Jessica Cowart | Parprofessional | 4.80 | 110.00 | 528.00 |
| Stephanie Ko | Analyst | 13.00 | 200.00 | 2,600.00 |
| Amanda Knudsen | Analyst | 143.30 | 220.00 | 31,526.00 |
| Timothy Rosolio | Analyst | 172.50 | 220.00 | 37,950.00 |
| Christopher Anderson | Associate | 165.60 | 260.00 | 43,056.00 |
| Robb McWilliams | Associate | 215.50 | 300.00 | 64,650.00 |
| Ryan Thurber-Dean | Associate | 89.00 | 300.00 | 26,700.00 |
| Andrew Baker | Associate | 190.20 | 300.00 | 57,060.00 |
| Chad Tolleson | Associate | 168.90 | 300.00 | 50,670.00 |
| Lauren Schulman | Associate | 202.20 | 300.00 | 60,660.00 |
| Robert Albergotti | Associate | 219.60 | 300.00 | 65,880.00 |
| Samuel S Jacobs | Associate | 110.50 | 300.00 | 33,150.00 |
| Gabe Greenbaum | Associate | 214.75 | 300.00 | 64,425.00 |
| Terry Singla | Vice President | 156.10 | 320.00 | 49,952.00 |
| Meaghan Frawley | Vice President | 170.60 | 330.00 | 56,298.00 |
| Drew Lockard | Vice President | 186.60 | 330.00 | 61,578.00 |
| Kevin Montague | Vice President | 136.60 | 350.00 | 47,810.00 |
| Kyle Braden | Vice President | 228.70 | 380.00 | 86,906.00 |
| Jeffrey Webb | Vice President | 193.70 | 380.00 | 73,606.00 |
| Heather Stack | Vice President | 160.70 | 380.00 | 61,066.00 |
| Salvador Caputto | Vice President | 248.20 | 380.00 | 94,316.00 |
| Tamie Vitek | Ind Contractor | 183.55 | 425.00 | 78,008.75 |
| Jon Shell | Vice President | 147.80 | 430.00 | 63,554.00 |
| Henry Colvin | Director | 126.80 | 440.00 | 55,792.00 |
| David Johnston | Director | 168.20 | 460.00 | 77,372.00 |
| Bryan Porter | Director | 123.90 | 460.00 | 56,994.00 |
| Barry Folse | Director | 175.20 | 480.00 | 84,096.00 |



| Current Charges: | | Hours | Rate | Amount |
|---|---|---|---|---|
| Thomas Osmun | Director | 179.30 | 480.00 | 86,064.00 |
| Douglas Jung | Director | 150.40 | 495.00 | 74,448.00 |
| Jamie Lisac | Director | 172.80 | 495.00 | 85,536.00 |
| Rob Rakowski | Director | 138.10 | 495.00 | 68,359.50 |
| John Castellano | Director | 207.30 | 510.00 | 105,723.00 |
| Steven Hodkinson | Director | 188.80 | 550.00 | 103,840.00 |
| Jared Yerian | Managing Dir. | 151.00 | 590.00 | 89,090.00 |
| Michael Feder | Managing Dir. | 127.20 | 630.00 | 80,136.00 |
| Lisa Donahue | Managing Dir. | 126.60 | 670.00 | 84,822.00 |
| Harvey Kelly | Managing Dir. | 5.00 | 695.00 | 3,475.00 |
| Total Hours & Fees | | 5,942.85 | | 2,287,078.25 |
| Less 50% Travel | | | | (162,765.75) |
| Subtotal | | | | 2,124,312.50 |
| Less 20% Holdback | | | | (424,862.50) |
| Subtotal | | | | 1,699,450.00 |
| Expenses | | | | 166,298.13 |
| **Total Amount Due** | | | **USD** | **1,865,748.13** |



Greg Doody
Executive Vice President and General Counsel
Calpine Corporation
717 Texas Avenue, Suite 1000
Houston, TX 77002

**Summary of Professional Fees by Matter Code**
**For the Period December 1, 2006 through December 31, 2006**

| Project Code | Description | Amount |
|---|---|---:|
| 004200.00001 | Calpine Corp - Cash Management | 218,970.00 |
| 004200.00002 | Calpine Corp - Travel | 162,765.75 |
| 004200.00004 | Calpine Corp - Restructuring | 303,815.00 |
| 004200.00009 | Calpine Corp - CMS - Claims | 187,002.00 |
| 004200.00010 | Business Plan Development | 48,480.00 |
| 004200.00011 | Creditor Information Requests | 9,198.00 |
| 004200.00012 | Accounts Payable Issues | 13,642.00 |
| 004200.00013 | General Bankruptcy Support | 310,916.75 |
| 004200.00015 | Calpine Corp - FAS Admin/General/Plan/San Jose | 281,252.00 |
| 004200.00019 | Preferences | 46,514.00 |
| 004200.00020 | Claims | 112,650.00 |
| 004200.00024 | Calpine Corp - Sub-Con/InterCompany Analysis | 246,374.00 |
| 004200.00025 | CFO Duties | 68,742.00 |
| 004200.00027 | Calpine Corp - Rosetta Transaction | 112,971.00 |
| 004200.00029 | Calpine Corp - Rumford Tiverton Analysis | 1,020.00 |
| Total Fees Incurred | | 2,124,312.50 |

 <sub>LLC</sub>

Greg Doody
Executive Vice President and General Counsel
Calpine Corporation
717 Texas Avenue, Suite 1000
Houston, TX 77002

**Summary of Expenses**
**For the Period December 1, 2006 through December 31, 2006**

| Expenses | Amount |
|---|---:|
| Airfare Change Fees | 612.80 |
| Airfare | 47,917.52 |
| Airfare Service Charge | 3,878.24 |
| Cab Fare/Ground Transportation | 17,679.29 |
| Computerized Research | 54.80 |
| Computer Supplies / Support | 299.66 |
| Lodging | 66,361.75 |
| Meals & Tips | 16,374.98 |
| Mileage | 254.12 |
| Other | 2,239.52 |
| Overnight Mail Charges | 1,767.16 |
| Parking & Tolls | 3,016.70 |
| Rental Car | 5,841.59 |
| Total Disbursements | 166,298.13 |

AP Services LLC

February 26, 2007

Greg Doody
Executive Vice President and General Counsel
Calpine Corporation
717 Texas Avenue, Suite 1000
Houston, TX 77002

Re: Calpine Corporation, et. al.,
    Case No. 05-60200 (BRL) Jointly Administered
    Monthly Fee Statement for period January 1, 2007 through January 31, 2007

Dear Mr. Doody:

Enclosed please find the fee statement (the "Fee Statement") of AP Services, LLC ("APS"), for services rendered to the debtors in the above-referenced bankruptcy proceedings (collectively, the "Debtors") and expenses incurred from January 1, 2007 through January 31, 2007 (the "Fee Statement Period"). We have also enclosed a detailed listing of the services provided by APS to the Debtors and the related disbursements.

Pursuant to the Administrative Order Establishing Procedures for Interim Compensation and Reimbursement of Expenses of Professionals as entered by the Bankruptcy Court on January 4, 2006 (the "Order"), APS is entitled to request payment of 80% of its fees and 100% of its expenses at this time, with the remaining 20% of fees subject to the approval of the Bankruptcy Court in a quarterly fee application.

Specifically, at this time APS is requesting $2,317,317.00 in fees (i.e. 80% of $2,896,646.25) and $192,906.75 in expenses, for a total of $2,510,223.75 in fees and expenses for the Fee Statement Period.

 **AP**Services LLC

Chicago   Dallas   Detroit   Düsseldorf   London
Los Angeles   Milan   Munich   New York   Tokyo

Greg Doody
February 26, 2007
Page 2

If none of the interested parties identified in the Order object to the Fee Statement fifteen days from the date of this letter the Debtors are authorized to pay the total amount requested herein by APS, which is $2,510,223.75 subject to the conditions specified herein.

Lisa J. Donahue, Managing Director
AP Services, LLC



Greg Doody
Executive Vice President and General Counsel
Calpine Corporation
717 Texas Avenue, Suite 1000
Houston, TX 77002

## Summary of Professional Fees
### For the Period January 1, 2007 through January 31, 2007

| Current Charges: | | Hours | Rate | Amount |
|---|---|---|---|---|
| Erika De Leon | Ind Contractor | 97.00 | 100.00 | 9,700.00 |
| Diane Peppers | Parprofessional | 17.90 | 110.00 | 1,969.00 |
| Julia Mysinger | Parprofessional | 173.00 | 110.00 | 19,030.00 |
| Latonya Jones-Callaway | Parprofessional | 18.00 | 110.00 | 1,980.00 |
| Kathleen Todd | Analyst | 25.25 | 210.00 | 5,302.50 |
| Deanna Berlin | Analyst | 58.75 | 210.00 | 12,337.50 |
| Amanda Knudsen | Analyst | 172.10 | 230.00 | 39,583.00 |
| Timothy Rosolio | Analyst | 182.00 | 230.00 | 41,860.00 |
| Andrew Baker | Associate | 20.10 | 315.00 | 6,331.50 |
| Ryan Thurber-Dean | Associate | 95.00 | 315.00 | 29,925.00 |
| Christopher Anderson | Associate | 206.60 | 315.00 | 65,079.00 |
| Chad Tolleson | Associate | 218.60 | 315.00 | 68,859.00 |
| Lauren Schulman | Associate | 13.00 | 315.00 | 4,095.00 |
| Robert Albergotti | Associate | 239.20 | 315.00 | 75,348.00 |
| Samuel S Jacobs | Associate | 226.10 | 315.00 | 71,221.50 |
| Gabe Greenbaum | Associate | 296.45 | 315.00 | 93,381.75 |
| Drew Lockard | Vice President | 250.40 | 350.00 | 87,640.00 |
| Kevin Montague | Vice President | 243.90 | 400.00 | 97,560.00 |
| Jeffrey Webb | Vice President | 231.80 | 400.00 | 92,720.00 |
| Meaghan Frawley | Vice President | 50.60 | 400.00 | 20,240.00 |
| Salvador Caputto | Vice President | 280.70 | 400.00 | 112,280.00 |
| Michael Wagoner | Vice President | 167.60 | 420.00 | 70,392.00 |
| Terry Singla | Vice President | 256.50 | 425.00 | 109,012.50 |
| Robb McWilliams | Director | 317.20 | 440.00 | 139,568.00 |
| Jon Shell | Vice President | 228.10 | 450.00 | 102,645.00 |
| Tamie Vitek | Ind Contractor | 232.15 | 450.00 | 104,467.50 |
| Kyle Braden | Director | 252.90 | 465.00 | 117,598.50 |
| Henry Colvin | Director | 153.50 | 495.00 | 75,982.50 |

 **AP**Services LLC

| Current Charges: | | Hours | Rate | Amount |
|---|---|---|---|---|
| Greg Orler | Director | 168.60 | 495.00 | 83,457.00 |
| Bryan Porter | Director | 195.80 | 520.00 | 101,816.00 |
| David Johnston | Director | 239.90 | 525.00 | 125,947.50 |
| Jamie Lisac | Director | 204.90 | 525.00 | 107,572.50 |
| Thomas Osmun | Director | 204.70 | 525.00 | 107,467.50 |
| Rob Rakowski | Director | 49.20 | 525.00 | 25,830.00 |
| Steven Hodkinson | Director | 243.30 | 575.00 | 139,897.50 |
| John Castellano | Managing Dir. | 260.80 | 600.00 | 156,480.00 |
| Douglas Jung | Managing Dir. | 41.40 | 600.00 | 24,840.00 |
| Barry Folse | Managing Dir. | 251.30 | 600.00 | 150,780.00 |
| Jared Yerian | Managing Dir. | 236.10 | 625.00 | 147,562.50 |
| Michael Feder | Managing Dir. | 201.90 | 675.00 | 136,282.50 |
| Lisa Donahue | Managing Dir. | 174.90 | 725.00 | 126,802.50 |
| Harvey Kelly | Managing Dir. | 2.20 | 725.00 | 1,595.00 |
| Total Hours & Fees | | 7,199.40 | | 3,112,439.25 |
| Less Travel Adjustment | | | | (215,793.00) |
| Subtotal | | | | 2,896,646.25 |
| Less 20% Holdback | | | | (579,329.25) |
| Subtotal | | | | 2,317,317.00 |
| Expenses | | | | 192,906.75 |
| **Total Amount Due** | | | **USD** | **2,510,223.75** |

APServices LLC

Greg Doody
Executive Vice President and General Counsel
Calpine Corporation
717 Texas Avenue, Suite 1000
Houston, TX 77002

## Summary of Professional Fees by Matter Code
### For the Period January 1, 2007 through January 31, 2007

| Project Code | Description | Amount |
|---|---|---|
| 004200.00001 | Calpine Corp - Cash Management | 344,566.25 |
| 004200.00002 | Calpine Corp - Travel | 215,793.00 |
| 004200.00004 | Calpine Corp - Restructuring | 427,691.50 |
| 004200.00009 | Calpine Corp - CMS - Claims | 371,472.00 |
| 004200.00010 | Business Plan Development | 577.50 |
| 004200.00011 | Creditor Information Requests | 23,895.00 |
| 004200.00012 | Accounts Payable Issues | 7,680.00 |
| 004200.00013 | General Bankruptcy Support | 370,554.50 |
| 004200.00015 | Calpine Corp - FAS Admin/General/Plan/San Jose | 40,701.50 |
| 004200.00019 | Preferences | 26,460.00 |
| 004200.00020 | Claims | 220,354.50 |
| 004200.00021 | MOR | 5,876.00 |
| 004200.00024 | Calpine Corp - Sub-Con/InterCompany Analysis | 341,376.50 |
| 004200.00025 | CFO Duties | 96,352.50 |
| 004200.00027 | Calpine Corp - Rosetta Transaction | 180,595.00 |
| 004200.00028 | Calpine Corp  - Accounting Reorganization | 190,669.00 |
| 004200.00029 | Calpine Corp - Rumford Tiverton Analysis | 32,031.50 |
| **Total Fees Incurred** | | **2,896,646.25** |



Greg Doody
Executive Vice President and General Counsel
Calpine Corporation
717 Texas Avenue, Suite 1000
Houston, TX 77002

## Summary of Expenses
### For the Period January 1, 2007 through January 31, 2007

| Expenses | Amount |
|---|---:|
| Airfare Change Fees | 883.84 |
| Airfare | 54,682.35 |
| Airfare Service Charge | 4,311.18 |
| Cab Fare/Ground Transportation | 20,476.26 |
| Computerized Research | 961.85 |
| Computer Supplies / Support | 362.39 |
| Copy Costs (Outside Source) | 752.34 |
| Lodging | 74,043.46 |
| Meals & Tips | 21,566.92 |
| Mileage | 281.42 |
| Other | 1,998.31 |
| Overnight Mail Charges | 156.20 |
| Parking & Tolls | 4,181.53 |
| Rental Car | 8,235.05 |
| Supplies | 13.65 |
| **Total Disbursements** | **192,906.75** |



March 23, 2007

Greg Doody
Executive Vice President and General Counsel
Calpine Corporation
717 Texas Avenue, Suite 1000
Houston, TX 77002


Re: Calpine Corporation, et. al.,
    Case No. 05-60200 (BRL) Jointly Administered
    Monthly Fee Statement for period February 1, 2007 through February 28, 2007


Dear Mr. Doody:


Enclosed please find the fee statement (the "Fee Statement") of AP Services, LLC ("APS"), for services rendered to the debtors in the above-referenced bankruptcy proceedings (collectively, the "Debtors") and expenses incurred from February 1, 2007 through February 28, 2007 (the "Fee Statement Period"). We have also enclosed a detailed listing of the services provided by APS to the Debtors and the related disbursements.

Pursuant to the Administrative Order Establishing Procedures for Interim Compensation and Reimbursement of Expenses of Professionals as entered by the Bankruptcy Court on January 4, 2006 (the "Order"), APS is entitled to request payment of 80% of its fees and 100% of its expenses at this time, with the remaining 20% of fees subject to the approval of the Bankruptcy Court in a quarterly fee application.

Specifically, at this time APS is requesting $1,873,336.60 in fees (i.e. 80% of $2,341,670.75) and $168,716.09 in expenses, for a total of $2,042,052.69 in fees and expenses for the Fee Statement Period.



Greg Doody
March 23, 2007
Page 2

If none of the interested parties identified in the Order object to the Fee Statement fifteen days from the date of this letter the Debtors are authorized to pay the total amount requested herein by APS, which is $2,042,052.69 subject to the conditions specified herein.

Lisa J. Donahue, Managing Director
AP Services, LLC



Greg Doody
Executive Vice President and General Counsel
Calpine Corporation
717 Texas Avenue, Suite 1000
Houston, TX 77002

## Summary of Professional Fees
### For the Period February 1, 2007 through February 28, 2007

| Current Charges: | | Hours | Rate | Amount |
| --- | --- | --- | --- | --- |
| Julia Mysinger | Parprofessional | 129.90 | 110.00 | 14,289.00 |
| Amanda Knudsen | Analyst | 159.40 | 230.00 | 36,662.00 |
| Timothy Rosolio | Analyst | 195.30 | 230.00 | 44,919.00 |
| Gabe Greenbaum | Associate | 236.20 | 315.00 | 74,403.00 |
| Samuel S Jacobs | Associate | 114.05 | 315.00 | 35,925.75 |
| Ryan Thurber-Dean | Associate | 15.00 | 315.00 | 4,725.00 |
| Christopher Anderson | Associate | 206.80 | 315.00 | 65,142.00 |
| Chad Tolleson | Associate | 174.80 | 315.00 | 55,062.00 |
| Robert Albergotti | Associate | 218.00 | 315.00 | 68,670.00 |
| Drew Lockard | Vice President | 242.70 | 350.00 | 84,945.00 |
| Salvador Caputto | Vice President | 241.10 | 400.00 | 96,440.00 |
| Jeffrey Webb | Vice President | 195.30 | 400.00 | 78,120.00 |
| Kevin Montague | Vice President | 155.60 | 400.00 | 62,240.00 |
| Michael Wagoner | Vice President | 197.40 | 420.00 | 82,908.00 |
| Terry Singla | Vice President | 236.90 | 425.00 | 100,682.50 |
| Robb McWilliams | Director | 247.60 | 440.00 | 108,944.00 |
| Tamie Vitek | Ind Contractor | 206.40 | 450.00 | 92,880.00 |
| Jon Shell | Vice President | 188.50 | 450.00 | 84,825.00 |
| Kyle Braden | Director | 109.60 | 465.00 | 50,964.00 |
| Greg Orler | Director | 182.10 | 495.00 | 90,139.50 |
| Henry Colvin | Director | 144.00 | 495.00 | 71,280.00 |
| Bryan Porter | Director | 186.80 | 520.00 | 97,136.00 |
| David Johnston | Director | 193.10 | 525.00 | 101,377.50 |
| Thomas Osmun | Director | 171.10 | 525.00 | 89,827.50 |
| Jamie Lisac | Director | 189.60 | 525.00 | 99,540.00 |
| Steven Hodkinson | Director | 220.40 | 575.00 | 126,730.00 |



| Current Charges: | | Hours | Rate | Amount |
|---|---|---|---|---|
| John Castellano | Managing Dir. | 197.90 | 600.00 | 118,740.00 |
| Barry Folse | Managing Dir. | 201.10 | 600.00 | 120,660.00 |
| Douglas Jung | Managing Dir. | 6.40 | 600.00 | 3,840.00 |
| Jared Yerian | Managing Dir. | 153.90 | 625.00 | 96,187.50 |
| Michael Feder | Managing Dir. | 176.00 | 675.00 | 118,800.00 |
| Lisa Donahue | Managing Dir. | 232.60 | 725.00 | 168,635.00 |
| Total Hours & Fees | | 5,725.55 | | 2,545,639.25 |
| Less 50% Travel Adjustment | | | | (203,968.50) |
| Subtotal | | | | 2,341,670.75 |
| Less 20% Holdback | | | | (468,334.15) |
| Subtotal | | | | 1,873,336.60 |
| Expenses | | | | 168,716.09 |
| **Total Amount Due** | | | **USD** | **2,042,052.69** |



Greg Doody
Executive Vice President and General Counsel
Calpine Corporation
717 Texas Avenue, Suite 1000
Houston, TX 77002

### Summary of Professional Fees by Matter Code
### For the Period February 1, 2007 through February 28, 2007

| Project Code | Description | Amount |
|---|---|---|
| 004200.00001 | Calpine Corp - Cash Management | 251,273.50 |
| 004200.00002 | Calpine Corp - Travel | 203,968.50 |
| 004200.00004 | Calpine Corp - Restructuring | 359,234.00 |
| 004200.00009 | Calpine Corp - CMS - Claims | 468,936.00 |
| 004200.00011 | Creditor Information Requests | 13,230.00 |
| 004200.00012 | Accounts Payable Issues | 9,240.00 |
| 004200.00013 | General Bankruptcy Support | 271,049.00 |
| 004200.00015 | Calpine Corp - FAS Admin/General/Plan/San Jose | 3,840.00 |
| 004200.00019 | Preferences | 54,723.00 |
| 004200.00021 | MOR | 3,172.00 |
| 004200.00024 | Calpine Corp - Sub-Con/InterCompany Analysis | 259,108.50 |
| 004200.00025 | CFO Duties | 135,285.00 |
| 004200.00027 | Calpine Corp - Rosetta Transaction | 76,993.25 |
| 004200.00028 | Calpine Corp  - Accounting Reorganization | 231,618.00 |
| Total Fees Incurred | | 2,341,670.75 |



Greg Doody
Executive Vice President and General Counsel
Calpine Corporation
717 Texas Avenue, Suite 1000
Houston, TX 77002

## Summary of Expenses
## For the Period February 1, 2007 through February 28, 2007

| Expenses | Amount |
|---|---:|
| Airfare Change Fees | 699.36 |
| Airfare | 49,182.99 |
| Airfare Service Charge | 4,879.67 |
| Cab Fare/Ground Transportation | 16,077.75 |
| Computer Supplies / Support | 274.13 |
| Lodging | 63,719.32 |
| Meals & Tips | 17,723.29 |
| Meeting Expenses | 324.70 |
| Mileage | 575.12 |
| Other | 1,415.76 |
| Overnight Mail Charges | 467.10 |
| Parking & Tolls | 3,352.91 |
| Rental Car | 10,023.99 |
| Total Disbursements | 168,716.09 |



April 20, 2007

Greg Doody
Executive Vice President and General Counsel
Calpine Corporation
717 Texas Avenue, Suite 1000
Houston, TX 77002

Re: Calpine Corporation, et. al.,
    Case No. 05-60200 (BRL) Jointly Administered
    Monthly Fee Statement for period March 1, 2007 through March 31, 2007

Dear Mr. Doody:

Enclosed please find the fee statement (the "Fee Statement") of AP Services, LLC ("APS"), for services rendered to the debtors in the above-referenced bankruptcy proceedings (collectively, the "Debtors") and expenses incurred from March 1, 2007 through March 31, 2007 (the "Fee Statement Period"). We have also enclosed a detailed listing of the services provided by APS to the Debtors and the related disbursements.

Pursuant to the Administrative Order Establishing Procedures for Interim Compensation and Reimbursement of Expenses of Professionals as entered by the Bankruptcy Court on January 4, 2006 (the "Order"), APS is entitled to request payment of 80% of its fees and 100% of its expenses at this time, with the remaining 20% of fees subject to the approval of the Bankruptcy Court in a quarterly fee application.

Specifically, at this time APS is requesting $1,756,896.20 in fees (i.e. 80% of $2,196,120.25) and $129,388.59 in expenses, for a total of $1,886,284.79 in fees and expenses for the Fee Statement Period.

 **AP**Services LLC

Chicago  Dallas  Detroit  Düsseldorf  London
Los Angeles  Milan  Munich  New York  Tokyo

Greg Doody
April 20, 2007
Page 2


If none of the interested parties identified in the Order object to the Fee Statement fifteen days from the date of this letter the Debtors are authorized to pay the total amount requested herein by APS, which is $1,886,284.79 subject to the conditions specified herein.


Lisa J. Donahue, Managing Director
AP Services, LLC



Greg Doody
Executive Vice President and General Counsel
Calpine Corporation
717 Texas Avenue, Suite 1000
Houston, TX 77002

### Summary of Professional Fees
### For the Period March 1, 2007 through March 31, 2007

| Current Charges: | | Hours | Rate | Amount |
|---|---|---|---|---|
| Julia Mysinger | Parprofessional | 180.70 | 110.00 | 19,877.00 |
| Erika De Leon | Ind Contractor | 55.25 | 110.00 | 6,077.50 |
| Stephanie Ko | Analyst | 8.00 | 210.00 | 1,680.00 |
| Deanna Berlin | Analyst | 16.00 | 210.00 | 3,360.00 |
| Kathleen Todd | Analyst | 46.85 | 210.00 | 9,838.50 |
| Amanda Knudsen | Analyst | 244.80 | 230.00 | 56,304.00 |
| Timothy Rosolio | Analyst | 214.90 | 230.00 | 49,427.00 |
| Ryan Thurber-Dean | Associate | 9.75 | 315.00 | 3,071.25 |
| Christopher Anderson | Associate | 218.80 | 315.00 | 68,922.00 |
| Chad Tolleson | Associate | 121.90 | 315.00 | 38,398.50 |
| Robert Albergotti | Associate | 317.60 | 315.00 | 100,044.00 |
| Samuel S Jacobs | Associate | 118.00 | 315.00 | 37,170.00 |
| Gabe Greenbaum | Associate | 225.80 | 315.00 | 71,127.00 |
| Drew Lockard | Vice President | 234.20 | 350.00 | 81,970.00 |
| Kevin Montague | Vice President | 124.30 | 400.00 | 49,720.00 |
| Salvador Caputto | Vice President | 276.00 | 400.00 | 110,400.00 |
| Jeffrey Webb | Vice President | 189.80 | 400.00 | 75,920.00 |
| Michael Wagoner | Vice President | 193.20 | 420.00 | 81,144.00 |
| Terry Singla | Vice President | 217.90 | 425.00 | 92,607.50 |
| Robb McWilliams | Director | 230.20 | 440.00 | 101,288.00 |
| Tamie Vitek | Ind Contractor | 187.55 | 450.00 | 84,397.50 |
| Jon Shell | Vice President | 50.60 | 450.00 | 22,770.00 |
| Kyle Braden | Director | 115.20 | 465.00 | 53,568.00 |
| Deborah Rieger-Paganis | Director | 105.60 | 480.00 | 50,688.00 |
| Henry Colvin | Director | 30.30 | 495.00 | 14,998.50 |
| Greg Orler | Director | 172.10 | 495.00 | 85,189.50 |
| Bryan Porter | Director | 149.50 | 520.00 | 77,740.00 |
| David Johnston | Director | 85.60 | 525.00 | 44,940.00 |
| Thomas Osmun | Director | 210.60 | 525.00 | 110,565.00 |
| Jamie Lisac | Director | 146.60 | 525.00 | 76,965.00 |



| **Current Charges:** | | **Hours** | **Rate** | **Amount** |
|---|---|---|---|---|
| Steven Hodkinson | Director | 228.50 | 575.00 | 131,387.50 |
| John Castellano | Managing Dir. | 178.10 | 600.00 | 106,860.00 |
| Barry Folse | Managing Dir. | 171.60 | 600.00 | 102,960.00 |
| Douglas Jung | Managing Dir. | 25.00 | 600.00 | 15,000.00 |
| Jared Yerian | Managing Dir. | 134.90 | 625.00 | 84,312.50 |
| Michael Feder | Managing Dir. | 180.90 | 675.00 | 122,107.50 |
| Lisa Donahue | Managing Dir. | 146.50 | 725.00 | 106,212.50 |
| Total Hours & Fees | | 5,563.10 | | 2,349,007.75 |
| Less 50% Travel Adjustment | | | | -152,887.50 |
| Subtotal | | | | 2,196,120.25 |
| Less 20% Holdback Adjustment | | | | -439,224.05 |
| Subtotal | | | | 1,756,896.20 |
| Expenses | | | | 129,388.59 |
| **Total Amount Due** | | | **USD** | **1,886,284.79** |



Greg Doody
Executive Vice President and General Counsel
Calpine Corporation
717 Texas Avenue, Suite 1000
Houston, TX 77002

**Summary of Professional Fees by Matter Code**
**For the Period March 1, 2007 through March 31, 2007**

| Project Code | Description | Amount |
|---|---|---:|
| 004200.00001 | Calpine Corp - Cash Management | 218,386.50 |
| 004200.00002 | Calpine Corp - Travel | 152,887.50 |
| 004200.00004 | Calpine Corp - Restructuring | 310,527.00 |
| 004200.00009 | Calpine Corp - CMS - Claims | 432,051.00 |
| 004200.00011 | Creditor Information Requests | 16,942.50 |
| 004200.00013 | General Bankruptcy Support | 160,287.00 |
| 004200.00015 | Calpine Corp - FAS Admin/General/Plan/San Jose | 15,000.00 |
| 004200.00019 | Preferences | 92,709.00 |
| 004200.00021 | MOR | 8,320.00 |
| 004200.00024 | Calpine Corp - Sub-Con/InterCompany Analysis | 179,538.00 |
| 004200.00025 | CFO Duties | 87,362.50 |
| 004200.00027 | Calpine Corp - Rosetta Transaction | 80,794.00 |
| 004200.00028 | Calpine Corp  - Accounting Reorganization | 224,086.50 |
| 004200.00030 | Calpine Corp - Interim Corporate Controller Duties | 108,905.00 |
| 004200.00031 | Calpine Corp - Sally II Litigation | 105,646.25 |
| 004200.00032 | Calpine Corp - General Litigation | 2,677.50 |
| **Total Fees Incurred** | | **2,196,120.25** |



Greg Doody
Executive Vice President and General Counsel
Calpine Corporation
717 Texas Avenue, Suite 1000
Houston, TX 77002

**Summary of Expenses**
**For the Period March 1, 2007 through March 31, 2007**

| Expenses | Amount |
|---|---:|
| Airfare Change Fees | 520.00 |
| Airfare | 31,749.07 |
| Airfare Service Charge | 4,208.19 |
| Cab Fare/Ground Transportation | 17,486.03 |
| Computer Supplies / Support | 106.92 |
| Lodging | 46,515.24 |
| Meals & Tips | 11,870.19 |
| Mileage | 1,241.37 |
| Other | 1,094.09 |
| Overnight Mail Charges | 1,115.00 |
| Parking & Tolls | 3,272.51 |
| Rental Car | 10,209.98 |
| **Total Disbursements** | **129,388.59** |



May 24, 2007

Greg Doody
Executive Vice President and General Counsel
Calpine Corporation
717 Texas Avenue, Suite 1000
Houston, TX 77002

Re: Calpine Corporation, et. al.,
    Case No. 05-60200 (BRL) Jointly Administered
    Monthly Fee Statement for period April 1, 2007 through April 30, 2007

Dear Mr. Doody:

Enclosed please find the fee statement (the "Fee Statement") of AP Services, LLC ("APS"), for services rendered to the debtors in the above-referenced bankruptcy proceedings (collectively, the "Debtors") and expenses incurred from April 1, 2007 through April 30, 2007 (the "Fee Statement Period").  We have also enclosed a detailed listing of the services provided by APS to the Debtors and the related disbursements.

Pursuant to the Administrative Order Establishing Procedures for Interim Compensation and Reimbursement of Expenses of Professionals as entered by the Bankruptcy Court on January 4, 2006 (the "Order"), APS is entitled to request payment of  80% of its fees and 100% of its expenses at this time, with the remaining 20% of fees subject to the approval of the Bankruptcy Court in a quarterly fee application.

Specifically, at this time APS is requesting $1,504,635.20 in fees (i.e. 80% of $1,880,794.00) and $134,413.02 in expenses, for a total of $1,639,048.22 in fees and expenses for the Fee Statement Period.

# $\overline{AP}$Services LLC

If none of the interested parties identified in the Order object to the Fee Statement fifteen days from the date of this letter the Debtors are authorized to pay the total amount requested herein by APS, which is $1,639,048.22 subject to the conditions specified herein.


Lisa J. Donahue, Managing Director
AP Services, LLC



Greg Doody
Executive Vice President and General Counsel
Calpine Corporation
717 Texas Avenue, Suite 1000
Houston, TX 77002

### Summary of Professional Fees
### For the Period April 1, 2007 through April 30, 2007

| Current Charges: | | Hours | Rate | Amount |
|---|---|---:|---:|---:|
| Julia Mysinger | Paraprofessional | 183.00 | 110.00 | 20,130.00 |
| Stephanie Ko | Analyst | 3.50 | 210.00 | 735.00 |
| Amanda Knudsen | Analyst | 195.50 | 230.00 | 44,965.00 |
| Timothy Rosolio | Analyst | 213.00 | 230.00 | 48,990.00 |
| Gabe Greenbaum | Associate | 229.90 | 315.00 | 72,418.50 |
| Ryan Thurber-Dean | Associate | 0.50 | 315.00 | 157.50 |
| Christopher Anderson | Associate | 213.90 | 315.00 | 67,378.50 |
| Chad Tolleson | Associate | 199.90 | 315.00 | 62,968.50 |
| Robert Albergotti | Associate | 266.90 | 315.00 | 84,073.50 |
| Samuel S Jacobs | Associate | 4.85 | 315.00 | 1,527.75 |
| Drew Lockard | Vice President | 103.80 | 350.00 | 36,330.00 |
| Salvador Caputto | Vice President | 237.80 | 400.00 | 95,120.00 |
| Jeffrey Webb | Vice President | 208.70 | 400.00 | 83,480.00 |
| Kevin Montague | Vice President | 44.60 | 400.00 | 17,840.00 |
| Michael Wagoner | Vice President | 180.20 | 420.00 | 75,684.00 |
| Terry Singla | Vice President | 213.40 | 425.00 | 90,695.00 |
| Robb McWilliams | Director | 247.30 | 440.00 | 108,812.00 |
| Tamie Vitek | Ind Contractor | 163.70 | 450.00 | 73,665.00 |
| Deborah Rieger-Paganis | Director | 168.70 | 480.00 | 80,976.00 |
| Henry Colvin | Director | 20.80 | 495.00 | 10,296.00 |
| Greg Orler | Director | 178.00 | 495.00 | 88,110.00 |
| Bryan Porter | Director | 137.40 | 520.00 | 71,448.00 |
| David Johnston | Director | 138.90 | 525.00 | 72,922.50 |
| Thomas Osmun | Director | 207.20 | 525.00 | 108,780.00 |
| Steven Hodkinson | Director | 221.30 | 575.00 | 127,247.50 |
| John Castellano | Managing Dir. | 182.50 | 600.00 | 109,500.00 |
| Barry Folse | Managing Dir. | 162.60 | 600.00 | 97,560.00 |
| Jared Yerian | Managing Dir. | 22.80 | 625.00 | 14,250.00 |
| Michael Feder | Managing Dir. | 187.80 | 675.00 | 126,765.00 |
| Lisa Donahue | Managing Dir. | 191.70 | 725.00 | 138,982.50 |
| Total Hours & Fees | | 4,730.15 | | 2,031,807.75 |



| | |
|---|---|
| Less 50% Travel Adjustment | (151,013.75) |
| Subtotal | 1,880,794.00 |
| Less 20% Holdback Adjustment | (376,158.80) |
| Subtotal | 1,504,635.20 |
| Expenses | 134,413.02 |
| **Total Amount Due** | **USD    1,639,048.22** |



Greg Doody
Executive Vice President and General Counsel
Calpine Corporation
717 Texas Avenue, Suite 1000
Houston, TX 77002

### Summary of Professional Fees by Matter Code
### For the Period April 1, 2007 through April 30, 2007

| Project Code | Description | Amount |
|---|---|---|
| 004200.00001 | Calpine Corp - Cash Management | 242,030.00 |
| 004200.00002 | Calpine Corp - Travel | 151,013.75 |
| 004200.00004 | Calpine Corp - Restructuring | 253,176.00 |
| 004200.00009 | Calpine Corp - CMS - Claims | 427,049.50 |
| 004200.00011 | Creditor Information Requests | 5,130.00 |
| 004200.00012 | Accounts Payable Issues | 2,240.00 |
| 004200.00013 | General Bankruptcy Support | 146,463.00 |
| 004200.00019 | Preferences | 70,448.00 |
| 004200.00021 | MOR | 4,472.00 |
| 004200.00022 | Calpine Corp - Solvency Analysis | 6,625.00 |
| 004200.00024 | Calpine Corp - Sub-Con/Intercompany Analysis | 86,245.00 |
| 004200.00025 | CFO Duties | 119,045.00 |
| 004200.00027 | Calpine Corp - Rosetta Transaction | 5,048.50 |
| 004200.00028 | Calpine Corp  - Accounting Reorganization | 245,961.00 |
| 004200.00030 | Calpine Corp - Interim Corporate Controller Dut | 104,592.50 |
| 004200.00031 | Calpine Corp - Sally II Litigation | 11,097.25 |
| 004200.00032 | Calpine Corp - General Litigation | 157.50 |
| **Total Fees Incurred** | | **1,880,794.00** |



Greg Doody
Executive Vice President and General Counsel
Calpine Corporation
717 Texas Avenue, Suite 1000
Houston, TX 77002

**Summary of Expenses**
**For the Period April 1, 2007 through April 30, 2007**

| Expenses | Amount |
|---|---:|
| Airfare Change Fees | 458.00 |
| Airfare | 33,504.28 |
| Airfare Service Charge | 2,718.79 |
| Cab Fare/Ground Transportation | 15,422.45 |
| Computer Supplies / Support | 98.93 |
| Copy Costs (Outside Source) | 3,093.46 |
| Lodging | 48,526.01 |
| Meals & Tips | 13,748.23 |
| Meeting Expenses | 562.03 |
| Mileage | 1,569.30 |
| Other | 2,901.50 |
| Overnight Mail Charges | 323.12 |
| Parking & Tolls | 3,562.26 |
| Rental Car | 7,924.66 |
| **Total Disbursements** | **134,413.02** |



June 14, 2007

Greg Doody
Executive Vice President and General Counsel
Calpine Corporation
717 Texas Avenue, Suite 1000
Houston, TX 77002

Re: Calpine Corporation, et. al.,
    Case No. 05-60200 (BRL) Jointly Administered
    Monthly Fee Statement for period May 1, 2007 through May 31, 2007

Dear Mr. Doody:

Enclosed please find the fee statement (the "Fee Statement") of AP Services, LLC ("APS"), for services rendered to the debtors in the above-referenced bankruptcy proceedings (collectively, the "Debtors") and expenses incurred from May 1, 2007 through May 31, 2007 (the "Fee Statement Period"). We have also enclosed a detailed listing of the services provided by APS to the Debtors and the related disbursements.

Pursuant to the Administrative Order Establishing Procedures for Interim Compensation and Reimbursement of Expenses of Professionals as entered by the Bankruptcy Court on January 4, 2006 (the "Order"), APS is entitled to request payment of 80% of its fees and 100% of its expenses at this time, with the remaining 20% of fees subject to the approval of the Bankruptcy Court in a quarterly fee application.

Specifically, at this time APS is requesting $1,614,388.80 in fees (i.e. 80% of $2,017,986.00) and $111,027.21 in expenses, for a total of $1,725,416.01 in fees and expenses for the Fee Statement Period.

**AP**Services LLC

Greg Doody
June 14, 2007
Page 2

If none of the interested parties identified in the Order object to the Fee Statement fifteen days from the date of this letter the Debtors are authorized to pay the total amount requested herein by APS, which is $1,725,416.01 subject to the conditions specified herein.

Lisa J. Donahue, Managing Director
AP Services, LLC

# APServices LLC

Chicago Dallas Detroit Düsseldorf London
Los Angeles Milan Munich New York Tokyo

Greg Doody
Executive Vice President and General Counsel
Calpine Corporation
717 Texas Avenue, Suite 1000
Houston, TX 77002

## Summary of Professional Fees
### For the Period May 1, 2007 through May 31, 2007

| Current Charges: | | Hours | Rate | Amount |
|---|---|---|---|---|
| Julia Mysinger | Paraprofessional | 163.90 | 110.00 | 18,029.00 |
| Deanna Berlin | Analyst | 3.25 | 210.00 | 682.50 |
| Amanda Knudsen | Analyst | 221.70 | 230.00 | 50,991.00 |
| Timothy Rosolio | Analyst | 231.20 | 230.00 | 53,176.00 |
| Gabe Greenbaum | Associate | 223.50 | 315.00 | 70,402.50 |
| Christopher Anderson | Associate | 228.80 | 315.00 | 72,072.00 |
| Chad Tolleson | Associate | 219.20 | 315.00 | 69,048.00 |
| Robert Albergotti | Associate | 211.20 | 315.00 | 66,528.00 |
| Samuel S Jacobs | Associate | 43.30 | 315.00 | 13,639.50 |
| Drew Lockard | Vice President | 283.80 | 350.00 | 99,330.00 |
| Salvador Caputto | Vice President | 267.50 | 400.00 | 107,000.00 |
| Jeffrey Webb | Vice President | 185.40 | 400.00 | 74,160.00 |
| Kevin Montague | Vice President | 144.90 | 400.00 | 57,960.00 |
| Michael Wagoner | Vice President | 120.30 | 420.00 | 50,526.00 |
| Terry Singla | Vice President | 216.60 | 425.00 | 92,055.00 |
| Robb McWilliams | Director | 233.70 | 440.00 | 102,828.00 |
| Tamie Vitek | Ind Contractor | 210.50 | 450.00 | 94,725.00 |
| Deborah Rieger-Paganis | Director | 179.00 | 480.00 | 85,920.00 |
| Henry Colvin | Director | 74.60 | 495.00 | 36,927.00 |
| Greg Orler | Director | 170.40 | 495.00 | 84,348.00 |
| Bryan Porter | Director | 31.20 | 520.00 | 16,224.00 |
| Thomas Osmun | Director | 219.00 | 525.00 | 114,975.00 |
| David Johnston | Director | 184.50 | 525.00 | 96,862.50 |
| Steven Hodkinson | Director | 237.50 | 575.00 | 136,562.50 |
| Jared Yerian | Managing Dir. | 31.30 | 590.00 | 18,467.00 |
| John Castellano | Managing Dir. | 176.70 | 600.00 | 106,020.00 |
| Barry Folse | Managing Dir. | 171.50 | 600.00 | 102,900.00 |
| Jared Yerian | Managing Dir. | 82.60 | 625.00 | 51,625.00 |
| Michael Feder | Managing Dir. | 143.80 | 675.00 | 97,065.00 |



| Current Charges: | | Hours | Rate | Amount |
|---|---|---|---|---|
| Lisa Donahue | Managing Dir. | 180.50 | 725.00 | 130,862.50 |
| Total Hours & Fees | | 5,091.35 | | 2,171,911.00 |
| | | | | |
| Less 50% Calpine Corp - Travel | | | | (153,925.00) |
| | | | | |
| Subtotal | | | | 2,017,986.00 |
| Less 20% Holdback | | | | (403,597.20) |
| Subtotal | | | | 1,614,388.80 |
| Expenses | | | | 111,027.21 |
| **Total Amount Due** | | | USD | **1,725,416.01** |

**AP**Services LLC

Greg Doody
Executive Vice President and General Counsel
Calpine Corporation
717 Texas Avenue, Suite 1000
Houston, TX 77002

### Summary of Professional Fees by Matter Code
### For the Period May 1, 2007 through May 31, 2007

| Project Code | Description | Amount |
|---|---|---|
| 004200.00001 | Calpine Corp - Cash Management | 230,658.00 |
| 004200.00002 | Calpine Corp - Travel | 153,925.00 |
| 004200.00004 | Calpine Corp - Restructuring | 271,384.50 |
| 004200.00009 | Calpine Corp - CMS - Claims | 542,414.50 |
| 004200.00011 | Creditor Information Requests | 3,037.50 |
| 004200.00012 | Accounts Payable Issues | 2,320.00 |
| 004200.00013 | General Bankruptcy Support | 124,057.50 |
| 004200.00021 | MOR | 12,740.00 |
| 004200.00022 | Calpine Corp - Solvency Analysis | 18,467.00 |
| 004200.00024 | Calpine Corp - Sub-Con/Intercompany Analysis | 104,525.00 |
| 004200.00025 | CFO Duties | 104,762.50 |
| 004200.00027 | Calpine Corp - Rosetta Transaction | 2,137.50 |
| 004200.00028 | Calpine Corp - Accounting Reorganization | 226,567.50 |
| 004200.00029 | Calpine Corp - Rumford Tiverton Analysis | 104,609.50 |
| 004200.00030 | Calpine Corp - Interim Corporate Controller Dut | 116,380.00 |
| **Total Fees Incurred** | | **2,017,986.00** |

 **AP**Services LLC

Greg Doody
Executive Vice President and General Counsel
Calpine Corporation
717 Texas Avenue, Suite 1000
Houston, TX 77002

**Summary of Expenses**
**For the Period May 1, 2007 through May 3, 2007**

| Expenses | Amount |
|---|---|
| Airfare Change Fees | 231.10 |
| Airfare | 35,837.20 |
| Airfare Service Charge | 2,200.75 |
| Cab Fare/Ground Transportation | 10,268.34 |
| Computer Supplies / Support | 128.49 |
| Lodging | 39,099.94 |
| Meals & Tips | 14,547.92 |
| Mileage | 1,016.58 |
| Other | 1,131.59 |
| Overnight Mail Charges | 662.24 |
| Parking & Tolls | 2,013.95 |
| Rental Car | 4,195.15 |
| Credit | -341.00 |
| Supplies | 34.96 |
| **Total Disbursements** | **111,027.21** |



Chicago  Dallas  Detroit  Düsseldorf  London
Los Angeles  Milan  Munich  New York  Tokyo



Chicago  Dallas  Detroit  Düsseldorf  London
Los Angeles  Milan  Munich  New York  Tokyo

September 6, 2007

Greg Doody
Executive Vice President and General Counsel
Calpine Corporation
717 Texas Avenue, Suite 1000
Houston, TX 77002

Re: Calpine Corporation, et. al.,
    Case No. 05-60200 (BRL) Jointly Administered
    Monthly Fee Statement for period July 1, 2007 through July 31, 2007

Dear Mr. Doody:

Enclosed please find the fee statement (the "Fee Statement") of AP Services, LLC ("APS"), for services rendered to the debtors in the above-referenced bankruptcy proceedings (collectively, the "Debtors") and expenses incurred from July 1, 2007 through July 31, 2007 (the "Fee Statement Period"). We have also enclosed a detailed listing of the services provided by APS to the Debtors and the related disbursements.

Pursuant to the Administrative Order Establishing Procedures for Interim Compensation and Reimbursement of Expenses of Professionals as entered by the Bankruptcy Court on January 4, 2006 (the "Order"), APS is entitled to request payment of 80% of its fees and 100% of its expenses at this time, with the remaining 20% of fees subject to the approval of the Bankruptcy Court in a quarterly fee application.

Specifically, at this time APS is requesting $1,133,917.00 in fees (i.e. 80% of $1,417,396.25) and $96,675.41 in expenses, for a total of $1,230,592.41 in fees and expenses for the Fee Statement Period.

2000 Town Center  |  Suite 2400  |  Southfield, MI  |  48075  |  248.358.4420  |  248.358.1969 fax  |  www.alixpartners.com

**AP**Services LLC

Chicago Dallas Detroit Düsseldorf London
Los Angeles Milan Munich New York Tokyo

If none of the interested parties identified in the Order object to the Fee Statement fifteen days from the date of this letter the Debtors are authorized to pay the total amount requested herein by APS, which is $1,230,592.41 subject to the conditions specified herein.

Lisa J. Donahue, Managing Director
AP Services, LLC

APServices LLC

Greg Doody
Executive Vice President and General Counsel
Calpine Corporation
717 Texas Avenue, Suite 1000
Houston, TX 77002

### Summary of Professional Fees
### For the Period July 1, 2007 through July 31, 2007

| Current Charges: | | Hours | Rate | Amount |
|---|---|---|---|---|
| Julia Mysinger | Paraprofessional | 125.00 | 110.00 | 13,750.00 |
| Amanda Knudsen | Analyst | 184.40 | 230.00 | 42,412.00 |
| Timothy Rosolio | Analyst | 188.70 | 230.00 | 43,401.00 |
| Gabe Greenbaum | Associate | 216.50 | 315.00 | 68,197.50 |
| Samuel S Jacobs | Associate | 7.80 | 315.00 | 2,457.00 |
| Christopher Anderson | Associate | 30.70 | 315.00 | 9,670.50 |
| Chad Tolleson | Associate | 197.20 | 315.00 | 62,118.00 |
| Robert Albergotti | Associate | 204.90 | 315.00 | 64,543.50 |
| Drew Lockard | Vice President | 187.90 | 350.00 | 65,765.00 |
| Salvador Caputto | Vice President | 112.20 | 400.00 | 44,880.00 |
| Kevin Montague | Vice President | 56.10 | 400.00 | 22,440.00 |
| Jeffrey Webb | Vice President | 170.60 | 400.00 | 68,240.00 |
| Michael Wagoner | Vice President | 195.50 | 420.00 | 82,110.00 |
| Terry Singla | Vice President | 216.10 | 425.00 | 91,842.50 |
| Robb McWilliams | Director | 194.20 | 440.00 | 85,448.00 |
| Tamie Vitek | Ind Contractor | 89.20 | 450.00 | 40,140.00 |
| Greg Orler | Director | 170.40 | 495.00 | 84,348.00 |
| Bryan Porter | Director | 18.60 | 520.00 | 9,672.00 |
| Deborah Rieger-Paganis | Director | 155.20 | 525.00 | 81,480.00 |
| Thomas Osmun | Director | 2.80 | 525.00 | 1,470.00 |
| David Johnston | Director | 126.70 | 525.00 | 66,517.50 |
| Steven Hodkinson | Director | 214.00 | 575.00 | 123,050.00 |
| John Castellano | Managing Dir. | 200.00 | 600.00 | 120,000.00 |
| Barry Folse | Managing Dir. | 125.80 | 600.00 | 75,480.00 |
| Douglas Jung | Managing Dir. | 0.70 | 600.00 | 420.00 |
| Jared Yerian | Managing Dir. | 13.20 | 625.00 | 8,250.00 |
| Lisa Donahue | Managing Dir. | 188.40 | 725.00 | 136,590.00 |
| Total Hours & Fees | | 3,592.80 | | 1,514,692.50 |
| | | | | |
| Less 50% Calpine Corp - Travel | | | | (97,296.25) |
| | | | | |
| Subtotal | | | | 1,417,396.25 |

AP Services LLC

| | |
|---|---:|
| Less 20% Holdback | (283,479.25) |
| Subtotal | 1,133,917.00 |
| Expenses | 96,675.41 |
| **Total Amount Due** | **USD     1,230,592.41** |



Greg Doody
Executive Vice President and General Counsel
Calpine Corporation
717 Texas Avenue, Suite 1000
Houston, TX 77002

### Summary of Professional Fees by Matter Code
### For the Period July 1, 2007 through July 31, 2007

| Project Code | Description | Amount |
|---|---|---:|
| 004200.00001 | Calpine Corp - Cash Management | 210,087.50 |
| 004200.00002 | Calpine Corp - Travel | 97,296.25 |
| 004200.00004 | Calpine Corp - Restructuring | 126,137.00 |
| 004200.00009 | Calpine Corp - CMS - Claims | 370,248.00 |
| 004200.00011 | Creditor Information Requests | 20,100.00 |
| 004200.00012 | Accounts Payable Issues | 5,840.00 |
| 004200.00013 | General Bankruptcy Support | 49,081.50 |
| 004200.00021 | MOR | 9,256.00 |
| 004200.00022 | Calpine Corp - Solvency Analysis | 4,062.50 |
| 004200.00024 | Calpine Corp - Sub-Con/Intercompany Analysis | 71,730.00 |
| 004200.00025 | CFO Duties | 101,790.00 |
| 004200.00027 | Calpine Corp - Rosetta Transaction | 6,644.50 |
| 004200.00028 | Calpine Corp - Accounting Reorganization | 244,900.50 |
| 004200.00030 | Calpine Corp - Interim Corporate Controller Duties | 100,222.50 |
| **Total Fees Incurred** | | **1,417,396.25** |



Greg Doody
Executive Vice President and General Counsel
Calpine Corporation
717 Texas Avenue, Suite 1000
Houston, TX 77002

## Summary of Expenses
### For the Period July 1, 2007 through July 31, 2007

| Expenses | Amount |
|---|---:|
| Airfare Change Fees | 395.65 |
| Airfare | 31,775.76 |
| Airfare Service Charge | 3,207.43 |
| Cab Fare/Ground Transportation | 8,649.91 |
| Computerized Research | 871.68 |
| Computer Supplies / Support | 56.96 |
| Lodging | 30,633.68 |
| Meals & Tips | 8,554.41 |
| Meeting Expenses | 190.49 |
| Mileage | 758.07 |
| Other | 956.03 |
| Overnight Mail Charges | 410.39 |
| Parking & Tolls | 2,882.02 |
| Rental Car | 7,332.93 |
| **Total Disbursements** | **96,675.41** |

APServices LLC

Chicago  Dallas  Detroit  Düsseldorf  London
Los Angeles  Milan  Munich  New York  Tokyo

September 27, 2007

Greg Doody
Executive Vice President and General Counsel
Calpine Corporation
717 Texas Avenue, Suite 1000
Houston, TX 77002

Re: Calpine Corporation, et. al.,
    Case No. 05-60200 (BRL) Jointly Administered
    Monthly Fee Statement for period August 1, 2007 through August 31, 2007

Dear Mr. Doody:

Enclosed please find the fee statement (the "Fee Statement") of AP Services, LLC ("APS"), for services rendered to the debtors in the above-referenced bankruptcy proceedings (collectively, the "Debtors") and expenses incurred from August 1, 2007 through August 31, 2007 (the "Fee Statement Period"). We have also enclosed a detailed listing of the services provided by APS to the Debtors and the related disbursements.

Pursuant to the Administrative Order Establishing Procedures for Interim Compensation and Reimbursement of Expenses of Professionals as entered by the Bankruptcy Court on January 4, 2006 (the "Order"), APS is entitled to request payment of 80% of its fees and 100% of its expenses at this time, with the remaining 20% of fees subject to the approval of the Bankruptcy Court in a quarterly fee application.

Specifically, at this time APS is requesting $1,174,360.00 in fees (i.e. 80% of $1,467,950.00) and $63,527.00 in expenses, for a total of $1,237,887.00 in fees and expenses for the Fee Statement Period.


**APServices** LLC

Greg Doody
September 27, 2007
Page 2

If none of the interested parties identified in the Order object to the Fee Statement fifteen days from the date of this letter the Debtors are authorized to pay the total amount requested herein by APS, which is $1,237,887.00 subject to the conditions specified herein.

Lisa J. Donahue, Managing Director
AP Services, LLC



Greg Doody
Executive Vice President and General Counsel
Calpine Corporation
717 Texas Avenue, Suite 1000
Houston, TX 77002

### Summary of Professional Fees
### For the Period August 1, 2007 through August 31, 2007

| Current Charges: | | Hours | Rate | Amount |
|---|---|---|---|---|
| Julia Mysinger | Paraprofessional | 117.20 | 110.00 | 12,892.00 |
| Kathleen Todd | Analyst | 21.00 | 210.00 | 4,410.00 |
| Amanda Knudsen | Analyst | 169.20 | 230.00 | 38,916.00 |
| Timothy Rosolio | Analyst | 167.90 | 230.00 | 38,617.00 |
| Nick Heinz | Associate | 92.75 | 315.00 | 29,216.25 |
| Gabe Greenbaum | Associate | 210.20 | 315.00 | 66,213.00 |
| Samuel S Jacobs | Associate | 27.65 | 315.00 | 8,709.75 |
| Ryan Thurber-Dean | Associate | 26.50 | 315.00 | 8,347.50 |
| Chad Tolleson | Associate | 175.80 | 315.00 | 55,377.00 |
| Robert Albergotti | Associate | 247.10 | 315.00 | 77,836.50 |
| Drew Lockard | Vice President | 194.10 | 350.00 | 67,935.00 |
| Salvador Caputto | Vice President | 104.80 | 400.00 | 41,920.00 |
| Kevin Montague | Vice President | 131.90 | 400.00 | 52,760.00 |
| Jeffrey Webb | Vice President | 216.60 | 400.00 | 86,640.00 |
| Michael Wagoner | Vice President | 61.20 | 420.00 | 25,704.00 |
| Kurt J Kauth | Vice President | 148.30 | 420.00 | 62,286.00 |
| Terry Singla | Vice President | 161.20 | 425.00 | 68,510.00 |
| Robb McWilliams | Director | 145.90 | 440.00 | 64,196.00 |
| Greg Orler | Director | 155.90 | 495.00 | 77,170.50 |
| Henry Colvin | Director | 1.90 | 495.00 | 940.50 |
| Bryan Porter | Director | 19.40 | 520.00 | 10,088.00 |
| David Johnston | Director | 111.20 | 525.00 | 58,380.00 |
| Deborah Rieger-Paganis | Director | 165.30 | 525.00 | 86,782.50 |
| Steven Hodkinson | Director | 172.60 | 575.00 | 99,245.00 |
| John Castellano | Managing Dir. | 232.50 | 600.00 | 139,500.00 |
| Barry Folse | Managing Dir. | 152.70 | 600.00 | 91,620.00 |
| Jared Yerian | Managing Dir. | 129.70 | 625.00 | 81,062.50 |
| Lisa Donahue | Managing Dir. | 156.70 | 725.00 | 113,607.50 |



| | | |
|---|---|---|
| Total Hours & Fees | 3,717.20 | 1,568,882.50 |
| Less 50% Travel | | (100,932.50) |
| Subtotal | | 1,467,950.00 |
| Less 20% Holdback | | (293,590.00) |
| Subtotal | | 1,174,360.00 |
| Expenses | | 63,527.00 |
| **Total Amount Due** | | **USD   1,237,887.00** |



Greg Doody
Executive Vice President and General Counsel
Calpine Corporation
717 Texas Avenue, Suite 1000
Houston, TX 77002

### Summary of Professional Fees by Matter Code
### For the Period August 1, 2007 through August 31, 2007

| Project Code | Description | Amount |
|---|---|---|
| 004200.00001 | Calpine Corp - Cash Management | 170,217.50 |
| 004200.00002 | Calpine Corp - 50% Non-billableTravel | 100,932.50 |
| 004200.00004 | Calpine Corp - Restructuring | 167,197.50 |
| 004200.00009 | Calpine Corp - CMS - Claims | 372,289.50 |
| 004200.00011 | Creditor Information Requests | 73,315.00 |
| 004200.00012 | Accounts Payable Issues | 12,360.00 |
| 004200.00013 | General Bankruptcy Support | 3,705.00 |
| 004200.00019 | Preferences | 22,439.00 |
| 004200.00021 | MOR | 4,784.00 |
| 004200.00025 | CFO Duties | 83,157.50 |
| 004200.00027 | Calpine Corp - Rosetta Transaction | 30,856.25 |
| 004200.00028 | Calpine Corp - Accounting Reorganization | 209,386.50 |
| 004200.00030 | Calpine Corp - Interim Corporate Controller Duties | 74,865.00 |
| 004200.00033 | Unresolved Claims Analysis | 142,444.75 |
| **Total Fees Incurred** | | **1,467,950.00** |

 **AP**Services LLC

Greg Doody
Executive Vice President and General Counsel
Calpine Corporation
717 Texas Avenue, Suite 1000
Houston, TX 77002

**Summary of Expenses**
**For the Period August 1, 2007 through August 31, 2007**

| Expenses | Amount |
|---|---|
| Airfare Change Fees | 261.01 |
| Airfare | 10,518.92 |
| Airfare Service Charge | 1,312.33 |
| Cab Fare/Ground Transportation | 9,915.52 |
| Computer Supplies / Support | 29.70 |
| Lodging | 24,234.30 |
| Meals & Tips | 5,876.59 |
| Meeting Expenses | 139.16 |
| Mileage | 538.36 |
| Other | 873.90 |
| Overnight Mail Charges | 404.41 |
| Parking & Tolls | 2,978.74 |
| Rental Car | 6,444.06 |
| **Total Disbursements** | **63,527.00** |


**AP**Services LLC

November 2, 2007

Greg Doody
Executive Vice President and General Counsel
Calpine Corporation
717 Texas Avenue, Suite 1000
Houston, TX 77002

Re: Calpine Corporation, et. al.,
    Case No. 05-60200 (BRL) Jointly Administered
    Monthly Fee Statement for period September 1, 2007 through September 30, 2007

Dear Mr. Doody:

Enclosed please find the fee statement (the "Fee Statement") of AP Services, LLC ("APS"), for services rendered to the debtors in the above-referenced bankruptcy proceedings (collectively, the "Debtors") and expenses incurred from September 1, 2007 through September 30, 2007 (the "Fee Statement Period"). We have also enclosed a detailed listing of the services provided by APS to the Debtors and the related disbursements.

Pursuant to the Administrative Order Establishing Procedures for Interim Compensation and Reimbursement of Expenses of Professionals as entered by the Bankruptcy Court on January 4, 2006 (the "Order"), APS is entitled to request payment of 80% of its fees and 100% of its expenses at this time, with the remaining 20% of fees subject to the approval of the Bankruptcy Court in a quarterly fee application.

Specifically, at this time APS is requesting $1,076,629.20 in fees (i.e. 80% of $1,345,786.50) and $85,282.72 in expenses, for a total of $1,161,911.92 in fees and expenses for the Fee Statement Period.



APServices LLC

Greg Doody
November 2, 2007
Page 2

If none of the interested parties identified in the Order object to the Fee Statement fifteen days from the date of this letter the Debtors are authorized to pay the total amount requested herein by APS, which is $1,161,911.92 subject to the conditions specified herein.

Lisa J. Donahue, Managing Director
AP Services, LLC



Greg Doody
Executive Vice President and General Counsel
Calpine Corporation
717 Texas Avenue, Suite 1000
Houston, TX 77002

## Summary of Professional Fees
### For the Period September 1, 2007 through September 30, 2007

| Current Charges: | | Hours | Rate | Amount |
|---|---|---|---|---|
| Julia Mysinger | Paraprofessional | 78.00 | 110.00 | 8,580.00 |
| Kathleen Todd | Analyst | 8.00 | 210.00 | 1,680.00 |
| Amanda Knudsen | Analyst | 100.40 | 230.00 | 23,092.00 |
| Timothy Rosolio | Analyst | 186.50 | 230.00 | 42,895.00 |
| Nick Heinz | Associate | 80.75 | 315.00 | 25,436.25 |
| Gabe Greenbaum | Associate | 149.00 | 315.00 | 46,935.00 |
| Samuel S Jacobs | Associate | 50.90 | 315.00 | 16,033.50 |
| Chad Tolleson | Associate | 157.50 | 315.00 | 49,612.50 |
| Robert Albergotti | Associate | 241.20 | 315.00 | 75,978.00 |
| Drew Lockard | Vice President | 130.80 | 350.00 | 45,780.00 |
| Salvador Caputto | Vice President | 29.00 | 400.00 | 11,600.00 |
| Brett Roberson | Vice President | 34.30 | 400.00 | 13,720.00 |
| Kevin Montague | Vice President | 137.20 | 400.00 | 54,880.00 |
| Jeffrey Webb | Vice President | 190.40 | 400.00 | 76,160.00 |
| Kurt J Kauth | Vice President | 158.10 | 420.00 | 66,402.00 |
| Terry Singla | Vice President | 6.20 | 425.00 | 2,635.00 |
| Robb McWilliams | Director | 158.90 | 440.00 | 69,916.00 |
| Walt Manning | Director | 26.10 | 495.00 | 12,919.50 |
| Sean Renshaw | Director | 29.10 | 495.00 | 14,404.50 |
| Greg Orler | Director | 196.10 | 495.00 | 97,069.50 |
| Bryan Porter | Director | 7.70 | 520.00 | 4,004.00 |
| Deborah Rieger-Paganis | Director | 210.50 | 525.00 | 110,512.50 |
| David Johnston | Director | 81.00 | 525.00 | 42,525.00 |
| Steven Hodkinson | Director | 195.70 | 575.00 | 112,527.50 |
| John Castellano | Managing Dir. | 208.70 | 600.00 | 125,220.00 |
| Barry Folse | Managing Dir. | 81.45 | 600.00 | 48,870.00 |
| Steven Ambort | Managing Dir. | 12.40 | 625.00 | 7,750.00 |
| Jared Yerian | Managing Dir. | 173.90 | 625.00 | 108,687.50 |
| Lisa Donahue | Managing Dir. | 161.00 | 725.00 | 116,725.00 |
| Total Hours & Fees | | 3,280.80 | | 1,432,550.25 |

# APServices LLC

| | |
|---|---|
| Less 50% Non-billable Travel | (86,763.75) |
| Subtotal | 1,345,786.50 |
| Less 20% Holdback | (269,157.30) |
| Sub Total | 1,076,629.20 |
| Expenses | 85,282.72 |
| **Total Amount Due** | **USD 1,161,911.92** |

 **AP**Services LLC

Greg Doody
Executive Vice President and General Counsel
Calpine Corporation
717 Texas Avenue, Suite 1000
Houston, TX 77002

## Summary of Professional Fees by Matter Code
### For the Period September 1, 2007 through September 30, 2007

| Project Code | Description | Amount |
|---|---|---|
| 004200.00001 | Calpine Corp - Cash Management | 95,855.50 |
| 004200.00002 | Calpine Corp - 50% Non-billable Travel | 86,763.75 |
| 004200.00004 | Calpine Corp - Restructuring | 172,104.50 |
| 004200.00009 | Calpine Corp - CMS - Claims | 294,347.50 |
| 004200.00011 | Creditor Information Requests | 6,600.00 |
| 004200.00013 | General Bankruptcy Support | 10,761.00 |
| 004200.00019 | Preferences | 1,840.00 |
| 004200.00021 | MOR | 4,004.00 |
| 004200.00024 | Calpine Corp - Sub-Con/Intercompany Analysis | 35,812.50 |
| 004200.00025 | CFO Duties | 89,175.00 |
| 004200.00027 | Calpine Corp - Rosetta Transaction | 29,018.25 |
| 004200.00028 | Calpine Corp - Accounting Reorganization | 234,297.00 |
| 004200.00030 | Calpine Corp - Interim Corporate Controller Duties | 90,677.50 |
| 004200.00033 | Unresolved Claims Analysis | 156,456.00 |
| 004200.00034 | Calpine Corp - E-discovery | 38,074.00 |
| **Total Fees Incurred** | | **1,345,786.50** |

 **APServices** LLC

Greg Doody
Executive Vice President and General Counsel
Calpine Corporation
717 Texas Avenue, Suite 1000
Houston, TX 77002

## Summary of Expenses
### For the Period September 1, 2007 through September 30, 2007

| Expenses | Amount |
|---|---:|
| Airfare Change Fees | 676.70 |
| Airfare | 20,609.44 |
| Airfare Service Charge | 2,221.61 |
| Cab Fare/Ground Transportation | 8,390.28 |
| Computer Supplies / Support | 56.31 |
| Copy Costs (Outside Source) | 2,064.52 |
| Lodging | 28,798.91 |
| Meals & Tips | 7,750.05 |
| Mileage | 621.31 |
| Other | 975.75 |
| Overnight Mail Charges | 739.85 |
| Parking & Tolls | 3,559.36 |
| Rental Car | 8,818.63 |
| **Total Disbursements** | **85,282.72** |

December 4, 2007

~~Greg Doody~~
Executive Vice President and General Counsel
Calpine Corporation
717 Texas Avenue, Suite 1000
Houston, TX 77002

Re: Calpine Corporation, et. al.,
    Case No. 05-60200 (BRL) Jointly Administered
    Monthly Fee Statement for period October 1, 2007 through October 31, 2007

Dear Mr. Doody:

Enclosed please find the fee statement (the "Fee Statement") of AP Services, LLC ("APS"), for services rendered to the debtors in the above-referenced bankruptcy proceedings (collectively, the "Debtors") and expenses incurred from October 1, 2007 through October 31, 2007 (the "Fee Statement Period"). We have also enclosed a detailed listing of the services provided by APS to the Debtors and the related disbursements.

Pursuant to the Administrative Order Establishing Procedures for Interim Compensation and Reimbursement of Expenses of Professionals as entered by the Bankruptcy Court on January 4, 2006 (the "Order"), APS is entitled to request payment of 80% of its fees and 100% of its expenses at this time, with the remaining 20% of fees subject to the approval of the Bankruptcy Court in a quarterly fee application.

Specifically, at this time APS is requesting $1,539,339.00 in fees (i.e. 80% of $1,924,173.75) and $136,705.28 in expenses, for a total of $1,676,044.28 in fees and expenses for the Fee Statement Period.



Greg Doody
December 4, 2007
Page 2

If none of the interested parties identified in the Order object to the Fee Statement fifteen days from the date of this letter the Debtors are authorized to pay the total amount requested herein by APS, which is $1,676,044.28 subject to the conditions specified herein.

Lisa J. Donahue, Managing Director
AP Services, LLC



Greg Doody
Executive Vice President and General Counsel
Calpine Corporation
717 Texas Avenue, Suite 1000
Houston, TX 77002

## Summary of Professional Fees
### For the Period October 1, 2007 through October 31, 2007

| Current Charges: | | Hours | Rate | Amount |
|---|---|---|---|---|
| Julia Mysinger | Paraprofessional | 61.60 | 110.00 | 6,776.00 |
| Jessica Cowart | Paraprofessional | 12.80 | 110.00 | 1,408.00 |
| Brandon Pearson | Administrative | 16.50 | 150.00 | 2,475.00 |
| John Niesen | Administrative | 1.50 | 150.00 | 225.00 |
| Kathleen Todd | Analyst | 32.00 | 210.00 | 6,720.00 |
| Deanna Berlin | Analyst | 3.00 | 210.00 | 630.00 |
| Amanda Knudsen | Analyst | 54.40 | 230.00 | 12,512.00 |
| Timothy Rosolio | Analyst | 203.00 | 230.00 | 46,690.00 |
| Steven Fratus | Associate | 37.90 | 260.00 | 9,854.00 |
| Ryan Thurber-Dean | Associate | 10.50 | 315.00 | 3,307.50 |
| Chad Tolleson | Associate | 84.50 | 315.00 | 26,617.50 |
| Robert Albergotti | Associate | 246.00 | 315.00 | 77,490.00 |
| Samuel S Jacobs | Associate | 40.15 | 315.00 | 12,647.25 |
| Gabe Greenbaum | Associate | 167.70 | 315.00 | 52,825.50 |
| Nick Heinz | Associate | 101.50 | 315.00 | 31,972.50 |
| Drew Lockard | Vice President | 31.80 | 350.00 | 11,130.00 |
| Allan Hsu | Vice President | 0.50 | 350.00 | 175.00 |
| Kevin Montague | Vice President | 249.30 | 400.00 | 99,720.00 |
| Jeffrey Webb | Vice President | 225.50 | 400.00 | 90,200.00 |
| Salvador Caputto | Vice President | 67.10 | 400.00 | 26,840.00 |
| David Sikorski | Vice President | 32.80 | 400.00 | 13,120.00 |
| Brett Roberson | Vice President | 99.50 | 400.00 | 39,800.00 |
| Kurt J Kauth | Vice President | 206.90 | 420.00 | 86,898.00 |
| Terry Singla | Vice President | 272.70 | 425.00 | 115,897.50 |
| Robb McWilliams | Director | 241.00 | 440.00 | 106,040.00 |
| Dean Lindo | Vice President | 255.10 | 450.00 | 114,795.00 |
| Walt Manning | Director | 105.40 | 495.00 | 52,173.00 |
| Daniel Goldwin | Director | 0.50 | 495.00 | 247.50 |
| Greg Orler | Director | 218.50 | 495.00 | 108,157.50 |



| Current Charges: | | Hours | Rate | Amount |
|---|---|---|---|---|
| Sean Renshaw | Director | 120.30 | 495.00 | 59,548.50 |
| Henry Colvin | Director | 3.90 | 495.00 | 1,930.50 |
| Bryan Porter | Director | 11.30 | 520.00 | 5,876.00 |
| David Johnston | Director | 67.10 | 525.00 | 35,227.50 |
| Deborah Rieger-Paganis | Director | 194.20 | 525.00 | 101,955.00 |
| Steven Hodkinson | Director | 229.70 | 575.00 | 132,077.50 |
| John Castellano | Managing Dir. | 292.00 | 600.00 | 175,200.00 |
| Charles Cipione | Managing Dir. | 30.90 | 600.00 | 18,540.00 |
| Barry Folse | Managing Dir. | 40.40 | 600.00 | 24,240.00 |
| Steven Ambort | Managing Dir. | 36.50 | 625.00 | 22,812.50 |
| Jared Yerian | Managing Dir. | 260.50 | 625.00 | 162,812.50 |
| Lisa Donahue | Managing Dir. | 232.10 | 725.00 | 168,272.50 |
| Total Hours & Fees | | 4,598.55 | | 2,065,836.25 |
| Less 50% Travel | | | | (141,662.50) |
| Subtotal | | | | 1,924,173.75 |
| Less 20% Holdback | | | | (384,834.75) |
| Subtotal | | | | 1,539,339.00 |
| Expenses | | | | 136,705.28 |
| **Total Amount Due** | | | USD | 1,676,044.28 |



Greg Doody
Executive Vice President and General Counsel
Calpine Corporation
717 Texas Avenue, Suite 1000
Houston, TX 77002

## Summary of Professional Fees by Matter Code
### For the Period October 1, 2007 through October 31, 2007

| Project Code | Description | Amount |
|---|---|---|
| 004200.00001 | Calpine Corp - Cash Management | 87,398.00 |
| 004200.00002 | Calpine Corp - 50% Non-billable Travel | 141,662.50 |
| 004200.00004 | Calpine Corp - Restructuring | 234,092.00 |
| 004200.00009 | Calpine Corp - CMS - Claims | 223,241.50 |
| 004200.00011 | Creditor Information Requests | 4,201.50 |
| 004200.00012 | Accounts Payable Issues | 5,600.00 |
| 004200.00013 | General Bankruptcy Support | 9,195.00 |
| 004200.00019 | Preferences | 4,234.00 |
| 004200.00021 | MOR | 5,096.00 |
| 004200.00024 | Calpine Corp - Sub-Con/Intercompany Analysis | 276,841.50 |
| 004200.00025 | CFO Duties | 124,772.50 |
| 004200.00027 | Calpine Corp - Rosetta Transaction | 53,432.25 |
| 004200.00028 | Calpine Corp  - Accounting Reorganization | 371,715.00 |
| 004200.00030 | Calpine Corp - Interim Corporate Controller Duties | 107,122.50 |
| 004200.00033 | Unresolved Claims Analysis | 111,442.50 |
| 004200.00034 | Calpine Corp - E-discovery | 164,127.00 |
| **Total Fees Incurred** | | **1,924,173.75** |



Greg Doody
Executive Vice President and General Counsel
Calpine Corporation
717 Texas Avenue, Suite 1000
Houston, TX 77002

**Summary of Expenses**
**For the Period October 1, 2007 through October 31, 2007**

| Expenses | Amount |
|---|---|
| Airfare Change Fees | 771.50 |
| Airfare | 44,476.88 |
| Airfare Service Charge | 5,623.55 |
| Cab Fare/Ground Transportation | 13,154.65 |
| Computerized Research | 712.37 |
| Computer Supplies / Support | 232.28 |
| Copy Costs (Outside Source) | 918.66 |
| Lodging | 43,639.32 |
| Meals & Tips | 10,027.31 |
| Meeting Expenses | 341.41 |
| Mileage | 891.73 |
| Other | 1,187.05 |
| Overnight Mail Charges | 1,374.24 |
| Parking & Tolls | 3,674.28 |
| Rental Car | 9,594.78 |
| Supplies | 85.27 |
| **Total Disbursements** | **136,705.28** |


December 19, 2007

Greg Doody
Executive Vice President and General Counsel
Calpine Corporation
717 Texas Avenue, Suite 1000
Houston, TX 77002

Re: Calpine Corporation, et. al.,
      Case No. 05-60200 (BRL) Jointly Administered
      Monthly Fee Statement for period November 1, 2007 through November 30, 2007

Dear Mr. Doody:

Enclosed please find the fee statement (the "Fee Statement") of AP Services, LLC ("APS"), for
services rendered to the debtors in the above-referenced bankruptcy proceedings (collectively, the
"Debtors") and expenses incurred from November 1, 2007 through November 30, 2007 (the "Fee
Statement Period"). We have also enclosed a detailed listing of the services provided by APS to
the Debtors and the related disbursements.

Pursuant to the Administrative Order Establishing Procedures for Interim Compensation and
Reimbursement of Expenses of Professionals as entered by the Bankruptcy Court on January 4,
2006 (the "Order"), APS is entitled to request payment of 80% of its fees and 100% of its
expenses at this time, with the remaining 20% of fees subject to the approval of the Bankruptcy
Court in a quarterly fee application.

Specifically, at this time APS is requesting $1,144,132.40 in fees (i.e. 80% of $1,426,415.50) and
$89,804.14 in expenses, for a total of $1,233,936.54 in fees and expenses for the Fee Statement
Period.



If none of the interested parties identified in the Order object to the Fee Statement fifteen days from the date of this letter the Debtors are authorized to pay the total amount requested herein by APS, which is $1,233,936.54 subject to the conditions specified herein.

Lisa J. Donahue, Managing Director
AP Services, LLC



Greg Doody
Executive Vice President and General Counsel
Calpine Corporation
717 Texas Avenue, Suite 1000
Houston, TX 77002

### Summary of Professional Fees
### For the Period November 1, 2007 through November 30, 2007

| Current Charges: | | Hours | Rate | Amount |
|---|---|---|---|---|
| Julia Mysinger | Paraprofessional | 120.60 | 110.00 | 13,266.00 |
| Jessica Cowart | Paraprofessional | 3.70 | 110.00 | 407.00 |
| Brandon Pearson | Administrative | 11.00 | 150.00 | 1,650.00 |
| John Niesen | Administrative | 1.00 | 150.00 | 150.00 |
| Kathleen Todd | Analyst | 14.75 | 210.00 | 3,097.50 |
| Amanda Knudsen | Analyst | 20.20 | 230.00 | 4,646.00 |
| Timothy Rosolio | Analyst | 208.10 | 230.00 | 47,863.00 |
| Nick Heinz | Associate | 35.25 | 315.00 | 11,103.75 |
| Chad Tolleson | Associate | 70.10 | 315.00 | 22,081.50 |
| Robert Albergotti | Associate | 148.70 | 315.00 | 46,840.50 |
| Samuel S Jacobs | Associate | 1.00 | 315.00 | 315.00 |
| Gabe Greenbaum | Associate | 122.90 | 315.00 | 38,713.50 |
| Allan Hsu | Vice President | 17.00 | 350.00 | 5,950.00 |
| Salvador Caputto | Vice President | 114.20 | 400.00 | 45,680.00 |
| Kevin Montague | Vice President | 168.70 | 400.00 | 67,480.00 |
| Jeffrey Webb | Vice President | 183.10 | 400.00 | 73,240.00 |
| Brett Roberson | Vice President | 31.10 | 400.00 | 12,440.00 |
| Kurt J Kauth | Vice President | 182.20 | 420.00 | 76,524.00 |
| Terry Singla | Vice President | 206.50 | 425.00 | 87,762.50 |
| Robb McWilliams | Director | 212.00 | 440.00 | 93,280.00 |
| Dean Lindo | Vice President | 221.40 | 450.00 | 99,630.00 |
| Walt Manning | Director | 8.70 | 495.00 | 4,306.50 |
| Greg Orler | Director | 163.40 | 495.00 | 80,883.00 |
| Sean Renshaw | Director | 17.60 | 495.00 | 8,712.00 |
| Henry Colvin | Director | 1.20 | 495.00 | 594.00 |
| Bryan Porter | Director | 11.30 | 520.00 | 5,876.00 |
| David Johnston | Director | 85.90 | 525.00 | 45,097.50 |
| Deborah Rieger-Paganis | Director | 171.70 | 525.00 | 90,142.50 |
| Steven Hodkinson | Director | 194.40 | 575.00 | 111,780.00 |



| Current Charges: | | Hours | Rate | Amount |
|---|---|---|---|---|
| John Castellano | Managing Dir. | 204.40 | 600.00 | 122,640.00 |
| Barry Folse | Managing Dir. | 52.50 | 600.00 | 31,500.00 |
| Jared Yerian | Managing Dir. | 197.60 | 625.00 | 123,500.00 |
| Steven Ambort | Managing Dir. | 22.10 | 625.00 | 13,812.50 |
| Lisa Donahue | Managing Dir. | 202.20 | 725.00 | 146,595.00 |
| Total Hours & Fees | | 3,426.50 | | 1,537,559.25 |
| Less 50%Travel | | | | (111,143.75) |
| Subtotal | | | | 1,426,415.50 |
| Less 20% Holdback | | | | (285,283.10) |
| Subtotal | | | | 1,144,132.40 |
| Expenses | | | | 89,804.14 |
| **Total Amount Due** | | | USD | **1,233,936.54** |

APServices LLC

Greg Doody
Executive Vice President and General Counsel
Calpine Corporation
717 Texas Avenue, Suite 1000
Houston, TX 77002

## Summary of Professional Fees by Matter Code
### For the Period November 1, 2007 through November 30, 2007

| Project Code | Description | Amount |
|---|---|---|
| 004200.00001 | Calpine Corp - Cash Management | 78,760.50 |
| 004200.00002 | Calpine Corp - 50% Non-billable Travel | 111,143.75 |
| 004200.00004 | Calpine Corp - Restructuring | 168,205.50 |
| 004200.00009 | Calpine Corp - CMS - Claims | 240,117.50 |
| 004200.00011 | Creditor Information Requests | 2,340.00 |
| 004200.00013 | General Bankruptcy Support | 7,020.00 |
| 004200.00019 | Preferences | 483.00 |
| 004200.00021 | MOR | 5,876.00 |
| 004200.00024 | Calpine Corp - Sub-Con/Intercompany Analysis | 219,845.00 |
| 004200.00025 | CFO Duties | 129,195.00 |
| 004200.00027 | Calpine Corp - Rosetta Transaction | 10,255.00 |
| 004200.00028 | Calpine Corp - Accounting Reorganization | 291,847.50 |
| 004200.00030 | Calpine Corp - Interim Corporate Controller Duties | 87,170.00 |
| 004200.00033 | Unresolved Claims Analysis | 31,928.75 |
| 004200.00034 | Calpine Corp - E-discovery | 42,228.00 |
| **Total Fees Incurred** | | **1,426,415.50** |



Greg Doody
Executive Vice President and General Counsel
Calpine Corporation
717 Texas Avenue, Suite 1000
Houston, TX 77002

**Summary of Expenses**
**For the Period November 1, 2007 through November 30, 2007**

| Expenses | Amount |
|---|---|
| Airfare Change Fees | 1,119.38 |
| Airfare | 24,068.78 |
| Airfare Service Charge | 2,307.18 |
| Cab Fare/Ground Transportation | 7,787.77 |
| Computer Supplies / Support | 266.15 |
| Gas for Company Car | 31.76 |
| Lodging | 31,148.00 |
| Meals & Tips | 8,933.25 |
| Mileage | 61.60 |
| Other | 1,859.58 |
| Overnight Mail Charges | 687.06 |
| Parking & Tolls | 3,001.04 |
| Long Distance Calls | 0.50 |
| Postage Charges | 641.83 |
| Rental Car | 7,890.26 |
| **Total Disbursements** | **89,804.14** |



January 22, 2008

Greg Doody
Executive Vice President and General Counsel
Calpine Corporation
717 Texas Avenue, Suite 1000
Houston, TX 77002

Re: Calpine Corporation, et. al.,
    Case No. 05-60200 (BRL) Jointly Administered
    Monthly Fee Statement for period December 1, 2007 through December 31, 2007

Dear Mr. Doody:

Enclosed please find the fee statement (the "Fee Statement") of AP Services, LLC ("APS"), for services rendered to the debtors in the above-referenced bankruptcy proceedings (collectively, the "Debtors") and expenses incurred from December 1, 2007 through December 31, 2007 (the "Fee Statement Period"). We have also enclosed a detailed listing of the services provided by APS to the Debtors and the related disbursements.

Pursuant to the Administrative Order Establishing Procedures for Interim Compensation and Reimbursement of Expenses of Professionals as entered by the Bankruptcy Court on January 4, 2006 (the "Order"), APS is entitled to request payment of 80% of its fees and 100% of its expenses at this time, with the remaining 20% of fees subject to the approval of the Bankruptcy Court in a quarterly fee application.

Specifically, at this time APS is requesting $976,232.20 in fees (i.e. 80% of $1,220,290.25) and $80,953.99 in expenses, for a total of $1,057,186.19 in fees and expenses for the Fee Statement Period.

**AP**Services LLC

Greg Doody
January 22, 2008
Page 2

If none of the interested parties identified in the Order object to the Fee Statement fifteen days from the date of this letter the Debtors are authorized to pay the total amount requested herein by APS, which is $1,057,186.19 subject to the conditions specified herein.

Lisa J. Donahue, Managing Director
AP Services, LLC

# APServices LLC

Greg Doody
Executive Vice President and General Counsel
Calpine Corporation
717 Texas Avenue, Suite 1000
Houston, TX 77002

## Summary of Professional Fees
## For the Period December 1, 2007 through December 31, 2007

| Current Charges: | | Hours | Rate | Amount |
|---|---|---:|---:|---:|
| Julia Mysinger | Paraprofessional | 115.70 | 110.00 | 12,727.00 |
| Kathleen Todd | Analyst | 46.00 | 210.00 | 9,660.00 |
| Amanda Knudsen | Analyst | 0.60 | 230.00 | 138.00 |
| Timothy Rosolio | Analyst | 199.40 | 230.00 | 45,862.00 |
| Steven Fratus | Associate | 5.80 | 260.00 | 1,508.00 |
| Gabe Greenbaum | Associate | 132.70 | 315.00 | 41,800.50 |
| Chad Tolleson | Associate | 41.20 | 315.00 | 12,978.00 |
| Robert Albergotti | Associate | 129.10 | 315.00 | 40,666.50 |
| Salvador Caputto | Vice President | 203.40 | 400.00 | 81,360.00 |
| Brett Roberson | Vice President | 0.40 | 400.00 | 160.00 |
| Kevin Montague | Vice President | 119.50 | 400.00 | 47,800.00 |
| Jeffrey Webb | Vice President | 91.30 | 400.00 | 36,520.00 |
| Kurt J Kauth | Vice President | 164.50 | 420.00 | 69,090.00 |
| Terry Singla | Vice President | 182.60 | 425.00 | 77,605.00 |
| Robb McWilliams | Director | 222.30 | 440.00 | 97,812.00 |
| Dean Lindo | Vice President | 193.60 | 450.00 | 87,120.00 |
| Greg Orler | Director | 146.60 | 495.00 | 72,567.00 |
| Deborah Rieger-Paganis | Director | 164.00 | 525.00 | 86,100.00 |
| David Johnston | Director | 62.30 | 525.00 | 32,707.50 |
| Steven Hodkinson | Director | 166.00 | 575.00 | 95,450.00 |
| John Castellano | Managing Dir. | 164.50 | 600.00 | 98,700.00 |
| Barry Folse | Managing Dir. | 158.00 | 600.00 | 94,800.00 |
| Jared Yerian | Managing Dir. | 92.70 | 625.00 | 57,937.50 |
| Lisa Donahue | Managing Dir. | 141.80 | 725.00 | 102,805.00 |
| Total Hours & Fees | | 2,944.00 | | 1,303,874.00 |
| Less 50% Calpine Corp - 50% Non-billableTravel | | | | (83,583.75) |
| Subtotal | | | | 1,220,290.25 |
| Holdback 20% | | | | (244,058.05) |

APServices LLC

| | |
|---|---|
| Subtotal | 976,232.20 |
| Expenses | 80,953.99 |
| **Total Amount Due** | **USD 1,057,186.19** |

**AP**Services LLC

Chicago  Dallas  Detroit  Düsseldorf  London
Los Angeles  Milan  Munich  New York  Tokyo

Greg Doody
Executive Vice President and General Counsel
Calpine Corporation
717 Texas Avenue, Suite 1000
Houston, TX 77002

### Summary of Professional Fees by Matter Code
### For the Period December 1, 2007 through December 31, 2007

| Project Code | Description | Amount |
|---|---|---:|
| 004200.00001 | Calpine Corp - Cash Management | 65,388.50 |
| 004200.00002 | Calpine Corp - 50% Non-billable Travel | 83,583.75 |
| 004200.00004 | Calpine Corp - Restructuring | 158,641.00 |
| 004200.00009 | Calpine Corp - CMS - Claims | 300,023.00 |
| 004200.00011 | Creditor Information Requests | 2,100.00 |
| 004200.00013 | General Bankruptcy Support | 10,449.00 |
| 004200.00019 | Preferences | 3,875.00 |
| 004200.00024 | Calpine Corp - Sub-Con/Intercompany Analysis | 107,038.00 |
| 004200.00025 | CFO Duties | 94,105.00 |
| 004200.00027 | Calpine Corp - Rosetta Transaction | 31,582.50 |
| 004200.00028 | Calpine Corp - Accounting Reorganization | 277,369.50 |
| 004200.00030 | Calpine Corp - Interim Corporate Controller Duties | 75,785.00 |
| 004200.00033 | Unresolved Claims Analysis | 10,190.00 |
| 004200.00034 | Calpine Corp - E-discovery | 160.00 |
| **Total Fees Incurred** | | **1,220,290.25** |

APServices LLC

Greg Doody
Executive Vice President and General Counsel
Calpine Corporation
717 Texas Avenue, Suite 1000
Houston, TX 77002

## Summary of Expenses
### For the Period December 1, 2007 through December 31, 2007

| Expenses | Amount |
|---|---|
| Airfare Change Fees | 1,716.81 |
| Airfare | 20,256.81 |
| Airfare Service Charge | 1,245.23 |
| Cab Fare/Ground Transportation | 10,372.43 |
| Copy Costs (Outside Source) | 2,187.74 |
| Gas for Company Car | 89.61 |
| Lodging | 26,757.35 |
| Meals & Tips | 6,775.66 |
| Meeting Expenses | 62.31 |
| Mileage | 13.10 |
| Other | 1,134.90 |
| Overnight Mail Charges | 673.99 |
| Parking & Tolls | 2,435.96 |
| Postage Charges | 1,430.12 |
| Rental Car | 5,801.97 |
| **Total Disbursements** | **80,953.99** |



Greg Doody
Executive Vice President & General Counsel
Calpine Corporation
717 Texas Avenue, Suite 1000
Houston, TX 77002


February 14, 2008

Greg Doody
Executive Vice President and General Counsel
Calpine Corporation
717 Texas Avenue, Suite 1000
Houston, TX 77002


Re: Calpine Corporation, et. al.,
    Case No. 05-60200 (BRL) Jointly Administered
    Monthly Fee Statement for period January 1, 2008 through January 31, 2008


Dear Mr. Doody:


Enclosed please find the fee statement (the "Fee Statement") of AP Services, LLC ("APS"), for services rendered to the debtors in the above-referenced bankruptcy proceedings (collectively, the "Debtors") and expenses incurred from January 1, 2008 through January 31, 2008 (the "Fee Statement Period"). We have also enclosed a detailed listing of the services provided by APS to the Debtors and the related disbursements.

Pursuant to the Administrative Order Establishing Procedures for Interim Compensation and Reimbursement of Expenses of Professionals as entered by the Bankruptcy Court on January 4, 2006 (the "Order"), APS is entitled to request payment of 80% of its fees and 100% of its expenses at this time, with the remaining 20% of fees subject to the approval of the Bankruptcy Court in a quarterly fee application.

Specifically, at this time APS is requesting $1,232,297.00 in fees (i.e. 80% of $1,540,371.25) and $71,937.71 in expenses, for a total of $1,304,234.71 in fees and expenses for the Fee Statement Period.


Greg Doody
Executive Vice President & General Counsel
Calpine Corporation
717 Texas Avenue, Suite 1000
Houston, TX  77002


Greg Doody
February 14, 2008
Page 2


If none of the interested parties identified in the Order object to the Fee Statement fifteen days
from the date of this letter the Debtors are authorized to pay the total amount requested herein by
APS, which is $1,304,234.71 subject to the conditions specified herein.


Lisa J. Donahue, Managing Director
AP Services, LLC



Greg Doody
Executive Vice President & General Counsel
Calpine Corporation
717 Texas Avenue, Suite 1000
Houston, TX 77002

Greg Doody
Executive Vice President and General Counsel
Calpine Corporation
717 Texas Avenue, Suite 1000
Houston, TX 77002

### Summary of Professional Fees
### For the Period January 1, 2008 through January 31, 2008

| Current Charges: | | Hours | Rate | Amount |
|---|---|---:|---:|---:|
| Julia Mysinger | Paraprofessional | 154.10 | 190.00 | 29,279.00 |
| Deanna Berlin | Analyst | 5.75 | 225.00 | 1,293.75 |
| Timothy Rosolio | Associate | 287.50 | 280.00 | 80,500.00 |
| Gabe Greenbaum | Associate | 2.00 | 335.00 | 670.00 |
| Samuel S Jacobs | Associate | 24.70 | 335.00 | 8,274.50 |
| Robert Albergotti | Associate | 227.30 | 335.00 | 76,145.50 |
| Chad Tolleson | Vice President | 70.60 | 375.00 | 26,475.00 |
| Salvador Caputto | Vice President | 287.10 | 430.00 | 123,453.00 |
| Jeffrey Webb | Vice President | 17.70 | 430.00 | 7,611.00 |
| Meaghan Frawley | Vice President | 7.50 | 430.00 | 3,225.00 |
| Dean Lindo | Vice President | 223.80 | 480.00 | 107,424.00 |
| Robb McWilliams | Director | 289.00 | 485.00 | 140,165.00 |
| Kurt J Kauth | Director | 236.80 | 485.00 | 114,848.00 |
| Kevin Montague | Director | 40.40 | 485.00 | 19,594.00 |
| Terry Singla | Director | 93.70 | 485.00 | 45,444.50 |
| Greg Orler | Director | 216.30 | 530.00 | 114,639.00 |
| David Johnston | Director | 26.60 | 565.00 | 15,029.00 |
| Bryan Porter | Director | 14.60 | 565.00 | 8,249.00 |
| Deborah Rieger-Paganis | Director | 228.30 | 565.00 | 128,989.50 |
| Steven Hodkinson | Director | 229.70 | 620.00 | 142,414.00 |
| Tim Gallagher | Director | 25.10 | 620.00 | 15,562.00 |
| John Castellano | Managing Dir. | 237.60 | 650.00 | 154,440.00 |
| Barry Folse | Managing Dir. | 244.50 | 650.00 | 158,925.00 |
| Douglas Jung | Managing Dir. | 10.90 | 650.00 | 7,085.00 |
| Jared Yerian | Managing Dir. | 3.60 | 695.00 | 2,502.00 |

 **AP**Services LLC

Greg Doody
Executive Vice President & General Counsel
Calpine Corporation
717 Texas Avenue, Suite 1000
Houston, TX  77002

| Current Charges: | | Hours | Rate | Amount |
|---|---|---|---|---|
| Lisa Donahue | Managing Dir. | 172.60 | 795.00 | 137,217.00 |
| Total Hours & Fees | | 3,377.75 | | 1,669,453.75 |
| Less 50%Travel | | | | (129,082.50) |
| Subtotal | | | | 1,540,371.25 |
| Less 20% Holdback | | | | (308,074.25) |
| Subtotal | | | | 1,232,297.00 |
| Expenses | | | | 71,937.71 |
| **Total Amount Due** | | | **USD** | **1,304,234.71** |



Greg Doody
Executive Vice President and General Counsel
Calpine Corporation
717 Texas Avenue, Suite 1000
Houston, TX 77002

**Summary of Professional Fees by Matter Code**
**For the Period January 1, 2008 through January 31, 2008**

| Project Code | Description | Amount |
|---|---|---|
| 004200.00001 | Calpine Corp - Cash Management | 43,700.50 |
| 004200.00002 | Calpine Corp - 50% Non-billableTravel | 129,082.50 |
| 004200.00004 | Calpine Corp - Restructuring | 188,189.50 |
| 004200.00009 | Calpine Corp - CMS - Claims | 498,767.00 |
| 004200.00011 | Creditor Information Requests | 715.00 |
| 004200.00013 | General Bankruptcy Support | 18,742.50 |
| 004200.00021 | MOR | 8,249.00 |
| 004200.00024 | Calpine Corp - Sub-Con/Intercompany Analysis | 1,018.50 |
| 004200.00025 | CFO Duties | 108,597.00 |
| 004200.00027 | Calpine Corp - Rosetta Transaction | 40,955.75 |
| 004200.00028 | Calpine Corp  - Accounting Reorganization | 389,390.00 |
| 004200.00030 | Calpine Corp - Interim Corporate Controller Duties | 112,964.00 |
| **Total Fees Incurred** | | **1,540,371.25** |



Greg Doody
Executive Vice President and General Counsel
Calpine Corporation
717 Texas Avenue, Suite 1000
Houston, TX 77002

## Summary of Expenses
### For the Period January 1, 2008 through January 31, 2008

| Expenses | Amount |
|---|---:|
| Airfare Change Fees | 728.68 |
| Airfare | 15,896.12 |
| Airfare Service Charge | 1,015.65 |
| Cab Fare/Ground Transportation | 10,515.78 |
| Computerized Research | 312.08 |
| Computer Supplies / Support | 51.99 |
| Copy Costs (Outside Source) | 214.72 |
| Lodging | 25,426.74 |
| Meals & Tips | 7,184.18 |
| Other | 917.20 |
| Overnight Mail Charges | 555.64 |
| Parking & Tolls | 2,663.60 |
| Postage Charges | 174.73 |
| Rental Car | 6,280.60 |
| **Total Disbursements** | **71,937.71** |

# Exhibit D

| Name of Professional | Title | Total Hrs | Total Amount |
|---|---|---|---|
| Lisa J. Donahue | Managing Director | 3,973.8 | 2,803,063.00 |
| Steven Ambort | Managing Director | 71.0 | 44,375.00 |
| Michael Feder | Managing Director | 3,302.5 | 2,121,174.00 |
| Jared Yerian | Managing Director | 2,351.2 | 1,442,609.50 |
| Charles Cipione | Managing Director | 41.7 | 23,886.00 |
| Harvey Kelly | Managing Director | 189.6 | 131,838.00 |
| Al Koch | Managing Director | 58.1 | 40,089.00 |
| Barry Folse | Managing Director | 4,273.0 | 2,298,105.00 |
| Jay Marshall | Managing Dir. (ITTS) | 9.4 | 6,298.00 |
| John R. Castellano | Managing Director | 5,499.2 | 3,061,758.00 |
| Meade Monger | Managing Director | 53.1 | 33,453.00 |
| Douglas Jung | Managing Director | 2,014.1 | 1,006,386.50 |
| Tim Gallagher | Director | 25.1 | 15,562.00 |
| Michael G. Tinsely | Director | 776.0 | 384,120.00 |
| Steven Hodkinson | Director | 2,966.1 | 1,709,583.00 |
| Kyle A. Braden | Director | 3,326.0 | 1,304,484.50 |
| Donald Parcell | Director | 370.7 | 183,496.50 |
| David C. Johnston | Director | 4,214.0 | 2,037,082.00 |
| Gary Baker | Director (ITTS) | 104.2 | 51,579.00 |
| Paul F. Borrusch | Director (ITTS) | 86.0 | 42,570.00 |
| Robert P. Rakowski | Director | 1,264.6 | 627,428.25 |
| Deborah Rieger-Paganis | Director | 4,268.4 | 2,123,718.00 |
| Larry E. Ramaekers | Director | 249.4 | 109,736.00 |
| Bryan K. Porter | Director | 3,117.1 | 1,481,539.00 |
| Thomas B Osmun | Director | 3,635.3 | 1,796,568.00 |
| Susan Hartman | Director | 9.7 | 4,801.50 |
| Jamie Lisac | Director | 2,035.4 | 1,023,756.00 |
| Greg Orler | Director (ITTS) | 2,429.9 | 1,210,346.25 |
| Nathan Cook | Director | 133.4 | 66,033.00 |
| Sean Renshaw | Director | 167.0 | 82,665.00 |
| Danial Goldwin | Director | 0.5 | 247.50 |
| Walt Manning | Director | 140.2 | 69,399.00 |
| Henry Colvin | Director | 1,710.7 | 776,594.50 |
| Dean Lindo | Vice President | 893.9 | 408,969.00 |
| Robb C. McWilliams | Director | 5,720.6 | 2,142,605.00 |
| Terry Singla | Vice President | 5,142.7 | 1,913,093.00 |
| Heather Stack | Vice President | 1,005.6 | 382,112.80 |
| Kurt J. Kauth | Vice President | 1,096.8 | 476,048.00 |
| Michael Wagoner | Vice President | 1,288.7 | 541,254.00 |
| David Sikorski | Vice President | 32.8 | 13,120.00 |
| G. Jon Shell | Vice President | 1,613.7 | 703,235.00 |
| Meaghan Frawley | Vice President | 2,478.4 | 822,164.00 |
| Brett Roberson | Vice President | 165.3 | 66,120.00 |
| Jeffrey Webb | Vice President | 3,608.2 | 1,417,099.00 |
| Albert Leung | Vice President | 769.0 | 292,220.00 |
| Florence Gwite | Vice President | 353.2 | 134,216.00 |
| Keith Verville | Vice President | 416.0 | 158,080.00 |

# Exhibit D (Cont'd)

**AP Services, LLC**
Summary of Professionals and Fees - Calpine Corporation
December 21, 2005 through January 31, 2008

| Name of Professional | Title | Total Hrs | Total Amount |
|---|---|---:|---:|
| Salvador N. Caputto | Vice President | 4,984.6 | 1,950,724.00 |
| Kevin Montague | Vice President | 2,697.9 | 1,029,899.00 |
| Allan Hsu | Vice President | 17.5 | 6,125.00 |
| Aleksandra Bozic | Vice President | 2,350.6 | 658,168.00 |
| Drew Lockard | Vice President | 4,580.4 | 1,549,348.00 |
| Chad Tolleson | Associate | 2,281.9 | 717,888.00 |
| Christopher Anderson | Associate | 3,432.6 | 964,905.50 |
| Andrew Baker | Associate | 672.0 | 201,901.50 |
| Lauren Schulman | Associate | 1,348.2 | 404,640.00 |
| Ryan Thurber-Dean | Associate | 985.6 | 298,023.75 |
| Tarek Ghalayini | Associate | 747.8 | 224,340.00 |
| Adam Hollerbach | Associate | 1,400.8 | 420,240.00 |
| Samuel S Jacobs | Associate | 802.8 | 251,211.50 |
| Nick Heinz | Associate | 310.3 | 97,728.75 |
| Gabe Greenbaum | Associate | 2,721.6 | 852,841.75 |
| Robert Albergotti | Associate | 4,118.6 | 1,283,678.50 |
| Travis Phelan | Associate | 82.1 | 21,346.00 |
| Steven Fratus | Associate | 43.7 | 11,362.00 |
| Amanda Knudsen | Analyst | 2,560.3 | 580,506.00 |
| Ami Desai | Analyst | 311.3 | 68,475.00 |
| Timothy Rosolio | Analyst | 4,064.4 | 935,345.00 |
| Deanna Berlin | Analyst | 86.8 | 18,303.75 |
| Katheleen Todd | Analyst | 193.9 | 40,708.50 |
| Stephanie Ko | Analyst | 24.5 | 5,015.00 |
| John Niesen | Administrative | 2.5 | 375.00 |
| Brandon Pearson | Administrative | 27.5 | 4,125.00 |
| Erika De Leon | Independent Contractor | 192.5 | 19,802.50 |
| Jason Vogel | Independent Contractor | 17.7 | 5,221.50 |
| Tamie Vitek | Independent Contractor | 2,413.2 | 1,056,902.50 |
| Latonya Jones-Callaway | Paraprofessional | 29.5 | 3,245.00 |
| Jessica Cowart | Paraprofessional | 165.5 | 18,203.50 |
| Diane Peppers | Paraprofessional | 130.1 | 14,311.00 |
| Julia Mysinger | Paraprofessional | 2,110.1 | 244,439.00 |
| | | **123,359.39** | **$51,544,029.30** |

# Exhibit E

**AP Services, LLC**
**Summary of Expenses – Calpine Corporation**
**December 21, 2005 through January 31, 2008**

| Expense Catagories | Total |
|---|---|
| Airfare | $ 1,493,312.60 |
| Cab Fare / Ground Transportation | 424,172.29 |
| Computerized Research | 3,178.93 |
| Computer Supplies / Support | 3,447.45 |
| Copy Costs (Outside Source) | 9,231.44 |
| Lodging | 1,411,689.93 |
| Meeting Expenses | 1,886.27 |
| Long Distance Calls | 13.35 |
| Meals & Tips | 355,102.30 |
| Mileage | 11,334.28 |
| Other | 30,656.15 |
| Overnight Mail Charges | 16,452.55 |
| Postage Charges | 2,246.68 |
| Parking & Tolls | 67,055.94 |
| Rental Car | 195,967.64 |
| Supplies | 1,187.95 |
| Credit | (4,415.71) |
| **TOTAL** | **$ 4,022,520.04** |

**Exhibit F**

| Project Code | Description | Total |
|---|---|---|
| 4200.00001 | Calpine Corp - Cash Management | 5,477,994.25 |
| 4200.00002 | Calpine Corp - Travel | 4,434,617.70 |
| 4200.00004 | Calpine Corp - Restructuring | 8,729,438.50 |
| 4200.00005 | Calpine Corp - DIP Fiancing | 97,947.00 |
| 4200.00006 | Calpine Corp - Company Analysis | 144,456.00 |
| 4200.00007 | Calpine Corp - CMS Pre-filing activities | 71,671.00 |
| 4200.00008 | Calpine Corp - CMS Schedule and Statement | 1,314,100.50 |
| 4200.00009 | Calpine Corp - CMS - Claims | 6,024,623.00 |
| 4200.00010 | Business Plan Development | 448,339.50 |
| 4200.00011 | Creditor Information Requests | 538,775.50 |
| 4200.00012 | Accounts Payable Issues | 877,153.00 |
| 4200.00013 | General Bankruptcy Support | 2,877,375.75 |
| 4200.00014 | Claims Reconciliation | 9,852.00 |
| 4200.00015 | Calpine Corp - FAS - Admin./General/Planning/Sale | 2,589,298.90 |
| 4200.00016 | Calpine Corp - FAS - Houston Trading Operations | 455,307.50 |
| 4200.00018 | Reclamation | 25,146.00 |
| 4200.00019 | Preferences | 425,184.00 |
| 4200.00020 | Claims | 1,337,801.50 |
| 4200.00021 | MOR | 132,211.00 |
| 4200.00022 | Calpine Corp - Solvency Analysis | 870,842.50 |
| 4200.00023 | E-Discovery | 65,272.50 |
| 4200.00024 | Calpine Corp - Sub-Con/Intercompany Analysis | 2,356,686.50 |
| 4200.00025 | CFO Duties | 1,520,463.50 |
| 4200.00027 | Calpine Corp - Rosetta Transaction | 700,469.75 |
| 4200.00028 | Calpine Corp  - Accounting Reorganization | 3,363,211.50 |
| 4200.00029 | Calpine Corp  - Rumford Tiverton Analysis | 187,826.00 |
| 4200.00030 | Calpine Corp - Interim Corporate Controller Duties | 1,048,949.00 |
| 4200.00031 | Calpine Corp - Sally II Litigation | 270,304.75 |
| 4200.00032 | Calpine Corp - General Litigation | 209,350.00 |
| 4200.00033 | Unresolved Claims Analysis | 298,900.75 |
| 4200.00034 | Calpine Corp - E-discovery | 38,074.00 |
| **Total Fees Incurred** | | **46,941,643.35** |