**NICOLETTI HORNIG & SWEENEY**
Attorneys for
*Robert Membeno, Trustee for SAI Trust*
Wall Street Plaza
88 Pine Street
New York, New York 10005
(212) 220-3830
Attorney: Lawrence C. Glynn (LG-6431)
NH&S File No.:   00000840LCG

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| In re: | CHAPTER 11 |
| CALPINE CORPORATION, et al, | Case No. 05-60200 (BRL) |
| | Jointly Administered |
| Debtor. | |

**DECLARATION OF ROBERT MEMBRENO IN SUPPORT
OF MOTION FOR SUMMARY JUDGMENT**

Robert Membreno declares under penalty of perjury as follows:

1. My name is Robert Membreno and I am the Trustee of SAI Trust.

2. I submit this declaration in support of the motion for summary judgment made herein on behalf of Robert Membreno, as Trustee of SAI Trust (hereinafter "SAI Trust").

3. On or about May 17, 1987, SAI Geothermal, Inc. (hereinafter "SAI") and Freeport McMoRan Resource Partners, L. P. ("Freeport") entered into an agreement entitled "Agreement For Purchase And Sale Of Assets (hereinafter "Agreement For Purchase") Annexed hereto as Exhibit "A" is a true and correct copy Agreement for Purchase.

4.  Pursuant the Agreement for Purchase, Article I, ¶1.2(e), after commercial operation of a geothermal power plant to be constructed by Freeport known as West Ford Flat located in Sonoma County, California, Freeport was contractually obligated to pay to SAI a Net Profits Interest (hereinafter "NPI") representing the right to receive a monthly payment in an amount equal to 6% of the Net Income for the month.

5.  Thereafter, SAI thereafter transferred a portion of its rights to receive NPI to SAI Trust and SAI Trust now holds a 4.55% NPI in the gross revenues of West Ford Flat.

6.  Effective July 2, 1990, Freeport assigned its interest in, to, and under the Agreement for Purchase and a Standard Offer 4 Power Purchase Agreement it received from Pacific Gas & Electric Company ("Assigned Agreements") to Santa Rosa Geothermal Company, L.P. (hereinafter "Santa Rosa").

7.  On January 1, 1994, Santa Rosa amended its partnership name to Calpine Geysers Company, L.P. (hereinafter "Calpine Geysers").

8.  The term "NPI" is unambiguously defined in §§1.5, 1.6, 9.10 and Exhibit "F" of the Agreement for Purchase. (See Exhibit "A" annexed hereto.)

9.  At the time of issuance of the very first NPI statement (representing the August, 1989 NPI payment), Calpine's predecessor, Freeport, simultaneously submitted a detailed explanation of the line items comprising the NPI statement for the West Ford Flat power plant on December 13, 1989. A copy of same is annexed hereto as Exhibit "B."

10. According to this explanation, the following items were to be used in calculating NPI payable to SAI: Electric Revenue, Interest Income from Overnight Deposits, Escrow Balance, Royalty Payments, Lease Operating Expenses, Overhead, Property Taxes, Capital Additions - Major

Construction, Capital Additions - Overhead, Capital Additions - Development Capital, Project Financing, Invested Capital and Loan Proceeds.

11. Notably absent from this list is any mention of the term "Allocated Expenses." More notable is the fact that for approximately 11 years thereafter, there was no charge for "Allocated Expenses." Annexed hereto as Exhibit "C" is the very first NPI statement received from Debtors on or about December 13, 1989, representing the first NPI for August, 1989 to SAI Trust.

12. Under the heading "Operating Expenses", the following line item entries are included: Royalty Payments (Not Subject to Overhead); Lease Operating Expenses, and Overhead 15% (which is 15% of the Lease Operating Expenses). There is no entry for "Allocated Expenses."

13. These Operating Expenses were the course of dealing established between SAI Trust and Debtors and/or their predecessors-in-interest for more than 11 years.

14. Conversely, commencing with the April, 2001 NPI statement submitted by Calpine, a new line item entry appeared under the heading "Allocated Expenses." Annexed hereto as Exhibits "D" and "E" are exemplars of actual NPI statements received from Debtors for February and March, 2007, respectively. Annexed hereto as composite Exhibit "F" is each monthly NPI statement prepared and submitted by Calpine and/or its predecessors-in-interest from August, 1989 to present.[1]

[2] A review of same demonstrates that prior to April, 2001, there was no entry for "Allocated

---

[1] SAI Trust is unable to locate NPI statements for May and August, 1996 and May, 2005.

[2] Pursuant to General Order 193 of the United States Bankruptcy Court, Southern District of New York, due to the voluminous size of Exhibit "F", only an excerpt covering the period 1998 through 2002, will be included with the ECF filing of this motion. The entire composite exhibit is available upon request to our counsel, Lawrence C. Glynn, Nicoletti Hornig & Sweeney, Wall Street Plaza - 88 Pine Street, New York, New York 10005

3

Expenses." Annexed hereto as Exhibit "G" is a spreadsheet of all NPI statements issued from August 1989 through May, 2008 which was prepared by SAI Trust.

15. Calpine has offered no explanation for its unilateral decision to include "Allocated Expenses" which prior to April, 2001, were not charged.

16. Nor has Calpine explained the basis for charging a 15% overhead charge on the sum of "Allocated Expenses" and "Lease Operating Expenses." As stated, *supra*, the 15% overhead charge had been based solely upon the "Lease Operating Expenses." This had been the course of dealings established between SAI Trust and Debtors and/or their predecessors-in-interest for more than 11 years. Prior to April, 2001, the overhead charge on each and every single NPI was 15% of Lease Operating Expense, only.

17. In accordance with §1.6 of the Agreement for Purchase, NPI statements are to be certified by the chief financial officer of Calpine Corporation (hereinafter "Calpine") annually.

18. Prior to 2000, year end NPI statements prepared by Calpine and/or its wholly owned subsidiary(ies) were certified by Calpine's and/or its predecessors-in-interest's chief financial officer annually.

19. In fact, between August, 1989 and approximately the end of the fiscal year, 2000, a period of 11 years, all NPI statements prepared by Calpine and/or its wholly owned subsidiary(ies) were certified by Calpine's and/or its predecessors-in-interest's chief financial officer annually.

20. However, since April, 2001, annual certifications have ceased to be prepared by Calpine and/or its wholly owned subsidiary(ies).

21. Since 2001, no officer of Calpine, or its wholly owned subsidiary(ies) have certified any year end statement as required under the Agreement for Purchase.

4

22. Failure to provide annual certified NPI statements is a clear breach of the Agreement for Purchase. §1.6 of the Purchase Agreement states, in pertinent part:

> Audit Rights of Seller.
>
> Buyer shall maintain complete and accurate accounting records of the accounts which are used to calculate the Net Profits Interest. Within 60 days after the end of each fiscal year of buyer, commencing with the fiscal year of Buyer in which the Date of First Commercial Operation occurs, it shall furnish Seller with a statement **certified by Buyer's chief financial officer** showing in reasonable detail the calculation of the Net Profits Interest for the fiscal year then ended.

Emphasis added.

23. SAI Trust holds a right to conduct annual audits of the operations of West Ford Flat after receipt of an annual certified NPI Statement in accordance with §1.6 of the Agreement for Purchase. §1.6 of the Purchase Agreement states, in pertinent part:

> Seller (SAI) and its authorized representatives shall have the right, upon reasonable notice to Buyer and between 9 A.M. and 5 P.M. weekdays to audit Buyer's records to determine whether the calculation of the Net Profits Interest during the fiscal year then ended was in accordance with this Agreement.

24. Following an auditing for the period July 1, 1990 through December 21, 1990, and calendar year 1991 (the "1990 and 1991 audit") a Settlement Agreement was entered on February 28, 1995 (hereinafter "Settlement Agreement"). A true and accurate copy of the Settlement Agreement has been annexed hereto as Exhibit "H."

25. As set forth in the Settlement Agreement, the manner in which future NPI statements would be prepared was agreed[3] by SAI Trust, Sonoma Geotherm Partners, L.P., (hereinafter "Sonoma"), Calpine Sonoma Inc. (hereinafter "Calpine Sonoma") and Calpine, the parties thereto.

---

[3] Now for a second time, including the original agreement entered into on May 18, 1987.

26. In addition to an agreement as to the manner in which NPI Statements would be prepared, as a result of this Settlement Agreement, the manner in which payments of net profits for 1992 and thereafter was agreed by the parties thereto.

27. Under §8 A. of the Settlement Agreement entitled "Miscellaneous", it states:

> Except as specifically set forth herein nothing herein shall affect the rights, duties or obligations of SAI Trust and CALPINE in and under the Agreement of Purchase, specifically including, but not limited, to Sections 1.6 and 9.5. Commencing with the Annual NPI Report for calendar year 1992 and continuing thereafter, CALPNE agrees to prepare said Annual NPI Reports, and all monthly reports, in accordance with the terms of the Agreement for Purchase and this Settlement Agreement; and CALPINE further agrees to make all NPI payments which may accrue in favor of SAI Trust pursuant thereto.

28. The subject of the Agreement for Purchase was, and still is, a geothermal power plant known as West Ford Flat located in Sonoma County, California, exclusively.

29. The Settlement Agreement governs the relationship of the parties concerning a geothermal power plant known as West Ford Flat located in Sonoma County, California, exclusively.

30. There is not now, nor has there ever been, any contract between SAI Trust and Calpine, nor any of their respective predecessors, subsidiaries, affiliates and related entities, where the subject of the contract was any power plant other than West Ford Flat.

31. On February 24-28, 1992, a trial was held in the Superior Court of the State of California in and for the County of Santa Clara in the case of *Robert J. Membreno, Trustee of the SAI Trust v. Freeport McMoran Resource Partners, Limited Partnership, Calpine Corporation, Santa Rosa Geothermal Company L.P., Sonoma Geothermal Partners L.P., Calpine Sonoma, Inc., and Does 1 through 20, inclusive.*

32. Annexed hereto as Exhibit "I" is a true and accurate copy of the Judgment Following Court Trial.

33. One of the issues decided as a result of the trial and Judgment was an attempt by Calpine to unilaterally alter the manner in which NPI was calculated,[4] a tactic that the trial court determined was not permitted as the COPAS percentage rates (which Calpine took upon itself to insert) "were not part of the (Agreement of Purchase)." Exhibit I, p3, ¶[2].

34. Accordingly, the issue of what can and cannot be used in calculating the NPI has already been fully litigated and adjudicated.

35. Between July, 1994 through December, 2000, **no** NPI statement prepared by Calpine contained a line item entry for "Allocated Expenses."

36. Commencing in or about April, 2001, Calpine unilaterally began to include line item expenses under the heading "Allocated Expenses."

37. The uncertified NPI statements that Calpine has provided since April, 2001 use budgeted figures, as opposed to actual figures.

38. The uncertified NPI statements that Calpine has provided since April, 2001 include costs and expenses attributable to facilities other than West Ford Flat which are not properly attributable to West Ford Flat under the Agreement for Purchase and not chargeable to SAI.

39. Commencing in April, 2001 (effective January, 2001) Calpine calculated the overhead expense based on both Lease Operating Expenses and "Allocated Expenses."

40. From July, 1994 through December, 2000, overhead was calculated solely based on Lease Operating Expenses.

---

[4] by varying the COPAS (Council of Petroleum Accountants Societies, Inc.) percentage rates.

41. Journal entries which Debtors' claim support the "Allocated Expenses" are not specific to the West Ford Flat plant.

42. An audit of the journal entries which Debtors claim support the "Allocated Expenses" attributable to West Ford Flat would be impossible given the lack of specificity for said journal entries.

43. Journal entries which Debtors claim support the "Allocated Expenses" attributable to West Ford Flat are, in fact, attributable to plants other than West Ford Flat.

44. There is no sound basis, in accordance with generally accepted accounting principles, for the unilateral change in accounting procedures that occurred on or about April, 2001.

45. As a result of the unilateral change in accounting procedures undertaken by Debtors, SAI's net profit interest was less in each year over year period compared with any year between 1994 through 2000 inclusive, which is counterintuitive, as the basis for Calpine's consolidation of 16 plants which comprise the Geysers' Region was to reduce costs and increase profits.

46. At no time was there a meeting of the minds between Debtors and SAI Trust to modify or alter the Agreement for Purchase beginning in 2001.

47. Debtors unilaterally altered the terms of the Agreement for Purchase beginning in 2001.

48. Debtors' decision to unilaterally alter the terms of the Agreement for Purchase beginning in 2001 was a breach of the Agreement of Purchase.

49. Debtors' decision to unilaterally alter the terms of the Agreement for Purchase beginning in 2001 was a breach of the Settlement Agreement.

05-60200-cgm    Doc 7916    Filed 08/13/08    Entered 08/13/08 22:08:33    Main Document
Pg 9 of 15

50.    Debtors' decision to unilaterally alter the terms of the Agreement for Purchase beginning in 2001 was contrary to a Judgment on an issue that had already been fully litigated between these identical parties.

51.    Calpine has completely ignored the undeniable, namely that Debtors' have (and continue to) breach the underlying agreements with SAI, *inter alia*, by failing to provide a certified NPI Statement singed by Debtors' Chief Financial Officer for at least four (4) years pre-petition (and all post petition), using budgeted numbers as opposed to actual cost figures, and calculating overhead. SAI disputes Debtors' improper use of allocating costs from other plants and including costs not subject to the agreement, allocating expenses from other plants as costs, and charging an overhead percentage based on budgeted figures, inappropriate costs, and allocated costs.

52.    SAI brought to Debtors' attention that it noticed increases in costs, inclusions of costs, and allocations of costs since receipt of its last statement certified by Debtors' chief financial officer. SAI attempted to communicate with Debtors and determine whether these increases in costs, inclusions of costs, and allocations of costs are in accordance with the Agreement For Purchase and Settlement Agreement. As of the date of this Declaration, Debtors have not properly provided SAI with statements certified by their chief financial officer, have not provided SAI with sufficient access to its records to determine whether the calculation of NPI (although uncertified by the chief financial officer) was in accordance with the Agreement For Purchase, have not reasonably cooperated with SAI so SAI could conduct an audit of the uncertified records, have not maintained complete and accurate accounting records of the accounts used to calculate NPI, have not maintained accounting records sufficient to show in reasonable detail the calculation of NPI in accordance with the Agreement For Purchase, have not maintained accounting records sufficient to show in reasonable

detail the calculation of direct operating expenses and the general and administrative expenses in accordance with the Agreement For Purchase, have not properly accounted for the general and administrative expenses in accordance with the Agreement For Purchase, have not identified and accounted for many costs associated with the operation of the power plant governed by the Agreement For Purchase, have improperly included "allocated costs" to SAI which were never included for any of the monthly NPI's from August, 1989 through December, 2000, and have failed and refused to identify and account for many costs associated with the operation of the power plants governed by the Agreement For Purchase.

53. In an effort to resolve the ongoing disputes regarding Debtors' non-compliance with the Agreement For Purchase and Settlement Agreement, SAI and its counsel met with Debtors, representative employees of Debtors, and Debtors' counsel. Such discussions did not resolve the ongoing disputes. However, Debtors acknowledged, *inter alia*, that they were unaware of the underlying agreements, have not complied with the underlying agreements in several respects, have not maintained the books and records in reasonable detail to properly calculate direct operating expenses and the general and administrative expenses in accordance with the underlying agreements, and have not properly accounted for the general and administrative expenses in accordance with the underlying agreements, but rather, caused SAI to bear the expenses from adjacent plants inconsistent with the underlying agreements due to their own accounting preferences.

54. On July 27, 2006, SAI timely filed Proofs of Claim. Attached to each Proof of Claim was an "Attachment to Proof of Claim" (annexed hereto as Exhibit "J") which detailed the factual background of the State Action, identified the substantive issues, and invited Debtors to contact SAI if it wanted to review the supporting documents currently available. SAI's proofs of claims do not

10

carry specific figures because Debtors have thus far failed or refused to provide SAI with an annual certification from its chief financial office as required by the underlying agreements, prevented SAI from conducting an audit, and not provided documentation or discovery.

55. "A proof of claim executed and filed in accordance with these rules constitutes *prima facia* evidence of the validity of the claim." FED. R. BANK. P 3001 (f). SAI executed and filed the various claims in accordance with the Federal Rules of Bankruptcy Procedure and the Debtors have not alleged otherwise. The Debtors must offer sufficient evidence to overcome the presumptive validity of the claim (*In re Duggins*, 263 B.R. 233, 238 (Bankr. C.D. Ill. 2001 (stating that a filed proof of claim gives rise to a "rebuttable presumption" as to the validity and amount of the claim).

56. Debtors have offered no evidence to support the unqualified, hearsay opinion accompanying their Eighteenth Objection addressing SAI Trust's claims. The Debtors are required to submit evidence of equal or greater probative value contradicting the elements of SAI's claims. (*Southland Corp. v. Toronto-Dominion (In re Southland Corp.)*, 160 F.3d 1054 (5th Cir. 1980). The mere denial by Debtors' that the claims are unenforceable is insufficient to rebut the *prima facia* validity of the claim (*In re Frederes*, 98 B.R. 165, 167 (Bankr. W.D.N.Y. 1989) and the vague objection does not satisfy Debtors' burden (*In re Narragansett Clothing Co.*, 143 B.R. 582, 583 (Bankr. D.R.I. 1992).

57. On Monday, June 11, 2007, SAI received Debtors' (A) Objection To SAI Trust's Motion For Relief From Stay And (B) Reply To SAI Trust's Response To The Debtors' Eleventh Omnibus Claims Objection To SAI Trust's Proofs Of Claim ("Debtors' Pleading").

58. To date, SAI Trust's damages are preliminary and partial, (as Debtors continue to breach the contract on a monthly basis) and do not include other potential damages/losses based on

11

Debtors' use of budgeted figures and not actual figures, charging 15% overhead on budgeted figures and not actual figures and including allocated budgeted costs from other plants, and including costs not allowed to be included based on the parties contractual agreements and are limited to pre-petition matters. This preliminary calculation only addresses one area of damage/loss based on Debtors' improperly allocating budgeted costs (from other plants that were not the subject of any agreement and certainly not the subject of the Agreement for Purchase) to SAI on a percentage basis and then adding 15% of these unsupported and unjustified "Allocated Expenses" as overhead . This preliminary calculation is for the period pre-petition of January 2001 through May, 2008. Said amount totals $583,698.61.

59.   A table of all of the "Allocated Expenses" from January, 2001 through May, 2008, is set forth below for the Court's convenience. This includes the unauthorized addition of 15% of "Allocated Expenses" to the overhead, as well as interest at the rate of 9% for each unauthorized charge from April 1, 2001 through August 1, 2008.

05-60200-cgm    Doc 7916    Filed 08/13/08    Entered 08/13/08 22:08:33    Main Document
Pg 13 of 15

## SUMMARY OF IMPROPER ALLOCATED EXPENSES & 15% OVERHEAD CHARGED BY CALPINE IN MONTHLY NPI STATEMENTS BEGINNING IN APRIL, 2001

|  | Month | Unauthorized Allocated Expense | @4.55% | Interest through 8/1/08 at 9% per annum | Interest on 15% Overhead at 9% per annum |
|---|---|---|---|---|---|
|  | Jan-01 | - | - |  |  |
|  | Feb-01 | - | - |  |  |
|  | Mar-01 | - | - |  |  |
| Jan-Mar True up | Apr-01 | $210,877.99 | $9,594.95 | $6,476.59 | $971.49 |
|  | May-01 | 74,889.32 | 3,407.46 | 2,274.48 | 341.17 |
|  | Jun-01 | 107,243.43 | 4,879.58 | 3,220.50 | 483.08 |
|  | Jul-01 | 54,514.42 | 2,480.41 | 1,618.47 | 242.77 |
|  | Aug-01 | 104,038.44 | 4,733.75 | 3,053.27 | 457.99 |
|  | Sep-01 | 82,132.01 | 3,737.01 | 2,382.34 | 357.35 |
|  | Oct-01 | 87,599.98 | 3,985.80 | 2,511.05 | 376.66 |
|  | Nov-01 | 60,165.47 | 2,737.53 | 1,704.11 | 255.62 |
|  | Dec-01 | 35,148.38 | 1,599.25 | 983.54 | 147.53 |
|  | Jan-02 | 75,835.26 | 3,450.50 | 2,096.18 | 314.43 |
|  | Feb-02 | 65,889.48 | 2,997.97 | 1,798.78 | 269.82 |
|  | Mar-02 | 61,450.45 | 2,796.00 | 1,656.63 | 248.49 |
|  | Apr-02 | 41,621.72 | 1,893.79 | 1,107.87 | 166.18 |
|  | May-02 | 42,069.18 | 1,914.15 | 1,105.42 | 165.81 |
|  | Jun-02 | 37,943.85 | 1,726.45 | 984.08 | 147.61 |
|  | Jul-02 | 44,318.60 | 2,016.50 | 1,134.28 | 170.14 |
|  | Aug-02 | 53,364.83 | 2,428.10 | 1,347.60 | 202.14 |
|  | Sep-02 | 54,383.44 | 2,474.45 | 1,354.76 | 203.21 |
|  | Oct-02 | 62,323.49 | 2,835.72 | 1,531.29 | 229.69 |
|  | Nov-02 | 56,571.61 | 2,574.01 | 1,370.66 | 205.60 |
|  | Dec-02 | 57,514.97 | 2,616.93 | 1,373.89 | 206.08 |
|  | Jan-03 | 110,891.37 | 5,045.56 | 2,611.08 | 391.66 |
|  | Feb-03 | 93,134.88 | 4,237.64 | 2,161.20 | 324.18 |
|  | Mar-03 | 83,359.91 | 3,792.88 | 1,905.92 | 285.89 |
|  | Apr-03 | 104,483.34 | 4,753.99 | 2,353.23 | 352.98 |
|  | May-03 | 100,422.52 | 4,569.22 | 2,227.49 | 334.12 |
|  | Jun-03 | 90,554.96 | 4,120.25 | 1,977.72 | 296.66 |
|  | Jul-03 | 106,978.17 | 4,867.51 | 2,299.90 | 344.99 |
|  | Aug-03 | 94,185.34 | 4,285.43 | 1,992.84 | 298.93 |
|  | Sep-03 | 123,901.44 | 5,637.52 | 2,579.17 | 386.88 |
|  | Oct-03 | 111,313.10 | 5,064.75 | 2,279.14 | 341.87 |
|  | Nov-03 | 188,866.58 | 8,593.43 | 3,802.59 | 570.39 |
|  | Dec-03 | 229,528.23 | 10,443.53 | 4,542.94 | 681.44 |
|  | Jan-04 | 167,579.22 | 7,624.85 | 3,259.62 | 488.94 |
|  | Feb-04 | 161,547.67 | 7,350.42 | 3,087.18 | 463.08 |
|  | Mar-04 | 112,971.97 | 5,140.22 | 2,120.34 | 318.05 |
|  | Apr-04 | 86,545.03 | 3,937.80 | 1,594.81 | 239.22 |
|  | May-04 | 78,569.62 | 3,574.92 | 1,421.03 | 213.15 |
|  | Jun-04 | 122,794.90 | 5,587.17 | 2,179.00 | 326.85 |
|  | Jul-04 | 94,911.07 | 4,318.45 | 1,651.81 | 247.77 |
|  | Aug-04 | 101,499.03 | 4,618.21 | 1,731.83 | 259.77 |
|  | Sep-04 | 83,585.29 | 3,803.13 | 1,397.65 | 209.65 |

| Month | Unauthorized Allocated Expense | @4.55% | Interest through 8/1/08 at 9% per annum | Interest on 15% Overhead at 9% per annum |
|---|---|---|---|---|
| Oct-04 | 78,928.33 | 3,591.24 | 1,292.85 | 193.93 |
| Nov-04 | 66,402.70 | 3,021.32 | 1,065.02 | 159.75 |
| Dec-04 | 124,427.61 | 5,661.46 | 1,953.20 | 292.98 |
| Jan-05 | 89,187.80 | 4,058.04 | 1,369.59 | 205.44 |
| Feb-05 | 130,170.61 | 5,922.76 | 1,954.51 | 293.18 |
| Mar-05 | 101,011.86 | 4,596.04 | 1,482.22 | 222.33 |
| Apr-05 | 52,702.62 | 2,397.97 | 755.36 | 113.30 |
| May-05 | 100,652.98 | 4,579.71 | 1,408.26 | 211.24 |
| Jun-05 | 98,049.99 | 4,461.27 | 1,338.38 | 200.76 |
| Jul-05 | 106,146.17 | 4,829.65 | 1,412.67 | 211.90 |
| Aug-05 | 118,378.04 | 5,386.20 | 1,535.07 | 230.26 |
| Sep-05 | 126,453.65 | 5,753.64 | 1,596.64 | 239.50 |
| Oct-05 | 84,586.14 | 3,848.67 | 1,039.14 | 155.87 |
| Nov-05 | 138,265.49 | 6,291.08 | 1,651.41 | 247.71 |
| Dec-05 | 67,623.45 | 3,076.87 | 784.60 | 117.69 |
| Jan-06 | 68,587.29 | 3,120.72 | 772.38 | 115.86 |
| Feb-06 | 83,468.96 | 3,797.84 | 911.48 | 136.72 |
| Mar-06 | 88,906.62 | 4,045.25 | 940.52 | 141.08 |
| Apr-06 | 181,029.40 | 8,236.84 | 1,853.29 | 277.99 |
| May-06 | 82,321.61 | 3,745.63 | 814.67 | 122.20 |
| Jun-06 | 89,359.38 | 4,065.85 | 853.70 | 128.06 |
| Jul-06 | 61,919.82 | 2,817.35 | 570.15 | 85.52 |
| Aug-06 | 94,229.72 | 4,287.45 | 836.05 | 125.41 |
| Sep-06 | 91,056.30 | 4,143.06 | 776.82 | 116.52 |
| Oct-06 | 103,836.19 | 4,724.55 | 850.42 | 127.56 |
| Nov-06 | 62,095.79 | 2,825.36 | 487.37 | 73.11 |
| Dec-06 | 51,925.41 | 2,362.61 | 389.83 | 58.47 |
| Jan-07 | 143,611.4 | 6,534.32 | 1,029.16 | 154.37 |
| Feb-07 | 98,440.67 | 4,479.05 | 671.86 | 100.78 |
| Mar-07 | 149,880.64 | 6,819.57 | 971.79 | 145.77 |
| Apr-07 | 32,134.17 | 1,462.10 | 197.38 | 29.61 |
| May-07 | 196,530.30 | 8,942.13 | 1,140.12 | 171.02 |
| Jun-07 | 104,085.74 | 4,735.90 | 568.31 | 85.25 |
| Jul-07 | 61,754.34 | 2,809.82 | 316.10 | 47.42 |
| Aug-07 | 143,608.94 | 6,534.21 | 686.09 | 102.91 |
| Sep-07 | 113,970.38 | 5,185.65 | 505.60 | 75.84 |
| Oct-07 | 99,930.28 | 4,546.82 | 409.21 | 61.38 |
| Nov-07 | 97,249.99 | 4,424.87 | 365.05 | 54.76 |
| Dec-07 | 93,133.80 | 4,237.59 | 317.82 | 47.67 |
| Jan-08 | 106,738.52 | 4,856.60 | 327.82 | 49.17 |
| Feb-08 | 101,731.03 | 4,628.76 | 277.73 | 41.66 |
| Mar-08 | 98,089.94 | 4,463.09 | 234.31 | 35.15 |
| Apr-08 | 105,704.12 | 4,809.54 | 216.43 | 32.46 |
| May-08 | 106,039.33 | 4,824.79 | 180.93 | 27.14 |
|  |  | $378,190.43 | $129,373.59 | $19,406.03 |

| | |
|---|---:|
| Sub-total of unauthorized "Allocated Expenses" | $378,190.43 |
| Sub-total of unauthorized 15% of Allocated Expenses added to Overhead | 56,728.56 |
| Interest on unauthorized "Allocated Expenses" at 9% per annum through 8/1/08 | 129,373.59 |
| Interest on unauthorized 15% of Allocated Expenses added to Overhead at 9% per annum through 8/1/08 | 19,406.03 |
| **TOTAL** | **$583,698.61** |

60. Pursuant to Title 28 of the United States Code §1746, I declare under penalty of perjury that the foregoing is true and correct.

Dated: Managua, Nicaragua
August 12, 2008

By: _____
Robert Membreño