**NICOLETTI HORNIG & SWEENEY**
Attorneys for
*Robert Membeno, Trustee for SAI Trust*
Wall Street Plaza
88 Pine Street
New York, New York 10005
(212) 220-3830
Attorney: Lawrence C. Glynn (LG-6431)
NH&S File No.:    00000840LCG

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| In re: ) | CHAPTER 11 |
| ) | |
| CALPINE CORPORATION, et al, ) | Case No. 05-60200 (BRL) |
| ) | Jointly Administered |
| ) | |
| Debtor. ) | |
| ) | |

## SAI TRUST'S LOCAL RULE 56.1 STATEMENT IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT

Pursuant to Local Rule 56.1, SAI Trust respectfully submits the following statement of undisputed material facts as to which there is no issue to be tried.

1.　　On or about May 17, 1987, SAI Geothermal, Inc. (hereinafter "SAI") and Freeport McMoRan Resource Partners, L. P. ("Freeport") entered into an agreement entitled "Agreement For Purchase And Sale Of Assets (hereinafter "Agreement For Purchase") See Declaration of Robert Membreno dated August 6, 2008, hereinafter "Membreno Dec.", at ¶3 and Exhibit "A" annexed thereto.

2.　　Pursuant the Agreement for Purchase, Article I, ¶1.2(e), after commercial operation of a geothermal power plant to be constructed by Freeport known as West Ford Flat located in

Sonoma County, California, Freeport was contractually obligated to pay to SAI a Net Profits Interest (hereinafter "NPI") representing the right to receive a monthly payment in an amount equal to 6% of the Net Income for the month. Membreno Dec., ¶4.

3. Thereafter, SAI thereafter transferred a portion of its rights to receive NPI to SAI Trust and SAI Trust now holds a 4.55% NPI in the gross revenues of West Ford Flat. Membreno Dec., ¶5.

4. Effective July 2, 1990, Freeport assigned its interest in, to, and under the Agreement for Purchase and a Standard Offer 4 Power Purchase Agreement it received from Pacific Gas & Electric Company ("Assigned Agreements") to Santa Rosa Geothermal Company, L.P. (hereinafter "Santa Rosa"). Membreno Dec., ¶6.

5. On January 1, 1994, Santa Rosa amended its partnership name to Calpine Geysers Company, L.P. (hereinafter "Calpine Geysers"). Membreno Dec., ¶7.

6. The term "NPI" is unambiguously defined in §§1.5, 1.6, 9.10 and Exhibit "F" of the Agreement for Purchase. Membreno Dec., ¶8, Exhibit "A."

7. At the time of issuance of the very first NPI statement (representing the August, 1989 NPI payment), Calpine's predecessor, Freeport, simultaneously submitted a detailed explanation of the line items comprising the NPI statement for the West Ford Flat power plant on December 13, 1989. Membreno Dec., ¶9 and Exhibit "B" annexed thereto.

8. According to this explanation, the following items were to be used in calculating NPI payable to SAI: Electric Revenue, Interest Income from Overnight Deposits, Escrow Balance, Royalty Payments, Lease Operating Expenses, Overhead, Property Taxes, Capital Additions - Major Construction, Capital Additions - Overhead, Capital Additions - Development Capital, Project Financing, Invested Capital and Loan Proceeds. Membreno Dec., ¶10.

9. Notably absent from this list is any mention of the term "Allocated Expenses." More notable is the fact that for approximately 11 years thereafter, there was no charge for "Allocated Expenses." Membreno Dec., ¶11 and Exhibit "C" annexed thereto, which is the very first NPI statement received from Debtors on or about December 13, 1989, representing the first NPI for August, 1989 to SAI Trust.

10. Under the heading "Operating Expenses", the following line item entries are included: Royalty Payments (Not Subject to Overhead); Lease Operating Expenses, and Overhead 15% (which is 15% of the Lease Operating Expenses). There is no entry for "Allocated Expenses." Membreno Dec., ¶12.

11. These Operating Expenses were the course of dealing established between SAI Trust and Debtors and/or their predecessors-in-interest for more than 11 years. Membreno Dec., ¶13.

12. Conversely, commencing with the April, 2001 NPI statement submitted by Calpine, a new line item entry appeared under the heading "Allocated Expenses." Membreno Dec., ¶14 and Exhibits "D", "E" and "F" annexed thereto.

13. Prior to April, 2001, there was no entry for "Allocated Expenses." Membreno Dec., ¶14 and Exhibits "D" through "F."

14. Calpine has offered no explanation for its unilateral decision to include "Allocated Expenses" which prior to April, 2001, were not charged. Membreno Dec., ¶15.

15. Nor has Calpine explained the basis for charging a 15% overhead charge on the sum of "Allocated Expenses" and "Lease Operating Expenses." Membreno Dec., ¶16.

16. The 15% overhead charge had been based solely upon the "Lease Operating Expenses." This had been the course of dealings established between SAI Trust and Debtors and/or

3

their predecessors-in-interest for more than 11 years. Prior to April, 2001, the overhead charge on each and every single NPI was 15% of Lease Operating Expense, only. Membreno Dec., ¶16.

17. In accordance with §1.6 of the Agreement for Purchase, NPI statements are to be certified by the chief financial officer of Calpine Corporation (hereinafter "Calpine") annually. Membreno Dec., ¶17.

18. Prior to 2000, year end NPI statements prepared by Calpine and/or its wholly owned subsidiary(ies) were certified by Calpine's and/or its predecessors-in-interest's chief financial officer annually. Membreno Dec., ¶18.

19. In fact, between August, 1989 and approximately the end of the fiscal year, 2000, a period of 11 years, all NPI statements prepared by Calpine and/or its wholly owned subsidiary(ies) were certified by Calpine's and/or its predecessors-in-interest's chief financial officer annually. Membreno Dec., ¶19.

20. However, since April, 2001, annual certifications have ceased to be prepared by Calpine and/or its wholly owned subsidiary(ies). Membreno Dec., ¶20.

21. Since 2001, no officer of Calpine, or its wholly owned subsidiary(ies) have certified any year end statement as required under the Agreement for Purchase. Membreno Dec., ¶21.

22. Failure to provide annual certified NPI statements is a clear breach of the Agreement for Purchase. §1.6 of the Purchase Agreement states, in pertinent part:

> Audit Rights of Seller.
>
> Buyer shall maintain complete and accurate accounting records of the accounts which are used to calculate the Net Profits Interest. Within 60 days after the end of each fiscal year of buyer, commencing with the fiscal year of Buyer in which the Date of First Commercial Operation occurs, it shall furnish Seller with a statement **certified by Buyer's chief financial officer** showing in reasonable detail the calculation of the Net Profits Interest for the fiscal year then ended.

Emphasis added. Membreno Dec., ¶22, Exhibit "A."

23. SAI Trust holds a right to conduct annual audits of the operations of West Ford Flat after receipt of an annual certified NPI Statement in accordance with §1.6 of the Agreement for Purchase. §1.6 of the Purchase Agreement states, in pertinent part:

> Seller (SAI) and its authorized representatives shall have the right, upon reasonable notice to Buyer and between 9 A.M. and 5 P.M. weekdays to audit Buyer's records to determine whether the calculation of the Net Profits Interest during the fiscal year then ended was in accordance with this Agreement.

Membreno Dec., ¶23, Exhibit "A."

24. Following an auditing for the period July 1, 1990 through December 21, 1990, and calendar year 1991 (the "1990 and 1991 audit") a Settlement Agreement was entered on February 28, 1995 (hereinafter "Settlement Agreement"). Membreno Dec., ¶24 and Exhibit "H."

25. As set forth in the Settlement Agreement, the manner in which future NPI statements would be prepared was agreed[1] by SAI Trust, Sonoma Geotherm Partners, L.P., (hereinafter "Sonoma"), Calpine Sonoma Inc. (hereinafter "Calpine Sonoma") and Calpine, the parties thereto. Membreno Dec., ¶25.

26. In addition to an agreement as to the manner in which NPI Statements would be prepared, as a result of this Settlement Agreement, the manner in which payments of net profits for 1992 and thereafter was agreed by the parties thereto. Membreno Dec., ¶26.

27. Under §8 A. of the Settlement Agreement entitled "Miscellaneous", it states:

> Except as specifically set forth herein nothing herein shall affect the rights, duties or obligations of SAI Trust and CALPINE in and under the Agreement of Purchase, specifically including, but not limited, to Sections 1.6 and 9.5. Commencing with the Annual NPI Report for

---

[1] Now for a second time, including the original agreement entered into on May 18, 1987.

5

calendar year 1992 and continuing thereafter, CALPNE agrees to prepare said Annual NPI Reports, and all monthly reports, in accordance with the terms of the Agreement for Purchase and this Settlement Agreement; and CALPINE further agrees to make all NPI payments which may accrue in favor of SAI Trust pursuant thereto.

Membreno Dec., ¶27, Exhibit "H."

28. The subject of the Agreement for Purchase was, and still is, a geothermal power plant known as West Ford Flat located in Sonoma County, California, exclusively. Membreno Dec., ¶28, Exhibit "H."

29. The Settlement Agreement governs the relationship of the parties concerning a geothermal power plant known as West Ford Flat located in Sonoma County, California, exclusively. Membreno Dec., ¶29, Exhibit "H."

30. There is not now, nor has there ever been, any contract between SAI Trust and Calpine, nor any of their respective predecessors, subsidiaries, affiliates and related entities, where the subject of the contract was any power plant other than West Ford Flat. Membreno Dec., ¶30.

31. On February 24-28, 1992, a trial was held in the Superior Court of the State of California in and for the County of Santa Clara in the case of *Robert J. Membreno, Trustee of the SAI Trust v. Freeport McMoran Resource Partners, Limited Partnership, Calpine Corporation, Santa Rosa Geothermal Company L.P., Sonoma Geothermal Partners L.P., Calpine Sonoma, Inc., and Does 1 through 20, inclusive*, and a judgment was entered in that matter. Membreno Dec., ¶¶31-32 and Exhibit "I" thereto.

32. One of the issues decided as a result of the trial and Judgment was an attempt by Calpine to unilaterally alter the manner in which NPI was calculated,[2] a tactic that the trial court

---

[2] by varying the COPAS (Council of Petroleum Accountants Societies, Inc.)

determined was not permitted as the COPAS percentage rates "were not part of the (Agreement of Purchase). Exhibit I, p3, ¶[2]. Membreno Dec., ¶33.

33. The issue of what can and cannot be used in calculating the NPI has already been fully litigated and adjudicated. Membreno Dec., ¶34.

34. Accordingly, Debtors are estopped by the principles of issue preclusion, claim preclusion and/or judicial estoppel from again attempting to alter the manner in which NPI is calculated under the terms of the Agreement for Purchase.

35. Between July, 1994 through December, 2000, **no** NPI statement prepared by Calpine contained a line item entry for "Allocated Expenses." Membreno Dec., ¶35.

36. Commencing in or about April, 2001, Calpine unilaterally began to include line item expenses under the heading "Allocated Expenses." Membreno Dec., ¶36.

37. The uncertified NPI statements that Calpine has provided since April, 2001 use budgeted figures, as opposed to actual figures. Membreno Dec., ¶37.

38. The uncertified NPI statements that Calpine has provided since April, 2001 include costs and expenses attributable to facilities other than West Ford Flat which are not properly attributable to West Ford Flat under the Agreement for Purchase and not chargeable to SAI. Membreno Dec., ¶38.

39. Commencing in April, 2001 (effective January, 2001) Calpine calculated the overhead expense based on both Lease Operating Expenses and "Allocated Expenses." Membreno Dec., ¶39.

40. From July, 1994 through December, 2000, overhead was calculated solely based on Lease Operating Expenses. Membreno Dec., ¶40.

41. Journal entries which Debtors' claim support the "Allocated Expenses" are not specific to the West Ford Flat plant. Membreno Dec., ¶41.

42. An audit of the journal entries which Debtors claim support the "Allocated Expenses" attributable to West Ford Flat would be impossible given the lack of specificity for said journal entries. Membreno Dec., ¶42.

43. Journal entries which Debtors claim support the "Allocated Expenses" attributable to West Ford Flat are, in fact, attributable to plants other than West Ford Flat. Membreno Dec., ¶43.

44. There is no sound basis, in accordance with generally accepted accounting principles, for the unilateral change in accounting procedures that occurred on or about April, 2001. Membreno Dec., ¶44.

45. As a result of the unilateral change in accounting procedures undertaken by Debtors, SAI's net profit interest was less in each year over year period compared with any year between 1994 through 2000 inclusive, which is counterintuitive, as the basis for Calpine's consolidation of 16 plants which comprise the Geysers' Region was to reduce costs and increase profits. Membreno Dec., ¶45.

46. At no time was there a meeting of the minds between Debtors and SAI Trust to modify or alter the Agreement for Purchase beginning in 2001. Membreno Dec., ¶46.

47. Debtors unilaterally altered the terms of the Agreement for Purchase beginning in 2001. Membreno Dec., ¶47.

48. Debtors' decision to unilaterally alter the terms of the Agreement for Purchase beginning in 2001 was a breach of the Agreement of Purchase. Membreno Dec., ¶48.

49. Debtors' decision to unilaterally alter the terms of the Agreement for Purchase beginning in 2001 was a breach of the Settlement Agreement. Membreno Dec., ¶49.

50. Debtors' decision to unilaterally alter the terms of the Agreement for Purchase beginning in 2001 was contrary to a Judgment on an issue that had already been fully litigated between these identical parties. Membreno Dec., ¶50.

51. Calpine has completely ignored the undeniable, namely that Debtors' have (and continue to) breach the underlying agreements with SAI, *inter alia*, by failing to provide a certified NPI Statement singed by Debtors' Chief Financial Officer for at least four (4) years pre-petition (and all post petition), using budgeted numbers as opposed to actual cost figures, and calculating overhead. SAI disputes Debtors' improper use of allocating costs from other plants and including costs not subject to the agreement, allocating expenses from other plants as costs, and charging an overhead percentage based on budgeted figures, inappropriate costs, and allocated costs. Membreno Dec., ¶51.

52. SAI brought to Debtors' attention that it noticed increases in costs, inclusions of costs, and allocations of costs since receipt of its last statement certified by Debtors' chief financial officer. Membreno Dec., ¶52.

53. SAI attempted to communicate with Debtors and determine whether these increases in costs, inclusions of costs, and allocations of costs are in accordance with the Agreement For Purchase and Settlement Agreement. Membreno Dec., ¶52.

54. Debtors have not provided SAI with statements certified by their chief financial officer. Membreno Dec., ¶52.

55. Debtors have not provided SAI with sufficient access to its records to determine whether the calculation of NPI (although uncertified by the chief financial officer) was in accordance with the Agreement For Purchase. Membreno Dec., ¶52.

9

56. Debtors have not reasonably cooperated with SAI so SAI could conduct an audit of the uncertified records. Membreno Dec., ¶52.

57. Debtors have not maintained complete and accurate accounting records of the accounts used to calculate NPI. Membreno Dec., ¶52.

58. Debtors have not maintained accounting records sufficient to show in reasonable detail the calculation of NPI in accordance with the Agreement for Purchase. Membreno Dec., ¶52.

59. Debtors have not maintained accounting records sufficient to show in reasonable detail the calculation of direct operating expenses and the general and administrative expenses in accordance with the Agreement for Purchase. Membreno Dec., ¶52.

60. Debtors have not properly accounted for the general and administrative expenses in accordance with the Agreement for Purchase. Membreno Dec., ¶52.

61. Debtors have not identified and accounted for many costs associated with the operation of the power plant governed by the Agreement for Purchase. Membreno Dec., ¶52.

62. Debtors have improperly included "allocated costs" to SAI which were never included for any of the monthly NPI's from August, 1989 through December, 2000, and have failed and refused to identify and account for many costs associated with the operation of the power plants governed by the Agreement For Purchase. Membreno Dec., ¶52.

63. In an effort to resolve the ongoing disputes regarding Debtors' non-compliance with the Agreement for Purchase and Settlement Agreement, SAI and its counsel met with Debtors, representative employees of Debtors, and Debtors' counsel. Such discussions did not resolve the ongoing disputes. Membreno Dec., ¶53.

64. However, Debtors acknowledged, *inter alia*, that they were unaware of the underlying agreements. Membreno Dec., ¶53.

65. Debtors acknowledged, *inter alia,* that they have not complied with the underlying agreements in several respects. Membreno Dec., ¶53.

66. Debtors acknowledged, *inter alia,* that they have not maintained the books and records in reasonable detail to properly calculate direct operating expenses and the general and administrative expenses in accordance with the underlying agreements. Membreno Dec., ¶53.

67. Debtors acknowledged, *inter alia,* that they have not properly accounted for the general and administrative expenses in accordance with the underlying agreements, but rather, caused SAI to bear the expenses from adjacent plants inconsistent with the underlying agreements due to their own accounting preferences. Membreno Dec., ¶53.

68. SAI has suffered $583,698.61 in damages as of August 1, 2008. However, SAI Trust's damages are preliminary and partial, (as Debtors continue to breach the contract on a monthly basis) and do not include other potential damages/losses based on Debtors' use of budgeted figures and not actual figures, charging 15% overhead on budgeted figures and not actual figures and including allocated budgeted costs from other plants, and including costs not allowed to be included based on the parties contractual agreements and are limited to pre-petition matters. This preliminary calculation only addresses one area of damage/loss based on Debtors' improperly allocating budgeted costs (from other plants that were not the subject of any agreement and certainly not the subject of the Agreement for Purchase) to SAI on a percentage basis and then adding 15% of these unsupported and unjustified "Allocated Expenses" as overhead . This preliminary calculation is for the period pre-petition of January 2001 through May, 2008. Said amount totals $583,698.61. Membreno Dec., ¶58.

69. A table of all of the "Allocated Expenses" from January, 2001 through May, 2008, is set forth below for the Court's convenience. This includes the unauthorized addition of 15% of

"Allocated Expenses" to the overhead, as well as interest at the rate of 9% for each unauthorized charge from April 1, 2001 through August 1, 2008. Membreno Dec., ¶59, Rule 56.1, ¶69.

### SUMMARY OF IMPROPER ALLOCATED EXPENSES & 15% OVERHEAD CHARGED BY CALPINE IN MONTHLY NPI STATEMENTS BEGINNING IN APRIL, 2001

|  | Month | Unauthorized Allocated Expense | @4.55% | Interest through 8/1/08 at 9% per annum | Interest on 15% Overhead at 9% per annum |
|---|---|---|---|---|---|
|  | Jan-01 | - | - |  |  |
|  | Feb-01 | - | - |  |  |
|  | Mar-01 | - | - |  |  |
| Jan-Mar True up | Apr-01 | $210,877.99 | $9,594.95 | $6,476.59 | $971.49 |
|  | May-01 | 74,889.32 | 3,407.46 | 2,274.48 | 341.17 |
|  | Jun-01 | 107,243.43 | 4,879.58 | 3,220.50 | 483.08 |
|  | Jul-01 | 54,514.42 | 2,480.41 | 1,618.47 | 242.77 |
|  | Aug-01 | 104,038.44 | 4,733.75 | 3,053.27 | 457.99 |
|  | Sep-01 | 82,132.01 | 3,737.01 | 2,382.34 | 357.35 |
|  | Oct-01 | 87,599.98 | 3,985.80 | 2,511.05 | 376.66 |
|  | Nov-01 | 60,165.47 | 2,737.53 | 1,704.11 | 255.62 |
|  | Dec-01 | 35,148.38 | 1,599.25 | 983.54 | 147.53 |
|  | Jan-02 | 75,835.26 | 3,450.50 | 2,096.18 | 314.43 |
|  | Feb-02 | 65,889.48 | 2,997.97 | 1,798.78 | 269.82 |
|  | Mar-02 | 61,450.45 | 2,796.00 | 1,656.63 | 248.49 |
|  | Apr-02 | 41,621.72 | 1,893.79 | 1,107.87 | 166.18 |
|  | May-02 | 42,069.18 | 1,914.15 | 1,105.42 | 165.81 |
|  | Jun-02 | 37,943.85 | 1,726.45 | 984.08 | 147.61 |
|  | Jul-02 | 44,318.60 | 2,016.50 | 1,134.28 | 170.14 |
|  | Aug-02 | 53,364.83 | 2,428.10 | 1,347.60 | 202.14 |
|  | Sep-02 | 54,383.44 | 2,474.45 | 1,354.76 | 203.21 |
|  | Oct-02 | 62,323.49 | 2,835.72 | 1,531.29 | 229.69 |
|  | Nov-02 | 56,571.61 | 2,574.01 | 1,370.66 | 205.60 |
|  | Dec-02 | 57,514.97 | 2,616.93 | 1,373.89 | 206.08 |
|  | Jan-03 | 110,891.37 | 5,045.56 | 2,611.08 | 391.66 |
|  | Feb-03 | 93,134.88 | 4,237.64 | 2,161.20 | 324.18 |
|  | Mar-03 | 83,359.91 | 3,792.88 | 1,905.92 | 285.89 |
|  | Apr-03 | 104,483.34 | 4,753.99 | 2,353.23 | 352.98 |
|  | May-03 | 100,422.52 | 4,569.22 | 2,227.49 | 334.12 |
|  | Jun-03 | 90,554.96 | 4,120.25 | 1,977.72 | 296.66 |
|  | Jul-03 | 106,978.17 | 4,867.51 | 2,299.90 | 344.99 |
|  | Aug-03 | 94,185.34 | 4,285.43 | 1,992.84 | 298.93 |
|  | Sep-03 | 123,901.44 | 5,637.52 | 2,579.17 | 386.88 |
|  | Oct-03 | 111,313.10 | 5,064.75 | 2,279.14 | 341.87 |
|  | Nov-03 | 188,866.58 | 8,593.43 | 3,802.59 | 570.39 |
|  | Dec-03 | 229,528.23 | 10,443.53 | 4,542.94 | 681.44 |
|  | Jan-04 | 167,579.22 | 7,624.85 | 3,259.62 | 488.94 |
|  | Feb-04 | 161,547.67 | 7,350.42 | 3,087.18 | 463.08 |
|  | Mar-04 | 112,971.97 | 5,140.22 | 2,120.34 | 318.05 |

| Month | Unauthorized Allocated Expense | @4.55% | Interest through 8/1/08 at 9% per annum | Interest on 15% Overhead at 9% per annum |
|---|---|---|---|---|
| Apr-04 | 86,545.03 | 3,937.80 | 1,594.81 | 239.22 |
| May-04 | 78,569.62 | 3,574.92 | 1,421.03 | 213.15 |
| Jun-04 | 122,794.90 | 5,587.17 | 2,179.00 | 326.85 |
| Jul-04 | 94,911.07 | 4,318.45 | 1,651.81 | 247.77 |
| Aug-04 | 101,499.03 | 4,618.21 | 1,731.83 | 259.77 |
| Sep-04 | 83,585.29 | 3,803.13 | 1,397.65 | 209.65 |
| Oct-04 | 78,928.33 | 3,591.24 | 1,292.85 | 193.93 |
| Nov-04 | 66,402.70 | 3,021.32 | 1,065.02 | 159.75 |
| Dec-04 | 124,427.61 | 5,661.46 | 1,953.20 | 292.98 |
| Jan-05 | 89,187.80 | 4,058.04 | 1,369.59 | 205.44 |
| Feb-05 | 130,170.61 | 5,922.76 | 1,954.51 | 293.18 |
| Mar-05 | 101,011.86 | 4,596.04 | 1,482.22 | 222.33 |
| Apr-05 | 52,702.62 | 2,397.97 | 755.36 | 113.30 |
| May-05 | 100,652.98 | 4,579.71 | 1,408.26 | 211.24 |
| Jun-05 | 98,049.99 | 4,461.27 | 1,338.38 | 200.76 |
| Jul-05 | 106,146.17 | 4,829.65 | 1,412.67 | 211.90 |
| Aug-05 | 118,378.04 | 5,386.20 | 1,535.07 | 230.26 |
| Sep-05 | 126,453.65 | 5,753.64 | 1,596.64 | 239.50 |
| Oct-05 | 84,586.14 | 3,848.67 | 1,039.14 | 155.87 |
| Nov-05 | 138,265.49 | 6,291.08 | 1,651.41 | 247.71 |
| Dec-05 | 67,623.45 | 3,076.87 | 784.60 | 117.69 |
| Jan-06 | 68,587.29 | 3,120.72 | 772.38 | 115.86 |
| Feb-06 | 83,468.96 | 3,797.84 | 911.48 | 136.72 |
| Mar-06 | 88,906.62 | 4,045.25 | 940.52 | 141.08 |
| Apr-06 | 181,029.40 | 8,236.84 | 1,853.29 | 277.99 |
| May-06 | 82,321.61 | 3,745.63 | 814.67 | 122.20 |
| Jun-06 | 89,359.38 | 4,065.85 | 853.70 | 128.06 |
| Jul-06 | 61,919.82 | 2,817.35 | 570.15 | 85.52 |
| Aug-06 | 94,229.72 | 4,287.45 | 836.05 | 125.41 |
| Sep-06 | 91,056.30 | 4,143.06 | 776.82 | 116.52 |
| Oct-06 | 103,836.19 | 4,724.55 | 850.42 | 127.56 |
| Nov-06 | 62,095.79 | 2,825.36 | 487.37 | 73.11 |
| Dec-06 | 51,925.41 | 2,362.61 | 389.83 | 58.47 |
| Jan-07 | 143,611.4 | 6,534.32 | 1,029.16 | 154.37 |
| Feb-07 | 98,440.67 | 4,479.05 | 671.86 | 100.78 |
| Mar-07 | 149,880.64 | 6,819.57 | 971.79 | 145.77 |
| Apr-07 | 32,134.17 | 1,462.10 | 197.38 | 29.61 |
| May-07 | 196,530.30 | 8,942.13 | 1,140.12 | 171.02 |
| Jun-07 | 104,085.74 | 4,735.90 | 568.31 | 85.25 |
| Jul-07 | 61,754.34 | 2,809.82 | 316.10 | 47.42 |
| Aug-07 | 143,608.94 | 6,534.21 | 686.09 | 102.91 |
| Sep-07 | 113,970.38 | 5,185.65 | 505.60 | 75.84 |
| Oct-07 | 99,930.28 | 4,546.82 | 409.21 | 61.38 |
| Nov-07 | 97,249.99 | 4,424.87 | 365.05 | 54.76 |
| Dec-07 | 93,133.80 | 4,237.59 | 317.82 | 47.67 |
| Jan-08 | 106,738.52 | 4,856.60 | 327.82 | 49.17 |
| Feb-08 | 101,731.03 | 4,628.76 | 277.73 | 41.66 |
| Mar-08 | 98,089.94 | 4,463.09 | 234.31 | 35.15 |
| Apr-08 | 105,704.12 | 4,809.54 | 216.43 | 32.46 |
| May-08 | 106,039.33 | 4,824.79 | 180.93 | 27.14 |

| Month | Unauthorized Allocated Expense | @4.55% | Interest through 8/1/08 at 9% per annum | Interest on 15%Overhead at 9% per annum |
|---|---|---|---|---|
|  |  | $378,190.43 | $129,373.59 | $19,406.03 |

Sub-total of unauthorized "Allocated Expenses"                                    $378,190.43

Sub-total of unauthorized 15% of Allocated                                              56,728.56
Expenses added to Overhead

Interest on unauthorized "Allocated Expenses"                                        129,373.59
at 9% per annum through 8/1/08

Interest on unauthorized 15% of Allocated                                                19,406.03
Expenses added to Overhead at 9% per annum
through 8/1/08

**TOTAL**                                                                                              **$583,698.61**

70. SAI Trust is entitled to damages in the amount of $583,698.61, plus any damages resulting from further breaches of the Agreement for Purchase by debtors going forward in the manner calculated herein, plus post judgment interest at the rate of 9%.

Dated: New York, New York
August 13, 2008

Yours, etc.,

**NICOLETTI HORNIG & SWEENEY**
Attorneys for
*Robert Membeno, Trustee for SAI Trust*

By: /s/ Lawrence C. Glynn
Lawrence C. Glynn (LG-6431)
Wall Street Plaza
88 Pine Street
New York, New York 10005
(212) 220-3830
NH&S File No.:    00000840LCG