KIRKLAND & ELLIS LLP
Citigroup Center
153 East 53rd Street
New York, New York 10022-4611
Telephone: (212) 446-4800
Facsimile: (212) 446-4900
Richard M. Cieri (RC 6062)
Marc Kieselstein (admitted *pro hac vice*)
David R. Seligman (admitted *pro hac vice*)
Jeffrey S. Powell (admitted *pro hac vice*)
Mark E. McKane (admitted *pro hac vice*)

Counsel for the Reorganized Debtors

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re: ) | |
| ) | Chapter 11 |
| Calpine Corporation, et al., ) | |
| ) | Case No. 05-60200 (BRL) |
| Reorganized Debtors. ) | Jointly Administered |

**DECLARATION OF GUY TIPTON IN SUPPORT OF REORGANIZED DEBTORS'
RESPONSE TO SAI TRUST'S MOTION FOR SUMMARY JUDGMENT.**

1. I, Guy Tipton, am over the age of eighteen and all of the following statements are made based on my personal knowledge and if called upon, I would testify thereto under oath. I make this declaration in support of the Reorganized Debtors' Response to SAI Trusts Motion for Summary Judgment. (the "Reorganized Debtors' Response").[1]

2. I am employed by Calpine Operating Services Company, Inc., as Regional Controller for the Geysers facilities, including the West Ford Plant. I have been in this position since 1999, under various titles. Prior to working as the Regional Controller, I worked as a plant operator at

---

[1] Any capitalized terms used herein but not otherwise defined shall have the same meaning as ascribed to them in the Reorganized Debtors' Motion For Summary Adjudication Discharging SAI Trust's Claim Nos. 6309, 6314, 6315, 6316, 6327 and 6328.

the Geysers for approximately 12 years. I submitted a Declaration in support of Debtors' Objection to SAI Trust's Motion for Relief From Stay and Reply to SAI Trust's Response to the Debtor's Eleventh Omnibus Claims Objection to SAI Trust's Proofs of Claim and a Declaration in Support of the Reorganized Debtors' Motion for Summary Adjudication Discharging SAI Trust's Claim Nos. 6309, 6314, 6315, 6316, 6327 and 6328 and I incorporate those declarations herein.

A. **The Monthly NPI Reports Are Fair And Accurate And Prepared Consistent With The Purchase Agreement.**

3. It is my understanding that SAI Trust argues that "Allocated Expenses" are a new or different category of expenses that were added after the Reorganized Debtors consolidated the operations of the West Ford Plant with the rest of the consolidated Geysers field. That is not correct.

4. After the Reorganized Debtors made the management decision to consolidate the operations at the Geysers, the Reorganized Debtors added the category of "Allocated Expenses" to maintain transparency in its accounting of the NPI payment. Allocated expenses represent West Ford Plant's share of the operating expenses, determined by the pro rata share of the annual budgeted costs. After reviewing the language of the relevant documents I concluded that the allocated expenses subcategory included in the monthly NPI report represents those categories of expenses and operations that are permitted under the Purchase Agreement and Exhibit F to the Purchase Agreement that are allocated from consolidated business operations. Prior to the consolidation, those categories of expenses were included, in their entirety in the "Lease Operating Expenses" subcategory.

5. The Reorganized Debtors have always used those categories of costs and expenses necessary to operate the West Ford Plant when they calculate SAI Trust's NPI payment. After consolidation the Reorganized Debtors broke down the "Operating Expenses" category on the monthly NPI report to include categories for "Lease Overhead Expenses" and "Allocated Expenses." Those categories do not overlap and are exclusive of each other.

2

6. I am responsible for the team that produces the monthly NPI reports and manage the accounting for the Geysers generally. The monthly reports are created in the ordinary course of the Reorganized Debtors' business operations and are prepared following guidelines similar to monthly royalty calculations. The Reorganized Debtors utilize the same PeopleSoft database in calculating the NPI payments as it does for financial reporting. The journal entries are properly accounted for as operating expenses in the Reorganized Debtors' PeopleSoft database, complete with supporting information when appropriate. For example, there is a specific journal entry, reported in the back-up materials, for the salaries or wages of employees who work at the West Ford Plant. A portion of those salaries or wages are allocated to the West Ford Plant in calculating the NPI payment. It is my opinion that the monthly NPI reports are fair and accurate to the best of the Reorganized Debtors' abilities at the time they are prepared and provided to SAI Trust.

7. Further, the monthly reports provided to SAI Trust today contain the same, if not more, financial information than what was provided to SAI Trust throughout the course of the relationship. As set forth in my First Declaration, SAI Trust also receives line item journal entries identifying which categories of expenses were charged in determining the NPI calculation.

8. The Reorganized Debtors include the "Allocated Expenses" in the calculation of the 15% of Overhead charged in the NPI payment because as set forth in Exhibit F of the Purchase Agreement, overhead charges are set at "fifteen percent of the cost of Operating the Joint Property" exclusive of certain costs. The Allocated Expenses represent a portion of the "cost of Operating the Joint Property" they are included in the 15% Overhead charge.

9. It is my understanding that SAI Trust holds a right to conduct annual audits of the operations of West Ford Flat upon reasonable notice to the Reorganized Debtors. The Purchase Agreement does not limit SAI Trust's audit rights to after the receipt of any annual NPI report whether certified or not. To my knowledge, SAI Trust has not requested an audit of the Reorganized Debtors' books or records since this current dispute began. The Debtors' books and

3

records, including the PeopleSoft database recording the day-to-day operations of the entire Reorganized Debtors contain complete and accurate information to the best of my knowledge. As a part of the Reorganized Debtors' every day business operations, the journal entries are properly booked in the PeopleSoft database and are supported by the proper back-up information, including specific invoices when appropriate. It is my opinion that it would be possible to audit the Reorganized Debtors' calculation of the monthly NPI reports. Such an audit would be a substantial undertaking, given the breadth and scope of SAI Trust's disputed claims, but it would be possible.

10. It is not accurate to say that the Reorganized Debtors' charge costs and expenses incurred at other plants to the NPI payment. The allocated expenses represent West Ford Plant's share of the operating expenses, determined by the pro rata share of the annual budgeted costs and no allocations attributable to other plants are charged to the NPI Calculation. While the line-item journal entries included as back-up support represent the full consolidated expenses of the appropriate unit at the Geysers, only West Ford Plant's allocated share of those journal entries are charged to SAI Trust.

11. I am familiar with the NPI payments made to SAI Trust in the past. SAI Trust's annual NPI payments in 1999 totaled $52,095.47, while the payments from 2001 through today have all been in excess of $412,000, including more than $600,000 in 2001. Therefore, it is not accurate to say that the NPI payments have always been less after the Reorganized Debtors' consolidated operations of the West Ford Plant with the rest of the consolidated Geysers.

12. As stated in my First Declaration, I was present at meetings with SAI Trust representatives. I do not recall anyone representing the Reorganized Debtors stating that they were not aware of the Purchase Agreement with SAI Trust. While there was a discussion of the fact that the annual reports had not been certified by the Reorganized Debtors' chief financial officer, there was no other statement about whether the Reorganized Debtors were complying with the terms of the Purchase Agreement in calculating the monthly NPI payments. I have always been aware of the contractual requirement to provide SAI Trust with monthly NPI

payments. The Reorganized Debtors would not provide monthly payments to any entity unless they were required to do so by a contract or other agreement. Therefore it is my belief that the Reorganized Debtors have always been aware of the Purchase Agreement with SAI Trust.

    **B.    SAI Trust Has Benefited From The Consolidation At The Reorganized Debtors.**

13. As stated in my First Declaration, as part of the Reorganized Debtors' efforts to provide supplemental information to SAI Trust, at SAI Trust's request, I prepared a pro-forma financial analysis of what the Reorganized Debtors would expect to see if the West Ford Plant were operated as a stand-alone plant. That pro forma financial analysis, which was provided to SAI Trust and its representatives, showed that the West Ford Plant received a benefit through the use of allocated expenses.

I declare under penalty of perjury pursuant to 28 U.S.C. section 1746 that the foregoing is true and correct. Signed this 10th day of September, 2008.

                                                                                     Guy Tipton