**NICOLETTI HORNIG & SWEENEY**
Attorneys for
*Robert Membeno, Trustee for SAI Trust*
Wall Street Plaza
88 Pine Street
New York, New York 10005
(212) 220-3830
Attorney: Lawrence C. Glynn (LG-6431)
NH&S File No.:   00000840LCG


UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| In re: ) | CHAPTER 11 |
| ) | |
| CALPINE CORPORATION, et al, ) | Case No. 05-60200 (BRL) |
| ) | Jointly Administered |
| ) | |
| Debtor. ) | |
| ) | |


### SAI TRUST'S LOCAL RULE 56.1 STATEMENT IN OPPOSITION TO REORGANIZED DEBTORS' MOTION FOR SUMMARY JUDGMENT

Pursuant to Rule 56.1(b) of the Local Rules of Civil Procedure for the Southern District of New York, SAI Trust, by its attorneys, responds to Reorganized Debtors' Motion for Summary Judgment[1] with the following responses:

1.   Denied. The threshold issue is whether Debtors had any basis under the terms of the Agreement for Purchase, or otherwise, for including "Allocated Expenses" attributable to any plant other than West Ford Flat. As set forth in detail in SAI Trust's principle brief, it is wholly improper

---

[1] Reorganized Debtors failed to submit a Local Rule 56.1 statement of undisputed material facts. However, to the extent the Court deems the brief submitted by Debtors as a Rule 56.1(b) statement, this statement in opposition is being provided.

for Debtors to unilaterally insert this extremely broad, nebulous category of expenses for power plants which were never even contemplated at the time of drafting the Agreement for Purchase. See Declaration of Robert Membreno in Support of SAI Trust's Motion for Summary Judgment which is hereby incorporated by reference (hereinafter "Membreno Dec.") at ¶¶3, 4, 9-13, 28, 30 and Exhibits "A", "B", "C" and "F" thereto.

      2.      This statement is improper in a Rule 56.1 Statement and irrelevant and requires no response from SAI Trust.

      3.      Denied. The Agreement for Purchase (Exhibit "B" to Debtors' Motion for Summary Judgment) was limited to the West Ford Flat plant. This is not in dispute and has been admitted by Guy Tipton when he stated in Tipton Dec. $2^2$ that: "SAI Trust sold its interest in the 1984 QF power purchase agreement between PG&E and SAI Geothermal, Inc. to Freeport, but retained the rights to monthly net profit interest payments from operation of the *West Ford Plant (the 'Project')*". Tipton Dec. 2, ¶5. (Emphasis added.) Thus, Guy Tipton has now conceded that the NPI at issue was, indeed, limited to West Ford Flat.

      4.      Admitted.

      5.      Admitted.

      6.      Admitted.

      7.      Admitted.

      8.      Admitted.

---

[2] The Declaration of Guy Tipton in Support of Debtors' Objection to SAI Trust's Motion for Relief from Stay and Reply to SAI Trusts's Response to the Debtor's Eleventh Omnibus Claims Objection to SAI Trust's Proofs of Claim, is incorporated by reference in the Declaration of Guy Tipton, Regional Controller for the Geysers, in Support of Debtors' Motion for Summary Judgment. The former will be identified as Tipton Dec. 1, the latter as Tipton Dec. 2.

9. SAI Trust does not respond to the statement contained in ¶9 of Debtors' Motion for Summary Judgment as none is required.

10. Admitted.

11. Denied. The Purchase Agreement to which Debtors refer in its ¶11 of its Motion for Summary Judgment is not what is set forth as Exhibit "B" thereto. Exhibit "B" to Debtors' Motion for Summary Judgment is the agreement entitled "Agreement For Purchase And Sale Of Assets between SAI Geothermal, Inc. (hereinafter "SAI") and Freeport McMoRan Resource Partners, L. P. ("Freeport") entered into on or about May 17, 1987 (hereinafter "Agreement For Purchase"). Membreno Dec. at ¶¶3-7.

12. Denied in part. While SAI Trust admits that the Agreement for Purchase speaks for itself and is properly reproduced in ¶12 of Debtors' Motion for Summary Judgment, SAI Trust denies that the emphasis added by Debtors is properly placed. Debtors set forth the definition of Net Income as stated in the Agreement for Purchase, but emphasize only a self-serving portion of the definition in sub-paragraph (ii). Pursuant to the Agreement for Purchase, Net Income is defined as:

> the gross revenues being received by Buyer from the Project minus the sum of the following:
>
> (ii) all **PROJECT** *direct operating expenses* (excluding depreciation).
>
> (iii) general and administrative expenses associated with the Project,
>
> (iv) if the Project or a portion thereof is financed through Project Financing, principal, interest, reserves and any fees payable in respect of the Project Financing.

Membreno Dec., Exhibit "A", §9.10. (Proper emphasis added).

Lost on Debtors is the fact that in this definition, all revenues and expenses described in the

3

contract are specific to "the Project." The "Project" is West Ford Flat. Nothing more, nothing less.

 13. Denied. The parties, and the Project, are repeatedly and unmistakably identified in the Agreement for Purchase. Membreno Dec., Exhibit "A."

 14. Admitted.

 15. Admitted.

 16. Denied in part. While Calpine may have consolidated its operational and business units to achieve efficiencies and cost savings, it did so at the expense of SAI Trust. Membreno Dec., ¶¶14-16 and Exhibit "F" thereto.

 17. This statement is improper in a Rule 56.1 Statement and irrelevant and requires no response from SAI Trust.

 18. Denied. The contract speaks for itself. Secondly, as detailed in SAI Trust's principle brief, Calpine has not consistently performed in accordance with the contract and admits as much in their motion for summary judgment wherein they state:

> Initially, the four plants, including the West Ford [Flat] Plant, spread across The Geyers, and Calpine continued to operate the plants as stand-alone entities. As a stand-alone entity, Calpine managed the plant separate from the others and costs and expenses necessary to operate West Ford [Flat] Plant were accounted separately. *However, once Calpine acquired substantially all of the power plants it managed the West Ford [Flat] Plant as part of their consolidated operations and accounted for the costs necessary to operate West Ford Plant accordingly.*

Debtors Br., ¶15.

 19. Denied in part. SAI Trust admits that Calpine uses budgeted figures. The use of budgeted figures for calculating the monthly NPI is arbitrary, unjustified, improper, fraudulent and

thieving. And, effective April 2001, Calpine began charging SAI Trust for the same "certain direct charges" multiple times and all charges are unsupported and uncertified. Membreno Dec., ¶¶17-23, 37-38, 51-52, 54, 58 and Exhibits "A", "C", "D", & "F" thereto.

20. a)   Denied. The threshold question is whether or not these expenses are even permitted under the Agreement for Purchase. Only once this question is answered by this Court can a determination be made as to the legitimacy of these expenses. Thus, SAI Trust has moved for summary judgment arguing that there is no genuine issue of material fact that Debtors have breached the contract by inserting allocated costs based upon plants other than West Ford Flat commencing in April 2001. (See SAI Trust's Motion for Summary Judgment filed August 13, 2008, Rule 56.1 Statement in Support of Motion for Summary Judgment, Declaration of Robert Membreno in Support of Summary Judgment and Exhibits "A" through "I" annexed thereto and Memorandum of Law in Support.

b)   SAI Trust further denies the statement contained in ¶20 since SAI Trust has asked repeatedly that if Debtors are so confident in the veracity of their "financial reports" in support of these unwarranted expenses, then why haven't Debtors certified their annual NPI statement as required under the plain language of the Agreement for Purchase? (Exhibit "A", §1.6.) Debtors have continually breached this agreement by failing to certify any of the NPI statements as required under the contract. Membreno Dec., ¶¶37, 38, 51, 52. Section 1.6 of the Agreement for Purchase requires that NPI statements are to be certified by the chief financial officer of Calpine annually.  Prior to 2000, year end NPI statements prepared by Calpine and/or its wholly owned subsidiary(ies) were certified by Calpine's and/or its predecessors-in-interest's chief financial officer annually. In fact, between August, 1989 and approximately the end of the fiscal year, 2000, a period of 11 years, all

NPI statements prepared by Calpine and/or its wholly owned subsidiary(ies) were certified by Calpine's and/or its predecessors-in-interest's chief financial officer annually. However, since April 2001, annual certifications have ceased to be prepared by Calpine and/or its wholly owned subsidiary(ies). Since 2001, no officer of Calpine, or its wholly owned subsidiary(ies) have certified any year end statement as required under the Agreement for Purchase. Membreno Dec., ¶¶17-21, Rule 56.1 Statement, ¶17-21. Thus, even if Calpine were permitted to Allocate Expenses from plants other than West Ford Flat, which is denied, these uncertified expenses would be meaningless, fraudulent and improper.

      c)     Finally, with respect to ¶20 of Debtors' Motion for Summary Judgment, all "financial reports showing the NPI calculations and break down of specific allocations of costs" are based on budgeted figures, as admitted by Debtors in ¶18 of their motion for summary judgment and are uncertified and meaningless. The use of budgeted figures for calculating the monthly NPI is arbitrary, unjustified, improper, fraudulent and thieving. And, effective April 2001, Calpine began charging SAI Trust for the same "certain direct charges" multiple times and all charges are unsupported and uncertified. Membreno Dec., ¶¶17-23, 37-38, 51-52, 54, 58 and Exhibits "A", "C", "D", & "F" thereto.

      21.     Denied. All "financial reports showing the NPI calculations and break down of specific allocations of costs" are based on budgeted figures, as admitted by Debtors in ¶18 of their motion for summary judgment and are uncertified and meaningless. The use of budgeted figures for calculating the monthly NPI is arbitrary, unjustified, improper, fraudulent and thieving. And, effective April 2001, Calpine began charging SAI Trust for the same "certain direct charges" multiple times and all charges are unsupported and uncertified. Membreno Dec., ¶¶17-23, 37-38, 51-

6

52, 54, 58 and Exhibits "A", "C", "D", & "F" thereto.

22. a)  Denied. Debtors repeatedly misstate SAI Trust's argument in an effort to confuse the Court. SAI Trust claims and has always claimed that the unilateral insertion of "Allocated Expenses" into the NPI is in breach of the Agreement for Purchase; (Membreno Dec., Exhibit "A").

b)  SAI Trust has also argued consistently that Debtors' unilateral decision to start charging additional, unsupported and unjustified "direct operating expenses" for the account of SAI Trust is wholly improper and: 1) not a part of the Agreement for Purchase (Membreno Dec., Exhibit "A"); 2) not mentioned in the December 13, 1989 explanation of NPI line items (Membreno Dec., Exhibit "B"); 3) not pertaining exclusively to the West Ford Flat power plant as required in the Agreement for Purchase (Membreno Dec., Exhibit "A", Tipton Dec. 2, ¶5); 4) not a part of the 11 year course of dealings that had been established by the parties, (Membreno Dec., ¶¶13, 16); 5) already accounted for, as they were for 11 years prior, in the Lease Operating Expenses and Overhead charges (Membreno Dec., ¶¶10, 12-13, 16, 39-40, 51, 58-59); 6) not certified by the Chief Financial Officer (or any other employee) of the Debtors (Membreno Dec., ¶¶17-23, 37-38, 51, 52,54), and 7) based wholly on budgeted, i.e., fictitious, theoretical, un-incurred and hypothetical expenses. (Debtors' Motion for Summary Judgment, ¶18.) Accordingly, these charges are in breach of the Agreement for Purchase and SAI Trust must be reimbursed with interest. Debtors' motion for summary judgment must be denied and SAI Trust's motion for summary judgment granted.

23. a)  Denied. SAI Trust seeks no such rewrite of the Agreement. SAI Trust merely seeks that the terms of the contract be enforced as written. As written, the Agreement for Purchase allows Calpine to deduct "all **Project** *direct operating expenses* (excluding depreciation)." (Membreno Dec., Exhibit "A.") The term "direct operating expenses" is precisely what those words mean. The

"Project" is the West Ford Flat plant. (Membreno Dec., Exhibit "A.") The word "Project" immediately proceeding the term "direct operating expenses" modifies that term so as to preclude all other interpretations. (Membreno Dec., Exhibit "A.") Thus, if one were to question, as Calpine now does, which "direct operating expenses" may be deducted, the answer is clearly set forth in the contract: direct operating expenses associated with "the Project" and no others. What is the project? The Project is "West Ford Flat" and no other. (Membreno Dec., Exhibit "A.")

    b) Thus, it is Calpine who would like to rewrite the Agreement for Purchase, and specifically, the definition of Net Income, to state, in part, "minus... all *operating expenses* (excluding depreciation) whether or not actually incurred and for whatever project and/or as many projects as we choose, disregarding the fact that this agreement only relates to one project known as the West Ford Flat power plant." (Membreno Dec., Exhibit "A.")

    24. Denied. Calpine admits in the third line of ¶24 that there was a change, after beginning ¶24 with its statement that there was no change. The duplicity of Debtors' position is readily apparent.

    25. This statement is improper in a Rule 56.1 statement and no response is required of SAI Trust.

    26. a) Denied. The threshold question is whether or not these expenses are even permitted under the Agreement for Purchase. Only once this question is answered by this Court can a determination be made as to the legitimacy of these expenses. Thus, SAI Trust has moved for summary judgment arguing that there is no genuine issue of material fact that Debtors have breached the contract by inserting allocated costs based upon plants other than West Ford Flat commencing in April 2001. (See SAI Trust's Motion for Summary Judgment filed August 13, 2008, Rule 56.1

Statement in Support of Motion for Summary Judgment, Declaration of Robert Membreno in Support of Summary Judgment and Exhibits "A" through "I" annexed thereto and Memorandum of Law in Support.

        b)    SAI Trust further denies the statement contained in ¶26 since SAI Trust has asked repeatedly that if Debtors are so confident in the veracity of their "financial reports" in support of these unwarranted expenses, then why haven't Debtors certified their annual NPI statement as required under the plain language of the Agreement for Purchase? (Exhibit "A", §1.6.) Debtors have continually breached this agreement by failing to certify any of the NPI statements as required under the contract. Membreno Dec., ¶¶37, 38, 51, 52. Section 1.6 of the Agreement for Purchase requires that NPI statements are to be certified by the chief financial officer of Calpine annually. Prior to 2000, year end NPI statements prepared by Calpine and/or its wholly owned subsidiary(ies) were certified by Calpine's and/or its predecessors-in-interest's chief financial officer annually. In fact, between August, 1989 and approximately the end of the fiscal year, 2000, a period of 11 years, all NPI statements prepared by Calpine and/or its wholly owned subsidiary(ies) were certified by Calpine's and/or its predecessors-in-interest's chief financial officer annually. However, since April 2001, annual certifications have ceased to be prepared by Calpine and/or its wholly owned subsidiary(ies). Since 2001, no officer of Calpine, or its wholly owned subsidiary(ies) have certified any year end statement as required under the Agreement for Purchase. Membreno Dec., ¶¶17-21, Rule 56.1 Statement, ¶17-21.

        c)    All "financial reports showing the NPI calculations and break down of specific allocations of costs" are based on budgeted figures, as admitted by Debtors in ¶18 of their motion for summary judgment and are uncertified and meaningless. The use of budgeted figures for

calculating the monthly NPI is arbitrary, unjustified, improper, fraudulent and thieving. And, effective April 2001, Calpine began charging SAI Trust for the same "certain direct charges" multiple times and all charges are unsupported and uncertified. Membreno Dec., ¶¶17-23, 37-38, 51-52, 54, 58 and Exhibits "A", "C", "D", & "F" thereto.

   d) The sum of SAI Trust's claim is $583,698.61 as of August 1, 2008. See Membreno Dec., ¶59.

  27. This statement is improper in a Rule 56.1 Statement and requires no response from SAI Trust. To the extent that the Court deems this a proper statement of undisputed facts under Local Rule 56.1, the statement is denied. See Membreno Dec., Exhibit "A."

  28. This statement is improper in a Rule 56.1 Statement and requires no response from SAI Trust. To the extent that the Court deems this a proper statement of undisputed facts under Local Rule 56.1, the statement is denied. See Membreno Dec., Exhibit "A."

  29. Denied. The threshold question is whether or not these expenses are even permitted under the Agreement for Purchase. Only once this question is answered by this Court can a determination be made as to the legitimacy of these expenses. Thus, SAI Trust has moved for summary judgment arguing that there is no genuine issue of material fact that Debtors have breached the contract by inserting allocated costs based upon plants other than West Ford Flat commencing in April 2001. (See SAI Trust's Motion for Summary Judgment filed August 13, 2008, Rule 56.1 Statement in Support of Motion for Summary Judgment, Declaration of Robert Membreno in Support of Summary Judgment and Exhibits "A" through "I" annexed thereto and Memorandum of Law in Support.

  30. This statement is improper in a Rule 56.1 Statement and requires no response from

SAI Trust.

31. Denied. The threshold question is whether or not these expenses are even permitted under the Agreement for Purchase. Only once this question is answered by this Court can a determination be made as to the legitimacy of these expenses. Thus, SAI Trust has moved for summary judgment arguing that there is no genuine issue of material fact that Debtors have breached the contract by inserting allocated costs based upon plants other than West Ford Flat commencing in April 2001. (See SAI Trust's Motion for Summary Judgment filed August 13, 2008, Rule 56.1 Statement in Support of Motion for Summary Judgment, Declaration of Robert Membreno in Support of Summary Judgment and Exhibits "A" through "I" annexed thereto and Memorandum of Law in Support. Debtors' unilateral decision to start charging additional, unsupported and unjustified "direct operating expenses" for the account of SAI Trust is wholly improper and: 1) not a part of the Agreement for Purchase (Membreno Dec., Exhibit "A"); 2) not mentioned in the December 13, 1989 explanation of NPI line items (Membreno Dec., Exhibit "B"); 3) not pertaining exclusively to the West Ford Flat power plant as required in the Agreement for Purchase (Membreno Dec., Exhibit "A", Tipton Dec. 2, ¶5); 4) not a part of the 11 year course of dealings that had been established by the parties, (Membreno Dec., ¶¶13, 16); 5) already accounted for, as they were for 11 years prior, in the Lease Operating Expenses and Overhead charges (Membreno Dec., ¶¶10, 12-13, 16, 39-40, 51, 58-59); 6) not certified by the Chief Financial Officer (or any other employee) of the Debtors (Membreno Dec., ¶¶17-23, 37-38, 51, 52,54), and 7) based wholly on budgeted, i.e., fictitious, theoretical, un-incurred and hypothetical expenses. (Debtors' Motion for Summary Judgment, ¶18.) Accordingly, these charges are in breach of the Agreement for Purchase and SAI Trust must be reimbursed with interest. Debtors' motion for summary judgment must be denied and

SAI Trust's motion for summary judgment granted.

32. Denied. The Agreement for Purchase (Membreno Dec., Exhibit "A") was limited to the West Ford Flat plant. This is not in dispute and has been admitted by Guy Tipton when he stated in Tipton Dec. 2 that: "SAI Trust sold its interest in the 1984 QF power purchase agreement between PG&E and SAI Geothermal, Inc. to Freeport, but retained the rights to monthly net profit interest payments from operation of the *West Ford Plant (the 'Project')*". Tipton Dec. 2, ¶5. (Emphasis added.) Thus, Guy Tipton has now conceded that the NPI at issue was, indeed, limited to West Ford Flat. Exhibit F to the Agreement for Purchase is a "standard 'Accounting Procedure Joint Operations' section of model contracts drafted by the Committee on Petroleum Accounting Standards. There is no reference to SAI Geothermal or Freeport in Exhibit F, and the parties did not draft Exhibit F." Debtors Br., ¶13. Debtors thus admit that Exhibit F to the Agreement for Purchase is mere boilerplate. Under the Agreement for Purchase, the "Project" is West Ford Flat and only West Ford Flat. Debtors attempt to use this boilerplate accounting model set forth in Exhibit F to the agreement to vastly expand the scope of the actual Agreement for Purchase to include 18 other plants which were never contemplated at the time this agreement was drafted. Debtors conveniently ignore the clear, unmistakable, undeniable definition that the "Project" is the West Ford Flat Power Plant

33. Denied. The threshold question is whether or not these expenses are even permitted under the Agreement for Purchase. Only once this question is answered by this Court can a determination be made as to the legitimacy of these expenses. Thus, SAI Trust has moved for summary judgment arguing that there is no genuine issue of material fact that Debtors have breached the contract by inserting allocated costs based upon plants other than West Ford Flat commencing in April 2001. (See SAI Trust's Motion for Summary Judgment filed August 13, 2008, Rule 56.1

12

Statement in Support of Motion for Summary Judgment, Declaration of Robert Membreno in Support of Summary Judgment and Exhibits "A" through "I" annexed thereto and Memorandum of Law in Support. Debtors' unilateral decision to start charging additional, unsupported and unjustified "direct operating expenses" for the account of SAI Trust is wholly improper and: 1) not a part of the Agreement for Purchase (Membreno Dec., Exhibit "A"); 2) not mentioned in the December 13, 1989 explanation of NPI line items (Membreno Dec., Exhibit "B"); 3) not pertaining exclusively to the West Ford Flat power plant as required in the Agreement for Purchase (Membreno Dec., Exhibit "A", Tipton Dec. 2, ¶5); 4) not a part of the 11 year course of dealings that had been established by the parties, (Membreno Dec., ¶¶13, 16); 5) already accounted for, as they were for 11 years prior, in the Lease Operating Expenses and Overhead charges (Membreno Dec., ¶¶10, 12-13, 16, 39-40, 51, 58-59); 6) not certified by the Chief Financial Officer (or any other employee) of the Debtors (Membreno Dec., ¶¶17-23, 37-38, 51, 52,54) and 7) based wholly on budgeted, i.e., fictitious, theoretical, un-incurred and hypothetical expenses. (Debtors' Motion for Summary Judgment, ¶18.) Accordingly, these charges are in breach of the Agreement for Purchase and SAI Trust must be reimbursed with interest. Debtors' motion for summary judgment must be denied and SAI Trust's motion for summary judgment granted.

34.    Denied. The threshold question is whether or not these expenses are even permitted under the Agreement for Purchase. Only once this question is answered by this Court can a determination be made as to the legitimacy of these expenses. Thus, SAI Trust has moved for summary judgment arguing that there is no genuine issue of material fact that Debtors have breached the contract by inserting allocated costs based upon plants other than West Ford Flat commencing in April 2001. (See SAI Trust's Motion for Summary Judgment filed August 13, 2008, Rule 56.1

Statement in Support of Motion for Summary Judgment, Declaration of Robert Membreno in Support of Summary Judgment and Exhibits "A" through "I" annexed thereto and Memorandum of Law in Support. Debtors' unilateral decision to start charging additional, unsupported and unjustified "direct operating expenses" for the account of SAI Trust is wholly improper and: 1) not a part of the Agreement for Purchase (Membreno Dec., Exhibit "A"); 2) not mentioned in the December 13, 1989 explanation of NPI line items (Membreno Dec., Exhibit "B"); 3) not pertaining exclusively to the West Ford Flat power plant as required in the Agreement for Purchase (Membreno Dec., Exhibit "A", Tipton Dec. 2, ¶5); 4) not a part of the 11 year course of dealings that had been established by the parties, (Membreno Dec., ¶¶13, 16); 5) already accounted for, as they were for 11 years prior, in the Lease Operating Expenses and Overhead charges (Membreno Dec., ¶¶10, 12-13, 16, 39-40, 51, 58-59); 6) not certified by the Chief Financial Officer (or any other employee) of the Debtors (Membreno Dec., ¶¶17-23, 37-38, 51, 52,54) and 7) based wholly on budgeted, i.e., fictitious, theoretical, un-incurred and hypothetical expenses. (Debtors' Motion for Summary Judgment, ¶18.) Accordingly, these charges are in breach of the Agreement for Purchase and SAI Trust must be reimbursed with interest. Debtors' motion for summary judgment must be denied and SAI Trust's motion for summary judgment granted.

35. Denied. The word "project" immediately preceding the term "direct operating expenses limits "direct operating expenses" to the project. The project is the West Ford Flat plant and only the West Ford Flat plant. Membreno Dec., Exhibit "A."

36. Denied in part, admitted in part. SAI Trust admits that Debtors' interpretation of the Agreement for Purchase lacks the common sense required by California courts, or any court for that matter. Membreno Dec., Exhibit "A." SAI Trust denies that one of Webster's dictionary definitions

14

of "direct" is the definition set forth by Debtors in ¶36. The actual Webster's Dictionary (print version)[3] definition of "direct" is, in pertinent part:

> **direct** *adj* [ME, fr. L *directus*, fr. pp. of *dirigere*] **3 :** characterized by close logical, causal, or consequential relationship <direct evidence> **4 :** NATURAL, STRAIGHTFORWARD **5 a :** marked by absence of an intervening agency, instrumentality, or influence.

37.     Denied in part. SAI Trust admits that it is entitled to a share of the profits from the West Ford Flat plant - the profits after necessary costs for running and operating the West Ford Plant are deducted. However, Debtors' unilateral decision to start charging additional, unsupported and unjustified indirect operating expenses from 18 other plants for the account of SAI Trust is wholly improper and: 1) not a part of the Agreement for Purchase (Membreno Dec., Exhibit "A"); 2) not mentioned in the December 13, 1989 explanation of NPI line items (Membreno Dec., Exhibit "B"); 3) not pertaining exclusively to the West Ford Flat power plant as required in the Agreement for Purchase (Membreno Dec., Exhibit "A", Tipton Dec. 2, ¶5); 4) not a part of the 11 year course of dealings that had been established by the parties, (Membreno Dec., ¶¶13, 16); 5) already accounted for, as they were for 11 years prior, in the Lease Operating Expenses and Overhead charges (Membreno Dec., ¶¶10, 12-13, 16, 39-40, 51, 58-59); 6) not certified by the Chief Financial Officer (or any other employee) of the Debtors (Membreno Dec., ¶¶17-23, 37-38, 51, 52,54), and 7) based wholly on budgeted, i.e., fictitious, theoretical, un-incurred and hypothetical expenses. (Debtors' Motion for Summary Judgment, ¶18.) No common sense reading of the Agreement for Purchase can yield such a result now being sought by Debtors. Accordingly, these charges are in breach of the Agreement for Purchase and SAI Trust must be reimbursed with interest. Debtors' motion for

---

[3] Meriam Webster's on-line dictionary is virtually identical. The Court is respectfully referred to http://www.merriam-webster.com/dictionary last viewed August 19, 2008

summary judgment must be denied and SAI Trust's motion for summary judgment granted.

38.    Denied. Debtors once again misstate SAI Trust's argument. Debtors' unilateral decision to start charging additional, unsupported and unjustified indirect operating expenses for the account of SAI Trust is wholly improper and: 1) not a part of the Agreement for Purchase (Membreno Dec., Exhibit "A"); 2) not mentioned in the December 13, 1989 explanation of NPI line items (Membreno Dec., Exhibit "B"); 3) not pertaining exclusively to the West Ford Flat power plant as required in the Agreement for Purchase (Membreno Dec., Exhibit "A", Tipton Dec. 2, ¶5); 4) not a part of the 11 year course of dealings that had been established by the parties, (Membreno Dec., ¶¶13, 16); 5) already accounted for, as they were for 11 years prior, in the Lease Operating Expenses and Overhead charges (Membreno Dec., ¶¶10, 12-13, 16, 39-40, 51, 58-59); 6) not certified by the Chief Financial Officer (or any other employee) of the Debtors (Membreno Dec., ¶¶17-23, 37-38, 51, 52,54), and 7) based wholly on budgeted, i.e., fictitious, theoretical, un-incurred and hypothetical expenses. (Debtors' Motion for Summary Judgment, ¶18.) No common sense reading of the Agreement for Purchase can yield such a result now being sought by Debtors. Accordingly, these charges are in breach of the Agreement for Purchase and SAI Trust must be reimbursed with interest. Debtors' motion for summary judgment must be denied and SAI Trust's motion for summary judgment granted.

39.    Denied. SAI Trust's interpretation of the Agreement for Purchase was the same interpretation that all parties assigned to the Agreement for Purchase and operated under for in excess of 11 years. Membreno Dec, Exhibits "A", "B" and "F." The only party now seeking to alter the interpretation of the Agreement for Purchase for its own benefit is Calpine. Debtors' unilateral decision to start charging additional, unsupported and unjustified "direct operating expenses" for the

16

account of SAI Trust is wholly improper and: 1) not a part of the Agreement for Purchase (Membreno Dec., Exhibit "A"); 2) not mentioned in the December 13, 1989 explanation of NPI line items (Membreno Dec., Exhibit "B"); 3) not pertaining exclusively to the West Ford Flat power plant as required in the Agreement for Purchase (Membreno Dec., Exhibit "A", Tipton Dec. 2, ¶5); 4) not a part of the 11 year course of dealings that had been established by the parties, (Membreno Dec., ¶¶13, 16); 5) already accounted for, as they were for 11 years prior, in the Lease Operating Expenses and Overhead charges (Membreno Dec., ¶¶10, 12-13, 16, 39-40, 51, 58-59); 6) not certified by the Chief Financial Officer (or any other employee) of the Debtors (Membreno Dec., ¶¶17-23, 37-38, 51, 52, 54), and 7) based wholly on budgeted, i.e., fictitious, theoretical, un-incurred and hypothetical expenses. (Debtors' Motion for Summary Judgment, ¶18.) No common sense reading of the Agreement for Purchase can yield such a result now being sought by Debtors. Accordingly, these charges are in breach of the Agreement for Purchase and SAI Trust must be reimbursed with interest. Debtors' motion for summary judgment must be denied and SAI Trust's motion for summary judgment granted.

40. Denied. This single employee, used in Debtors' example, translates into a windfall for Calpine, not SAI Trust. SAI Trust is getting socked with fees arising from this one employee at least three times (as a "Lease Operating Expense, an "Allocated Expense" and as "Overhead."). Membreno Dec., Exhibit "F." In addition, Debtors have unilaterally changed the calculation of Overhead as well. Membreno Dec., Exhibit "F." Prior to April 2001, Overhead was 15% of "Lease Operating Expenses". Effective April 2001 "Overhead" is 15% of the sum of "Lease Operating Expenses" plus "Allocated Expenses". Membreno Dec., ¶15, Exhibits "D", "E" and "F". Thus, this one employee has generated a whole new category of mystery charges which Calpine has

17

surreptitiously inserted and conveniently labeled "Allocated Expenses" and has also generated an additional 15% of "revenue" to Calpine under the new method for calculating "Overhead". One would expect that under Calpine's new accounting methodology, "Lease Operating Expenses" and "Overhead" would decrease in light of the newly added "Allocated Expenses" category. However, this is not the case as "Lease Operating Expenses" and "Overhead" have actually remained the same or increased since the implementation of Debtors' new methodology beginning in April 2001. Membreno Dec., Exhibits "F" and "G".

41.    Denied. SAI Trust seeks to prevent Calpine from continuing its insertion of bogus expenses under the guise of "consolidation" to the detriment of SAI Trust. Calpine's actions are driven by deception and greed, pure and simple. This single employee, used in Debtors' example, translates into a windfall for Calpine, not SAI Trust. SAI Trust is getting socked with fees arising from this one employee at least three times (as a "Lease Operating Expense, an "Allocated Expense" and as "Overhead."). Membreno Dec., Exhibit "F." In addition, Debtors have unilaterally changed the calculation of Overhead as well. Membreno Dec., Exhibit "F." Prior to April 2001, "Overhead" was 15% of "Lease Operating Expenses". Effective April 2001 "Overhead" is 15% of the sum of "Lease Operating Expenses" plus "Allocated Expenses".  Membreno Dec., ¶15, Exhibits "D", "E" and "F". This one employee has generated a whole new category of mystery charges which Calpine has surreptitiously inserted and conveniently labeled "Allocated Expenses" and has also generated an additional 15% of "revenue" to Calpine under the new method for calculating "Overhead". One would expect that under Calpine's new accounting methodology, "Lease Operating Expenses" and "Overhead" would decrease in light of the newly added "Allocated Expenses" category. However, this is not the case as "Lease Operating Expenses" and "Overhead" have actually remained the same

or increased since the implementation of Debtors' new methodology beginning in April 2001. Membreno Dec., Exhibits "F" and "G".

42. Denied. It is certainly not SAI Trust that is seeking to rewrite the contract. Quite to the contrary, SAI Trust is seeking enforcement of the Agreement of Purchase, which, as detailed in SAI Trust's principle brief, Rule 56.1 Statement and Declaration of Robert Membreno, is limited to one plant and one plant only. That plant is West Ford Flat and no other. The Court must recognize that it is indeed Calpine who is attempting to rewrite a 20 year old agreement. Membreno Dec., Exhibit "A."

43. Denied.

44. Denied.

45. No response is required.

46. No response is required.

47. No response is required.

48. No response is required.

Dated: New York, New York
September 10, 2008

          Yours, etc.,

          **NICOLETTI HORNIG & SWEENEY**
          Attorneys for
          *Robert Membeno, Trustee for SAI Trust*

          By: /s/ *Lawrence C. Glynn*
              Lawrence C. Glynn (LG-6431)
              Wall Street Plaza
              88 Pine Street
              New York, New York 10005
              (212) 220-3830
              NH&S File No.:    00000840LCG