**Hearing Date: September 24, 2008, at 10:00 a.m. (ET)**

KIRKLAND & ELLIS LLP
Citigroup Center
153 East 53rd Street
New York, New York 10022-4611
Telephone: (212) 446-4800
Facsimile: (212) 446-4900
Richard M. Cieri (RC 6062)
Marc Kieselstein (admitted *pro hac vice*)
David R. Seligman (admitted *pro hac vice*)
Jeffrey S. Powell (admitted *pro hac vice*)
Mark E. McKane (admitted *pro hac vice*)

Counsel for the Reorganized Debtors

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re: ) | |
| ) | Chapter 11 |
| Calpine Corporation, et al., ) | |
| ) | Case No. 05-60200 (BRL) |
| Reorganized Debtors. ) | Jointly Administered |
| ) | |

**REORGANIZED DEBTORS' REPLY IN SUPPORT OF THEIR MOTION FOR SUMMARY ADJUDICATION**

Both the Reorganized Debtors and SAI Trust agree that the plain language of the Purchase Agreement is unambiguous and under well-established California law this Court can and should resolve the dispute over interpretation of the Purchase Agreement. Under the only reasonable interpretation of the Purchase Agreement that has been set forth, the Reorganized Debtors properly calculate the monthly Net Profits Interest payment and pay SAI Trust all that it is due.[1] In its Opposition to the Reorganized Debtors' Motion for Summary Adjudication, SAI

---

[1] Unless otherwise defined herein, all capitalized terms shall be defined as used in the Reorganized Debtors' Motion For Summary Adjudication Discharging SAI Trust's Claim Nos. 6309, 6314, 6315, 6316, 6327, and 6238 ("the Reorganized Debtors' Motion"). Docket No. 7913.

Trust fails to raise any argument that defeats the Reorganized Debtors' Motion for Summary Adjudication or proves its claims are valid. While full of rhetoric and baseless allegations, there are neither legal grounds nor supported facts that save SAI Trust's proofs of claim. As a result, this Court should grant the Reorganized Debtors' motion and discharge SAI Trust's proofs of claim.

While taking pains to increase the rhetoric and in the midst of allegations of "fiction writing" and "fraudulent, underhanded, conniving ways," see SAI Trust's Opposition to the Reorganized Debtors' Motion for Summary Adjudication at 4 and 17, SAI Trust concedes the core legal issue and admits that when expenses arise at the West Ford Plant, they are properly included as Operating Expenses in the NPI calculation. On page 15, SAI Trust states:

> Calpine uses the example of an employee who spends ten percent of his or her time at an adjacent plant in the Geysers field and ninety percent at the West Ford Plant. Prior to Calpine's unilateral alteration of the Agreement for Purchase terms, ***such an expense would be properly included as a Project direct operating expense*** and included in either "Lease Operating Expenses" or "Overhead."

Id. at 15-16 (emphasis added). SAI Trust *agrees* with the Reorganized Debtors that when an employee spends a portion of his or her time at the West Ford Plant and a portion of his or her time elsewhere, a portion of his or her salary ***would properly be included as a Project direct operating expense***. That is exactly what the Reorganized Debtors do when they allocate West Ford Plant's share of operating expenses from the consolidated operations at the Geysers. As SAI Trust concedes, those expenses are properly included as a Project direct operating expense. As a result the Reorganized Debtors' motion should be granted and SAI Trust's proofs of claim should be discharged.

In its Opposition, SAI Trust quibbles over the label of Allocated Expenses. Contrary to SAI Trust's unfounded and unsupported allegations, Allocated Expenses is not a new category of expense, nor is it properly characterized as expenses from other plants at the consolidated

2

Geysers. As set forth in the Tipton declarations, the Reorganized Debtors' Motion for Summary Adjudication and their Response to SAI Trust's Motion for Summary Judgment, the Allocated Expense portion of the monthly NPI reports includes only those categories of permissible expenses, such as employee salaries, maintenance or engineering that are accounted for on a consolidated basis. See First Tipton Decl. ¶¶ 12-13, Third Tipton Decl. ¶¶ 4-5, 10, Purchase Agreement at Ex. F (listing permissible categories of expenses). SAI Trust agrees that portions of expenses necessary for the operation of the West Ford Plant are properly included as Operating Expenses. That acknowledgement alone should resolve this dispute.

However, after conceding the core legal issue, SAI Trust continues to argue with plenty of rhetoric, but no factual support, that the Reorganized Debtors added a new category when it separated Operating Expenses into Lease Overhead Expenses and Allocated Expenses. As set forth in the Tipton declaration, the Lease Overhead Expenses and Allocated Expenses are exclusive and do not overlap. See Third Tipton Decl. ¶¶ 4-5. There are no double-counted categories in those two sub-categories of Operating Expenses. Id. ¶ 5. SAI Trust's histrionics and overheated rhetoric do not change that fact. Likewise, SAI Trust's efforts to correlate Allocated Expenses with expenses at the other plants fail as well. Allocated Expenses are not a random charge of total expenses across the consolidated Geysers. Allocated Expenses represent West Ford Plant's share of those categories of expenses permitted under the Purchase Agreement and Exhibit F thereto. See First Tipton Decl. ¶¶ 12-13. SAI Trust offers no support for its assertion that Allocated Expenses are from other plants and the Tipton declaration refutes this point. Third Tipton Decl.¶¶ 4-5, 10.

Given the plain language of the Purchase Agreement and SAI Trust's concession that the Reorganized Debtors can properly include portions of expenses when expenses are shared across

the Geysers, there is no doubt that the Reorganized Debtors properly interpret the Purchase Agreement. Nothing in the Purchase Agreement limits the Reorganized Debtors' ability to manage the West Ford Plant as a part of the consolidated Geysers. As part of that consolidated operation, there is nothing in the Purchase Agreement that limits the Reorganized Debtors' management decision to account for expenses at the consolidated level and then allocate West Ford Plant's share of those expenses in calculating the monthly NPI payment. As a result, this Court can and should resolve the legal question of contract interpretation and discharge SAI Trust's proofs of claim as they do not state a valid claim against the Reorganized Debtors' estates.

The remainder of SAI Trust's arguments are nearly exact copies of the allegations and arguments presented in its Motion for Summary Judgment, and the Reorganized Debtors incorporate their response to SAI Trust's Motion herein. As fully set forth in the Reorganized Debtors' Response, there are no possible estoppel or preclusive effects from the resolution of SAI Trust's earlier complaints in 1992 and 1995. See Reorganized Debtors' Response at 7-10. Both disputes were *years before* the Reorganized Debtors' management decision to consolidate operations at the Geysers and neither disagreement addressed the method of calculating "Operating Expenses". Id.

Further, SAI Trust's argument that the Reorganized Debtors breached the Purchase Agreement by failing to certify the annual NPI reports fails because it cannot prove any damages that are proximately caused from the lack of certification. Id. at 10-13. Well-established California law requires that damages be proximately caused by an alleged breach. SAI Trust has not and cannot show any link between the certification and its alleged damages because SAI Trust receives the same monthly report with detailed financial information and journal-specific

4

backup detail today as it always has. Id. at 12-13. Finally, SAI Trust also improperly expands its alleged damages to include post-petition, pre-confirmation damages in its Response to the Reorganized Debtors' Motion. Id. at 15-17. SAI Trust failed to file any request or claim for payment of administrative expenses and it limited its proofs of claim to "pre-petition matters." SAI Trust's post-petition, pre-confirmation damages were discharged by confirmation of the Debtors' Sixth Amended Joint Plan of Reorganization and SAI Trust cannot expand its damages claim now, particularly not in a Response to the Reorganized Debtors' Motion. Id.

For all of the reasons stated herein and in their Motion for Summary Adjudication, the Reorganized Debtors request that the Court grant the Reorganized Debtors' Motion for Summary Adjudication Discharging SAI Trust's Proofs of Claim.

Dated: September 17, 2008
   San Francisco, California

Respectfully submitted,

  /s/ Christopher W. Keegan
Richard M. Cieri (RC 6062)
Marc Kieselstein (admitted *pro hac vice*)
David Seligman (admitted *pro hac vice*)
Jeffrey S. Powell (admitted *pro hac vice*)
Mark E. McKane (admitted *pro hac vice*)
Christopher W. Keegan (admitted *pro hac vice*)
KIRKLAND & ELLIS LLP
Citigroup Center
153 East 53rd Street
New York, New York 10022-4611
Telephone: (212) 446-4800
Facsimile: (212) 446-4900

Counsel for the Reorganized Debtors